work area, which itself was clearly inappropriate, also physically prevented him from completing his work. In any event, Mr. Howley was *twice* reprimanded for his conduct during the incident, and advised that making physical contact with Plaintiff was inappropriate. See Howley Dep. at 27:19-28:19. Thus, to the extent that Sempra's Employee Handbook gave rise to a contractual obligation to investigate the Howley Incident, it is evident that the Company fully met its obligation.[27]

Sempra is entitled to summary judgment on Plaintiff's claims for breach of an express contract and negligent investigation of the Howley Incident.

### VI    PLAINTIFF'S CLAIMS FOR BREACH OF AN IMPLIED CONTRACT, PROMISSORY ESTOPPEL AND UNJUST ENRICHMENT ARE FLATLY INCONSISTENT WITH THE TERMS OF PLAINTIFF'S EXPRESS EMPLOYMENT AGREEMENT

In Count Seven of the Complaint, Plaintiff alleges that Sempra entered into an implied contract: (1) to pay Plaintiff a bonus for 2002 in an amount no less than "10% of [Plaintiff's] booked profits" for 2002; and (2) to continue Plaintiff's employment in perpetuity for as long as Plaintiff "remained profitable" for the Company. See Complaint, ¶¶ 97, 98, 100. Plaintiff reasserts the same claims in Counts Eight and Nine, under the legal theories of promissory estoppel and unjust enrichment. These claims fail because: (1) they are flatly inconsistent with the terms of Plaintiff's Employment Agreement; and (2) Plaintiff has failed to adduce facts showing the existence of an implied contract.

"[P]arties who have entered into controlling express contracts are bound by such contracts to the exclusion of inconsistent implied contract obligations." H.B. Toms Tree

---

[27] See Cowen, 25 F.Supp.2d at 37 n.3 ("Had the court held that Federal Express's disclaimers were not sufficient and thus it was contractually bound by the Manual's provisions, it still would have granted summary judgment in favor of Federal Express because, according to the undisputed facts, it has abided by these provisions.").

Surgery, Inc. v. Brant, 187 Conn. 343, 347, 446 A.2d 1 (1982). See O'Keefe v. Bassett, 132 Conn. 659, 663, 46 A.2d 847, 849 (1946) ("The reliance by the plaintiff upon an express contract as the basis of the defendant's liability precludes proof of a right to recover upon an implied contract . . . ."); Collins v. Lewis, 111 Conn. 299, 304 (1930) ("A true implied contract can only exist where there is no express one."); Hefferon Ins., Inc. v. Aetna Life Ins. Co., No. CV990594581, 2003 WL 1963162, at *1 (Conn. Super. Apr. 17, 2003) ("The plaintiff further asserts that an implied contract can only exist in the absence of an express contract between these parties. The court also agrees with this proposition.").

Similarly, it is well-established that an action for promissory estoppel or unjust enrichment or is barred where, as here, the parties have entered into an enforceable contract regarding the subject matter at issue. See Pleines v. Franklin Const. Co., Inc., 30 Conn. App. 612, 616, 621 A.2d 759, 762 (App. Div. 1993) ("[P]roof of a contract ordinarily precludes the remedy of unjust enrichment."); Feng v. Dart Hill Realty, Inc., 26 Conn. App. 380, 383, 601 A.2d 547, 548 (App. Div. 1992) ("Proof of a contract enforceable at law precludes the equitable remedy of unjust enrichment; . . . at least in the absence of a breach of the contract by the defendant.") (internal citations omitted); Hackett v. Marquardt & Roche/Meditz & Hackett, Inc., No. X02CV990166881S, 2002 WL 31304216, at *3 (Conn. Super. Sept. 17, 2002) ("[P]romissory estoppel is not a proper cause of action when . . . there is valid contract governing the same subject."); Troy v. Precision Computer Services, Inc., No. CV000082592, 2001 WL 589114, at *2 (Conn. Super. May 14, 2001) (stating that "a plaintiff may not plead promissory

estoppel where the parties have a valid contract.") (internal citation and quotation marks omitted).[28]

