UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SUSAN E. WOOD,

               Plaintiff,

      v.

SEMPRA ENERGY TRADING
CORPORATION,

               Defendant.

CIVIL ACTION NO.
3:03-CV-986 (JCH)

July 13, 2004

**PLAINTIFF'S LOCAL RULE 56(a)(2) RESPONSE AND STATEMENT OF DISPUTED
ISSUES OF MATERIAL FACT**

Plaintiff, Susan E. Wood ("Plaintiff" or "Wood"), hereby responds to Defendant Sempra

Energy Trading Corporation's ("Defendant" or "Sempra") Local Rule 56(a)(1) Statement of

Undisputed Material Facts supporting its Motion for Partial Summary Judgment, dated May 14,

2004 ("Defendant's Statement of Undisputed Material Facts").  Plaintiff has filed concurrent

herewith her affidavit ("Wood Affidavit") setting forth factual support for her response to

Defendant's Statement of Undisputed Material Facts as well as the accompanying Statement of

Disputed Material Facts.

**RESPONSES TO DEFENDANT'S STATEMENT**

With reference to the enumerated paragraphs in Defendant's Statement of Undisputed

Material Facts Plaintiff responds as follows:

1.        Admit

2.      Admit that Application was signed by Plaintiff, but it was signed after employment was accepted.  Plaintiff denies the assertion that the Application modifies the representations that were made to Plaintiff to induce her to join Sempra because the Application was filled out and signed after employment commenced.  See Wood Affidavit, ¶ 4.

3.      Plaintiff signed the letter of agreement providing some of the terms of her employment, but denies that the letter of agreement constitutes the complete employment agreement in that Plaintiff asserts and has alleged that her employment agreement with Sempra included various representations made by Sempra concerning the bonus that she was going to be paid as well as Sempra's promise of job security, negating the assertion that Plaintiff was terminable at will.  See Wood Affidavit, ¶ 5, 6, 7, 15, 16, 17, 19, 20, 22, 23.

4.      Plaintiff denies Defendant's assertion in Paragraph 4 which limits the "Employment Agreement" to the language provided for in the document referenced by Defendant in that Plaintiff asserts that certain promises and representations were made to her concerning her job security as well as bonus compensation that would be paid to her which terms are not expressly reflected in the agreement referenced in this paragraph.  Id.

5.      Plaintiff responds to Paragraph 5 in the same manner as Plaintiff has responded to the assertions in Paragraph 4.  Id.

6.      Plaintiff responds to Paragraph 6 in the same manner as Plaintiff has

responded to the assertions in Paragraphs 4 and 5. Further, Plaintiff does not have any recollection of having the Policy Manual presented to her at any time before she commenced employment (although she signed an acknowledged form regarding the Policy Manual), which therefore negates any assertion that the terms of the Policy Manual modified the representations given to Plaintiff regarding her bonus and employment security referenced above. Id.

7.      Plaintiff admits having signed an acknowledgment as to receiving a copy of an employee handbook but can neither admit nor deny that the particular handbook made an Exhibit in Defendant's Appendix was in fact delivered to her. As to the quotations from the documents referenced in this paragraph, Plaintiff responds that the documents speak for themselves and further asserts that same does not alter the terms of Plaintiff's employment contract as alleged in the Complaint.

8.      Plaintiff denies the assertions in Paragraph 8, and further responds that Sempra, acting through its duly authorized agent, Audrey Cullen, made representations to Plaintiff on behalf of Sempra, based upon communications that she had received from Sempra's officers, as to Plaintiff's job security, bonus and other terms of employment, and that the President, David Messer, made such statements. Id.

9.      Denied. Id.

10.      Denied. Plaintiff notes that the deposition transcript presented presents misleading statements. Id.

11.     Admit.

12.     Plaintiff denies the characterization of the Howley Incident, but admits that in June 2001 an incident with Howley did occur.  <u>See</u> Wood Affidavit, ¶ 28, 30, 31, 32.

13.     Denied.  Plaintiff asserts that this summary of the purported actions taken by the General Counsel, Mr. Goldstein, is inaccurate as to the timing and substance of the investigation and also inaccurate as it refers to one incident report when in fact there were multiple versions of the incident report, and Mr. Goldstein did not have an explanation for the multiple versions of the incident report when asked.  <u>Id</u>., <u>See</u> Wood Affidavit, ¶ 37, 38.

