UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN E. WOOD,<br><br>      Plaintiff,<br><br>v.<br><br>SEMPRA ENERGY TRADING CORPORATION,<br><br>      Defendant. | CIVIL ACTION NO.<br>3:03-CV-986 (JCH)<br><br><br>August 6, 2004 |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S COMPLAINT**

Submitted By,

*Peter M. Schultz*
Mary C. Dollarhide (ct12251)
Peter M. Schultz (ct19425)
Paul, Hastings, Janofsky & Walker, LLP
1055 Washington Boulevard
Stamford, CT 06901
Telephone: (203) 961-7400
Facsimile: (203) 359-3031
peterschultz@paulhastings.com

ATTORNEYS FOR DEFENDANT

## INTRODUCTION

It is the oft-repeated advice of litigators that "when you have the facts, you should argue the facts; when you have the law, you should argue the law." The question confronting Plaintiff in this case is what to do when you have neither. She offers three inadequate responses, none of which provides a basis for denying Sempra's motion for partial summary judgment:

First, Plaintiff avoids the issue entirely, opening her opposition brief with the preposterous assertion that this Court "informal[ly] direct[ed]" Sempra not to file a summary judgment motion in light of the "factual issues asserted in the Complaint." See Pl.'s Opp. Br. at 2 n.1. As this Court well knows, the unverified allegations in Plaintiff's complaint do not constitute admissible evidence. See Hoyt v. Dep't of Children & Families, 309 F. Supp.2d 299, 306 (D. Conn. 2004) (Hall, J.) ("A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. Additionally, *a party may not rest on the mere allegations or denials contained in his pleadings*.") (emphasis added; internal citations and quotation marks omitted). Refusing to be encumbered by this pesky legal principle, Plaintiff repeatedly cites to the complaint as "evidence." See Pl.'s Opp. Br. at 12-15, 21-22.[1]

Second, Plaintiff feigns adherence to the record evidence in this case. Eschewing any reference to deposition testimony or written discovery responses, Plaintiff relies entirely on a new affidavit in "support" of her claims. Employing a common tactic for attempting to avoid summary judgment, Plaintiff's affidavit inundates the Court with numerous allegedly disputed "facts" with the hope that a "disorganized record may tempt the Court to conclude that there must be an issue of fact in there somewhere." See Garner, "Summary Judgment: 'Put Up or Shut Up,'" Litigation, Spring 1999 at 31. In the guise of facts, however, Plaintiff's affidavit offers little more than a slew of unsupported and incompetent legal and factual conclusions. See, e.g., Wood Affidavit, ¶ 9 ("[T]hese statements are clearly hearsay"); Id. at ¶ 11 ("[T]he asserted reasons of Mr. Roy for my termination are false and otherwise pretextual"); Id. at ¶ 17 (concluding that Plaintiff's written Employment Agreement "implicitly incorporated the promise of job security"); Id. at ¶ 45 (stating that Mr. Roy was "uncomfortable" with Plaintiff and "[t]hat discomfort . . . derived from the fact that I was a female and a lesbian"). These conclusory

---

[1] Of course, Plaintiff occasionally abandons all pretense of adhering to proper motion practice. This lapse is most obvious in the "Factual Background" section of Plaintiff's brief, which contains not a single citation to any evidentiary authority, whether admissible or inadmissible. Id. at 3-6.

assertions violate the strictures of Local Rule 56, which requires citation to "evidence that would be admissible at trial." See Local Rule of Civ. P. 56(a)3. Indeed, standing alone, this omission warrants granting Sempra's summary judgment motion. See id. (stating that "failure to provide specific citations to evidence in the record as required by this Local Rule may result in sanctions, including, . . . when the opponent fails to comply, an order granting the motion."). See also Egri v. Connecticut Yankee Atomic Power Co., 270 F. Supp.2d 285, 291 (D. Conn. 2002) (holding that "[a] statement [of material, undisputed facts] that is not in compliance with the Local Rules is the equivalent of no filing at all and is sufficient reason to grant summary judgment in favor of Defendants on all claims . . . ."); cf. Amnesty America v. Town of West Hartford, 288 F. 3d 467, 471 (2d Cir. 2002) ("We therefore hold that, *in the absence of a local rule*, a district court may not grant summary judgment on the ground that the nonmovant's papers failed to cite to the record unless the parties are given actual notice of the requirement.") (emphasis added).

