# EXHIBIT 1

Westlaw
Case 3:03-cv-00986-JCH   Document 88-3   Filed 06/21/2005   Page 2 of 6

Slip Copy
2005 WL 465423 (D.Conn.)
(Cite as: 2005 WL 465423 (D.Conn.))

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
Susan E. WOOD, Plaintiff,
v.
SEMPRA ENERGY TRADING CORPORATION,
Defendant.
No. Civ.A.3:03CV986 (JCH.

Feb. 22, 2005.

Brendan John O'Rourke, Jeffrey M. McCormick, O'Rourke & Associates, New Canaan, CT, for Plaintiff.

Mary C. Dollarhide, Peter M. Schultz, Paul, Hastings, Janofsky & Walker, Stamford, CT, for Defendant.

RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 41]

HALL, J.

*1 Plaintiff Susan E. Wood ("Wood") brings this action pursuant to state and federal law against her former employer, Sempra Energy Trading Corporation ("Sempra"). Sempra made a motion for partial summary judgment [Dkt. No. 41], claiming that there is no issue of fact concerning thirteen of Wood's fourteen claims.

I. FACTS & PROCEDURAL HISTORY [FN1]

> FN1. For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the plaintiff where the plaintiff provides evidence to support her allegations.

Prior to 2000, Wood handled marketing, oil and natural gas at Enron, in Houston, Texas. Aff. of Susan E. Wood [Dkt. No. 51], ¶ 2 (hereinafter "Wood Aff."). Wood began working for Sempra in the position of Assistant Vice President in September 2000. She remained an Assistant Vice President for the duration of her employment at Sempra. Def.'s Local Rule 56(a)(1) Stmt. [Dkt. No. 42] ¶ 35; *accord* Pl.'s Local Rule 56(a)(2) Stmt. [Dkt. No. 50] ¶ 35. Wood was recruited by Audrey Cullen, a principal with First Call Associates, a recruitment agency, who Wood claims acted as an agent of Sempra. Pl.'s Local Rule 56(a)(2) Stmt. [Dkt. No. 50] ¶ 8 (*citing* Wood Aff., ¶ 7). Cullen made certain representations to Wood regarding job security, guaranteed bonuses, and terms of employment. *Id.* Wood claims that Cullen assured her that she would be entitled to a minimum bonus equivalent to ten percent of profits attributable to her and that her employment would not be terminated so long as her employment remained profitable to Sempra. Wood Aff., ¶ 5.

In September 2000, but following the commencement of her employment, Wood signed an Application for Employment ("Application") which states that "nothing contained in this application or in any policies, procedures or handbooks I might receive, and nothing said to me in my interview is intended to create an employment contract...." Def.'s Local Rule 56(a)(1) Stmt. [Dkt. No. 42] ¶ 2 (*citing* Employment Application [Dkt. No. 42, Ex. N] at 8); *accord* Pl.'s Rule 56(a)(2) Stmt. [Dkt. No. 50] ¶ 2. In addition to signing the Employment Application, Wood signed an Employment Agreement ("Agreement"). She claims that the Agreement provided some of the terms of her employment, but not all of the terms. Pl.'s Rule 56(a)(2) Stmt. [Dkt. No. 50] ¶ 3. For example, while the Agreement provides that Sempra "may terminate [Wood's] employment at will, whether or not for cause," Def.'s Rule 56(a)(1) Stmt. [Dkt. No. 42] ¶ 4 (*citing* Employment Agreement [Dkt. No. 42, Ex. D] ¶ 3), Wood argues that verbal representations made to her by Audrey Cullen, prior to starting her employment, and Sempra's President, David Messer, following commencement of employment, concerning both job security and bonus payments bound Sempra to certain terms of employment. Pl.'s Rule 56(a)(2) Stmt. [Dkt. No. 50] ¶ 4. In addition to the Application and Agreement, Sempra indicates that its Policy Manual provides that employment is at will and that no employee is entitled to a bonus. Def.'s Rule 56(a)(1) Stmt. [Dkt. No. 42] ¶ 6. Wood disputes that these terms of the Policy Manual were applicable to her employment and denies having received the Policy Manual. Pl.'s Rule 56(a)(2) Stmt. [Dkt. No. 50] ¶ 6.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 465423 (D.Conn.)
(Cite as: 2005 WL 465423 (D.Conn.))

