*8 "Whereas other disparate treatment claims may scrutinize discrete harms such as hiring or discharge, a hostile work environment claim analyses a workplace environment as a whole to discover whether it is 'abusive.'" *Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir.2001) quoting *Harris v. Forklift*, 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

> The Supreme Court has set forth a non-exclusive list of factors to consider when evaluating a workplace environment, consisting of "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance."

*Raniola*, 243 F.3d at 620 quoting *Harris* 510 U.S. at 23. Notably, "no single factor is required." *Harris*, 510 at 23. In this case, the alleged discriminatory conduct was neither frequent nor severe. Roy's alleged comments were largely "mere offensive utterance[s]." *Id.* Furthermore, Wood has come forward with no evidence that she complained about Roy's behavior to his superiors. At her deposition she testified that outside of the Howley incident, she did not complain about any harassment or discrimination on the basis of her gender or sexual orientation. Wood Depo. [Dkt. No. 45-2, Ex. A] at 104. While the Howley incident involved a physical altercation, it was isolated and Wood comes forth with no evidence to suggest that it interfered with her work performance.

B. Retaliatory Discharge

The plaintiff claims that she was discharged in retaliation for filing a complaint with respect to the Howley Incident in violation of both state and federal law. As both parties agree, in order for the plaintiff to make a case for retaliatory discharge, she must show "(1) that she was engaged in protected activity by opposing a practice made unlawful by Title VII; (2) that the employer was aware of that activity; (3) that she suffered adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action." *Galdieri-Ambrosini v. Nat' Realty and Dev. Corp.*, 136 F.3d 276, 292 (2d Cir.1998).

Even if an employee is not the victim of prohibited discrimination, Title VII protects her against retaliation for protesting against such discrimination. *Id.* at 285 (citing *Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988)). Wood claims to have included in her complaint regarding the Howley incident her contention that Howley's behavior was motivated by her gender. Whether his behavior was in fact motivated by her gender or sexual orientation is immaterial. The complaint in and of itself is sufficient. Because the complaint was made to the company's General Counsel and the individual acknowledged by the company to have been responsible for terminating Wood, Sarathi Roy, was interviewed in the course of the investigation into the complaint, Wood has succeeded in creating a genuine issue of material fact with respect to the third prong. Wood's termination constitutes an adverse employment action.

*9 Wood faces difficulty in establishing a causal connection between the complaint and her termination, nine months later. "Proof of causal connection can be established indirectly by showing that the protected activity was followed closely by discriminatory treatment." *DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 115 (2d Cir.1987) (citing *Davis v. State University of New York*, 802 F.2d 638, 642 (2d Cir.1986)). The Second Circuit has concluded that two years is too long a time to support an inference of a causal connection. *Richardson v. New York State Dept. of Correctional Service*, 180 F.3d 426, 447 (2d Cir.1999). Wood attempts to support an inference of such a connection by asserting that Roy, who is friendly with Howley, could not terminate her until he was made her supervisor, only a month prior to her termination. The one month is sufficient to support an inference of causal connection. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.1998) (finding that causal connection could be inferred where termination occurred less than two months after complaint was made). With this evidence, Wood succeeds in creating a genuine issue of material fact. While the court questions whether the plaintiff can prevail on this theory, it cannot conclude, as it must for the purposes of a motion for summary judgement, that Wood could not prevail with this evidence before a finder of fact.

C. Sempra's Investigation of the Howley Incident

Count Six of Wood's complaint alleges breach of contract on the premise that Sempra failed to properly investigate the Howley incident pursuant to its own policy as provided in The Employee Handbook of Sempra Energy Trading Corp. ("Employee Handbook"). Counts Thirteen and Fourteen allege negligent failure to investigate

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 465423 (D.Conn.)
(Cite as: 2005 WL 465423 (D.Conn.))

Page 7

Case 3:03-cv-00986-JCH   Document 88-4   Filed 06/21/2005   Page 2 of 4

harassment claims as required by the Employee Handbook and Sempra's Professional Conduct Policy, respectively.

