66. Further, after the Howley Incident, Plaintiff felt that she was being treated differently and singled out, in part, because she was a lesbian.

67. The termination meeting was simply a sham, and the reason stated for the termination of Plaintiff was merely a pretext to discriminate against Plaintiff, in part, because she was a homosexual.

68. Defendant unlawfully terminated Plaintiff on the basis of sexual orientation in violation of Connecticut General Statutes § 46a-81c, and as a result, Plaintiff has been damaged.

69. As such, Defendant is liable to Plaintiff for damages caused thereby.

COUNT FOUR - Retaliatory Discharge (Title VII)

70. Plaintiff repeats and realleges the allegations of Paragraphs 57 through 69 of Count Three as Paragraph 70 of this Count Four as if fully set forth herein.

71. After the Howley Incident, Plaintiff lodged the Complaints, and further pursued the Complaints with Goldstein, in an effort to move forward Defendant's investigation of the Howley Incident.

72. Subsequently, in retaliation for pursuing a proper investigation of the Howley Incident, and for filing the Complaints, Plaintiff was disciplined by Messer and ultimately terminated from her position with Defendant.

73. There was a direct correlation between Plaintiff's termination, and her filing of the Complaints and subsequent attempts to have the Howley Incident properly investigated.

74. Further, although Roy offered a reason for Plaintiff's termination at the termination meeting, such proffered non-discriminatory reason was simply a pretext.

75. Further still, Plaintiff's qualifications to perform her job at Defendant, her significant profitability and revenue generating during her tenure at the company, and the statements made during the termination meeting that Plaintiff had done nothing inappropriate to cause her termination, all point to the fact that Plaintiff was terminated for retaliatory motives.

76. Plaintiff was participating in activities protected under Title VII, which activities were known by Defendant, and Plaintiff was terminated in direct retaliation of such activities.

77. As such, Defendant committed a retaliatory discharge of Plaintiff in violation of Title VII, and Plaintiff has been damaged as a result.

78. As such, Defendant is liable to Plaintiff for damages caused thereby.

## COUNT FIVE - Retaliatory Discharge (C.G.S. § 46a-60(a)(4))

79. Plaintiff repeats and realleges the allegations of Paragraphs 70 through 75 of Count Four as Paragraph 79 of this Count Five as if fully set forth herein.

80. Plaintiff opposed Defendant's discriminatory employment practices by lodging the Complaints with Defendant, and attempting to have Defendant conduct a thorough and appropriate investigation of the Howley Incident and file a report regarding such investigation.

81. There is a direct correlation between the termination of Plaintiff and her filing of the Complaints, along with her efforts to have the Howley Incident thoroughly investigated and addressed.

82. Plaintiff was terminated in direct retaliation of having filed the Complaints, and having insisted upon Defendant's performance of an investigation of the Howley Incident.

83. As such, Defendant committed a retaliatory discharge of Plaintiff in violation of Connecticut General Statutes § 46a-60(a)(4), and Plaintiff has been damaged as a result.

84. Therefore, Defendant is liable for damages caused thereby.

### COUNT SIX – Breach Of Contract

85. Plaintiff repeats and realleges the allegations of Paragraphs 79 through 82 of the Fifth Count as Paragraph 85 of this Count Six as if fully set forth herein.

86. By letter dated August 31, 2000, Defendant offered Plaintiff employment under certain express conditions, which letter was signed on Defendant's behalf by Mitchell, and counter-signed by Plaintiff on September 9, 2000 ("Letter Agreement").

87. Such written Letter Agreement included a condition that stated that Plaintiff's employment was further subject to the terms and conditions of Defendant's "Policy Manual".

88. More particularly, Defendant adopted and maintained an employee handbook entitled "The Employee Handbook of Sempra Energy Trading Corp." ("Employee Handbook"), which governs the employment relationship between Defendant and its employees.

89. By creating the Employee Handbook, and referencing its contents as specific conditions to Plaintiff's employment in the Letter Agreement, Defendant created a contractual duty that both parties follow the procedures established therein.

90. The Employee Handbook provides, in part:

> Charges of harassment or discrimination will be thoroughly investigated. If the Company determines that improper conduct has occurred, appropriate steps will be taken to remedy the situation for the complainant and to discipline the harasser.. The discipline may include transfer, suspension, demotion or termination. [Defendant] will not tolerate retaliation against any employee who in good faith complains of harassment or discrimination or provides information in connection with any such complaint. Retaliation can include ... negative treatment of an employee by employees or members of management that result from the individual making a complaint or cooperating in an investigation.

91. The Employee Handbook further states that "[c]ertain conduct which is detrimental to other employees ... warrants involuntary termination on the first occurrence ... [which conduct includes] ... sexual or other harassment of another employee ... [t]hreatening or committing physical violence against another person."

92. Plaintiff accepted Defendant's offer of employment, and changed her position in consideration for such employment, under the express terms of the Letter Agreement.

93. After the Howley Incident, Defendant failed to follow the guidelines set forth in the Employee Handbook, thereby breaching its contractual duty under the Letter Agreement to follow such established procedures.

93. Defendant breached the Letter Agreement, and Plaintiff has been damaged thereby.

94. As such, Defendant is liable to Plaintiff for such damages.

## COUNT SEVEN - Breach Of Implied Contract

95. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 53 of Count One as Paragraph 95 of this Count Seven as if fully set forth herein.

96. It is both an industry practice and Defendant's custom to pay out individual performance bonuses based on 10% to 15% of the profits booked by the individual in a given calendar year.

97. Based on its promise to Plaintiff made during initial employment discussions, Defendant had an obligation to Plaintiff to pay her at least a 10% bonus of her booked profits for 2002.

13

98. Further, as Plaintiff had remained profitable to Defendant throughout her tenure with Defendant, Defendant could not terminate Plaintiff as per the long term employment contract that had been created through the communications, actions and conduct of the President of Defendant, Messer, and Plaintiff.

99. Plaintiff and Defendant had a meeting of the minds when Plaintiff was promised a bonus of at least 10% of her booked profits in exchange for Plaintiff accepting employment with Defendant, and Plaintiff in fact relied upon such promise when she made the significant career and personal change of leaving her job and home in Texas and accepting employment with Defendant in Connecticut.

100. Plaintiff and Defendant also had a meeting of the minds when Plaintiff was promised that she would have a job as long as she remained profitable in exchange for Plaintiff remaining at Defendant and continuing to provide valuable services to Defendant, and Plaintiff in fact relied upon such promise in continuing to perform such duties.

101. Thus, implied contracts were created between Plaintiff and Defendant, as well as contractual obligations on the part of Defendant.

102. By terminating Plaintiff without cause, and after sustaining a profitable status throughout her tenure with Defendant, Defendant breached its implied contract with Plaintiff.

103. Further, by terminating Plaintiff without paying her the performance bonus she had earned from her booked profits in 2002, Defendant breached its implied contract with Plaintiff.

104. Plaintiff has been damaged by Defendant's breach of the implied contracts, and Defendant is liable for such damages caused thereby.

14