UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN E. WOOD<br><br>　　　　　　　Plaintiff,<br><br>- against -<br><br>SEMPRA ENERGY TRADING CORP.,<br><br>　　　　　　　Defendant. | CIVIL ACTION NO.<br>3:03 CV 986(JCH)<br><br>June 20, 2005 |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION IN LIMINE TO EXCLUDE CERTAIN HEARSAY TESTIMONY
AND EVIDENCE OF ALLEGED GENDER DISCRIMINATION
<u>RELATING TO OTHER EMPLOYEES OF DEFENDANT</u>**

Defendant Sempra Energy Trading Corp. ("Sempra") anticipates that Plaintiff Susan Wood ("Plaintiff" or "Wood") will attempt to introduce a broad array of irrelevant and inadmissible hearsay evidence and argument in support of her claims. To prevent this, and to streamline the trial proceedings and avoid prejudice, Sempra respectfully requests that the Court issue an Order barring Plaintiff's introduction of the following categories of evidence:

1. Statements Plaintiff attributes to co-worker Billy Lasher, including her allegation that Lasher told her of "employees being uncomfortable with [her] status as lesbian." (Plaintiff's Responses to Defendant's First Set of Interrogatories, Response 8 ("Pl.'s Resp. to Interrog."), attached hereto as Exhibit 1).

2. Statements Plaintiff attributes to "Alison (in HR)" who Plaintiff alleges "told Billy Lasher that she thought the process of [Plaintiff's] firing was very strange [because Alison] is usually informed about a firing prior to it happening...."

3. Statements Plaintiff attributes to Trish Johnsmeyer, a former Sempra employee, who Plaintiff alleges quit because "she felt she was discriminated against because she was a woman." Pl.'s Resp. to Interrog., Response 8. In addition to being inadmissible hearsay, this evidence is irrelevant "me too" evidence.

4. Statements of any other "me too" witnesses.

## I. DISCUSSION

### A. The Hearsay Evidence Should Be Excluded

The foregoing characterizations of Lasher, "Alison," and Johnsmeyer's alleged statements to Plaintiff are clearly inadmissible hearsay, and in the case of "Alison's" alleged statement, double-hearsay. Fed. R. Evid. 801(c). Accordingly, Plaintiff should be barred from introducing any evidence, argument, or comment about any alleged statements made to her by Lasher, "Alison," or Johnsmeyer.

### B. Evidence of the Reasons Trish Johnsmeyer Voluntarily Terminated her Employment is Not Relevant to Plaintiff's Claims

In employment discrimination trials, plaintiffs sometimes attempt to bolster their cases by introducing evidence that other employees experienced discriminatory treatment. Regardless of the purpose for which it is offered, this type of "me too" evidence is irrelevant and should be excluded under Rule 402 of the Federal Rules of Evidence ("[e]vidence which is not relevant is not admissible").

Controlling authority in the Second Circuit holds that evidence concerning the circumstances of the terminations of other employees is irrelevant to a plaintiff's discrimination claim. See Haskell v. Kaman Corp., 743 F.2d 113, 122 (2d Cir. 1984). In Haskell, a terminated employee sued his former employer for unlawful discrimination. The trial court permitted six

former company employees to testify as to the circumstances of their own terminations and the terminations of four other company employees. The Court of Appeals concluded that the trial court committed reversible error by allowing this testimony. Id. at 121. In finding that the "me too" testimony of these witnesses was irrelevant to the plaintiff's disparate treatment discrimination claim, the court held that the sample size of ten terminations was too small to permit an inference that a unlawful discriminatory motive played a role in the employer's decision. Thus, "[s]ince the testimony . . . was insufficient to show a pattern and practice of discrimination, it was not relevant to the question of whether [the plaintiff] was terminated for [unlawful]-related reasons." Id. at 122; see also Spence v. Maryland Cas. Co., 803 F.Supp. 649, 670 (W.D.N.Y. 1992) (finding that "subjective evidence from fellow employees regarding their employment experiences, introduced as proof of what happened to a particular plaintiff" is inadmissible).

