UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN E. WOOD,<br><br>                    Plaintiff,<br><br>v.<br><br>SEMPRA ENERGY TRADING<br>CORP.,<br><br>                    Defendant. | CIVIL ACTION NO.<br>3:03-CV-986 (JCH)<br><br><br><br><br><br>June 24, 2005 |

### DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE

I.   **INTRODUCTION**

On the eve of trial, Plaintiff Susan Wood ("Plaintiff") has brought a discovery motion that should have been raised with the Court more than a year ago. Plaintiff has chosen this "lie in wait" strategy because she knows Sempra's decision to terminate her employment was not motivated by discriminatory bias or in retaliation for the incident with Mr. Howley, and that if Sempra presents its case, she will certainly lose.

As an initial matter, Sempra fully complied with the Court's January 2004 discovery ruling and satisfied its discovery obligations under the Federal Rules. By mischaracterizing, misrepresenting and omitting relevant excerpts from witnesses' testimony, Plaintiff attempts to convince the Court otherwise. However, Plaintiff's deceptions are unmasked below.

As well as lacking any merit, Plaintiff's motion also fails because it is untimely and she did not satisfy Rule 37's "meet and confer" requirement. As part of her "lie in wait"

1

strategy, Plaintiff did not raise her discovery objection with the Court during the course of discovery, as she was required to do. Nor did Plaintiff confer with opposing counsel about her discovery requests prior to filing her motion in limine. Indeed, just last week the parties exchanged correspondence relating to supplemental discovery and in her correspondence Plaintiff fails to make a single mention of any of the issues raised in her memorandum of law. See Affidavit of Raymond Bertrand, ¶ 4 (attached hereto as Exhibit 1) ("Bertrand Aff."). See also B. O'Rourke Letter to R. Bertrand dated June 16, 2005 and R. Bertrand Letter to B. O'Rourke dated June 15, 2005 (attached hereto as Exhibit 2).

For all these reasons, Plaintiff's motion in limine should be denied.

## II.    BACKGROUND

Sempra is a wholesale energy trading company. In September 2000, Plaintiff accepted an offer of employment from Sempra for a position as Assistant Vice President in the company's Natural Gas Marketing department. On or about February 2001, Plaintiff transferred to a marketing position in the Petroleum Derivatives department. Plaintiff worked in the Petroleum Derivatives department until March 2002, at which time her employment was terminated.

On or about May 14, 2003, Plaintiff filed this lawsuit against Sempra. During the two-plus years that this matter has been pending, Sempra has produced in excess of seven hundred pages of documents to Plaintiff. See Bertrand Aff., ¶ 3.

In December 2003, Plaintiff propounded certain discovery demands. With respect to the majority of Plaintiff's requests, Sempra produced responsive documents in its possession. However, Sempra objected that certain other requests were overbroad and/or not reasonably related to the claims at issue. See P. Schultz Letter to Judge Hall dated Jan. 6, 2004, attached

hereto as Exhibit 3. Subsequently, the Court held a status conference on January 6, 2005, at which the Court made certain rulings, granting in part and denying in part, Sempra's objections. Notably, Plaintiff fails to include in her memorandum a copy of the transcript from that hearing. Thus, Plaintiff's assertions regarding the Court's prior ruling are based solely on Plaintiff counsel's recollection of that conference.

Following the parties January 6, 2004 conference with the Court, Sempra served Plaintiff with its First Set of Supplemental and Amended Responses to Plaintiff's Discovery Requests, dated January 23, 2004. See Defendant's First Set of Supplemental and Amended Responses to Plaintiff's Discovery Requests, attached hereto as Exhibit 4. Along with its pleading, Sempra produced additional documents responsive to Plaintiff's discovery requests. See id. In addition, Sempra further supplemented its production on April 1st, April 12th, and April 13th of 2004. (See P. Schultz Letters to B. O'Rourke dated April 12 and 13, 2004, attached hereto as Exhibit 5). As part of these supplemental productions, Sempra production included (but was not limited to):

- documents related to the incident with Mr. Howley and Sempra's subsequent investigation;

- detailed financial reports setting forth the profitability of the Petroleum Derivatives Department;

- a report prepared in connection with Plaintiff's termination;

- employment agreements of other Sempra employees;

- information regarding the names of Assistant Vice Presidents and Vice Presidents in Sempra's Natural Gas and Petroleum Derivatives departments, and the bonuses these individuals received for the years 1999 through 2002.

After the January 2004 conference with the Court, Plaintiff never again sought relief from the Court in connection with Sempra's discovery responses or production.

