# UNREPORTED CASES



Slip Copy
2005 WL 1026515 (S.D.N.Y.)

(Cite as: 2005 WL 1026515 (S.D.N.Y.))

Page 1

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
COMMERCE FUNDING CORPORATION,
Plaintiff,
v.
COMPREHENSIVE HABILITATION
SERVICES, INC., Better Medical Services, P.C.,
Sisters of Charity Medical Center, Staten Island
University Hospital, Inc., St.
Francis Hospital and Sisters of Charity Hospital,
Defendants.
No. 01 Civ. 3796(PKL).

May 2, 2005.
Harris Beach LLP, New York, New York, John W. Clarke, Dean M. Monti, for Defendant / Cross-Claimant Comprehensive Habilitation Services, Inc.

Garfunkel, Wild & Travis, PC, Great Neck, New York, Roy W. Breitenbach, for Defendant / Cross-Claim Defendant Staten Island University Hospital, Inc.

*OPINION AND ORDER*

LEISURE, J.

*1 This action, originally brought by plaintiff Commerce Funding Corporation ("CFC") upon an alleged breach of a factoring agreement, has been trimmed down by settlements, arbitration, and a bench trial, such that only the cross-claim asserted by defendant Comprehensive Habilitation Services, Inc. ("CHS") against defendant Staten Island University Hospital, Inc. ("Staten Island") remains unresolved. CHS brings a breach of contract claim against Staten Island that is to be tried before a jury on May 9, 2005.

CHS alleges that Staten Island owes it $512,441, plus interest running from March 23, 1999, for services it provided to Staten Island pursuant to a contract between the two parties, dated July 1, 1994, and a Memorandum of Understanding between the two parties, dated September 11, 1998. Staten Island denies the allegations and asserts a cross-claim for indemnification in the event it is found liable to CFC. CHS now makes two motions *in limine,* filed simultaneously on March 18, 2005, to exclude from evidence several documents that Staten Island intends to offer at trial. In its first motion *in limine,* CHS seeks to exclude three documents: (1) a Superior Court Information containing a plea agreement between Comprehensive Clinical Center, Inc. ("CCC") and the New York State Attorney General, entered April 9, 2001 ("Ex.AAAA"), and all testimony and documents relating thereto; (2) a document from the U.S. Department of Health and Human Services Office of Inspector General's website stating that CCC was excluded from a program with the Department ("Ex.YYY"), and all testimony and documents relating thereto; and, (3) a document from the New York State Department of Health website purporting to evidence the exclusion of Peter A. Magaro, Chief Executive Officer ("CEO") of both CCC and CHS, from the Medicaid program ("Ex.ZZZ"), and all testimony and documents relating thereto. Staten Island withdrew its offer of exhibits YYY and ZZZ; however, CHS maintains its objection to all testimony and documents relating to those exhibits. In its second motion *in limine,* CHS seeks to preclude some fifty-eight documents as irrelevant, based on improper hearsay, and lack of authenticity. Staten Island opposes CHS's motions. For the sake of judicial economy, the two motions are consolidated and disposed of in this Opinion and Order. For the reasons set forth below,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 1026515 (S.D.N.Y.)

(Cite as: 2005 WL 1026515 (S.D.N.Y.))

Page 2

the Court grants in part and denies in part CHS's first motion *in limine*, and grants in part and reserves judgment in part regarding CHS's second motion *in limine*.

Background

The following background information is derived from the submissions of the parties in association with the current motions and the Joint Pre-Trial Order, So Ordered on June 15, 2004, and does not constitute findings of fact.

I. *Factual Background*

During all relevant times, defendant Staten Island was a non-profit hospital in Staten Island, New York, that provided a full range of health care services. Cross-claimant CHS provided consultation and administrative services to health providers, specializing in services for the mentally retarded and developmentally disabled ("MRDD" services). On July 1, 1994, CHS and Staten Island reached an agreement (the "Contract"), by which Staten Island formed Comprehensive Habilitation Center ("CHC") to coordinate MRDD and child welfare services ("HeadStart") in New York City, Westchester and Long Island. (Contract (attached to CHS's Notice of First Motion *In Limine* ("CHS's First Notice") Ex. 1) at introductory paragraphs.) CHC was to operate as a part-time clinic, restricted to a set number of hours of operation, organized under Article 28 of New York State's Public Health law. (*Id.* ¶ 2.1.) CHS, through its CEO, Magaro, was to aid in marketing, managing, and operating CHC and be compensated at a rate of $45 per billable patient contact to be paid within ten days of invoicing. (*Id.* ¶ 3.1.) The Contract includes several terms upon which the parties agreed, such as that CHS's services "shall only be provided upon obtaining all Federal, State, and local approvals including, without limitation, approvals of the New York State Department of Health and the New York State Department of Mental Hygiene." (*Id.* ¶ 2.1.) The Contract was only to be operable from July 1, 1994 to June 30, 1999, or five years, with an automatic renewal for an additional three years unless terminated as provided in the Contract. (*Id.* ¶ 5.3.) After the commencement of the Contract, CHS provided services for Staten Island and CHC and issued invoices to Staten Island for payment.