In this case, it is undisputed that the parties entered into a written Employment Agreement that: (i) describes the at-will nature of Plaintiff's employment; and (ii) squarely addresses Plaintiff's eligibility for a bonus payment and the potential amount of such a bonus. See Complaint, ¶ 86 (stating that "[b]y letter dated August 31, 2000, Defendant offered Plaintiff employment under certain express conditions, which letter was signed [by Defendant] . . . and counter-signed by Plaintiff on September 9, 2000."). See also Pl.'s Dep. at 51:12-52:15; Exhibit D. Specifically, the Employment Agreement unequivocally states that Sempra "may terminate [Plaintiff's] employment at will and whether or not for cause." See Exhibit D at ¶ 3. The Employment Agreement further provides that Plaintiff "may [] be eligible for a bonus, based on [her] performance and that of Sempra Trading and its subsidiaries, *in an amount to be determined by Sempra Trading's management solely in their discretion.*" Id. at ¶ 2 (emphasis

---

[28] See also United States Fidelity and Guaranty Co. v. Metropolitan Prop. and Liability Ins. Co., 10 Conn. App. 125, 127, 521 A.2d 1048, 1049 (App. Div. 1987) (stating that "[a]n allegation of a contract enforceable at law . . . preclude[s] the equitable remedy of unjust enrichment."); A & C Corp. v. Pernaselci, 2 Conn. App. 264, 265, 477 A.2d 166, 167 (App. Div. 1984) ("Unjust enrichment is a legal doctrine to be applied when no remedy is available pursuant to a contract.") (citing 5 Williston, Contracts (Rev. Ed.) § 1479); Moukarzel v. Oxygen Electronics, LLC, No. CV 990359965S, 1999 WL 643370, at *4 (Conn. Super. Aug. 12, 1999) ("[B]ecause it is undisputed that a valid contract exists, the remedy of promissory estoppel, which is a theory inconsistent with the existence of a contract, is precluded."); Meaney v. Connecticut Hosp. Ass'n, Inc., CV 93-0355265 S, 1997 WL 206629, at *2 (Conn. Super. Apr 17, 1997) ("When an enforceable contract does exist, the parties cannot assert a claim for promissory estoppel based on alleged promises that contradict the written contract."); Lombardi v. Marketing Corp. of Am., NO. CV91 0293281, 1994 WL 247956, at *5 (Conn. Super. Ct. May 23, 1994) (holding that a plaintiff "cannot assert a claim for promissory estoppel when a valid, written at-will employment agreement exists").

added). The Employment Agreement makes absolutely no mention of bonus payments being made to Plaintiff based on a percentage (10% or otherwise) of her booked profits.[29]

The Employment Agreement also incorporates by reference the terms of Sempra's Policy Manual. See Exhibit D, ¶ 3 (stating that Plaintiff's "employment is further subject to the terms and conditions of the Policy Manual as adopted by Sempra Trading"). The Policy Manual, in turn, reinforces the at-will employment relationship and the discretionary nature of bonus payments:

> Except as provided by the laws of any state or country where the Company has offices, or by a *written* contract between a particular employee and the Company, *each employee of the Company is an employee 'at-will.' The Company reserves the right to discipline or terminate its employees, with or without warning, for any reason.*
>
> . . . . . . . . . . . .
>
> The Company *may, but is not required to*, pay employees a bonus based on their performance and that of the Company. However, the determination as to whether and in what amounts to pay such bonus shall be made by the Company *in its sole discretion* and, *absent a written contract* to the contrary, *no employee has any entitlement to a bonus until it is actually received.*
>
> See Exhibit J at 31 (emphasis added).