14.     Admit.

15.     Admit.

16.     Denied.  Plaintiff asserts that the purported change of business focus, as articulated by Mr. Roy, does not correspond to the communications that were given to Plaintiff regarding the Petroleum Derivatives Department or any material changes in the Department.  <u>See</u> Wood Affidavit, ¶ 8.

17.     Denied.  <u>See</u> Wood Affidavit, ¶ 28, 33, 34, 35, 36, 38, 39, 40, 41, 42, 43, 44, 45.

18.     Denied, although Plaintiff admits that Mr. Roy felt uncomfortable with Plaintiff as an employee for reasons relating to her sex and sexual orientation.  <u>Id</u>.

19.     Denied, as unsubstantiated statements that were never communicated to Plaintiff at any time during her tenure at Sempra including in any of her performance reviews casting significant doubt as to their credibility.  Further, these statements are clearly hearsay and in order to be admitted in Court would require the direct testimony of Mr. Vogel and Mr. Evans. <u>See</u> Wood Affidavit, ¶ 9, 22, 23, 24, 25, 26.

20.     Denied for the same reasons articulated in Plaintiff's response to Paragraph 19 including without limitation that these are unsubstantiated hearsay statements, and further none of these communications were ever given to Wood, nor reflected in any employment record maintained by Sempra casting significant doubt as to their credibility.  <u>Id</u>.

21.     Admit, except as to the description of the photograph.

22.     Denied.  The Plaintiff asserts the transaction referenced in this paragraph was in fact a transaction that yielded Sempra a substantial profit in which other employees at Sempra reviewed and ratified (i) at the time the transaction was consummated, and (ii) later when communications between Sempra and the customer occurred concerning the transaction.  <u>See</u> Wood Affidavit ¶ 10.

-5-

23.    Denied in that Plaintiff asserts that her job history reflected an effective, professional and profitable employee and that the asserted reasons of Mr. Roy are false and otherwise pretextual.  Plaintiff does admit that Mr. Roy felt misgivings about Ms. Wood, but those misgivings arose from Plaintiff's sex and sexual orientation.  See Response to Paragraphs 17 and 18.

24.    Denied.  See Wood Affidavit ¶ 12, 32, 38, 39.

25.    Denied.  Plaintiff asserts that there were other Sempra employees who participated in the decision to terminate Ms. Wood, including without limitation the General Counsel, Mr. Goldstein, President, Mr. Messer, and that those individuals as well as Mr. Roy were well aware that Plaintiff had complained about the Howley incident as reflective of unlawful and improper action by Mr. Howley motivated, at least in part, because Wood was a woman and a lesbian, and also that Ms. Wood feared that she would be retaliated against based upon pursuing such complaint against Mr. Howley.  Id.

26.    Plaintiff admits the assertions in Paragraph 26; however, Plaintiff asserts that there are other facts, which further evidenced a hostile work environment.

27.    Plaintiff responds with the same response to the response given to Paragraph 26.

28.    Plaintiff admits that there was an anti-harassment policy at Sempra, but

-6-

cannot verify the exhibit appended to Denise Frieda's affidavit submitted as part of Defendant's Appendix of Exhibits, although same appears to be an accurate version of the anti-harassment policy with which Plaintiff was familiar.

29.     Plaintiff neither admits nor denies the assertions in Paragraph 29 and responds by stating that the document speaks for itself.

30.     Plaintiff can neither admit nor deny whether Sempra followed the policy of distributing the anti-harassment policy at the time of new hire orientation.

31.     Admit.

32.     Plaintiff cannot admit nor deny Sempra's assertions as to how or when they conducted the anti-harassment training and whether or not Mr. Roy and Mr. Howley attended such training seminars.

33.     Denied. Plaintiff talked to other employees at Sempra about her concerns about a hostile work environment, including her first supervisor, Jackie Mitchell, and when she was informed of her termination, she stated to the Sempra employees, Mr. Cookingham and Ms. Freda, that she was being terminated because she was a woman, all of which was connected to the Howley Incident and the hostile work environment.  See Wood Affidavit ¶12, 13.