Third, and most disingenuously, Plaintiff asserts for the first time "facts" that directly contradict her deposition testimony and interrogatory responses. As Plaintiff well knows, these eleventh-hour averments may not be used to defeat a properly supported motion for summary judgment. See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony."). As cogently stated in Burns v. Board of County Comm'rs, 330 F.3d 1275 (10th Cir. 2003), one cannot alter what was said in deposition. "If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses . . . . A deposition is not a take home examination." Id. at 1282 (internal quotation marks and citation omitted).

Sempra's motion for partial summary judgment should be granted in its entirety.

## LEGAL ARGUMENT

### I. THERE IS NO EVIDENCE THAT PLAINTIFF WAS DISCHARGED IN RETALIATION FOR COMPLAINING ABOUT THE HOWLEY INCIDENT

In order to satisfy the first element of a retaliatory discharge claim, a plaintiff must show not only that she actually believed that the employment practice she allegedly "opposed" was unlawful under the anti-discrimination statutes, but must also establish that this subjective belief, however firmly held, was *objectively reasonable*. See Def.'s Moving Br. at 20.[2] See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998) (stating that the plaintiff must establish that she had a "good faith, *reasonable belief* that the underlying employment practice was unlawful [under the anti-discrimination statutes].") (emphasis added); Bright v. Le Moyne College, 306 F. Supp.2d 244, 254 (N.D.N.Y. 2004) (same); Spadola v. New York City Transit Auth., 242 F. Supp. 2d 284, 291 (S.D.N.Y. 2003) ("The employee's belief that he was opposing an employment practice made unlawful by Title VII must also be *objectively* reasonable, in the sense that the asserted opposition must be grounded on sufficient evidence that the employee was the subject of discrimination and harassment.") (emphasis added).

As demonstrated in Sempra's moving papers, Plaintiff has not produced a shred of evidence showing that Mr. Howley's conduct during the Howley Incident was motivated by Plaintiff's gender or sexual orientation. Consequently, Plaintiff cannot show that she harbored an objectively reasonable belief that Mr. Howley was, in fact, so motivated. See Def.'s Moving Br. at 21-22. Nothing in Plaintiff's opposition brief alters this conclusion. Indeed, the only response Plaintiff offers on this point is that, because Sempra's Employee Handbook contains language to the effect that an employee who engages in sexual harassment or who commits an act of physical violence against a co-worker (among other conduct) may be subject to termination, it necessarily follows that *if* an employee makes physical contact with a co-worker, the contact *must have been* motivated by discriminatory animus. See Pl.'s Opp. Br. at 22. This argument is nonsensical, and certainly does not constitute evidence that Plaintiff's purported, subjective belief about Mr. Howley's conduct is objectively reasonable.

---

[2] This is not the same as requiring that a litigant prove that her belief as to the unlawfulness of the conduct at issue is *correct*, as Plaintiff contends. See Pl.'s Opp. Br. at 21.

Plaintiff's remaining arguments with respect to her retaliatory discharge claim are equally specious. First, Plaintiff states that, in addition to the Howley Incident, she "has offered substantial other indicia of unlawful discrimination by [Sempra]" and "it is the totality of these circumstances which are before this Court." Id. In so arguing, Plaintiff apparently forgets the basis for her retaliation claim or is intentionally misrepresenting the claim in an effort to avoid its proper dismissal. To set the record straight, as Count Four of the Complaint (captioned "Retaliatory Discharge -- Title VII") makes clear, Plaintiff alleges that she was terminated in retaliation for complaining about *one thing only* - - the Howley Incident. See Complaint, ¶¶ 71-73 (stating that Plaintiff was terminated from her position with Sempra "in retaliation for pursuing a proper investigation of the Howley Incident, and for filing the Complaints [about the Howley Incident]"). See also Pl.'s Dep. at 179:20-21 ("A. I was terminated for what I believe is retaliation for an incident, the Howley incident."); 215:24-25 ("A. . . . I thought that I was terminated because I was gay, because I was a woman, *and in retaliation for the Howley incident.*") (emphasis added); 103:22-104:4 ("Q. I'm looking for specific acts or statements that were made to you that you believed were retaliatory. A. For the Howley incident? Q. Exactly. A. Termination. Q. And that's it? A. Yep. Yes.").[3] Thus, Plaintiff cannot now contend that she was terminated in retaliation for complaining about *other* alleged acts of discrimination or harassment. Indeed, any such claim is directly controverted by Plaintiff's deposition testimony:

> Q. Ms. Wood, with the exception of the Howley [I]ncident, as we've been calling it, at any time during your employment at Sempra, did you ever report to anyone that you believed you were being harassed or discriminated against on the basis of your gender or sexual orientation?
>
> A. Did I ever report to anyone?
>
> Q. Correct.
>
> A. No, I did not. (Pause.) Well, can I go back on that? Does that count the exit interview when I was being fired that I spoke to Denise Freda and Vin Cookingham and said that I felt that I was being fired and discriminated against because I was a woman?
>
> Q. Okay. With that exception.
>
> A. That would be it.

See Pl.'s Dep. at 104:11-105:1.

---

[3] Relevant excerpts from Plaintiff's deposition testimony are attached hereto as Exhibit A.

Since Plaintiff admits that she did not complain about any other alleged acts of discrimination prior to her termination, her claim that she "experienced gender-based discrimination and sexual orientation-based discrimination before and after the Howley Incident," see Pl.'s Opp. Br. at 24, standing alone, is legally superfluous to her retaliation claim. Stated differently, it is axiomatic that a plaintiff cannot be discharged in retaliation for "opposing" an unlawful employment practice unless she did, in fact, oppose the practice. See Galdieri, 136 F.3d at 292 (stating that a plaintiff asserting a retaliation claim must show: "that she was engaged in protected activity *by opposing a practice made unlawful by Title VII*") (emphasis added).

Second, although Plaintiff claims that she "has established a causal connection" between her complaint about the Howley Incident and her termination, see Pl.'s Opp. Br. at 23, this claim is not supported by any evidence. Plaintiff argues merely that the lack of temporal proximity between the date of her complaint and the date of her termination does not "conclusive[ly]" establish the absence of causality. Id. However, as the cases cited by Sempra demonstrate, the *nine month* gap between the date of Plaintiff's complaint and her termination is strong evidence of the absence of causality. More importantly, Plaintiff has utterly failed to meet her burden of bringing forth evidence establishing the *presence* of causality. In lieu of such evidence, Plaintiff relies on the completely unsupported claim that the person responsible for the termination decision, Sarathi Roy,[4] had a "uniquely close relationship" with Mr. Howley and that "it defies credulity to assert that Howley would not discuss [the Howley Incident] with Mr. Roy." See Pl.'s Opp. Br. at 25; Wood Affidavit, ¶ 33 (stating that Sarathi Roy "developed a close working relationship with Howley"). As Plaintiff well knows, this baseless claim directly contradicts the record evidence in this case.

During his deposition, Mr. Howley recalled that he interacted "infrequently" with Mr. Roy in 2001, e-mailing him on perhaps 3-4 occasions over the course of the *entire year*. See Howley Dep. at 124:18-22; 143:14-20.[5] Mr. Howley further testified that he has never discussed Plaintiff's termination with Mr. Roy. Id. at 132:2-5.

---

[4] Plaintiff vaguely refers to "the people" responsible for the decision to terminate her, Id. at 24, but fails to adduce any evidence refuting Mr. Roy's testimony that he was solely responsible for the termination decision. See Roy Affidavit, ¶ 17 (stating that "no one suggested to me that I should terminate [Plaintiff]. The decision was mine alone.") (attached hereto as Exhibit B); Pl.'s Dep. at 121:22-122:3 ("Q. Are you aware of any facts to support your belief that [Sarathi Roy] was not the sole decision-maker? A. No."). Plaintiff likewise fails to offer any proof supporting her apparent claim that these unidentified decisionmakers elected to terminate Plaintiff because of her complaint regarding the Howley Incident nine months earlier.

[5] Relevant excerpts from the deposition of Joseph Howley are attached hereto as Exhibit C.