Page 2

*2 In February 2001, Sempra transferred Wood to its Petroleum Derivatives Department, which department structured transactions for customers interested in risk-management with respect to market price-fluctuation of petroleum-based products. Def.'s Local Rule 56(a)(1) Stmt. [Dkt. No. 42] ¶ 11; accord Pl.'s Local Rule 56(a)(2) Stmt. [Dkt. No. 50] ¶ 11. In June 2001, Wood had a disagreement with Joseph Howley, a Managing Director at Sempra. The parties refer to this disagreement as the "Howley Incident." The parties dispute the nature of the incident. Wood claims that she was physically assaulted and attacked on the trading floor in front of approximately one hundred and fifty other Sempra employees, including Jackie Mitchell, who had previously been Wood's supervisor, and Sarathi Roy, who would later become Wood's supervisor. Wood Aff. [Dkt. No. 51], ¶¶ 7-8. She complained about the incident to Mitchell as well as her then-supervisor, Brian Cumming. Id. at ¶ 29. She also made a formal complaint to Sempra's General Counsel, Michael Goldstein, to whom she complained that the assault on her was perpetrated in some part because she is a woman. Id. at ¶¶ 30-31. The parties dispute the nature of the Sempra's response to Wood's complaint. Wood claims that following her filing the complaint, Sempra failed to act promptly or properly and that she repeatedly demanded that Sempra pursue an investigation, as required pursuant to Sempra's Prohibition Against Harassment Policy. Wood Aff. ¶ 32. She never received communication that Sempra in any way reprimanded Howley. Id.

In February 2002, Sarathi Roy became Wood's supervisor when he was appointed to head the marketing function of the Petroleum Derivatives Department. Def.'s Local Rule 56(a)(1) Stmt. [Dkt. No. 42] ¶ 15; accord Pl.'s Local Rule 56(a)(2) Stmt. [Dkt. No. 50] ¶ 15. Sempra claims that Roy, in his new position, hoped to refocus the department on a specific customer base, hedge funds, and that Roy's opinion, informed by statements made by other employees in the department, was that Wood was not qualified to market Sempra's products to that base. Def.'s Local Rule 56(a)(1) Stmt. [Dkt. No. 42] ¶¶ 16-19. Sempra also claims that Wood made "off-color" comments regarding the breast size and religious observation of her colleagues and that she sent Roy a sexually provocative e-mail. Id. at ¶¶ 20, 21. Wood disputes those claims and alleges that Roy felt uncomfortable with her because of her sex and sexual orientation. Pl.'s Local Rule 56(a)(2) Stmt. [Dkt. No. 50] ¶ 18. In March 2002, Roy terminated Wood's employment. Sempra alleges that Roy's reasons for doing so included Wood's lack of skills, knowledge, and judgment and a February 2002 incident in which Wood caused Sempra to lose a client. Def.'s Local Rule 56(a)(1) Stmt. [Dkt. No. 42] ¶¶ 22, 23. While Sempra claims that Roy, who was not aware of Wood's complaints regarding the Howley incident, decided to terminate her, id. at ¶¶ 24, 25, Wood claims that other individuals, motivated by her gender and sexual orientation as well as her complaint, participated in the decision as well. Pl.'s Local Rule 56(a)(2) Stmt. [Dkt. No. 50] ¶¶ 24, 25.

*3 Wood alleges that Roy made inappropriate comments with respect to gender and sexual orientation. She claims that he boasted about his sexual conquests and asked Wood whether she or her partner wore "the pants in the family." Wood Aff. ¶ 34. Roy asked how traditionally gendered roles were divided in Wood's home and informed Wood that his wife cooked and cared for him as he "should be taken care of." Id. Roy commented that a "woman's place is in the home" and called Wood the "lady on the desk." Id. at ¶ 35. He described to Wood his masseuse, "a real woman" who "knew how to take care of him." Id. According to Wood, such comments made her feel unwelcome and uneasy. Id. at ¶ 36. She further claims that following her termination, a fellow employee informed her that Roy was not "comfortable" with her, a comment she takes to refer to his discomfort with her lesbianism. Id. at ¶ 44, 45.

In February 2002, Sempra transferred a male Vice President, Steve Soule, to the Petroleum Derivatives Department. Def.'s Local Rule 56(a)(1) Stmt. [Dkt. No. 42] ¶ 34. Wood claims that, while Soule's transfer occurred prior to her termination, he essentially replaced her in the department. Wood Aff. ¶ 42.

Sempra has moved for summary judgment [Dkt. No. 41] on thirteen of Wood's fourteen claims against it.

II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir.2000). The moving party bears the burden of showing that no genuine factual dispute exists. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir.2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir.1994)). In assessing the record to determine if such issues exist, all ambiguities must be resolved, and all inferences

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

drawn, in favor of the party against whom summary judgment is sought. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir.1994). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000).

Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor, *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Lipton v. The Nature Company*, 71 F.3d 464, 469 (2d Cir.1995) (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986)). Additionally, a party may not rest on the "mere allegations or denials" contained in his pleadings. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995); *see also Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

III. DISCUSSION

*4 Wood asserts fourteen claims. Counts One and Two assert discrimination on the basis of Wood's gender pursuant to federal and state law. Count Three alleges discrimination on the basis of sexual orientation pursuant to state law. Counts Four and Five allege retaliatory discharge, based on Wood's complaint regarding the Howley incident, in violation of federal and state law. Count Six alleges breach of contract on the premise that Sempra failed to properly investigate the Howley incident pursuant to its own policy as provided in The Employee Handbook of Sempra Energy Trading Corp. ("Employee Handbook"). Counts Thirteen and Fourteen allege negligent failure to investigate harassment claims as required by the Employee Handbook and Sempra's Professional Conduct Policy, respectively. Count Seven alleges breach of implied contract on the basis that Sempra violated an implied contract that provided for a ten percent bonus and Wood's continued employment so long as she remained profitable to Sempra. In the remaining counts, Wood makes claims of promissory estoppel, unjust enrichment, breach of implied covenant of good faith and fair dealing, and unpaid bonus on the basis of the same alleged facts. Sempra moves for summary judgment on all above counts but does not move for summary judgment on Count Eleven, alleging unpaid business expenses.

A. Gender and Sexual Orientation Discrimination

"Since 1964, Title VII has made it an 'unlawful employment practice for an employer ... to discriminate against any individual ..., because of such individual's race, color, religion, sex, or national origin.'" *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) (citing 42 U.S.C. § 2000e-2(a)(1)). Notably, "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

> A plaintiff may establish a claim of disparate treatment under Title VII either (1) by showing that he has suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of race, color, religion, sex, or national origin, or (2) by demonstrating that harassment on one or more of these bases amounted to a hostile work environment.
>
> *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir.2004), citing *Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir.2001). Wood claims both that she was subjected to a hostile work environment and that she suffered an adverse employment action on the basis of her sex in violation of Title VII.

1. Adverse Job Action

In cases brought under Title VII and the Connecticut Fair Employment Practices Act, [FN2] courts follow the now-familiar, burden-shifting analysis first announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-256, 101 S.Ct. 1089, 67

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 465423 (D.Conn.)
(Cite as: 2005 WL 465423 (D.Conn.))

Page 4

L.Ed.2d 207 (1981).

> FN2. As both parties agree, case law regarding federal fair employment legislation guides interpretation of the CFEPA. See *Bridgeport Hospital v. Commission on Human Rights and Opportunities,* 232 Conn. 91, 653 A.2d 782 (1995).

*5 In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court "set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment." *Burdine,* 450 U.S. at 253. The initial burden in a disparate treatment claim brought under Title VII is on the plaintiff to establish a *prima facie* case of discrimination. To do so, the plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she experienced an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. See *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir.2000)(citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

Once a plaintiff has established a *prima facie* case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions. See *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Upon the articulation of such a non-discriminatory reason for the employment action, the presumption of discrimination which arose with the establishment of the *prima facie* case drops out. See *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510-11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Once a defendant offers a legitimate, non-discriminatory reason for its actions, the burden shifts back to the plaintiff to fulfill her ultimate burden of proving that the defendant intentionally discriminated against her in the employment decision. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by the defendant was not the employer's true reason, but was a pretext for discrimination. *Id.* As the Supreme Court explained in *Reeves:*

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.... Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

530 U.S. at 147 (citations omitted).

Gender stereotyping can serve as evidence of pretext. See *Price Waterhouse v. Hopkins,* 490 U.S. 228, 250, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (holding that an employer violated Title VII when it encouraged a woman to behave according to a gender stereotype and, motivated by such stereotyping, penalized her by denying her a promotion). Recently, the Second Circuit directly considered the question, "What constitutes a 'gender-based stereotype'?" *Back v. Hastings-on-Hudson Union Free School District,* 365 F.3d 107, 119-20 (2d Cir.2004). The Court of Appeals concluded that, "this question must be answered in the particular context in which it arises, and without undue formulation." *Id.* at 120.

*6 Evidence that an employer's reason is false, combined with the evidence presented to establish a prima facie case, in some cases can be sufficient to sustain a plaintiff's burden, and a plaintiff need not have further evidence of discrimination. *Id.; see also Zimmerman v. Assoc. First Capital Corp.,* 251 F.3d 376, 381-82 (2d Cir.2001). Ultimately, a finder of fact may consider the strength of the prima facie case, the probative value of the proof that the defendant's reason is pretextual, and any other evidence presented in the case when determining if the plaintiff has sustained her burden. *Zimmerman,* 251 F.3d at 381-82.