A personnel manual can create a contract. *See Finley v. Aetna Life and Casualty Company*, 202 Conn. 190, 520 A.2d 208 (1987). The Connecticut Supreme Court has held that "under appropriate circumstances, [representations in a personnel manual] may give rise to an express or implied contract between employer and employee." *Id.* at 198, 520 A.2d 208 (citing *Magnan v. Anaconda Industries, Inc.*, 193 Conn. 558, 564, 479 A.2d 781 (1984)). Where employers "includ[e] appropriate disclaimers of the intention to contract," however, "employers can protect themselves against employee contract claims based on statements made in personnel manuals." *Id.* at 199, n. 5, 520 A.2d 208.; *see also Gaudio v. Griffin Health Services Corp.*, 249 Conn. 523, 535, 733 A.2d 197 (1999). In the instant case, it is undisputed that the Employee Handbook included express language disclaiming formation of a contract: "This handbook is not intended to be an express or implied contract of employment for a specified period of time, a guarantee of employment, or a promise to provide benefits." Employee Handbook (Dkt. No. 45-2, Ex. I) at 1. Wood cannot support a claim of breach of contract relying on the Employee Handbook.

\*10 Furthermore, "Connecticut law does not permit recovery for an employer's negligent conduct of an investigation into charges of sexual harassment that is required by federal law." *Malik v. Carrier Corp.*, 202 F.3d 97, 100 (2d Cir.2000). "[C]orrective actions that a risk-averse employer might take to comply with federal law may not give rise to a negligence action, whether the rationale is couched in terms of breach, legal duty, or privilege." *Id.* at 106.

D. Breach of Implied Contract and the Implied Covenant of Good Faith and Fair Dealing

Wood claims that Sempra violated an implied contract with respect to both her termination and Sempra's refusal to pay Wood a bonus for her work in 2002. Wood is correct to argue that, "[w]hether the parties have entered into [an implied contract] is a question of fact." *Christensen v. Bic Corporation*, 18 Conn.App. 451, 454, 558 A.2d 273 (1989) (citing *Corriveau v. Jenkins Bros.*, 144 Conn. 383, 387, 132 A.2d 67 (1957). Wood does not dispute, however, that an express contract controlled her employment relationship with Sempra. Furthermore, that contract provides that Wood "may also be eligible for a bonus, based on [her] performance and that of Sempra Trading and its subsidiaries, in an amount to be determined by Sempra Trading's management solely in their discretion." Employment Contract [Dkt. No. 45-2, Ex. D] at 1. Wood signed that contract on September 6, 2000. *Id.*

While Wood claims that she understood the contract to include by implication promises made to her by Audrey Cullen and Sempra's President, David Messer, the explicit terms of the contract are entirely inconsistent with the terms she claims to be binding upon Sempra. The written contract makes the amount of any bonus entirely discretionary. Such provision cannot be reconciled with an implicit term that a bonus would be paid in a minimum amount of ten percent of booked profits.

Similarly, the employment contract includes a provision that "Sempra Trading may terminate [Wood's] employment at will and whether or not for cause." Employment Contract [Dkt. No. 45-2, Ex. D] at 1. This provision contradicts Wood's allegation that an implied contract existed for sustained employment so long as Wood remained profitable. The Connecticut Supreme Court has found that an implicit contract requiring that termination be for cause only can exist even where an explicit letter contract exists. *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 662 A.2d 89 (1995). In that case, however, the letter contract made no reference to the company's ability to terminate the former employee. *Id.* at 8-9, 662 A.2d 89. Here, Wood also relies on *Gaudio v. Griffin Health Services*, 249 Conn. 523, 733 A.2d 197 (1999). There, the Connecticut Supreme Court found that an implicit contract existed because the parties had not entered into an express contract. *Id.* at 532, 733 A.2d 197. The facts are entirely inapposite to those here. "[P]arties who have entered into controlling express contracts are bound by such contracts to the exclusion of inconsistent implied contract obligations." *H.B. Toms Tree Surgery v. Brant*, 187 Conn. 343, 347, 446 A.2d 1 (1982). Therefore, Wood cannot sustain a claim under a theory of implied contract.

\*11 Wood also asserts a claim for breach of the implied duty of good faith and fair dealing. "It is axiomatic that the ... duty of good faith and fair dealing is a covenant *implied into a contract or a contractual relationship.*" *Magnan v. Anaconda Industries, Inc.*, 193 Conn. 558, 566, 479 A.2d 781 (1984) (emphasis added). "In other words, *every contract carries an implied duty* requiring that neither party do anything that will injure the right of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 465423 (D.Conn.)
(Cite as: 2005 WL 465423 (D.Conn.))

Page 8
Case 3:03-cv-00986-JCH    Document 88-4    Filed 06/21/2005    Page 3 of 4

other to receive the benefits of the agreement." *De La Concha of Hartford, Inc. v. Aetna Life Insurance Company,* 269 Conn. 424, 433, 849 A.2d 382 (2004) (internal citations and quotations omitted; emphasis added). Because Wood's claim that Sempra breached the implied covenant of good faith and fair dealing is made "[p]ursuant to the implied contracts that were created," Compl. [Dkt. No. 1, Ex. A] at ¶ 117, there is no genuine question of fact with respect to that claim because there is no implied contract.