Courts routinely prohibit witnesses unrelated to the plaintiff's case from testifying about "me too" evidence. For instance, in Goff v. Cont'l Oil Co., the plaintiff alleged that he had been discriminated against in compensation and promotion decisions and attempted to validate his claim with the testimony of three former employees of the defendant, each of whom intended to testify that he or she, too, had been discriminated against. 678 F.2d 593 (5th Cir. 1982). In upholding the trial court's decision to refuse to admit the evidence, the Court of Appeals stated:

> To prevail [plaintiff] had to show that [defendant] purposefully discriminated against him . . . . All the witnesses could have testified to was their own individualized dealings with [defendant] . . . . Because this testimony would not have related to the issue of whether [plaintiff] suffered discrimination, the court did not err in refusing to admit this testimony.

Id. at 596-97 (emphasis added); see Martin v. Citibank, 762 F.2d 212, 217 (2d Cir. 1985) (employee's remarks about his own situation, and not that of the plaintiff, were irrelevant to the

issue of discrimination); Schrand v. Fed. Pac. Elec. Co., 851 F.2d 152, 156 (6th Cir. 1988) (reversible error to allow two former employees to testify that they had been discharged because of age; no evidence could logically tie the testimony of those two employees to the decision to terminate plaintiff). As one court emphasized, "a plaintiff cannot prove his case of discrimination simply by arguing that others were the victims of discriminatory treatment." Myers v. Glynn-Brunswick Mem'l Hosp., 683 F. Supp. 1387, 1392 (S.D. Ga. 1988). Yet that is precisely what Wood proposes to do.

Moreover, the other employees in this case were not similarly situated and their experiences cannot be analogized to those of Wood's. For example, evidence of why Johnsmeyer terminated her employment has little or no bearing on whether Wood was laid off because of her gender or sexual orientation, especially in light of the fact that Johnsmeyer had a different manager from Plaintiff and voluntarily terminated her employment.

In short, this case is indistinguishable from Haskell. The Court should exclude evidence regarding the treatment of Johnsmeyer or any other Sempra employee because it is irrelevant to Plaintiff's discrimination claims.

### C. Even If Evidence Regarding Johnsmeyer Had Some Probative Value, That Value Is Greatly Outweighed by the Prejudicial Effect of That Evidence

Even assuming, arguendo, that testimony regarding Johnsmeyer's employment has some probative value in this action, the Court should still exclude this type of evidence because of the danger of unfair prejudice to Sempra. See Fed. R. Evid. 403 (relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury"). Courts have the discretion to exclude evidence even if it is relevant. See Conway v. Icahn & Co., Inc., 16 F.3d 504, 510 (2d Cir. 1994); see also McCrary-

El v. Shaw, 992 F.2d 809, 812 (8th Cir 1993). A trial judge should exclude relevant evidence when its probative value is substantially outweighed by its prejudicial effect. Bilal v. Lockhart, 993 F.2d 643, 645 (8th Cir. 1993), cert. denied, 114 S. Ct. 326 (1993); Berkovich v. Hicks, 922 F.2d 1018, 1023 (2d Cir. 1991); Pinkham v. Burgess, 933 F.2d 1066, 1072 (lst Cir. 1991); Blancha v. Raymark Indus., 972 F.2d 507, 516 (3d Cir. 1992). If the Court were to find that evidence regarding the termination of other workers had some relevance, it should still exclude such evidence to prevent irreparable and substantial prejudice to Sempra. Haskell, 743 F.2d at 122 (probative value of such testimony is substantially outweighed by danger of unfair prejudice).