## III. DISCUSSION

### A. Sempra Satisfied Its Discovery Obligations

Sempra categorically denies Plaintiff's allegation that it failed comply with this Court's prior discovery ruling. Plaintiff's memorandum is filled with conjecture and speculation, and Plaintiff repeatedly asks the Court to "reasonably conclude" that certain – yet unidentified – documents exist. As demonstrated below, Plaintiff's argument is premised on misrepresentations, mischaracterizations, and omissions from various witnesses' testimony.

#### 1. Plaintiff's Misrepresentations, Mischaracterizations, and Omissions

##### a. Plaintiff Misrepresents Mr. Roy's Deposition Testimony

Plaintiff blatantly misrepresents Mr. Roy's deposition testimony and purposely seeks to mislead the Court. Specifically, Plaintiff states:

> "As an example of Mr. Roy's evasion, he stated that he used his notes in compiling his affidavit that was submitted to the [CCHRO] ….[T]he failure to produce at least portions of Mr. Roy's notebook, in which he memorialized certain business matters on a daily basis and referenced to prepare his CCHRO Affidavit, provides ample basis to conclude that Sempra has avoided its discovery obligations."

See Plaintiff's Memorandum of Law in Support of Motion In Limine ("Memorandum") at 12. However, Mr. Roy's deposition testimony belies Plaintiff's representations. As demonstrated below, Mr. Roy testified that he "looked through" his notes and determined that the notes did not contain anything relevant:

> Q. Did you look for any handwritten notes in connection with the discovery request that Ms. Wood has made?

4

  A. Yes, sir.
  Q. Where did you look?
  A. Through my notepads, you know, whatever I had from previous years.

………………………..

  Q. Okay. When you assumed your marketing function, did you make any handwritten notations on your notepad about the performance of the people in the department?
  A. No, sir.
  Q. Have you ever done that?
  A. No, sir.

………………………..

  Q. Now, is it your testimony that you searched those notepads for documents that might be responsive to Ms. Wood's discovery request?
  A. Yes, sir.
  Q. And when did you do that?
  A. In the last couple of months, three months.
  Q. Were you -- go ahead.
  A. No, that's what I was going to say, three months.
  Q. Did you find anything relevant?
  A. No, sir.
  Q. So am I to conclude that Susan Wood's name appears on none of the pages in these notepads?
    MR. SCHULTZ: Object to the form of the question. Mischaracterizes the witness's testimony.
  Q. Do you understand the question?
  A. Would you mind rephrasing?
  Q. Am I to understand that Ms. Wood's name does not appear on any of these notepads?
    MR. SCHULTZ: Same objection.
  A. Correct.
  Q. That is correct?
  A. Correct.

………………………..

  Q. Okay. But in the last three months when you did your search of your notepads, that would mean that you didn't see any handwritten notes concerning communications you had with David Messer about Susan Wood?
  A. Correct.

………………………..

  Q. Did you find anything in your notes that assisted you in providing information in th[e] [CCHRO] answer?
  A. No.

5

See Deposition of Sarathi Roy, relevant excerpts attached hereto as Exhibit 6 ("Roy Aff."). In sum, Plaintiff has failed to demonstrate the relevance of Mr. Roy's notebooks. Contrary to Plaintiff's assertion, Mr. Roy did <u>not</u> use his notes in compiling his affidavit.

### b. Plaintiff Omits Relevant Information Regarding Mr. Cumming's Testimony

In summarizing Mr. Cumming's deposition testimony, Plaintiff fails to inform the Court that Mr. Cumming did not maintain a personnel file for Plaintiff, or any of the other employees he supervised. See Deposition of Brian Cumming at 6 (attached hereto as Exhibit 7 ("Cumming Depo.")). Moreover, while Plaintiff's counsel asserts:

> "Mr. Cumming testified that he had discussions regarding Wood with a number of people, including Wood. Accordingly, it can be reasonably concluded that he had possession of documents relating to Plaintiff, which have not been produced by Sempra[,]"

Memorandum at 11, Plaintiff's counsel fails to reference the portion of Mr. Cumming's testimony where Mr. Cumming states that he did not have in his possession, nor was he aware of, any documentation memorializing these conversations.

> Q. I take it you didn't take any notes about the conversation you had [with Plaintiff] about the [Howley] incident, is that correct?
> A. That is correct.
> ............................
> Q. Do you have any knowledge, Mr. Cumming, as to whether Alberto Vogel put anything in writing with regard to his perceptions about Susan Wood on the trip that they had taken?
> A. I have no such knowledge.
> Q. Did you memorialize anything that either Jamie Evans or Alberto Vogel told you about Susan Wood?
> A. No.