*2 At some time after 1994, the Office of the Attorney General's Medicaid Fraud Control Unit ("AG") conducted an audit of Staten Island's Medicaid billing for part-time clinics operated from January 1, 1994 through August 31, 1998. Following that investigation, the AG asserted that Staten Island submitted improper claims for payment to Medicaid during the above dates, was therefore overpaid by Medicaid, and that Staten Island failed to supervise the clinics adequately to ensure compliance with Medicaid regulations. (September 21, 1999 Agreement and Settlement between Staten Island and the AG ("Staten Island Settlement") (attached to CHS's Reply Memorandum of Law in Support of CHS's Second Motion *In Limine* ("CHS's Second Reply") Ex. 9) at 1-2.) In September 1999, Staten Island entered a settlement with the AG to remit over $40,000,000 to the State. Staten Island stated that "the making of this Agreement is not intended, and shall not be construed as an admission that [Staten Island] violated any law." (Staten Island Settlement at 2.)

On September 11, 1998, after the AG had commenced its investigation of Staten Island and before Staten Island reached a settlement with the AG, CHS and Staten Island agreed to a Memorandum of Understanding ("MOU"). (MOU (attached to CHS's First Notice Ex. 2).) In the MOU, the parties agreed to dismiss with prejudice a pending lawsuit, initiated by Staten Island against CHS, *Staten Island University Hospital v. Comprehensive Habilitation Services, Inc. & Peter Magaro,* Index No. 12554-98, in New York Supreme Court, Richmond County. (MOU at 1.) However, the MOU expressly stated that,

[t]his dismissal is without prejudice to any claims that [Staten Island] has or may have, now or in the future, against CHS or Magaro, if any agency or department of the State of New York or the federal government asserts that [Staten Island] owes money arising from, or relating to, services provided by or through CHS pursuant to the Contract, and is without prejudice to CHS's and Magaro's defenses, affirmative defenses and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 3

2005 WL 1026515 (S.D.N.Y.)

**(Cite as: 2005 WL 1026515 (S.D.N.Y.))**

set-offs regarding any such claims. (*Id.* § 2 ("Section Two").) Further, the parties agreed that "[t]he Contract is terminated as of the date of this MOU, all of the obligations in the contract are released." (*Id.* § 8.) The MOU states that "[a]ny payments due or to become due to CHS pursuant to the Contract, other than payments referred to herein, are released." (*Id.* § 9.) The MOU provides a specific plan for payment of certain invoices arising under the Contract and during the transitional time from September 11, 1998 to September 27, 1998. (*Id.*) If disputes arise as to the payment of CHS invoices, the "parties may resort to an action for payment." (*Id.* §§ 9(D)-(F).)

After the parties agreed upon this Memorandum of Understanding, CHS continued to provide services and submit invoices to Staten Island. Staten Island received the services provided by CHS, but failed to make the agreed upon payments.

II. *Procedural Background*

A. *CHS's Cross-Claim*

*3 CHS brings the current cross-claim against Staten Island for breach of contract. CHS claims that Staten Island owes payment on invoices totaling $512,441 arising from unpaid invoices CHS issued for services it rendered to Staten Island under the Contract and the MOU.

CHS's position is that the MOU governs all of Staten Island's unpaid debt and that payment is due under the terms of the MOU. CHS argues that Section Two of the MOU is not implicated because Staten Island is not asserting a "claim" against CHS, and that the AG did not find fault with CHS's operation of the clinics but rather, with Staten Island's billing methods which were in place prior to its relationship with CHS.

Staten Island denies CHS's allegations of breach of contract. Staten Island's position is that Section Two of the MOU "allows [Staten Island] to avoid repayment of the moneys allegedly owed CHS" due to Staten Island's Settlement Agreement with the AG requiring it to pay over $40,000,000 to the State. Also, Staten Island asserts a fraud-like theory of defense for the first time in its Opposition to these motions, stating that,

CHS and its high-level officials--including [Magaro]--formed a common scheme or plan with other CHS-affiliated entities to defraud the Medicaid Program through the provision of improper services and the rendition of improper advice at various hospital facilities, including [Staten Island], thereby leading to the allegations of wrongdoing made by the State against [Staten Island].

(Staten Island's Memorandum of Law Opposing CHS's First Motion *In Limine* ("Staten Island's First Opp'n") at 2; Staten Island's Memorandum of Law Opposing CHS's Second Motion *In Limine* ("Staten Island's Second Opp'n") at 2.)