It is manifest from the above that Plaintiff's claims for promissory estoppel, unjust enrichment, and breach of an "implied" contract to pay Plaintiff a profit-based bonus and to employ her in perpetuity so long as she remained profitable are directly contrary to the terms

---

[29] Notably, Plaintiff executed the Employment Agreement *months prior* to the date on which she claims that she was first told that she would have a job at Sempra so long as she "remained profitable" for the Company. See Complaint, ¶ 98; Pl.'s Dep. at 51:12-52:15; Pl.'s Response to Def.'s Interrogatory No. 10 (Exhibit R). Although Plaintiff claims that she was "promise[d]" a profit-based bonus "during initial employment discussions," see Complaint, ¶¶ 96-97, as discussed more fully below, this alleged promise was made by an outside employment agency, *not* a Sempra employee, and the purported "promise" is inadmissible hearsay.

of the Employment Agreement and Sempra's Policy Manual. As such, those claims must fail.[30] To conclude otherwise would permit Plaintiff to circumvent the terms of a carefully considered Agreement which directly addresses the subject matter in dispute(i.e., bonus eligibility and the nature of the employment relationship). The courts of this state have refused to countenance such gamesmanship.

Even if the terms of the Employment Agreement and Policy Manual did not otherwise bar Plaintiff's claim for payment of a profit-based bonus, that claim would still fail - - under any legal theory - - because Plaintiff has failed to adduce any admissible evidence demonstrating that Sempra made an enforceable promise to pay her a profit-based bonus. As an initial matter, Plaintiff claims that "[i]t is . . . an industry practice and [Sempra's] custom to pay out individual performance bonuses based on 10% to 15% of the profits booked by the individual in a given calendar year." Plaintiff further contends that a "promise" was made to her "during initial employment discussions" that she would receive a bonus payment for 2002 in an amount no less than "10% of [Plaintiff's] booked profits for 2002." See Complaint, ¶¶ 96, 97. Notwithstanding these allegations: (i) there is no evidence that Sempra "customarily" pays out individual, profit-based bonuses; (ii) it is well-settled under Connecticut law that evidence of

---

[30] Plaintiff's claim that Sempra entered into an implied contract to continue her employment as long as she remained profitable also fails because an implied contract for an indefinite term is terminable at will. Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474, 427 A.2d 385 (1980) ("[C]ontracts of permanent employment, or for an indefinite term, are terminable at will."); Burnham v. Karl & Gelb, P.C., 252 Conn. 153, 158-59, 745 A.2d 178 (2000) ("[I]t is a general proposition that contracts of permanent employment, or for an indefinite term, are terminable at will.") (internal quotation marks omitted). Since Plaintiff does not contend that she was orally promised employment until a date certain or for a specific period of time, Sempra remained free to terminate her employment at any time, and cannot be held to have violated the terms of an implied, at will employment agreement in so doing.

industry custom or practice is irrelevant to a claim for breach of an implied contract; and (iii) the bonus "promise" touted by Plaintiff is inadmissible hearsay.

In Christensen v. Bic Corp., 18 Conn. App. 451, 456, 558 A.2d 273 (1989), the Connecticut Appellate Court addressed the use of "custom and practice" as evidence of an implied contract in a lawsuit markedly similar to the case at bar. The plaintiff in Christensen alleged that his former employer had entered into an implied contract to pay him an annual bonus, which the plaintiff did not receive for the year in which he was terminated. Id. at 452-53. As "evidence" of this implied contractual commitment, the plaintiff alleged that he had received an annual bonus for each of the seven years preceding his termination and, further, that it was "the custom and practice of the defendant to pay a bonus based on performance of the company and of the individual." Id. at 452. The Appellate Court rejected Plaintiff's claim. In the course of its analysis, the Court observed: "The fact that in previous years Bic had given the plaintiff a bonus does not create a contract unless it was shown that this was a result of a contractual commitment by Bic. As the plaintiff correctly admits, *contracts are not created by evidence of customs and usage.*" Id. at 455 (emphasis added) (internal citation omitted).