34. Admit, but deny the timing and rationale of the transfer. <u>See</u> Wood Affidavit ¶ 42, 43.

35. Plaintiff admits that she was an Assistant Vice President at Sempra when she was terminated and can neither admit nor deny the officer status of Mr. Soule when he was brought to the Petroleum Derivatives Department to replace Ms. Wood upon her termination.

## DISPUTED ISSUES OF MATERIAL FACT

1. Acting as a duly authorized agent for Sempra, Ms. Audrey Cullen, working at First Call Associates as an executive recruiter, communicated with Plaintiff about job prospects at Sempra in the year 2000. <u>See</u> Wood Affidavit ¶ 15.

2. Plaintiff had certain experience in working with commodities at Enron in Houston, Texas, where she handled marketing, oil and natural gas, and Audrey Cullen expressed an interest in Plaintiff's background as it related to employment prospects at Sempra in 2000. <u>See</u> Wood Affidavit ¶ 14.

3. Plaintiff had extensive communications with Audrey Cullen about the job prospects at Sempra and ultimately Audrey Cullen represented to Plaintiff that she was authorized to make an offer to hire Plaintiff as an employee at Sempra and that the terms of the offer included: (i) a base salary of $115,000 plus an annual bonus to be paid based upon the profits booked by Plaintiff at Sempra equating to no less than 10%, but up to 15% of such profits

-8-

and, (ii) that Plaintiff would have secure employment as long as she worked in a profitable manner for Sempra.  <u>See</u> Wood Affidavit ¶ 15.

4.      In reliance on the representation made by Sempra through Audrey Cullen, Plaintiff agreed to accept the terms of the offer of employment as provided by Sempra and in such doing, decided to leave her existing employment opportunities and relocate to Stamford, Connecticut, which was significant given the employment opportunities that were available to her in Texas as well as elsewhere.  <u>See</u> Wood Affidavit ¶ 16.

5.      On or about September 6, 2000, Plaintiff signed a letter of agreement from Sempra, dated August 31, 2000, which reflected certain of the terms of employment as communicated by Audrey Cullen, but which implicitly incorporated the promise of job security at Sempra so long as Plaintiff worked profitably for Sempra as well as the bonus compensation in the minimum amount of 10%, and up to 15%, of booked profits.  <u>See</u> Wood Affidavit ¶ 17.

6.      Plaintiff was aware of Sempra's policy prohibiting harassment at the time she took employment with Sempra.  <u>See</u> Wood Affidavit ¶ 18.

7.      The President of Sempra, a Mr. David Messer, during a recruitment interview with Plaintiff, reiterated the representations that had been provided to Plaintiff - in particular, that she would (i) be paid at least a 10% bonus in addition to her base salary and (ii) have job security at Sempra as long as her work yielded profits at Sempra.  <u>See</u> Wood Affidavit ¶

19.

8.    In reliance on the representations made by Cullen and Messer, Plaintiff continued to work at Sempra in 2000, 2001 and the early part of 2002, just prior to her termination.  <u>See</u> Wood Affidavit ¶ 19, 20.

9.    During her employment at Sempra, Plaintiff generated profits for Sempra through her work in the Gas Department and subsequently in the Petroleum Derivatives Department.  <u>See</u> Wood Affidavit ¶ 21.

10.    Plaintiff, based upon her profitability for Sempra for the year 2001, was paid a bonus in 2002 in the amount of $50,000.00, reflecting the fact that she had generated approximately $400,000.00 in profit, which corresponded to $1,100,000.00 in revenue, less $700,000.00 in "cost" associated with her desk.  The actual bonus approximated 12.5% of such profitability, consistent with the promises made to Plaintiff to induce her to take employment with Sempra.   <u>See</u> Wood Affidavit ¶ 22.

11.    Reflecting the fact that bonuses were paid based on a percentage of booked profits, Sempra did not pay bonuses to certain other individuals at the Assistant Vice President level in the Departments in which Plaintiff worked for the years 2000 and 2001.  <u>See</u> Wood Affidavit ¶ 23.

12.    Sempra, in recognition of Plaintiff's contributions to the company in 2001

also awarded her a $10,000.00 increase in annual salary.    The 2001 bonus and salary increase were reported to Plaintiff by Brian Cumming, Plaintiff's supervisor.  See Wood Affidavit ¶ 24.