Mr. Roy similarly testified that he has never discussed the Howley Incident with Mr. Howley. See Roy Dep. at 213:2-4 (attached hereto as Exhibit D).[6] Indeed, setting aside the usual morning pleasantries, Mr. Roy testified that his interactions with Mr. Howley during the latter half of 2001 and early part of 2002 were business-related only. See Roy Dep. at 271:23-272:12. In short, there is simply no evidence that Mr. Howley and Mr. Roy: (i) had a "uniquely close relationship" (or, indeed, *any* relationship other than that of professional colleagues); (ii) discussed the Howley Incident; or (iii) discussed Plaintiff's termination. Plaintiff's assertions to the contrary reveal a disturbing lack of candor to the Court.

Summary judgment should be granted as to Counts Four and Five, alleging retaliatory discharge in violation of Title VII and the CFEPA.

## II.  PLAINTIFF FAILS TO STATE A HOSTILE WORK ENVIRONMENT CLAIM

Plaintiff contends that: (1) she has alleged facts sufficient to survive summary judgment on her claims that she was subjected to a hostile work environment on the basis of her gender and sexual orientation; and (2) Sempra is not entitled to avail itself of the Faragher-Ellerth affirmative defense to liability. Plaintiff is flatly wrong on both counts.

### A.  Plaintiff's Work Environment Was Not Permeated With Discriminatory Intimidation, Ridicule And Insult.

As Plaintiff concedes, "the standard for establishing a hostile work environment is high." Feingold v. State of New York, 366 F.3d 138, 150 (2d Cir. 2004). In particular "surviving summary judgment on a hostile environment claim under [Title VII] . . . requires evidence not only that the victim *subjectively* perceived the environment to be hostile or abusive, but also that the environment was *objectively* hostile and abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and insult, . . . that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment." Hayut v. State University of New York, 352 F.3d 733, 745 (2d Cir. 2003) (emphasis added) (internal quotation marks omitted). Plaintiff cannot meet this difficult burden.

---

[6] As Plaintiff correctly observes, the fact that, prior to making the decision to terminate Plaintiff's employment, Mr. Roy was unaware that Plaintiff allegedly had previously lodged a complaint of discrimination regarding the Howley Incident, does not *conclusively* establish the absence of a causal connection between the two events. See Pl.'s Opp. Br. at 24. However, it does constitute "some evidence" of a lack of causality, Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000), which Plaintiff fails to counter in any way.

First, the record evidence demonstrates that Plaintiff did not subjectively believe that her working environment had become "hostile or abusive" as a result of any comments allegedly made by Sarathi Roy.[7] To the contrary, it is undisputed that Plaintiff: (i) never complained to anyone at Sempra about Mr. Roy's alleged comments (Pl.'s Dep. at 104:11-105:1)[8]; (ii) invited Mr. Roy to her vacation home out West (Pl.'s Dep. at 157:18-158:1); (ii) went out for drinks with Mr. Roy on several occasions, including shortly before her termination (Id. at 158:10-159:7); (iii) e-mailed Mr. Roy pictures of her dog (i.e., her "baby") approximately one month before she was terminated (Id. at 177:5-178:13); and (iv) did not consult any mental health care providers (i.e., psychologists, psychiatrists) prior to her termination. Id. at 192:17-23.[9]

Standing alone, these facts amply reveal that Plaintiff did not believe her workplace at Sempra had become hostile as a result of Mr. Roy's alleged conduct. This conclusion is made unassailable by the fact that, less than two months before she was terminated, Plaintiff forwarded an e-mail to Mr. Roy containing an image of a woman lying face down on a beach wearing a tight-fitting pair of shorts. The woman's legs are widespread, displaying the contours of her buttocks and vagina. Id. at 171:11-172:14; see 1/10/02 E-Mail from S. Wood to S. Roy (attached hereto as Exhibit E).[10] Tellingly, Plaintiff's opposition brief is devoid of any reference to this