However, even courts mindful of the fact that "summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated" have nonetheless granted summary judgment at the pretext stage where the plaintiff has "provided no indication that any evidence exists that would permit the trier of fact to draw a reasonable inference of pretext." See *Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir.1985); *see also Dister,* 859 F.2d 1108; *Norton v. Sam's Club,* 145 F.3d 114, 119 (2d Cir.1998)(reversing jury verdict in ADEA case because "Norton's very weak *prima facie* case,

Slip Copy
2005 WL 465423 (D.Conn.)
(Cite as: 2005 WL 465423 (D.Conn.))

Page 5

combined with an at best highly dubious showing of pretext, that in itself does not implicate discrimination, is simply not enough to support the jury's conclusion that he was fired because of his age."). According to the Second Circuit Court of Appeals in *Meiri*, "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." See 759 F.2d at 98.

In order for her claims to survive Sempra's motion for summary judgment, Kahn must show that there is an issue of material fact about whether Sempra discriminated against her on the basis of her sex or, under state law, on the basis of her sexual orientation. See *St. Mary's Honor Center, 509 U.S. at 511; Fisher v. Vassar College, 114 F.3d 1332, 1336 (2d Cir.1997)* (*en banc*). "At summary judgment in an employment discrimination case, a court should examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer." *Byrnie v. Town of Cromwell, Board of Education, 243 F.3d 93, 102 (2d Cir.2001).* "Findings of discrimination, discriminatory intent, and causation are findings of fact." *Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir.1994).* Reviewing the record as whole, as a jury would, see *Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir.1999),* the court concludes that Wood has established a prima facie case; Sempra has supplied legitimate, non-discriminatory reasons for its actions; and Wood has produced sufficient evidence suggesting that these reasons are pretextual to create a question of material fact.

a. Wood Establishes a Prima Facie Case of Sex Discrimination

*7 Wood has succeeded in establishing a prima facie case of sex discrimination. "The burden of establishing a *prima facie* case of disparate treatment is not onerous." *Burdine, 450 U.S. at 253.* First, as a woman, Wood is a member of a protected class. Second, Wood's profitability to Sempra and her professional qualifications establish that she was qualified for the position. Third, she suffered an adverse employment action when Sempra terminated her. Fourth, this refusal to promote Wood occurred under circumstances giving rise to an inference of discrimination: she was fired one month after a man who made comments stereotyping women became her supervisor and Wood has created a material issue of fact regarding whether she was effectively replaced by a man.

b. Sempra Provides Legitimate Non-Discriminatory Reasons for Its Actions

"Once a prima facie case has been established, the burden of production shifts to the employer who must defeat a rebuttable presumption of discrimination by articulating a legitimate, non-discriminatory reason for the employment decision." *Byrnie, 243 F.3d at 102.* Sempra asserts such "legitimate, non-discriminatory reason[s]." *Id.* According to Sempra, Wood was not qualified to fulfill the new objectives for the department established by her supervisor, Roy, and, further, Sempra lost a client due to Wood's incompetence.

c. Wood Creates a Material Question of Fact Regarding Pretext

In order for her claims to survive Sempra's motion for summary judgment, Wood must provide evidence, whether direct or indirect, that Sempra's legitimate, non-discriminatory reasons are simply pretext and that an improper gender bias served as a motivating factor behind her termination. With respect to her gender discrimination claim, Wood provides such evidence in her affidavit. Roy's alleged comments regarding the appropriate role of women provides evidence of gender animus and supports an inference that Roy's purported reasons for termination Wood's employment are simply pretext. Wood claims that she received performance bonuses for 2000 and 2001 and good reviews of her work. Furthermore, Wood claims that the transaction that allegedly resulted in the loss of a client was reviewed by and approved by other employees who were not terminated, as she was.

A jury is free to credit or discredit testimony by Sempra's employees regarding their motives for terminating Wood's employment. Similarly, a jury may credit or discredit evidence offered by Wood to support an inference that her termination was based on improper gender discrimination, specifically her supervisor's stated opinions on the proper place of women. Wood has provided sufficient evidence such that "[v]iewing the evidence in the light most favorable to [the plaintiff], a jury could find that the [legitimate non-discriminatory reasons] were minor, and unimportant to the defendant[ ] before the development of the purported discriminatory motive." *Id.*

2. Hostile Work Environment

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.