E. Promissory Estoppel and Unjust Enrichment

While inconsistent pleading is permitted under the Federal Rules of Civil Procedure, Wood cannot attempt to circumvent the terms of a contract that she indisputably entered by proposing a legal theory for which she cannot put forward any evidence. As the plaintiff concedes in her Memorandum, both of these theories are inconsistent with the existence of a contract. Neither party denies the existence and application of a contract. Def.'s Local Rule 56(a)(1) Statement [Dkt. No. 42] at ¶ 3; *accord* Pl.'s Local Rule 56(a)(2) Response and Statement [Dkt. No. 50] at ¶ 3. She cannot use the theories of promissory estoppel and unjust enrichment to add terms to that contract that are entirely inconsistent with those expressly stated in it.

Where a contract claim fails, a claim of promissory estoppel may lie. The cases cited by Wood for this proposition do not involve scenarios where the contract claim fails because there is an express contract providing the opposite terms to those argued by the plaintiff. In *Suffield Dev. Assoc. v. Society of Savings,* 243 Conn. 832, 708 A.2d 1361 (1998), there was no written contract between the parties, and the court found that the plaintiff could not prove that a contract existed. Having so concluded, the court allowed the plaintiff to proceed on a theory of promissory estoppel. *Id.* at 846, 708 A.2d 1361. This finding does not allow the plaintiff here, facing an inability to win her case on the express contract that both Wood and Sempra agree exists and binds them, to argue that promissory estoppel can allow her a victory expressly prohibited by the terms of the contract.

"Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited [sic], (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.,* 231 Conn. 276, 282-83, 649 A.2d 518 (1994) (citations omitted; internal quotation omitted). The doctrine applies only where " 'justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract.' " *Id.* at 282, 649 A.2d 518 (quoting 5 S. Williston, Contracts (Rev.Ed.) § 1479). As the court has concluded above, Wood cannot deny that she rendered services under a contract. She entered into an agreement that provided that she would be eligible for a bonus, at the discretion of Sempra's management. Sempra's management having determined, in its discretion and pursuant to the contract, not to pay Wood a bonus for the year 2002, Wood cannot claim that Sempra was unjustly enriched by her work during that year.

F. Unpaid Bonus

*12 Finally, Wood argues that she is entitled to payment of a bonus for the year 2002 under the Connecticut state law. Conn. Gen.Stat. § 31-71a, et seq. Connecticut law provides that employees denied wages are entitled to bring a civil action for recovery of such wages. Conn. Gen.Stat. § 31-72. The term "wages" is defined in section 31-72(a) of the Connecticut General Statutes as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation."

"[A] bonus *may* constitute wages under section 31-71a(3)." *Garry v. Bertucci's Restaurant Corp.,* 2001 WL 1795539, *4 (D.Conn.2001). Whether a bonus constitutes wages for the purposes of the statute depends on the nature of the bonus. Where a bonus is "promised in exchange for additional services or based on an employee's individual performance" it constitutes wages for the purposes of the statute and the employee may bring suit pursuant to section 31-72. In the instant case, the Employment Contract provides that bonuses are "based on [the employee's] performance *and that of Sempra Trading and its subsidiaries."* Employment Contract [Dkt. No. 45-2, Ex. D] at 1. Like the bonus contested in *Garry,* Wood's "bonus did not depend on her efforts alone," but was determined according to the performance of the company and its subsidiaries. *Garry,* 2001 WL 1795539, *5.

IV. CONCLUSION

For the foregoing reasons, Sempra's motion for summary judgment [Dkt. No. 41] is DENIED as to Counts One, Two, and Three with respect to Wood's allegations of adverse employment action and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 465423 (D.Conn.)
(Cite as: 2005 WL 465423 (D.Conn.))

Case 3:03-cv-00986-JCH    Document 88-4    Filed 06/21/2005    Page 4 of 4

Page 9

GRANTED with respect to Wood's allegations of hostile work environment. Sempra's motion for summary judgment [Dkt. No. 41] is DENIED as to Counts Four and Five and GRANTED as to Counts Six, Seven, Eight, Nine, Ten, Twelve, Thirteen, and Fourteen.

SO ORDERED.

2005 WL 465423 (D.Conn.)

**Motions, Pleadings and Filings (Back to top)**

- 3:03CV00986 (Docket) (Jun. 04, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.