       **D.**      **Admitting Evidence of Alleged Discrimination Against Johnsmeyer Would Unduly Lengthen the Trial of Plaintiff's Claim of Discrimination by Requiring A Substantial Mini-Trial With Respect to Johnsmeyer's Alleged Claim**

In addition to being irrelevant and prejudicial, such "me too" evidence would needlessly waste time and substantially lengthen the trial of Plaintiff's case. Sempra would be forced to respond to every piece of evidence regarding Johnsmeyer (and other "me toos") that Plaintiff was allowed to present. This would require Sempra to present a long parade of rebuttal witnesses who had no involvement in the termination of Plaintiff. The introduction of such evidence would turn the trial of Plaintiff's discrimination case into a time-consuming mini-trial about absolutely unrelated issues. Furthermore, such evidence is likely to confuse the issues and draw the fact-finder's attention away from the real issue in this case – whether Plaintiff was discriminated against on the basis of her gender or sexual orientation.

In similar circumstances courts have refused to admit such testimony for this precise reason. For example, in Moorhouse v. Boeing Co., a discrimination plaintiff attempted to

introduce the testimony of five employees who, like plaintiff, had also been laid off by the defendant and had brought their own discrimination cases. 501 F. Supp. 390 (E.D. Pa.), aff'd, 639 F.2d 774 (3d Cir. 1980). The trial court refused to admit the testimony of the five other employees and explained its reasoning:

> Had the Court permitted each of the proposed witnesses to testify about the circumstances surrounding his own lay off, each, in essence, would have presented a prima facie case of age discrimination. Defendant then would have been placed in the position of either presenting the justification for each witnesses' lay off, or of allowing the testimony to stand unrebutted. This latter alternative, of course, would have had an obvious prejudicial impact on the jury's consideration of [plaintiff's] case. To have pursued the former option, defendant would have been forced, in effect to try all six cases together with the attendant confusion and prejudice inherent in that situation.

Id. at 393 (footnote omitted); see Harpring v. Cont'l Oil Co., 628 F.2d 406, 410 (5th Cir. 1980) (evidence of prior discriminatory acts excluded to avoid "trying another lawsuit within the existing lawsuit").

## II.    CONCLUSION

For the foregoing reasons, the Court should grant this motion in limine and enter an Order barring any evidence, argument, or comment about any alleged statements made to Plaintiff by Lasher, "Alison," or Johnsmeyer or any other "me too" witnesses, and any evidence concerning Defendant's treatment of Johnsmeyer or other Sempra employees.

Respectfully Submitted,

By: _____
Mary C. Dollarhide (ct12251)
Raymond W. Bertrand (ct22968)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
1055 Washington Boulevard
Stamford, CT 06901-2217
Telephone: (203) 961-7400
Facsimile: (203) 359-3031
Email  marydollarhide@paulhastings.com
       raymondbertrand@paulhastings.com

Counsel for Defendant
Sempra Energy Trading Corp.

## CERTIFICATE OF SERVICE

The undersigned, a member of the bar of this Court, hereby certifies that on this 20th day of June, 2005, a true and correct copy of the foregoing Memorandum of Law In Support of Defendant's Motion in Limine to Exclude Certain Hearsay Testimony and Evidence of Alleged Gender Discrimination Relating to Other Employees of Defendant was served on the following counsel of record via hand delivery to:

> Brendan J. O'Rourke, Esq.
> Jeffrey M. McCormick, Esq.
> Ann H. Brickley, Esq.
> O'Rourke & Associates, LLP
> 27 Pine Street
> New Canaan, CT 06840

_____
Raymond W. Bertrand

STM/298189.5

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN E. WOOD,<br><br>                Plaintiff,<br><br>v.<br><br>SEMPRA ENERGY TRADING CORPORATION,<br><br>                Defendant. | CIVIL ACTION NO.<br>3:03-CV-986 (JCH)<br><br><br><br>October 2, 2003 |

### PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

To:    Mary C. Dollarhide, Esq.
        Peter M. Schultz, Esq.
        PAUL, HASTINGS, JANOFSKY & WALKER LLP
        1055 Washington Boulevard
        Stamford, CT 06901-2217

Pursuant to the Federal Rules of Civil Procedure, Plaintiff Susan E. Wood ("Wood" or "Plaintiff") hereby responds to Defendant Sempra Energy Trading Corporation's ("Sempra" or "Defendant") First Set of Interrogatories ("Interrogatories") as follows:

### GENERAL OBJECTIONS

1.    Plaintiff objects to Sempra's Interrogatories insofar as their instructions and definitions exceed, enlarge or modify the requirements of the Federal Rules of Civil Procedure.