(Cumm Depo. at 51, 90.). Notably, Plaintiff's counsel did not elicit any testimony from Mr. Cumming that suggests he ever had in his possession any documents that relate to Plaintiff's claims.

6

c. **Plaintiff Fails to Acknowledge Ms. Freda's Testimony That She Did Not Communicate By Email With Anyone Regarding Plaintiff's Termination**

Plaintiff argues in her memorandum that "it can be reasonably concluded Ms. Freda was in possession of responsive documents" because she "participated in [Plaintiff's] termination." While Plaintiff faults the manner in which Ms. Freda conducted her search for records, this argument is a red herring. Noticeably absent from Plaintiff's recitation of the facts is reference to Ms. Freda's testimony that she did not communicate with anyone via email regarding Plaintiff's termination. (See Deposition of Denise Freda at 61, attached hereto as Exhibit 8) ("I did not have any email communication with anyone about Susan Wood's termination."). Therefore, Plaintiff's "reasonable conclusion" is nothing more than mere surmise.

d. **Sempra Produced The Financial Records Mr. Prince Referred To At His Deposition**

Mr. Prince testified during his deposition about certain records that document the profitability of Sempra's various profit centers (e.g. Petroleum Derivatives department). See Deposition of Steven Prince at 34-37 (attached hereto as Exhibit 9). At that time, Plaintiff requested that Sempra produce these records for the Plaintiff's profit center. In response to this request, Sempra produced the requested documents for the years Plaintiff was employed at Sempra. See P. Schultz correspondence to B. O'Rourke dated April 13, 2004 (attached hereto as Exhibit 5).

While Plaintiff's counsel complains about the timing of Sempra's production, stating that he did not receive them until after Mr. Roy's deposition, Plaintiff fails to acknowledge that he had them in his possession for the re-noticed deposition of Mr. Prince, as well as, the depositions of Mr. Messer, Mr. Cummings, and Ms. Mitchell, each of whom were

7

senior Sempra executives. Furthermore, Plaintiff never requested that Sempra make Mr. Roy available for questioning regarding these documents. Of course, Plaintiff's counsel will be able to question Mr. Roy regarding these documents at trial.

### e. Plaintiff's Assumptions About Mitchell's Testimony Are Factually Inaccurate

As background, Plaintiff worked in the Natural Gas department under Ms. Mitchell's leadership for the first five months of her employment. Subsequently, Plaintiff transferred into the Petroleum Derivatives department where she worked for approximately a year for Mr. Cumming and then Mr. Roy. It is undisputed that Ms. Mitchell was not involved in the decision to terminate Plaintiff and there is no suggestion Mr. Roy considered Plaintiff's performance while in the Natural Gas department when he decided to terminate Plaintiff's employment.

During her deposition, Ms. Mitchell testified that she maintains records of transactions in her department. See Deposition of Jacqueline Mitchell at 26-27 (attached hereto as Exhibit 10). From this, Plaintiff seeks to extrapolate that managers in other departments, specifically the Petroleum Derivatives department, follow similar practices. However, Mr. Cumming testified that the Petroleum Derivatives department did not maintain records in the same manner as the Natural Gas department. See Cumming Depo. 37-39 (attached hereto as Exhibit 7).

### f. Plaintiff Mischaracterizes Mr. Howley's Testimony

Plaintiff argues Mr. Howley "made little effort to retrieve e-mails which may have related to Wood. Given the formal compliant filed against him by Wood, it can be reasonably concluded that he had responsive emails, which have not been produced by Sempra." Memorandum at 11. However, Mr. Howley testified he did not communicate with anyone by

8

email following the incident with Ms. Wood. Further, Mr. Howley explained to Plaintiff's counsel that, after being advised of this litigation, he searched where he believed potentially responsive records might be located, including his cabinets and files. See Deposition of Joseph Howley at 10-11 (attached hereto as Exhibit 11).

### 2. Plaintiff Lacks Any Evidence That The Documents In Question Exist And Their Likely Relevance To Plaintiff's Case

Except for the Roy notebook, which Mr. Roy testified contained no reference to Plaintiff and did not relate to this litigation, Plaintiff has offered no evidence of specific, identified documents that Sempra has failed to produce. Instead, Plaintiff's relies solely on presumptions and conjecture that such documents exist. Plaintiff's "suspicions" are insufficient as a matter of law to warrant a sanction.[1]

### B. Plaintiff Failed To Certify With The Court That She Conferred Or Attempted To Confer With Defendant

Federal Rule 37 requires any party who seeks a sanction for an alleged discovery violation first certify to the Court that "the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court