B. *CHS's Current Motions*

CHS brings two motions *in limine* to exclude certain evidence that Staten Island intends to offer at trial. The Court takes up each motion in turn below.

Discussion

I. **Motion In Limine** Standard

The **purpose** of a **motion** *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984) (noting that, although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials); *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group,* 937 F.Supp. 276, 283 (S.D.N.Y.1996) ("The **purpose** of an *in limine* **motion** is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." ') (quoting *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir.1996)). Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *See Baxter Diagnostics, Inc. v. Novatek*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 1026515 (S.D.N.Y.)

Page 4

(Cite as: 2005 WL 1026515 (S.D.N.Y.))

*Med., Inc.*, No. 94 Civ. 5520, 1998 WL 665138, at * 3 (S.D.N.Y. Sept. 25, 1998) (denying a motion *in limine* to preclude presentation of evidence regarding a potential punitive damages claim because the motion was too sweeping in scope to be considered prior to trial). A court considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins.*, 937 F.Supp. at 287.

*4 A motion *in limine* to preclude evidence asks the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence. Fed.R.Evid. 104(a) ("Preliminary questions concerning the qualification of a person to be a witness ... or the admissibility of evidence shall be determined by the court...."). The Court's ruling regarding a motion *in limine* is "subject to change when the case unfolds." *Luce*, 469 U.S. at 41. This Opinion and Order thus determines preliminarily whether the evidence challenged by CHS may be presented to the trier of fact.

II. *CHS's First Motion* In Limine

CHS moves to exclude Staten Island's proposed exhibit AAAA, a Superior Court Information containing a plea agreement between CCC and the AG, dated April 9, 2001, relating to the action *People v. Comprehensive Clinical Center, Inc.* [FN1] CHS argues this proposed exhibit is irrelevant, its prejudice substantially outweighs its probity, it constitutes improper hearsay, and it is not properly admitted as character evidence. [FN2]

> FN1. CHS also moves to exclude Staten Island's proposed exhibits YYY and ZZZ, documents from websites of Health and Human Services and the New York State Department of Health, respectively. Upon CHS's motion, Staten Island has withdrawn these proposed exhibits and agrees not to seek to introduce them into evidence in its case-in-chief. CHS replied that it still seeks to preclude all testimony and documents concerning the documents. The Court notes that, absent background regarding these exhibits, it is impossible to anticipate what "testimony and documents" concerning the exhibits may entail. Therefore, the Court reserves judgment until such time as it is necessary but cautions that, on the current record, the following analysis finding exhibit AAAA irrelevant applies to CHS's concern regarding these two withdrawn exhibits. *See infra.*

> FN2. CHS also argues that exhibits AAAA, YYY, and ZZZ cannot be authenticated. The Court need not take up authenticity as a ground for excluding any proposed exhibits at this time. First, on the current record the proposed exhibits are irrelevant, thus their authenticity is moot, *see infra*. Second, questions about whether a document is authentic do not typically justify excluding the document in advance of trial, because authenticity can be easily established at trial. "Evidence sufficient to support a finding that the matter in question is what its proponent claims" satisfies Rule 901's requirement of authentication. Fed.R.Evid. 901(a). "Rule 901 does not erect a particularly high hurdle." *United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir.2001) (quotation omitted). "Testimony that a matter is what it is claimed to be," for example, sufficiently authenticates a document. Fed.R.Evid. 901(b)(1).

According to CHS, CCC is a corporation that operated clinics providing psychological and other services. Magaro was its president and sole shareholder. Magaro is also the president and CEO of CHS. The Attorney General criminally prosecuted Magaro's company, CCC, as part of an investigation purportedly similar to that of Staten Island which resulted in the Settlement with the AG discussed above. The prosecution of CCC resulted in a plea agreement by which CCC as a company pled to grand larceny for Medicaid fraud. The plea agreement includes the following: "The plea of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 1026515 (S.D.N.Y.)

(Cite as: 2005 WL 1026515 (S.D.N.Y.))

Page 5

guilty to the Superior Court Information will cover Peter A. Magaro, his immediate family and the corporations which he controls, either *de facto* or *de jure*, including [CHS]." (Ex. AAAA (attached to CHS's First Notice) ¶ 3.)

Staten Island makes two arguments that the Information is relevant to the instant litigation. First, Staten Island argues that the guilty plea of CCC, a company owned by Magaro, tends to show that CHS, another company run by Magaro, was responsible for the Medicaid violations for which Staten Island settled with the Attorney General's Office. This, Staten Island contends, relieved it from its duty to pay CHS pursuant to Section Two of the MOU. Second, Staten Island argues that the plea agreement evidences that "CHS and its high-level officials--including [Magaro]--formed a common scheme or plan with other CHS-affiliated entities to defraud the Medicaid Program." (Staten Island's First Opp'n at 2.)