In light of Christensen, Plaintiff cannot rely on evidence of an alleged custom or practice (assuming that she could otherwise adduce such evidence, which she cannot) in order to prove that Sempra entered into an implied contract to pay her a bonus equal to ten percent of her booked profits for the year 2002. This result is hardly surprising. Like an express contract, "an implied contract depends upon the existence of an *actual agreement* between the parties." Id. at 454 (emphasis added). Thus, even if Plaintiff were able to establish that Sempra has historically paid bonuses based upon a percentage of booked profits, which she cannot, such "evidence" would in no way demonstrate that Sempra reached agreement *with Plaintiff* to pay such a bonus.

To hold otherwise would eviscerate the cornerstone principle of contract law that "there must be a meeting of the minds between the parties" in order to create an enforceable contract. Id. at 458.

Plaintiff's claim that she was "promise[d]" a profit-based bonus "during initial employment discussions," see Complaint, ¶¶ 96, 97, is equally unavailing. During her deposition, Plaintiff testified that, prior to signing the Employment Agreement, the *only* person who allegedly made representations to her regarding the availability of profit-based bonuses at the Company was an executive recruiter by the name of Audrey Cullen. See Pl.'s Dep. at 28:18-29:16; 45:7-47:13. It is undisputed that Ms. Cullen was *not* a Sempra employee at the time of her alleged discussions with Plaintiff. Thus, there is simply no basis upon which to hold Sempra liable in contract for Ms. Cullen's alleged statements. Moreover, any statements that Ms. Cullen may have made regarding Plaintiff's alleged bonus entitlement are pure hearsay, and therefore inadmissible in opposition to Sempra's motion for summary judgment.[31]

Summary judgment should be granted as to Plaintiff's claims for breach of an implied contract, promissory estoppel and unjust enrichment.

### VII  PLAINTIFF HAS NO VIABLE CLAIM FOR BREACH OF AN IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Summary judgment should be granted as to Count Ten of the Complaint, alleging breach of an implied covenant of good faith and fair dealing, for three distinct reasons:

---

[31] See Fed. R. Civ. P. 56(e) (stating that affidavits in opposition to summary judgment motion "shall set forth such facts as would be admissible in evidence"); Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir.1999) (holding that hearsay statement "did not constitute competent evidence" and thus could not be considered in opposition to motion for summary judgment).

*First*, Plaintiff has adequate statutory remedies for her alleged wrongful dismissal and, therefore, is precluded from pursuing a claim for breach of the implied covenant of good faith and fair dealing. In <u>Burnham v. Karl & Gelb, P.C.</u>, 252 Conn. 153 (2000), the Connecticut Supreme Court observed that "[t]he cases which have established a tort or contract remedy for [discharged] employees . . . have relied upon the fact that in the context of their case the employee was *otherwise without remedy* and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." <u>Id.</u> at 159-60 (emphasis in original) (internal quotation marks omitted). Thus, it has been consistently held that a discharged employee may not pursue a claim for breach of an implied covenant of good faith and fair dealing under circumstances in which the employee has adequate statutory remedies for the discharge. See <u>Dallaire v. Litchfield County Ass'n for Retarded Citizens, Inc.</u>, No. 3:00CV01144 (GLG), 2001 WL 237213, at *4 (D. Conn. Feb. 12, 2001) ("[P]laintiff has alleged that she was constructively discharged because of her disability, which, if true, would violate important public policies embodied in the ADA and the CFEPA. However, . . . because plaintiff already has an adequate statutory remedy, this Court will not recognize a separate claim for breach of an implied covenant of good faith and fair dealing."); <u>Venterina v. Cummings & Lockwood</u>, 117 F. Supp. 2d 114, 119 (D. Conn. 1999) (dismissing implied covenant claim stemming from plaintiff's alleged wrongful termination "[because] the public policy against wrongful termination already has a full and adequate statutory remedy under [the Connecticut Workers' Compensation Act].").[32]

---

[32] See also <u>Brosler v. Food Automation-Service Techniques, Inc.</u>, No. 3:96-2345 (DJS), 1997 WL 711438, at *3 (D. Conn. Aug. 25, 1997) (dismissing implied covenant claim; concluding that plaintiff's Title VII and CFEPA claims "provide the plaintiff with remedies for the wrongful conduct she alleges"); <u>Bennett v. Beiersdorf, Inc.</u>, 889 F. Supp. 46, 49 (D. Conn. 1995)
(continued...)