13.     During Plaintiff's tenure of employment at Sempra, she brought in 16 new revenue-generating clients to Sempra, which was consistent with, and exceeded, one aspect of the criteria at Sempra for evaluating her work performance.    See Wood Affidavit ¶ 25.


14.     Right up through Plaintiff's termination, Plaintiff was given favorable employment reviews by her supervisor Jackie Mitchell when Plaintiff worked in the Gas Department, and Brian Cumming, Plaintiff's supervisor in the Petroleum Derivative Department (until Mr. Roy was made her supervisor).  See Wood Affidavit ¶ 26.


15.     In June of 2001, Plaintiff was physically attacked and verbally assaulted by a senior male employee and managing director of Sempra, Joseph Howley ("Howley").    See Wood Affidavit ¶ 27.


16.     Howley grabbed and physically shoved Plaintiff on the trading floor in front of approximately 150 of Sempra's employees including Jackie Mitchell, Plaintiff's initial supervisor, and Mr. Roy, Plaintiff's colleague and then subsequently Plaintiff's supervisor who participated in the termination of Plaintiff's employment.  See Wood Affidavit ¶ 28.


17.     After the Howley incident, Plaintiff was greatly distressed and complained about the incident to her immediate supervisor at the time, Brian Cumming, as well as to her

previous supervisor, Jackie Mitchell.  <u>See</u> Wood Affidavit ¶ 29.

18.    After the Howley incident, Plaintiff also made a formal complaint directly to the General Counsel of Defendant, Michael Goldstein ("Goldstein").    At a meeting with Goldstein, Plaintiff communicated that she believed that the conduct by Mr. Howley was discriminatory and otherwise unlawful behavior, which constituted a clear violation of Sempra's prohibition against harassment.  <u>See</u> Wood Affidavit ¶ 30.

19.    Plaintiff informed Goldstein in particular that she believed that the physical and verbal assault of Howley was directed against her, at least in part, because she was a woman. <u>See</u> Wood Affidavit ¶ 31.

20.    At the time that Plaintiff communicated to Goldstein that she wished to pursue a complaint against Mr. Howley, she advised Goldstein that she felt significant risk of being terminated in retaliation for pursuing a complaint against Mr. Howley, who was a powerful managing director concerning whom, she thought management would show great deference in contrast to her position as an Assistant Vice President and because she was a woman.  After having filed the Howley Complaint, Plaintiff was forced to prompt Goldstein and Sempra to pursue the investigation that was promised under the Prohibition Against Harassment Policy.  In particular, Sempra did not properly investigate the actions and no communication was given to Plaintiff that Howley was in any way reprimanded for his volative conduct, inconsistent with the terms of Sempra's policy. <u>See</u> Wood Affidavit ¶ 32.

-12-

21.     Sarathi Roy, who ultimately was made Plaintiff's supervisor in or about March of 2002 had developed a close working relationship with Howley.    See Wood Affidavit ¶ 33.

22.     Mr. Roy, who had witnessed the Howley incident, in interacting with Plaintiff, made a number of inappropriate boasts to Plaintiff about his conquests with women and his opinions as to the appropriate place of women in the workplace.  For example, Mr. Roy, knowing that Plaintiff has a female partner in her life as part of her lesbian status, asked Plaintiff, "Who wears the pants in the family?"  He also asked how Plaintiff divided traditional female and male household chores in their home and commented to Plaintiff that his wife would cook for him and take care of him in the way that he should be taken care of.    See Wood Affidavit ¶ 34.

23.     Mr. Roy also made comments referring to Plaintiff as the "lady on the desk," and referenced his marriage as having been "arranged."  Mr. Roy also commented that a "woman's place is in the home" and that he would not even allow his wife on the Sempra trading floor.  He also referenced how a masseuse that he visited was a real woman, and knew how to take care of him.  See Wood Affidavit ¶ 35.

24.     The communications and manner of Mr. Roy had the effect of making Plaintiff feel particularly unwelcome and uneasy about her professional status at Sempra, which made the situation more troublesome, given Mr. Roy's relationship with Mr. Howley and the fact

-13-

that she feared retaliation from the Howley incident.   See Wood Affidavit ¶ 36.

25.     Ultimately, the Howley incident was concluded with two different incident reports, and no formal reprimand of Mr. Howley having been made. See Wood Affidavit ¶ 37.