---

[7] In addressing Plaintiff's hostile environment claims, Sempra does not "disingenuously avoid" mention of the Howley Incident, as Plaintiff asserts. See Pl.'s Opp. Br. at 16. To the contrary, Sempra noted in its moving papers that there is simply no record evidence suggesting that Mr. Howley's conduct during the Howley Incident was motivated in any way by Plaintiff's gender or sexual orientation or that the incident was anything more than a business dispute regarding the question of how the profit from a particular business transaction would be shared. See Def.'s Moving Br. at 13 n.12; 20-22. Indeed, Plaintiff admits that she has no facts supporting her claim that Mr. Howley's conduct was motivated by her sexual orientation. See Pl.'s Dep. at 78:15-79:1 ("Q. And what makes you think that [Mr. Howley was not comfortable with your sexuality]? What facts do you have that leads you to that conclusion? A. *I don't have any facts to lead me to that conclusion with Mr. Howley.*") (emphasis added). Moreover, in a display of behavior decidedly inconsistent with what one would expect from a person claiming to have been physically assaulted because of her gender or sexual orientation, Plaintiff testified that: (i) she hoped to continue doing business with Mr. Howley even after the Howley Incident (Id. at 100:16-101:8); and (ii) less than one month after the incident, she invited Mr. Howley to "go out for a beer" in order to "put all this crap behind us." Id. at 98:20-99:15.

[8] Plaintiff's failure to report Mr. Roy's alleged conduct was not limited to Sempra. In connection with the complaint she filed with the Connecticut Commission on Human Rights and Opportunities following her termination in March 2002, Plaintiff submitted a detailed, thirty-three paragraph affidavit explaining the basis of her complaint. Notably, the affidavit makes no mention of *any* of the allegedly harassing comments that Plaintiff now attributes to Mr. Roy. See Pl.'s Dep. at 128:11-132:8.

[9] In April 2001, Plaintiff consulted with a general practitioner because she "wasn't sleeping well," for which the doctor prescribed a "mild sleep aid." Id. at 181:23-182:5; 203:2-204:21. Plaintiff failed to make any mention of Mr. Roy's alleged conduct during this appointment. Id. at 203:2-204:21.

[10] Plaintiff indisputably was not averse to receiving e-mails at Sempra depicting half-naked women and displaying them to her male co-workers. In January 2002, Plaintiff received an e-mail from a female friend who was not a Sempra employee, containing no fewer than eight images of bikini-clad swimsuit models striking various alluring poses. See Pl.'s Dep. at 165:14-166:18; 1/07/02 E-Mail from L. Tzur to S. Wood (attached hereto as Exhibit F). Plaintiff's response to her friend's e-mail speaks for itself: "Thank you for all the loooovely pictures. It was quite distracting for a Monday afternoon. Not to

(continued...)

stunning piece of evidence. Moreover, during her deposition, Plaintiff was unable to offer any explanation as to why she forwarded this provocative photo to Mr. Roy. See Pl.'s Dep. at 176:21-177:3. Plaintiff's silence is not surprising, of course, since it is impossible to reconcile this e-mail with Plaintiff's claim that she believed the handful of discrete comments which she attributes to Mr. Roy, mild even as alleged, created a work environment "permeated with discriminatory intimidation, ridicule, and insult." Hayut, 352 F.3d at 745. See Dawson v. Bumble & Bumble, 246 F. Supp.2d 301, 327 (S.D.N.Y. 2003) (granting summary judgment on sexual harassment claim; holding that "the evidence [does not] indicate that subjectively [plaintiff] held a good faith belief that [the complained-of conduct] was so severely offensive that it unreasonably interfered with her work in any way."). Finally, even if Plaintiff were able to demonstrate such a subjective belief, the totality of the foregoing circumstances cannot support a claim that Mr. Roy's alleged comments created a work environment that was *objectively* hostile or abusive. See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 767 (2d Cir. 1998) ("Whether an environment is 'hostile' or 'abusive' depends on the totality of circumstances.").

Because Plaintiff has failed to adduce evidence showing that her work environment at Sempra was permeated with gender-based or sexual orientation-based hostility, summary judgment should be granted as to her hostile work environment claims.[11]

    B.    **Even If Plaintiff Were Otherwise Able To Show That She Was Subjected To A Hostile Work Environment, Sempra Is Entitled To Assert The Faragher-Ellerth Defense to Liability.**

Plaintiff correctly observes that an employer's affirmative defense to liability for a hostile work environment claim, articulated by the United States Supreme Court in the companion cases of Burlington Indus.,

---

(...continued)
mention all the boys that gathered around my computer to see them. I fibbed and told them my famous photographer friend in NYC took them! Hee hee[.]" See Pl.'s Dep. at 169:18-170:25; 1/08/02 E-Mail from S. Wood to L. Tzur (attached hereto as Exhibit G).