2.    Plaintiff objects to Sempra's Interrogatories to the extent that they call information that is protected from disclosure by the attorney-client privilege.

3.    Plaintiff objects to Sempra's Interrogatories to the extent that they call for information that

OBJECTION:

Attorney work-product; attorney-client privileged; impermissible invitation of attorney-client trial preparation; beyond the scope of permissible discovery; not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections set forth above, Plaintiff responds as follows:

RESPONSE:

No one has been interviewed and no statements have been obtained at this time.

INTERROGATORY NO. 8:

Identify each and every person who has personal knowledge of any fact upon which you base your claims in this lawsuit or with whom you have discussed your claims in this action or who you will use or may use as a witness in this action, excluding expert witnesses, and summarize the substance of each such person's knowledge, as well as each conversation with such person concerning the facts of this lawsuit.

OBJECTION:

Attorney-client privilege; attorney work-product privilege; beyond the scope of permissible discovery, subject to the Court's pre-trial orders. Subject to this objection and the general objections set forth above, Plaintiff responds as follows:

RESPONSE:

a.   Billy Lasher – Informed me repeatedly of the company and employees being uncomfortable with my status as a lesbian.

b.   Jackie Mitchell – Directly witnessed the incident and counseled me after the incident.

c.   Michael Goldstein – Responsible for carrying out company policy after the incident. Did not write up an incident in a timely manner and failed to properly follow through as per company guidelines.

9

d.  <u>Andy Giglia</u> – Witnessed the incident and commented that Joe Howley was definitely treating me unfairly during the trade.

e.  <u>Steve Soleil</u> – A man who filled my position immediately after I left and began calling on my customers.

f.  <u>David Messer</u> – Discussed the incident with me and told me not to worry about my job security because all he cared about was me making money and from what he had heard from Brian Cummings I was doing well and 2002 was looking like an excellent year for me.

g.  <u>Sarathi Roy</u> – Witnessed incident. Shared lack of concern and professionalism in responding to the incident. Sarathi is the person communicated my wrongful termination.

h.  <u>Brian Cummings</u> – My boss at the time of the incident. He was in Canada at the time but I talked to him by phone in a conference call with Jackie Mitchell and Joe Howley. Brian also indicated that my firing concerned him because he was only informed the night before I was fired.

i.  <u>Lynda Clemmons</u> – My partner. I have discussed the incident and my firing with her and its affect on my health.

j.  <u>Trish Johnsmeyer</u> – Former Sempra employee that quit because she felt she was discriminated against because she was a woman. Soon after the incident, I met with Trish to discuss the matter.

k.  <u>Alison (in HR)</u> – She told Billy Lasher that she thought the process for my firing was very strange. Said she is usually informed about a firing prior to it happening, but for this one, she was not.

l.  <u>Audrey Cullen</u> – I spoke with Audrey a week or so after I was fired.

m.  <u>Mel Solis</u> – Clinical psychologist. I met with him for a few months after I was fired to deal with the distress following.

<u>INTERROGATORY NO. 9</u>:

Identify each and every person that you contend "promised that [you] would be paid an annual bonus in the range of 10% to 15% of the profits that [you] booked for [Sempra] in a given calendar year," as alleged in paragraph 9 of the Complaint. With respect to each and every person identified, state with specificity the date, time, and place at which the alleged "promise[s]" were made.