---

[1] In each of the cases cited to in Plaintiff's Memorandum, the party seeking the sanction presented more to the Court than simply alleging "it can be reasonably concluded" that documents exist that have not been produced, as Plaintiff seeks to do here. Compare Residential Funding Corporation v. DeGeroge Financial Corp., 306 F.3d 99 (2d Cir. 2002) (DeGeorge produced evidence that RFC had failed to produce thousands of documents); Byrnie v. Town of Cromwell, 243 F.3d 93 (2d Cir. 2001) (party admitted destroying certain relevant documents); Kronisch v. United States, 150 F.3d 112 (2d Cir. 1998) (CIA admitted certain relevant documents were destroyed); Reilly v. Natwest Markets Group, Inc., 181 F.3d 253 (2d Cir. 1999) (motion for sanctions was supported by evidence that specifically identified documents existed and had not been supplied); Zubulake V. UBS Warburg LLC, 2004 WL 1620866 (S.D.N.Y.) ("Zubulake has now presented evidence that UBS personnel deleted relevant emails").

action." Fed.R.Civ.P. 37(a)(2)(A). Plaintiff failed to include such a certification with her motion and her motion should therefore be denied.

Moreover, Plaintiff's recent correspondence to opposing counsel belies any suggestion that she attempted to secure disclosure without Court action. To the contrary, last week Plaintiff's counsel sent Sempra's counsel a correspondence requesting that the Company supplement its discovery responses. Notably, the information Plaintiff requested relates solely to supplemental damages discovery and is not the subject of Plaintiff's pending motion. See O'Rourke Letter to R. Bertrand dated June 16, 2005 (attached hereto as Exhibit 2).[2] Nowhere in this correspondence does Plaintiff make any reference to any discovery "abuse" by Sempra nor does Plaintiff request that Sempra produce the documents referred to in her memorandum. Having failed to satisfy Rule 37's "meet and confer" requirement, Plaintiff's motion should be dismissed.

### C. Plaintiff's Discovery Motion Is Untimely

The Court should reject Plaintiff's unfounded lamentations regarding discovery because Plaintiff failed to voice her dissatisfaction until well after discovery closed, and only weeks before trial. Any opposition Plaintiff had to the scope or nature of Sempra's document production following the Court's January 6, 2004 ruling, should have been raised with the Court prior to the close of discovery. "The discovery stage of this action would appear to be over and any discovery disputes untimely raised." DeFelice v. Am. Int'l Life Assurance Co. of New

---

[2] It should also be pointed out that Plaintiff herself failed to produce certain requested documents and supplement her discovery responses. For example, Sempra has been seeking certain damages discovery from Plaintiff for more than a year. See P. Schultz Letter. to B. O'Rourke dated April 19, 2004 (attached hereto as Exhibit 13) and R. Bertrand letter to B. O'Rourke dated June 15, 2005 (attached hereto as Exhibit 2). However, Sempra has been conferring with Plaintiff's counsel to secure the documents it will need to prosecute this case (as the spirit and letter of the Federal Rules requires parties to do).

York, No. 94 Civ. 8165 (AGS)(RLE), 1995 WL 753892, at *1 (S.D.N.Y. Dec. 19, 1995) (denying motion to compel responses to discovery requests after the close of discovery, when parties were preparing for trial)[3].

### III.   CONCLUSION

Sempra represents that it made diligent and earnest efforts to fully comply with its discovery obligations. If Plaintiff sincerely believed that Sempra was non-compliant, she should have raised the issue before discovery closed rather than waiting over a year until the eve of trial. For these and all the foregoing reasons, Sempa respectfully requests the Court deny Plaintiff's Motion in Limine.

Respectfully Submitted,

By: _____
Mary C. Dollarhide (ct12251)
Raymond W. Bertrand (ct22968)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
1055 Washington Boulevard
Stamford, CT 06901-2217
Telephone: (203) 961-7400
Facsimile: (203) 359-3031
Email   marydollarhide@paulhastings.com
          raymondbertrand@paulhastings.com

Counsel for Defendant
Sempra Energy Trading Corp.

---

[3] Unpublished authorities are attached hereto as Exhibit 12.

## CERTIFICATE OF SERVICE

The undersigned, a member of the bar of this Court, hereby certifies that on this 24th day of June, 2005, a true and correct copy of the foregoing Opposition To Plaintiff's Motion in Limine was served on the following counsel of record via hand delivery to:

>Brendan J. O'Rourke, Esq.
>Jeffrey M. McCormick, Esq.
>Ann H. Brickley, Esq.
>O'Rourke & Associates, LLP
>27 Pine Street
>New Canaan, CT  06840

_____
Raymond W. Bertrand

STM/298856.3