A. *Relevance Standard*

The "standard of relevance established by the Federal Rules of Evidence is not high." *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir.1985). Evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant. Fed.R.Evid. 401.

1. *Relevance to Section Two of the MOU*

*5 "Under New York law 'the initial interpretation of a contract is a matter of law for the court to decide,' " *Fleet Capital Corp. v. Yamaha Motor Corp., U.S.A.*, No. 01 Civ. 1047, 2002 U.S. Dist. LEXIS 18115, at *62-63 (S.D.N.Y. Sept. 25, 2002) (quoting *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir.1998)). Absent ambiguity in the contract, the Court will not look to extrinsic evidence, but rather will interpret the contract on its face, giving the words their ordinary meaning. See *Kinek v. Paramount Communications, Inc.*, 22 F.3d 503, 509 (2d Cir.1994). The question of ambiguity is also one of law to be decided by the Court. See *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir.2002); *Readco v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir.1996); *Fleet Capital*, 2002 U.S. Dist. LEXIS 18115, at *62-63 (" 'Included in [the court's] initial interpretation [of a contract] is the threshold question of whether the terms of the contract are ambiguous." ') (quoting *Alexander & Alexander*, 136 F.3d at 86). The Court should find a contract unambiguous where an examination of the "entire integrated agreement" reveals "a definite meaning" and the Court finds "no reasonable basis exists for a difference of opinion about that meaning." *Fleet Capital*, 2002 U.S. Dist. LEXIS 18115, at *63-64 (internal citations and quotations omitted).

The MOU as a whole is clear and unambiguous. Section Two's meaning is plain, especially when read in context with the immediately preceding paragraphs. The MOU dismissed a lawsuit initiated by Staten Island against CHS. Section Two expressly allows Staten Island to reinitiate the lawsuit if any governmental agency asserts that Staten Island owes money arising from CHS's provision of services. Further, Section Two allows CHS to reassert its defenses, affirmative defenses and set-offs if faced with a renewed claim by Staten Island. Initially, the Court finds that Section Two only allows Staten Island to take affirmative action against CHS, i.e. assert a "claim" against CHS. [FN3] However, it may not serve as Staten Island's defense to a claim interposed by CHS. Further, it nowhere states that Staten Island can use its settlement with the AG as a defense against CHS's charge that Staten Island breached the MOU. It does not allow Staten Island to off-set its liability to CHS when CHS asserts Staten Island breached the MOU. In fact, neither breach of the MOU, performance under the MOU, nor the provisions of the MOU itself are mentioned in Section Two. This section only concerns Staten Island's ability to assert a claim against CHS or Magaro concerning Staten Island's liability resulting from the AG's investigation.

> FN3. It would have, therefore, arguably been appropriately used in a cross-claim

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 1026515 (S.D.N.Y.)
(Cite as: 2005 WL 1026515 (S.D.N.Y.))

Page 6

against CHS in the instant litigation. However, Staten Island's only cross-claim was for indemnification should it be found liable to the original plaintiff in this action, CFC. Staten Island has not been found liable to CFC and Section Two clearly does not address this issue. (*See* Answer (attached to CHS's First Reply Ex. 5) ¶ 5.)

Thus, Staten Island cannot assert that the Information is relevant to any fact at issue in this litigation based on the above defense theory.

*2. Relevance to Fraud*

For the first time in the almost four years of litigation since CHS asserted the instant cross-claim on June 20, 2001, Staten Island poses the argument that CHS was involved in a concerted effort to defraud Medicaid. The Federal Rules of Civil Procedure prohibit this type of eleventh hour assertion of a never before argued theory of defense because it unfairly surprises the opposing party. First, Rule 9 requires that an assertion of fraud be particularly pled. Fed.R.Civ.P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). From the "all averments" language of Rule 9(b), it is clear that the particularity requirement applies to an assertion of fraud as a defense in answering a claim. *Id.; see, e.g., ResQNet.com. Inc. v. Lansa, Inc.*, No. 01 Civ. 3578, 2004 U.S. Dist. LEXIS 13579, *11 (S.D.N.Y. July 21, 2004) (A defense of "fraud ... must be pled with particularity and is subject to the heightened pleading requirements of Fed. R. Civ. Proc. 9(b)."); *Moxie Indus. v. Hayden*, No. 84 Civ. 3779, 1985 U.S. Dist. LEXIS 23342, at *3 (S.D.N.Y. Jan. 17, 1985) ("[The] defense and counterclaims are dismissed for failure to state with sufficient particularity the time, place and persons making the allegedly fraudulent statements."); *F.D.I.C. v. Fireman's Fund Ins. Co.*, 271 F.Supp. 689, 690 (S.D.Fla.1967). Staten Island must plead fraud as an affirmative defense and set forth its particulars in its Answer or it is deemed waived. Fed.R.Civ.P. 8(c); *see Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir.1994); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 n. 2 (2d Cir.1988). Needless to say, Staten Island made no mention of fraud in its Answer.