In this case, Plaintiff has asserted claims under Title VII, the CFEPA, and the Connecticut Wage Act, alleging that she was wrongfully terminated and denied payment of a bonus because of her gender and sexual orientation. As such, Plaintiff clearly has adequate statutory remedies available to her and therefore cannot assert a claim for breach of an implied covenant of good faith and fair dealing.

*Second*, it is black-letter law that a claim for breach of the implied covenant cannot lie where the conduct at issue does not breach the parties' express contract. See Janusauskas v. Fichman, 264 Conn. 796, 807 n.9 (2003) ("Where there is a controlling express contract, the parties will be bound by that contract to the exclusion of inconsistent implied contract obligations."); H.B. Toms Tree Surgery, Inc. v. Brant, 187 Conn. 343, 347 (1982) (same). In this case, Plaintiff alleges that Sempra's decision to terminate her employment and not to pay her a bonus following her termination breached an implied covenant of good faith and fair dealing. However, as previously discussed, both of these claims fly in the face of the express terms of Plaintiff's Employment Agreement and Sempra's Policy Manual, which make clear that Plaintiff was employed "at will" and that Sempra retained the right "solely in [its] discretion" to decide whether Plaintiff would receive a bonus. In the context of an employment relationship in which the employer has the contractual right to terminate the employment "at will" and without payment of a bonus - - as Sempra did in this case - - it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision that would be inconsistent with that right. Consequently, Plaintiff's implied covenant claim must fail.

---

(...continued)
(dismissing claim for breach of the implied covenant since plaintiff already had adequate remedies for her race discrimination claim under state and federal anti-discrimination statutes).

*Third*, Plaintiff has neither alleged, nor can she show, that her termination violated an important public policy of the state of Connecticut, an essential element of an implied covenant claim. See Carbone v. Atlantic Richfield Co., 204 Conn. 460, 470 (1987) ("Where an employment contract is clearly terminable at will . . . a party cannot ordinarily be deemed to lack good faith in exercising this right [of termination]. Thus, absent a showing that the discharge involves an impropriety which contravenes some important public policy, an employee may not challenge a dismissal based upon an implied covenant of good faith and fair dealing.") (internal citations omitted); Doherty v. Sullivan, 29 Conn. App. 736, 743 (Conn. App. 1992) ("In the absence of a public policy violation, there is no breach of the implied covenant of good faith and fair dealing."). In this case, the words "public policy" do not appear anywhere in the more than one hundred forty paragraphs of the Complaint, and Plaintiff has not introduced or elicited any evidence that Sempra violated a public policy of Connecticut when it terminated her employment. Summary judgment should therefore be granted with respect to Count Ten.

### VIII   PLAINTIFF HAS NO TENABLE CLAIM UNDER THE CONNECTICUT WAGE ACT

In Count Twelve of the Complaint, Plaintiff alleges that Sempra violated the Connecticut Wage Act, C.G.S. § 31-71a, et seq., by failing to pay her a bonus for the year 2002. As a consequence, Plaintiff seeks a statutory award of "double damages." This claim, and Plaintiff's prayer for double damages, must be dismissed, because: (1) the bonus to which Plaintiff claims she is entitled does not constitute "wages," as that term has been defined under the Wage Act; (2) Plaintiff cannot demonstrate that any bonus payment is due and owing under the terms of her Employment Agreement; and (3) Sempra did not act in bad faith in electing not to pay Plaintiff a bonus.