26.     Ultimately, Mr. Roy communicated to Plaintiff in March of 2002 that Sempra was terminating her employment. Before Ms. Wood's termination, Mr. Roy had discussions with Brian Cumming, and Jackie Mitchell about Ms. Wood.   Before the date on which Mr. Roy communicated Sempra's termination of Plaintiff, the President, David Messer, also participated in communications regarding the termination of Ms. Wood, as well as the General Counsel, Michael Goldstein.  In fact, Mr. Goldstein, who acted as the investigator on the Howley incident, and who participated in that role as an objective fact finder, not as an attorney. In that role, Mr. Goldstein, under Sempra's Policy prohibiting discrimination, was charged with conferring with Ms. Wood about her complaint as well as her expressed concern that she feared retaliation in making the complaint; however, as Mr. Goldstein admitted in his deposition, Mr. Goldstein improperly and unlawfully jettisoned his objective role, and assumed an adverse role to Ms. Wood and her status as a complainant, and improperly gave legal advice to Mr. Roy and Sempra concerning the decision to fire Ms. Wood.  See Wood Affidavit ¶ 38.

27.     In ultimately deciding to terminate Plaintiff, none of the individuals at Sempra who participated in discussions regarding Plaintiff's termination (Mr. Messer, Mr. Cumming, Mr. Roy, Mr. Goldstein, and Ms. Mitchell) took steps to review Plaintiff's written employment evaluations or financial records indicating Ms. Wood's profitability within the

group in which she worked.  <u>See</u> Wood Affidavit ¶ 39.

28.     Although Mr. Roy stated that he had sought to find employment for Ms. Wood at Sempra before terminating her, Mr. Roy made no inquiry of Ms. Wood about potential prospects for her at Sempra and gave her not one scintilla of advance notice that her job was in jeopardy.  <u>See</u> Wood Affidavit ¶ 40.

29.     Plaintiff vigorously asserts that the proffered reasons given by Sempra for Plaintiff's termination - that Plaintiff was unprofessional and lacked judgment - are wholly pretextual and a rationale that is defied by the fact that Plaintiff had been a productive, profit-generating employee, had received favorable job reviews from each of her supervisors, Jackie Mitchell and Brian Cumming, and had not received one negative employment evaluation since the time she commenced her employment at Sempra.  <u>See</u> Wood Affidavit ¶ 41.

30.     Further, a Mr. Steven Soule, with little experience, was hired to join the Petroleum Derivatives Department at Sempra from another department at Sempra prior to the termination of Plaintiff.  In essence, Mr. Soule replaced Plaintiff in her position in the Petroleum Derivatives Department and in fact was given the leads to call on that Ms. Wood had been working on before her termination.   <u>See</u> Wood Affidavit ¶ 42.

31.     In sum, Plaintiff, a woman and a lesbian, was replaced by a male with less experience.  <u>See</u> Wood Affidavit ¶ 43.

32.     After she was terminated, Plaintiff was informed by a Billy Lasher, an employee at Sempra, that Mr. Roy had said he was not "comfortable" with Plaintiff as a work colleague. <u>See</u> Wood Affidavit ¶ 44.

33.     Mr. Roy has admitted that he was "uncomfortable" with Plaintiff.  That discomfort with Plaintiff derived from the fact that Plaintiff was a female and a lesbian.  <u>See</u> Wood Affidavit ¶ 34, 35, 40, 41, 42, 44, 45.

PLAINTIFF,
SUSAN E. WOOD

By:_____
        Brendan J. O'Rourke (ct00522)
        Jeffrey M.  McCormick  (ct21185)
        O'ROURKE & ASSOCIATES LLC
        27 Pine Street
        New Canaan, CT  06840
        Telephone: (203) 966-6664
        Facsimile:  (203) 966-5710
        Brendan@orourkeandassoc.com

-16-

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, a member of the bar of this Court, hereby certifies that on this 13th day of July, 2004, a copy of the foregoing was served on the following counsel of record via first class mail, postage pre-paid:

Mary C. Dollarhide (ct12251)
Peter M. Schultz (ct19425)
Neil B. Stekloff (ct19778)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
1055 Washington Blvd.
Stamford, CT  06901-2217
Telephone: (203) 961-7400
Facsimile:  (203) 359-3031
Email: peterschultz@paulhastings.com


_____

Jeffrey M. McCormick

-17-