[11] Plaintiff's contention that the severity or pervasiveness of the allegedly harassing conduct cannot be decided on summary judgment, see Pl.'s Opp. Br. at 16, is a misstatement of the law. See Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 319 (2d Cir. 1999) (affirming grant of summary judgment on claim of sex-based hostile work environment; holding that "a jury could not reasonably find the existence of a severe, pervasive atmosphere of sex-based hostility" stemming from the display of sexually provocative pictures of nude and scantily-clothed men and an instance of sexual banter); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998) (affirming grant of summary judgment; supervisor's conduct, which included touching plaintiff's breasts with some papers and making statement to plaintiff that she had been voted the "sleekest ass" in the office held "[insufficient] to support a finding that [plaintiff] was subjected to abuse of sufficient severity or pervasiveness as to alter the conditions of [her] employment.") (internal citation and quotation marks omitted); Rivera v. Apple Industrial Corp., 148 F. Supp. 2d 202, 218-19 (E.D.N.Y. 2001) ("In spite of Rios' and Bosques' distasteful comments about Rivera, therefore, Rivera cannot show that his workplace was permeated with severe and pervasive discriminatory conduct . . . . For the foregoing reasons, defendants' motion for summary judgment is granted.").

Inc. v. Ellerth, 524 U.S. 742 (1998) and Faragher v. Boca Raton, 524 U.S. 775 (1998), cannot be invoked "when [a] supervisor's [alleged] harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Faragher, 524 U.S. at 808. It is also undisputed that, in this case, Plaintiff suffered a "tangible employment action" when her employment was terminated in March 2002. However, in order to establish that her termination "culminate[d]" from the alleged harassment of her supervisor, Sarathi Roy, Plaintiff must show that there is a causal connection between the alleged harassment and her subsequent termination.[12] As discussed at length in Sempra's moving papers, Plaintiff cannot make this showing. See Def.'s Moving Br. at 14-19. See also discussion under Point III, infra.

Since Plaintiff has failed to carry her burden of establishing a causal nexus between Mr. Roy's alleged harassment and her termination, Sempra is entitled to avail itself of the Faragher-Ellerth affirmative defense, because: (i) the company exercised reasonable care in preventing and correcting any harassing behavior by promulgating and following an anti-harassment policy; and (ii) Plaintiff unreasonably failed to take advantage of the policy's complaint procedures. See Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 295 (2d Cir. 1999); Leopold v. Baccarat, Inc., 239 F.3d 243, 245 (2d Cir. 2001). In her opposition brief, Plaintiff concedes that Sempra promulgated an anti-harassment policy, but contends that the company "did not pursue the policy in accordance with its protocol." See Pl.'s Opp. Br. at 20. This contention is presumably directed to Sempra's investigation of the Howley Incident, since Plaintiff has unequivocally admitted that she never complained about any other alleged instances of harassment, including the allegedly harassing comments that she attributes to Sarathi Roy. See Pl.'s Dep. at 104:11-105:1. With respect to the Howley Incident, however, the undisputed record evidence shows that company did, in fact, promptly and thoroughly investigate Plaintiff's complaint.[13]

---

[12] See Grant v. Murphy & Miller, Inc., 149 F. Supp.2d 957, 967 (N.D. Ill. 2001) ("To establish that the harassment culminated in a tangible employment action, a plaintiff must establish a causal relationship between the harassment and the action."); Childress v. Petsmart, Inc., 104 F. Supp. 2d 705, 708 (W.D. Tex. 2000) ("The Court agrees with PetsMart that Frankel's alleged harassment did not culminate in a tangible employment action. It is true that Childress's employment with PetsMart was terminated. However, there is no evidence that the discharge was a result of any harassment Childress suffered."). See also Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 182 (4th Cir. 1998) ("Tangible employment actions, *if not taken for discriminatory reasons*, do not vitiate the [Faragher-Ellerth] affirmative defense.") (emphasis added).