*6 Nor did Staten Island mention this defense in the parties' Joint Pre-Trial Order. (Joint Pre-Trial Order, dated June 15, 2004, ¶ 3 (setting forth the parties' theory of the case).) Under Rule 16(e), the Joint Pre-Trial Order controls "the subsequent course of the action unless modified by a subsequent order." Fed.R.Civ.P. 16(e). The Joint Pre-Trial Order "shall be modified only to prevent manifest injustice." *Id.* Thus, the Pre-Trial Order is not to be changed lightly. *See Clark v. Pennsylvania R.R. Co.*, 328 F.2d 591, 594-95 (2d Cir.1964). That which is not alleged in the Pre-Trial Order is generally deemed waived. *See, e.g., Walling v. Holman*, 859 F.2d 79, 82 (2d Cir.1988) (finding that the party waived its counter-claim alleged in its Answer because it failed to appear on the Pre-Trial Order or in the requested jury charge). Staten Island has not alleged fraud in any submission to this Court, save in its opposition papers to the present motions *in limine*, submitted just over a month prior to trial. Therefore, pursuant to the above caselaw and Rules, the Court finds that it would be manifestly unjust to allow Staten Island to assert such a claim on the eve of trial.

Thus, Staten Island cannot assert that the Information is relevant to this litigation based on an eleventh hour fraud defense. [FN4]

> FN4. Staten Island did not argue that exhibit AAAA would be relevant to show CHS breached the underlying agreement. However, to the extent this argument is implied by Staten Island's stated defenses in the Pre-Trial Order, the Court rests on its previous finding that CCC's guilty plea is more prejudicial than probative of CHS's performance under either the Contract or the MOU as it would confuse the issues. (Transcript of this Court's bench trial, *CHS v. St. Francis Hospital*, September 13, 2004, at 113-14.) Thus, it is excludable pursuant to Rule 403. *See* Fed.R.Evid. 403.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 1026515 (S.D.N.Y.)

(Cite as: 2005 WL 1026515 (S.D.N.Y.))

Page 7

**B.** *Impeaching Magaro with Evidence of CCC's Criminal Conviction*

Staten Island also argues that exhibit AAAA is admissible under Rule 609(a) as evidence of a witness's prior criminal conviction for impeachment purposes in anticipation of Magaro's testimony. Rule 609(a)(1) states that "evidence that a witness ... has been convicted of a crime shall be admitted subject to Rule 403" if the crime was punishable by imprisonment of more than one year. Fed.R.Evid. 609(a)(1). Rule 609(a)(2) allows "evidence that any witness has been convicted of a crime ... if it involved dishonesty or false statement." *Id.* 609(a)(2).

The first issue regarding the admissibility of CCC's conviction under Rule 609 is whether a corporation's conviction can be used to impeach Magaro, its CEO, as CCC, a corporate entity, obviously cannot testify at this trial. CHS relies solely on caselaw stating that corporations are separate legal entities to support its argument that CCC's conviction cannot be imputed to Magaro. (CHS's Memorandum of Law in Support of its First Motion *In Limine* ("CHS's First Mem.") at 8-9; CHS's Reply Memorandum of Law in Support of its First Motion *In Limine* ("CHS's First Reply") at 7-8.) Staten Island counters, without any supporting caselaw, that "[a]lthough the conviction underlying the Plea Agreement was against [CCC], not [Magaro] individually, we submit that this distinction is immaterial for purposes of Rule 609(a)." (Staten Island's First Opp'n at 4.) Unwittingly, the parties have stumbled onto an interesting evidentiary issue that has yet to be resolved in this Circuit.