The Wage Act provides a cause of action against an employer for non-payment of "wages." See C.G.S. § 31-72. The term "wages" is expressly defined as "compensation for *labor or services rendered by an employee,* whether the amount is determined on a time, task, piece, commission or other basis of calculation." C.G.S. § 31-71a(3) (emphasis added). Because the term "wages" is narrowly defined as compensation payable in exchange for an individual employee's labor, it has been held that a bonus payment does not meet the statutory definition unless it is attributable *solely* to an employee's individual efforts. That is, a bonus payment which is based - - even in part - - on an *employer's* overall profitability or performance, does not constitute "wages" recoverable under the Wage Act. See Garry v. Bertucci's Restaurant Corp., No. 3:00CV395 (EBB), 2001 WL 1795539, at *5 (D. Conn. Sept. 25, 2001) (holding that bonus payment not earned as a result of Plaintiff's "efforts alone" and that was based in part upon "the profitability of the [defendant] restaurant as a whole" did not constitute "wages" under Connecticut Wage Act); Ziotas v. Reardon Law Firm, P.C., No. 550776, 2001 WL 128904, at *1 (Conn. Super. Jan. 24, 2001) (dismissing wage claim against defendant law firm because complaint did not allege "as it must . . . that the amount of the bonus . . . depended on the plaintiff's efforts alone"). See also Hackett v. Marquardt & Roche/Meditz & Hackett, Inc., No. X02CV990166881S, 2002 WL 31304216, at *5 (Conn. Super. Sept. 17, 2002) (granting summary judgment; concluding that a bonus payment that depended in part on the performance of the defendant company did not constitute "wages" because the payment "did not bear *a direct relationship* to the amount and quality of [the employee's] labor and services.") (emphasis added).

As in the foregoing cases, it is apparent from the face of the Employment Agreement that Plaintiff's eligibility to receive a bonus payment, if any, was not dependent

-41-

solely upon her own job performance, but was determinable by reference to Sempra's overall profitability and that of its subsidiaries. See Exhibit D, ¶ 2 (stating that Plaintiff "[may] be eligible for a bonus, based on your performance *and that of Sempra Trading and its subsidiaries*") (emphasis added). Indeed, Plaintiff unambiguously admitted as much during her deposition:

> Q.   Okay. So you understood from [the Employment Agreement] that the performance of Sempra as a company would impact any bonus amounts that you might receive?
>
> A.   I understood that the impact of Sempra's performance would affect everybody's bonus across the board. Not just mine.
>
> Q.   But it would include yours - -
>
> A.   Yes.
>
> Q.   - - impact yours?
>
> A.   Yes.
>
> Q.   So if Sempra had a very profitable year, your bonus might be higher, and if it had a not-so-great year, your bonus might be lower?
>
> [Objection to the form of the question]
>
> Q.   You can answer.
>
> A.   Oh. Not necessarily. That's - - that's just one of the factors, I think, affecting bonus.
>
> Q.   Meaning the company's overall performance was one of the factors?
>
> A.   Uh-huh. Yes.
>
> Q.   But there were other factors; is that what you believe?
>
> A.   I would assume so, yes, is my understanding.

See Pl.'s Dep. at 52:24-53:22.

Even if Plaintiff were otherwise able to bring the bonus payment within the statutory definition of "wages," she still cannot state a claim under the Wage Act because she cannot demonstrate that she is entitled to receive a bonus under the terms of her Employment Agreement. Stated differently, Plaintiff cannot claim entitlement to payment of a wage absent proof that Sempra agreed to pay the wage in question. See Turecek v. A-Lined Handling Sys., Inc., No. 27 08 40, 1990 WL 272174, at *4 (Conn. Super. Apr. 18, 1990) ("An employee seeking to recover a bonus as wages pursuant to C.G.S. § 31-71a(3) must prove his entitlement to the amount claimed under the employment contract relied upon.") (citing Christensen v. Bic Corp., 18 Conn. App. 451, 454, 558 A.2d 273 (App. Div. 1989)).[33] As discussed supra, Plaintiff's Employment Agreement specifically addresses Plaintiff's bonus eligibility, states that the amount of such bonus, if any, is to be determined by Sempra solely in its discretion, and makes absolutely no mention of bonus payments being made to Plaintiff based on a percentage (10% or otherwise) of her profit margin. See Exhibit D. Because the Employment Agreement does not obligate Sempra to pay *any* bonus amount to Plaintiff, she cannot state a claim for unpaid wages.