[13] Notwithstanding the demonstrable thoroughness of its investigation into the Howley Incident, see discussion infra, Sempra does *not* contend that it is insulated from liability for Mr. Howley's alleged conduct pursuant to Faragher-Ellerth, as Plaintiff apparently believes. See Pl.'s Opp. Br. at 20 n.9. Indeed, since it is undisputed that: (i) Plaintiff was never supervised by Mr. Howley; and (ii) Plaintiff availed herself of Sempra's complaint procedure with respect to that incident, the affirmative defense would not apply. Instead, Sempra's position is that there is not a shred of evidence supporting Plaintiff's conclusory

(continued...)

Specifically, it is undisputed that, within days after the incident, and immediately after his return from travel abroad, Sempra's General Counsel interviewed: (1) the Plaintiff, (2) Joseph Howley, and (3) at least two other employees who witnessed the dispute, either in whole or in part. See Goldstein Dep. at 27:20-28:10; 29:7-32:6 (attached hereto as Exhibit H); Goldstein Notes (attached hereto as Exhibit I). From those interviews, Attorney Goldstein generated an Incident Report describing the facts of the incident. See Goldstein Dep. at 62:13-63:13. The Report was presented to Plaintiff for her review and comment. With limited exceptions, Plaintiff agreed that the Incident Report completely and accurately recounted the facts of the Howley Incident. See Pl.'s Dep. at 64:25-65:20; 71:9-12; 72:18-73:19. Nevertheless, Plaintiff reviewed the Report and thereafter made proposed written changes, which she then signed as revised.[14] Mr. Howley signed the original version of the Incident Report, without revisions. See Goldstein Dep. at 67:21-71:2. It is undisputed that Mr. Howley was reprimanded for his conduct during the incident, and advised that making physical contact with Plaintiff was inappropriate. See Howley Dep. at 27:19-28:19.[15] During the remainder of Plaintiff's employment at Sempra, there were no other disputes between Plaintiff and Mr. Howley.

Although Plaintiff asserts that Sempra "drag[ed] is feet" during the investigation and that Attorney Goldstein "jettisoned his neutral role" as investigator by "participating in the termination of Plaintiff," see Pl.'s Opp. Br. at 20, this claim cannot withstand scrutiny. As an initial matter, Plaintiff has produced no evidence to rebut Attorney Goldstein's sworn testimony that he commenced his investigation within several days after the Howley Incident. Moreover, it is also undisputed that by July 10, 2001 - - exactly 20 days after the Howley Incident - - Attorney Goldstein had completed his investigation, drafted a detailed Incident Report, presented it to Plaintiff for her review, received her written comments, revised the Report per her request, and obtained Plaintiff's signature on the Report. See Pl.'s Dep. at 145:14-146:8; Howley Dep. at 54:24-56:19. During this

---

(...continued)
assertion that the Howley Incident had anything to do with her gender or sexual orientation. See footnote 7, supra. As such, Plaintiff cannot premise a gender-based or sexual orientation-based hostile environment claim on that discrete event.

[14] Notably, none of Plaintiff's written revisions to the Incident Report included an allegation that Mr. Howley's conduct during the incident was motivated by her gender or sexual orientation. See Pl.'s Dep. at 83:5-84:1.

[15] Plaintiff's claim that "no communication was ever given to [her] that Howley was in any way reprimanded," see Wood Affidavit, ¶ 32, is demonstrably false. On its face, the Incident Report states that Attorney Goldstein would meet with Plaintiff and Mr. Howley privately "to issue a warning about unacceptable behavior in the future." See Notated Incident Reports (attached hereto as J).

twenty-day period of time, in addition to the numerous responsibilities that are inherent to the job of General Counsel, Attorney Goldstein testified that he was working 12-14 hours a day on a significant matter involving the Federal Energy Regulatory Commission. See Goldstein Dep. at 102:15-103:4. Thus, Plaintiff's claim of "footdragging" is spurious.