*7 While the Second Circuit has not addressed whether a corporation's criminal conviction can be imputed to its CEO for purposes of Rule 609(a) impeachment, in *Stone v. C.R. Bard, Inc.*, No. 02 Civ. 3433, 2003 U.S. Dist. LEXIS 22035 (S.D.N.Y. Dec. 8, 2003), Judge William H. Pauley III examined caselaw from the Third and Sixth Circuits dealing with the issue. In *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506 (3d Cir.1997), the Third Circuit held that Rule 609 "does not permit corporate convictions to be used to impeach the credibility of employee witnesses who are not directly connected to the underlying criminal act." *Id.* at 510. The court reasoned that, because "it is only the testifying witness' own convictions that will bear directly on the likelihood that he or she will testify truthfully ... it is axiomatic that it is only the testifying witness' own prior convictions that should be admissible on cross-examination to impeach his credibility." *Id.* at 524. The court found a West Virginia Supreme Court case, *CGM Contractors v. Contractors Envtl. Servs., Inc.*, 383 S.E.2d 861, 181 W. Va. 679 (1989), persuasive in that it held "a corporate conviction is admissible against a witness only if the witness 'held a managerial position at the time the crime occurred such that it may be fairly inferred that he shared responsibility for the criminal act, or have actually participated in the criminal act.'" *Walden*, 126 F.3d at 524 n. 16. However, the Eastern District of Tennessee adopted a far broader standard in *Hickson Corp. v. Norfolk S. Ry. Co.*, 227 F.Supp.2d 903 (E.D.Tenn.2002). [FN5] There, the court decided that "because a corporation speaks through its officers, employees, and other agents ... it stands to reason that a corporation can be a vicarious witness.... [T]herefore, Rule 609 allows the use of a corporation's felony conviction to impeach the corporation's vicarious testimony." *Hickson*, 227 F.Supp.2d at 907. "Any other ruling would give the corporation an unreasonable advantage under Rule 609 as compared to a natural person." *Id.* at 906.

> FN5. On review, the Sixth Circuit refused to address the issue, finding that the evidence of the corporation's conviction was properly admitted under Rule 405 as the opposing party had opened the door. See *Hickson Corp. v. Norfolk S. Ry. Co.*, Nos. 03 Civ. 5801, 03 Civ. 5910, 03 Civ. 5911, 2005 U.S.App. LEXIS 2701, at *17 (6th Cir. Feb. 16, 2005).

Despite noting that *Hickson*'s standard appeared to conflict with the axiom that "corporations should be treated as natural persons for virtually all purposes of constitutional and statutory analysis," Judge Pauley found *Hickson* persuasive and admitted the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 1026515 (S.D.N.Y.)

Page 8

(Cite as: 2005 WL 1026515 (S.D.N.Y.))

corporation's conviction under Rule 609. *See Stone,* 2003 U.S. Dist. LEXIS 22035, at *9 n. 4, 10-11 (quoting *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 687 (1978)). Judge Pauley followed *Hickson'* s theory of vicarious witnesses because the case before him was similar in that the proponent sought to impeach the corporation rather than the witness. *Id.* at *10-11. He further noted that a case in this District supported his finding, "in which the district court noted that 'artificial entities such as corporations may act only through their agents." ' *Id.* at * 10 n. 5 (citing *United States v. Jacques Dessange, Inc.,* No. 99 Cr. 1182, 2000 U.S. Dist. LEXIS 2886, at *5 (S.D.N.Y. Mar. 14, 2000)).

*8 The Court finds that CCC's criminal conviction is admissible to impeach Magaro. It is clear that Staten Island does not wish to impeach CCC vicariously through Magaro as CCC's representative; thus, the theory applied in *Hickson* and *Stone* is inapposite. However, the Information states that CCC, "acting by its high managerial agents" submitted false representations to Medicaid. (Ex. AAAA ¶ 2.) Further, the Information states that "[t]he plea of guilty to the Superior Court Information will cover Peter A. Magaro." (*Id.* ¶ 3.) Because Magaro is personally named in the Information and was CEO of CCC, it is an overwhelmingly reasonable inference that he "is directly connected to the underlying criminal act" discussed in the Information, and the conviction reflects on his credibility. *See Walden,* 126 F.3d at 510.

Further, if the underlying criminal act involved a false statement, the Court need not engage in an analysis of whether the Information is more prejudicial than probative under Rule 403. *See Green v. Bock Laundry Mach. Co.,* 490 U.S. 504, 526 (1989). Though Rule 609(a)(1), involving felony convictions punishable by more than a year's imprisonment, was amended in 1990 in direct response to *Green* to require a court to engage in a 403 analysis, "[t]he Committee recommended no substantive change in subdivision (a)(2)," the section dealing with *crimen falsi,* or crimes the "commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." Fed.R.Evid. 609(a) advisory committee's notes to 1990 amendments. Therefore, the Court has no discretion to exclude convictions involving false statements under Rule 403 because such convictions are inherently more probative than prejudicial as bearing on the witness's capacity for truthfulness. *See, e.g., Stone,* 2003 U.S. Dist. LEXIS 22035, at *12 ("[W]hile convictions under Rule 609(a)(1) require a court to engage in a Rule 403 balancing inquiry, subpart (a)(2) 'bars the exercise of judicial discretion pursuant to Rule 403." ') (quoting, *inter alia, United States v. Hayes,* 553 F.2d 824, 827 (2d Cir.1997) ("[E]vidence of conviction of a certain type of crime one involving 'dishonesty or false statement' must be admitted, with the trial court having no discretion, regardless of the seriousness of the offense or its prejudice to the defendant.") (citation omitted), and *Jones v. New York City Health & Hosp. Corp.,* No. 00 Civ. 7002, 2003 U.S. Dist. LEXIS 9183, at *1 (S.D.N.Y. June 3, 2003) ("The use of the word 'shall' [in Rule 609(a)(2) ] suggests that a district court has no discretion when the crime involved dishonesty or false statement.")). "The courts have now clearly held that the trial court lacks discretion pursuant to Rule 403 in this instance, and that a cross-examiner has an absolute right to introduce a conviction involving dishonesty or false statement for impeachment purposes." *Fletcher v. City of New York,* 54 F.Supp.2d 328, 331 (S.D.N.Y.1999) (quoting 4 Weinstein & Berger, *Weinstein's Federal Evidence,* § 609.03 (2d ed.1998)); *Eng v. Scully,* 146 F.R.D. 74, 78 (S.D.N.Y.1993).