Finally, it is clear that Plaintiff is not entitled to an award of "double damages" under the Wage Act. C.G.S. § 31-72 provides that when any employer fails to pay an employee wages, "such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court. . . ." It is well-settled, however, that "in an action for wages brought pursuant to General Statutes § 31-72, awards for double damages and attorney's fees are inappropriate in the absence of the court's

---

[33] In Christensen, the plaintiff alleged that his unpaid bonus constituted wages under § 31-71a. The Court overturned a verdict in favor of the plaintiff, holding that the employee could not recover under the Wage Act because he failed to show that he was entitled to the wages under his wage agreement. 18 Conn. App. at 458.

finding of '*bad faith, arbitrariness or unreasonableness.*'" Matteson v. Great East. Dev., Ltd., 18 Conn. App. 618, 621, 559 A.2d 1165 (App. Div. 1989) (emphasis added) (quoting Crowther v. Gerber Garment Tech., Inc., 8 Conn. App. 254, 265, 513 A.2d 144 (App. Div. 1986)). Moreover, it is not sufficient to find merely that an employer acted in bad faith in *any* of its dealings with the employee. The requisite finding must be closely tied to the non-payment of wages. See Sansone v. Clifford, 219 Conn. 217, 229, 592 A.2d 931 (1991) ("Sansone challenges the finding of lack of bad faith and arbitrariness as wholly inconsistent with Clifford's flagrant violation of the charter in twice appointing nonresidents to the position of building inspector. Those appointments, however, are only remotely related to the failure to pay Sansone the $360 due him for services performed . . . ."). It has also been held that the breach of an employment contract, without more, is legally insufficient to support an award under § 31-72. See Matteson, 18 Conn. App. at 621-22 ("[W]e conclude that the trial court abused its discretion in imposing attorney's fees when the court, in essence, found simply a breach of an employment contract."). See also Sansone, 219 Conn. at 229 (affirming denial of double damages award where non-payment of wages "took place in an atmosphere of uncertainty as to [plaintiff's] rights.").

For the reasons set forth in Point VI, supra, Plaintiff has no contractual or other entitlement to receive a bonus payment, nor can she establish that the bonus at issue constitutes a "wage" as defined under the Wage Act. Thus, because Sempra did not improperly withhold any accrued wages from Plaintiff, an award of double damages, attorney's fees or costs under § 31-72 is manifestly inappropriate. Further, even if it is determined that Plaintiff has raised sufficient facts to put the question of her bonus eligibility to a jury, there is absolutely no evidence that Sempra's decision not to pay her a bonus was precipitated by anything other than the Company's legitimate, good faith interpretation of the terms of Plaintiff's Employment Agreement and its

Policy Manual. In short, there is no evidence that Sempra acted in bad faith, arbitrarily or unreasonably so as to warrant an award under § 31-72.

## CONCLUSION

For all of the reasons discussed above, the Court should grant the Defendant's Motion for Summary Judgment in its entirety.

Dated: Stamford, Connecticut
       May 14, 2004

                              Respectfully Submitted,

                              By: *Peter M. Schultz*
                              Mary C. Dollarhide (ct12251)
                              Peter M. Schultz (ct19425)
                              Paul, Hastings, Janofsky & Walker, LLP
                              1055 Washington Boulevard
                              Stamford, CT 06901
                              Telephone: (203) 961-7400
                              Facsimile: (203) 359-3031
                              peterschultz@paulhastings.com

                              ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment, and all attachments thereto, was served on the following counsel of record via courier on this 14th day of May 2004:

> Brendan J. O'Rourke
> O'Rourke & Associates, LLC
> 27 Pine Street
> New Canaan, CT 06840

_____
Peter M. Schultz