Similarly, there is no evidence that Attorney Goldstein participated in the decision to terminate Plaintiff. To the contrary, Sarathi Roy testified that he spoke to Attorney Goldstein *after* he had made the decision to terminate Plaintiff. See Roy Dep. at 256:9-24. Attorney Goldstein similarly recalled that Mr. Roy sought legal advice from him *after* Mr. Roy had made the termination decision. See Goldstein Dep. at 105:17-109:23. More importantly, even if Attorney Goldstein had been *solely responsible* for making the decision to terminate Plaintiff, that fact would have no bearing on the adequacy of the investigation that he conducted into the Howley Incident nine months earlier. Plaintiff, of course, assumes a connection between her termination and the Howley Incident, and further assumes that Attorney Goldstein harbored some prejudice against her as a result of the incident. But this assumption, like the myriad other assumptions made by Plaintiff in this litigation, is utterly devoid of factual support. Plaintiff also makes much of the fact that Attorney Goldstein drafted more than one version of the Incident Report, see Pl.'s Opp. Br. at 20, and, indeed, goes so far as to falsely claim that Attorney Goldstein "did not have an explanation for the [different] versions of the incident report when asked [during his deposition]." See Pl.'s Local Rule 56(a) Statement, ¶ 13. As explained above, the differing versions are attributable to Plaintiff's insistence on making changes to the original version of the Report. Mr. Howley did not make a similar demand. Consequently, he signed the original version of the Report and Plaintiff signed a version that incorporated some of her comments. Plaintiff's assertion to the contrary notwithstanding, Attorney Goldstein's testimony on this point was quite clear.[16]

Because Plaintiff concedes that Sempra promulgated an anti-harassment policy and further admits that she never availed herself of that policy by complaining about any of the allegedly harassing comments that she

---

[16] Attorney Goldstein explained: "Joe [Howley] wasn't interested in commenting on the incident report. Susan was -- at the end of the day both incident reports were faithful to my notes, at least I believed so. And so I was willing to let Susan sign the report that included her comments because I wanted to accommodate her." See Goldstein Dep. at 70:17-23. Consistent with his desire to create a written record that was faithful to the findings from his investigation, Attorney Goldstein did not incorporate wholesale all of the comments suggested by Plaintiff: "I was trying to be very careful here to reflect what results I got from the investigation. After all, this wasn't Susan's investigation, this was mine. I'm the general counsel of the company, so I needed to insure some integrity to this report." Id. at 78:4-9.

now attributes to Sarathi Roy, the Faragher-Ellerth affirmative defense shields Sempra from liability for those comments.[17] See Leopold, 239 F.3d at 245 (affirming summary judgment for employer on hostile environment claim because plaintiff failed to take advantage of the employer's internal complaint procedures); Woodland v. Joseph T. Ryerson & Son, Inc., 302 F.3d 839, 844 (8th Cir. 2002) (same; observing that the plaintiff "chose not to report many of the incidents about which he now complains.").

To the extent that Plaintiff contends that her failure to complain was justified because she believed that Sempra would ignore those complaints, she has failed to adduce any admissible evidence in support of this claim. See Leopold, 239 F.3d at 246 (holding that, once an employer has satisfied its initial burden of demonstrating that an employee has failed to avail herself of a complaint procedure, the evidentiary burden "shifts to the employee to come forward with one or more reasons why the employee did not make use of the procedures. The employer may rely upon the absence or inadequacy of such a justification in carrying its ultimate burden of persuasion."). For the reasons discussed above, Plaintiff certainly cannot point to Sempra's conduct during the investigation of the Howley Incident as support for that alleged belief. See id. (stating that "[e]vidence must be produced to the effect that the employer has ignored or resisted similar complaints or has taken adverse actions against employees in response to such complaints.").

Finally, to the extent that Plaintiff asserts that, by lodging her single complaint about the Howley Incident, she satisfied her obligation to avail herself of Sempra's anti-harassment policy and therefore was not required to utilize the complaint procedure in connection with any of Mr. Roy's alleged comments, see Pl.'s Opp. Br. at 20 n.9, this claim reveals a fundamental misunderstanding of the law. See, e.g., Wyatt v. Hunt Plywood Co., Inc., 297 F.3d 405 (5th Cir. 2002), cert. denied, 123 S. Ct. 1254, 154 L. Ed. 2d 1020 (2003) (holding that employer was not entitled to assert Faragher-Ellerth affirmative defense with respect to supervisor's harassing conduct about which plaintiff complained; defense *was* applicable, however, to conduct about which plaintiff did not complain).

Summary judgment should be granted as to Plaintiff's hostile work environment claims.

---

[17] Of course, invocation of the affirmative defense assumes that Plaintiff can show that Mr. Roy's alleged comments are otherwise sufficiently egregious to support a hostile work environment claim. For the reasons previously discussed, Plaintiff cannot make this threshold showing.