*9 *Crimen falsi* are narrowly defined. *United States v. Payton,* 159 F.3d 49, 57 (2d Cir.1998) (citing *United States v. Hayes,* 553 F.2d 824, 827 (2d Cir.1977)). "Whether a crime involved dishonesty or false statement is a factual determination for the Court. 'In evaluating a state conviction, the federal court must look to the elements of the crime that the prosecutor had to prove, not the details of the particular crime committed, to determine whether the conviction involved dishonesty." ' *Id.* Staten Island did not argue that CCC's crime was a *crimen falsi,* though it bears the burden to so demonstrate. *Id.* However, the Court finds that CCC's crime

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 1026515 (S.D.N.Y.)
(Cite as: 2005 WL 1026515 (S.D.N.Y.))

clearly involved an element of falsification bearing on Magaro's propensity to testify truthfully. The Information states that the grand larceny conviction was based on "high managerial agents" making "false representations" to Medicaid to secure payment for health services. (Ex. AAAA ¶ 2.) Staten Island, thus, artlessly lumbers into success as its burden is met on the face of the Information. *See also Payton*, 159 F.3d at 57 (2d Cir.1998) (affirming this Court's determination that a larceny conviction based on false statements to receive food stamps fell under Rule 609(a)(2)) (citing *Zinman v. Black & Decker (U.S.)*, 983 F.2d 431, 434 (2d Cir.1993) (affirming a district court's determination that making a false statement to a government agency in connection with a Medicare application is akin to perjury and thereby bears heavily on the issue of credibility)).

Thus, Staten Island's proposed exhibit AAAA is preliminarily admissible under Rule 609(a)(2) for impeachment purposes only. [FN6] The Court's ruling is subject to Rule 104 reconsideration as the case unfolds.

> FN6. The Court further notes that the crime does not offend 609(b)'s ten year time limit as the Information was signed on April 9, 2001. The Court does not address CHS's hearsay argument at this time for it is inappropriate; the conviction would be offered to impeach, not for its truth. Further, the Information appears to be a public record and thus, would fall squarely under Rule 803(8) as a hearsay exception.

III. *CHS's Second Motion* In Limine

CHS seeks to exclude several documents in its second motion *in limine,* namely proposed exhibits A, B, C, D, E, F, G, H, I, J, K, L, M, N, P, Q, R, S, T, U, V, W, X, Y, Z, AA, BB, CC, DD, EE, FF, GG, HH, II, JJ, KK, LL, MM, NN, OO, PP, QQ, SS, TT, UU, VV, WW, XX, YY, ZZ, AAA, BBB, CCC, DDD, EEE, FFF, HHH, and III. [FN7] All the proposed exhibits pre-date the MOU except HHH and III, which will be dealt with separately below. CHS claims these exhibits are irrelevant and contain improper hearsay. [FN8] In arguing that all the proposed exhibits are relevant, Staten Island again contends that Section Two of the MOU excused it from performing under the MOU and that CHS was engaged in fraud. The Court found those arguments unpersuasive, *supra,* and therefore only addresses Staten Island's final argument that the exhibits are relevant because CHS's contractual performance under the Contract is at issue in this case.

> FN7. Following CHS's motion, Staten Island withdrew exhibits EEE and FFF, though CHS again asks the Court to preclude the withdrawn exhibits from use at trial. The Court cannot anticipate to what other use the exhibits could be put. However, the Court believes the parties can be guided by the following analysis finding documents pre-dating the MOU irrelevant. *See also supra* note 1 and accompanying text.

> FN8. CHS again argues that these exhibits cannot be authenticated. The Court will not rule on this argument until Staten Island has had an opportunity to authenticate the documents, to the extent they are admissible, at trial. *See supra* note 2 and accompanying text.

As stated above, the "standard of relevance established by the Federal Rules of Evidence is not high." *Southland,* 760 F.2d at 1375. Evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant. Fed.R.Evid. 401.

*10 Here, Staten Island's proposed exhibits that predate the MOU are irrelevant, such that admitting them in a jury trial would contravene Rules 401 and 402 and serve no purpose. The MOU states: "The Contract is terminated as of the date of this MOU, all of the obligations in the contract are released." (MOU § 8.) The MOU continues that "[a]ny payments due or to become due to CHS pursuant to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 1026515 (S.D.N.Y.)

Page 10

(Cite as: 2005 WL 1026515 (S.D.N.Y.))

the Contract, other than payments referred to herein, are released." (MOU § 9.) The MOU then explicitly references outstanding debts owed by Staten Island and outlines a method for addressing any objections Staten Island may have to payment of the debts. (See, e.g., MOU § 9(D) (Staten Island "shall pay, or state specifically its reasons for not paying, within five (5) business days after CHS supplies the information and corrections [to the bills], which reasons CHS may address or cure within (5) days of receipt. If no agreement can be reached the parties may resort to an action for payment.").) The MOU unambiguously applies to all the outstanding payments at issue in this case and operated as a release of any obligation CHS may have had and breached under the Contract. Thus, documents that predate the MOU do not tend to make the existence of any fact at issue in this litigation more or less probable. [FN9]

> FN9. Again, it is worth noting that Staten Island has not cross-claimed against CHS for breach of obligations owed under the Contract. Staten Island's sole cross-claim was for indemnification should it be found liable to the original plaintiff in this action, CFC. (See Answer (attached to CHS's First Reply Ex. 5) ¶ 5.)

Proposed exhibits HHH and III post-date the MOU and thus cannot be grouped into the above analysis. Exhibit HHH is a facsimile memorandum from a Staten Island employee to CHS, dated September 16, 1998, concerning discrepancies in a billing invoice. CHS claims the discrepancies were corrected and therefore the memorandum is moot. Staten Island offers no support for this proposed exhibit. However, to the extent Staten Island wishes to demonstrate it was justified in not making the payments required by the MOU because CHS also breached the MOU, the exhibit may be relevant. On the present record, it is impossible to discern whether the memorandum would be relevant to show CHS breached the MOU. Therefore, the Court reserves judgment on its admissibility until a proper factual background is laid.

Exhibit III is a facsimile cover sheet from Tom Schember of CHS to a Staten Island employee indicating that Schember was attempting to contact Staten Island by telephone but his calls went unreturned. The cover sheet's handwritten notation purportedly shows that a Staten Island employee returned Schember's call one day prior but had yet to hear back from him. Again, it is possible that the parties' failure to communicate justifies Staten Island's non-payment under the MOU; however, this is impossible to determine with certainty on the current record. Therefore, the Court reserves judgment on the admissibility of exhibit III until it is put in its proper factual context.

Thus, the Court finds on the current record that Staten Island's proposed exhibits A, B, C, D, E, F, G, H, I, J, K, L, M, N, P, Q, R, S, T, U, V, W, X, Y, Z, AA, BB, CC, DD, EE, FF, GG, HH, II, JJ, KK, LL, MM, NN, OO, PP, QQ, SS, TT, UU, VV, WW, XX, YY, ZZ, AAA, BBB, CCC, DDD, EEE, and FFF are irrelevant. Although this Court will resolve relevance questions about evidence in favor of admissibility, the Court will not admit irrelevant documents simply because they are offered. Based on the current record these proposed exhibits will not be admitted at trial. The Court reserves judgment as to exhibits HHH and III until a proper factual background is laid.

Conclusion

*11 For the reasons set forth above, the Court grants in part and denies in part CHS's first motion in limine, and grants in part and reserves judgment in part regarding CHS's second motion in limine. The Court finds on the current record that Staten Island's proposed exhibit AAAA is admissible to impeach Magaro under Rule 609(a)(2), and that proposed exhibits A, B, C, D, E, F, G, H, I, J, K, L, M, N, P, Q, R, S, T, U, V, W, X, Y, Z, AA, BB, CC, DD, EE, FF, GG, HH, II, JJ, KK, LL, MM, NN, OO, PP, QQ, SS, TT, UU, VV, WW, XX, YY, ZZ, AAA, BBB, CCC, DDD, EEE, and FFF are irrelevant. The Court reserves judgment as to exhibits HHH and III until a proper factual background is laid. Each of these preliminary rulings, made under Rule 104 of the Federal Rules of Evidence, is subject to change as the case unfolds.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.