

Slip Copy

2005 WL 612723 (S.D.N.Y.)

(Cite as: 2005 WL 612723 (S.D.N.Y.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
UNITED STATES OF AMERICA, Plaintiff,
v.
Carl VAN PUTTEN, Defendant.
No. 04 CR. 803(PKL).

March 15, 2005.

David N. Kelley, United States Attorney for the Southern District of New York, New York, NY, Harry Sandick, Joshua Goldberg, for United States.

Bobbi C. Sternheim, Rochman Platzer Fallick Sternheim Luca & Pearl L.L.P., New York, NY, for Defendant.

*OPINION AND ORDER*

LEISURE, J.

*1 Defendant Carl Van Putten is charged with violating sections of the United States Code relating to unlawful, intentional murder while engaged in a conspiracy to distribute crack cocaine. Specifically, the Indictment alleges that on or about October 11, 1995, while engaged in a conspiracy to possess with intent to distribute and to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(b)(1)(A), defendant and others, unlawfully, intentionally, and knowingly killed, counseled, commanded, induced, procured and caused the intentional killing of rival drug dealer Orlando Curet, a/k/a "Pete," near 805 Hunts Point Avenue in the Bronx, New York in violation of 21 U.S.C. 848(e)(1)(A) and 18 U.S.C. § 2. Defendant's trial is scheduled to begin on March 28, 2005.

*BACKGROUND*
In its instant proffer, the Government alleges that defendant and others were engaged in a large-scale conspiracy to distribute crack cocaine in the Hunts Point area of the Bronx from 1995 through 1999. Specifically, the Government contends that defendant was a "manager" in this operation, headed by Andrew Lang, [FN1] which involved selling crack cocaine and supervising "pitchers" and lookouts on Manida Street and other areas throughout the Hunts Point neighborhood. The Government alleges that defendant's home served as a "stash house" to store drugs for sale. During the course of this conspiracy, the Government contends that Lang and Van Putten, along with others, maintained the conspiracy through the use of force and intimidation with firearms obtained for that purpose. Around October 1995, it is alleged that a territorial dispute emerged between Lang's organization and the victim in this case, Orlando Curet. On October 11, 1995, the Government maintains that Lang and his associate, Jose Sanchez Echevarria, became involved in an argument with Curet near Hunts Point Avenue during which Curet fired several shots at Lang, hitting Echevarria's car. After fleeing, the Government asserts that Lang hired three individuals to murder Curet, defendant Carl Van Putten, Clarence Jackson and Anthony Ramirez. Shortly thereafter, according to the Government, Curet emerged from in front of a store located at 805 Hunts Point Avenue and was shot by all three assailants, who then fled. Curet later died from his wounds.

> FN1. Lang was convicted in this Court before Judge Shira A. Scheindlin, No. S3 02 Cr. 1444(SAS), in July 2004 for numerous charges relating to this alleged conspiracy to distribute crack cocaine.

In the present *in limine* motion, the Government seeks a ruling that the proffered evidence is directly admissible to prove the crime charged. In the alternative, the Government seeks a ruling that the evidence is properly admitted as evidence of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 2

2005 WL 612723 (S.D.N.Y.)

(Cite as: 2005 WL 612723 (S.D.N.Y.))

motive, opportunity, intent, preparation, plan, knowledge, and absence of mistake or accident pursuant to Federal Rule of Evidence 404(b). The evidence cited falls into four readily distinguishable categories:
(1) Evidence of prior drug dealing arrests, consisting of: [FN2]

> FN2. The Government also contends that defendant has been arrested and convicted in several other instances relating to controlled substances, but only seeks to admit the two listed here at this time for use in its case-in-chief. However, the Government wishes to reserve its right to use the other arrests and convictions if given the opportunity to cross-examine defendant, and if a rebuttal case is pursued. Therefore, the Court will now only address the two following convictions in this category.

a. July 8, 1997 guilty plea to a Class A Misdemeanor under New York State law for selling and possessing a controlled substance in the third degree. This arrest occurred pursuant to defendant selling crack cocaine to an undercover New York City Police Officer ("NYPD officer" or "NYPD") on the corner of Manida Street and Lafayette, the same corner where the alleged dispute between Lang and Curet occurred.
*2 b. January 25, 1998 guilty plea to possession of a controlled substance in the seventh degree. The sale to an undercover officer here occurred near the Manida Street location at the corner of Spofford and Faille Avenues. The Government also seeks to admit that defendant identified himself as "James Clayton" when arrested.
(2) Evidence of prior drug dealing activity, consisting of:
a. Co-conspirator's testimony that at various times during the alleged conspiracy, defendant and other co-conspirators also sold cocaine, marijuana, and small amounts of heroin in furtherance of the conspiracy.
(3) Evidence of firearms possession, consisting of:
a. Unspecified evidence that defendant, Lang, and others possessed and provided firearms in furtherance of the conspiracy.
b. Unspecified evidence that defendant provided a shotgun to another manager in Lang's organization, Fermin San Martin, which San Martin later used to shoot at a worker defendant had brought into the organization.
(4) Evidence of a violent confrontation, consisting of:
a. Unspecified evidence that, around January 1996, Lang was called on to aid a former NYPD officer with a personal dispute. Lang brought San Martin and defendant to help resolve the dispute, but the confrontation turned violent and the former NYPD officer discharged his service revolver.

The Government argues that the above proffered evidence is directly admissible in its case-in-chief to show that Van Putten was inexorably involved in the conspiracy with Lang, and to complete the story of how and why Lang trusted defendant to murder Curet. In the alternative, the Government offers that the above is properly admitted pursuant to Rule 404(b), and that some of the evidence constitutes *Giglio* material for Government cooperators.

Defendant argues that the proffered acts are not admissible as prior acts to the extent that they occurred after the October 11, 1995 murder of Curet alleged in the Indictment. Also, because the other drug sales proffered were not of crack cocaine and the 1996 incident does not resemble the crime charged herein, defendant asserts that the proffered evidence is beyond the scope of the Indictment both temporally and substantively. Regarding Rule 404(b) admissibility, defendant states that the Government's proffer is premature as defendant has yet to assert his defense, formally placing the issues before the trier of fact. Moreover, defendant argues, assuming defendant ultimately contests any issues permitting admission of 404(b) evidence at trial, the above proffered evidence, to be relevant, would require that the jury make the impermissible inference that the evidence implicates defendant's propensity to do that which is charged in the Indictment. Finally, defendant argues that the proffered evidence showing that defendant was a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 612723 (S.D.N.Y.)

(Cite as: 2005 WL 612723 (S.D.N.Y.))

Page 3

drug dealer and gun possessor, after the October 11, 1995 murder of Curet, is unduly prejudicial and far less probative than any acts of defendant prior to the murder.

## DISCUSSION
### I. Motions *in Limine*

*3 The **purpose** of a **motion** *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984) (noting that, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials"); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir.1996); *Nat'l. Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F.Supp. 276, 283 (S.D.N.Y.1996). Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *See Noble v. Sheehan*, 116 F.Supp.2d 966, 969 (N.D.Ill.2000); *see also Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94 Civ. 5520, 1998 WL 665138, at *3 (S.D.N.Y. Sept. 25, 1998) (denying a motion *in limine* to preclude presentation of evidence regarding a potential punitive damages claim because the motion was too sweeping in scope to be considered prior to trial). Indeed, courts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context. *See Nat'l. Union Fire Ins. Co.*, 937 F.Supp. at 287 (citing *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F.Supp. 1398, 1400 (N.D.Ill.1993)). Further, the Court's ruling regarding a motion *in limine* is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41.

### II. Admissibility of the Proffered Evidence as Direct Proof of the Crimes Charged in the Indictment

"It is well established in the Second Circuit that 'evidence of uncharged criminal activity is not considered other crimes evidence under Fed.R.Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." ' *United States v. Nektalov*, 325 F.Supp.2d 367, 370 (S . D.N.Y.2004) (Leisure, J.) (citing *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir.2000)). Rule 404(b) only applies to evidence of other crimes "extrinsic to the charged crime." 2 Weinstein's Federal Evidence § 404.20(2)(b). Courts often refer to evidence of other crimes, wrongs, or acts as extrinsic evidence, because it is evidence of acts that are unrelated to the charged crime. Rule 404(b) governs the admissibility only of extrinsic evidence; it is not concerned with intrinsic evidence. *Carboni*, 204 F.3d at 44. Where the Government must prove a conspiracy existed, evidence of acts committed in furtherance of the conspiracy is not Rule 404(b) "other acts" evidence, but rather, it is direct evidence of the acts charged in the Indictment. *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir.1992); *see also* 2 Weinstein's Federal Evidence § 404.22 (stating that acts done in furtherance of the conspiracy during the time the conspiracy is operative are considered intrinsic evidence of a conspiracy and are not subject to 404(b) considerations as "[s]uch acts are not other crimes at all, but are part of the conspiracy itself") (citing *United States v. Williams*, 205 F.3d 23, 22-34 (2d Cir.2000)). If the conspiracy involves narcotics, as here, the Second Circuit has looked favorably on the admission of a gun or firearms "because drug dealers commonly keep firearms on their premises as tools of the trade." *United States v. Becerra*, 97 F.3d 669, 671; *see also United States v. Soto*, 959 F.2d 1181, 1187 (2d Cir.1992); *United States v. Roldan-Zapata*, 916 F.2d 795, 804-05 (2d Cir.1990) . If evidence is deemed admissible as direct proof of the charged crimes, as distinguished from "others acts" under Rule 404(b), the Government need not fulfill Rule 404(b)'s notice requirement and the Court is not required to instruct the jury against making an improper inference of criminal propensity. *Nektalov*, 325 F.Supp.2d at 372. However, "where it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 612723 (S.D.N.Y.)

Page 4

(Cite as: 2005 WL 612723 (S.D.N.Y.))

under Rule 404(b)." *Id.*

**\*4** Here, the Government must prove four elements beyond a reasonable doubt pursuant to 21 U.S.C. § 848(e): (1) defendant is guilty of the narcotics conspiracy as charged in the Indictment; (2) the conspiracy involved at least fifty grams of crack cocaine as charged, *see* 21 U.S.C. § 841(b)(1)(A); (3) while engaging in the conspiracy, defendant either intentionally killed or counseled, demanded, induced, procured, or caused the intentional killing of Orlando Curet; and, (4) that Curet's killing actually resulted from defendant's actions. *See United States v. Walker,* 142 F.3d 103, 113 (2d Cir.1998). To prove the element of conspiracy, the Government must show that: (1) a drug conspiracy existed on the date of Curet's murder; and (2) defendant knowingly and willfully became a member of the conspiracy. *See United States v. Honken,* 271 F.Supp.2d 1097, 1113-14 (D.Iowa 2003) (describing the elements for conspiracy under § 848(e) as "necessarily essential elements of 'murder while engaging in a drug conspiracy' by virtue of the first element of the charged offense"); *see also Ingram v. United States,* 360 U.S. 672, 677-78 (1959). As stated above, in order for the proffered evidence to be admissible as direct evidence it must show acts which (1) arose out of the same transaction or series of transactions as the charged offense; (2) are inextricably intertwined with the evidence regarding the charged offense; or, (3) are necessary to complete the story of the crime on trial. *Nektalov,* 325 F.Supp.2d at 370. The evidence's probative value also must not be substantially outweighed by its possible prejudicial effect. Fed.R.Evid. 403.

Defendant argues that, because the Government did not charge defendant with a count of conspiracy separate from the charged crime, it cannot use evidence of a conspiracy as intrinsic evidence of the charged crime. However, this argument fails because, as stated above, the Government must prove that a conspiracy existed beyond a reasonable doubt as one element of the crime charged herein. Further, the determination of which statute to charge the defendant is the province of the prosecutor. It is enough for this Court that the Government proffer evidence intrinsically relevant to the crime charged, including the element of conspiracy, for the evidence to be potentially admissible as direct evidence of the crime charged. Thus, on the present record, it seems clear to the Court that most of the proffered evidence is intrinsically relevant to proving that a conspiracy to distribute crack cocaine existed. Almost all of the proffered evidence constitutes overt acts in furtherance of the conspiracy element of the crime charged in the Indictment. It is not dispositive that the Government need not necessarily prove an overt act, because an act in furtherance of a conspiracy is inexorably intertwined with evidence that a conspiracy existed.

It is true, as defendant argues, that his arrests for the sale and possession of crack cocaine in 1997 and 1998 did not implicate any other alleged co-conspirator. However, the arrests were for sale of the same drug as charged in the Indictment, the sales occurred within blocks of the store in front of which Curet was shot and near or on the street defendant allegedly "managed" for Lang pursuant to the alleged conspiracy. While not conclusive evidence, it is relevant to show that defendant conspired to sell crack and therefore intrinsically relevant to the conspiracy element of the crime charged. The same cannot be said for the Government's proffer that Van Putten identified himself as "James Clayton" when arrested on January 25, 1998. The Government has not suggested, and the Court cannot see, how this misidentification is related to any aspect of the charge, and unless and until that foundation is laid, the Court cannot yet conclude that its relevant.

**\*5** Regarding the evidence of sales of drugs other than crack, it, too, is relevant to whether a conspiracy existed. The sales will be evidenced by co-conspirator testimony and, according to the Government, involved the same people, same locations, and approximately the same time period as charged in the Indictment. That the sales were for drugs other than the crack charged in the Indictment is not dispositive. Acts in furtherance of the conspiracy are generally relevant to evidence the conspiracy. The Government alleges that the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 612723 (S.D.N.Y.)

(Cite as: 2005 WL 612723 (S.D.N.Y.))

Page 5

members of the charged conspiracy turned to selling other drugs to avoid police detection. Protecting the conspiracy from legal liability ensures its survival and, therefore, most certainly furthers its goals.

As for the firearms possession, the Government alleges that defendant and others obtained and possessed various firearms and distributed firearms to members of the conspiracy to protect and strengthen the organization. This would clearly further the conspiracy. What is not clear to the Court is how co-conspirator San Martin's later use of one of these weapons to shoot a "worker" that defendant had previously introduced to the conspiracy is relevant to any element of the crime charged. The alleged shooting only tangentially involved defendant as supplier of the weapon. Further, the shooting would not seem to further the conspiracy as injuring workers is not generally viewed as a productive business strategy. Until the Government can connect this shooting to the crime charged, the Court cannot rule it relevant to the crime charged.

Finally, evidence of a violent confrontation involving Lang, San Martin, and defendant in January of 1996 is relevant to prove a conspiracy existed. That Lang took defendant along to a potentially dangerous meeting evidences a relationship of trust between the conspirators which the Second Circuit has stated is relevant to evidence the conspiracy itself. *See Williams*, 205 F.3d at 33-34 (allowing the Government considerable leeway in a conspiracy prosecution to offer evidence of other offenses "to inform the jury of the background of the conspiracy charged, to complete the story of the crime charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed"); *United States v. Pipola*, 83 F.3d 556, 565-66 (2d Cir.1996) (evidence of various bad acts was admissible to show the criminal relationship and co-conspirators' relationship of mutual trust).

Defendant argues that, because the arrests and the January 1996 confrontation constitute subsequent bad acts occurring after the date of the alleged killing, October 11, 1995, and because the Indictment does not require proof that the conspiracy existed after that date, the evidence is not relevant to whether the conspiracy existed when Curet was murdered. While defendant's argument has a certain superficial appeal, it seems clear that evidence tending to show that a conspiracy existed after, especially shortly after in the case of the January 1996 confrontation, the charged crime also tends to show that a conspiracy existed when the charged crime occurred. *See United States v. Towne*, 879 F.2d 880, 886 (2d Cir.1989) (Pierce, J.) (finding that defendant's possession of a handgun on days other than the single date specifically charged in the indictment was not "other crimes" evidence within the meaning of 404(b) because the "continuous possession of the same gun does not amount to a series of crimes, but rather constitutes a single offense"); *see also Anderson v. United States*, 417 U.S. 211, 221-22 (1974) (admitting defendant's post-conspiracy false testimony to evidence conspiracy); *United States v. Koppers Co., Inc.*, 652 F.2d 290, 298 (2d Cir.1981) (Mansfield, J.) (admitting evidence of acts which occurred after the end of the charged conspiracy because "post-conspiracy evidence is admissible if it is probative of the existence of the conspiracy"). In the instant case, the proffered acts did not occur after the conspiracy cited in the Indictment, but during and in furtherance of the conspiracy. The Government has alleged that the conspiracy was ongoing prior to the date of Curet's murder through 1999, thus the conspiracy in the Indictment encompasses the dated proffered evidence. It is true that the Government did not submit dates for the firearms and other drug dealing acts alleged, however, the proffer states that these acts occurred in furtherance of the conspiracy and the Government has stated that they occurred during the time period when the conspiracy charged in the Indictment was operative. If that turns out to not be the case, the Court may revisit its *in limine* decision in accordance with Rule 104. It is, of course, true that the acts would be more probative of the existence of a conspiracy on October 11, 1995 if they occurred prior to, on, or nearer in time to, that date. However, except for the 403 balancing test the Court applies below, the weight of the evidence is a jury consideration that does not affect the intrinsic

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 612723 (S.D.N.Y.)
(Cite as: 2005 WL 612723 (S.D.N.Y.))

Page 6

relevance of the acts themselves to the charged crime of murder while engaged in a conspiracy to distribute and possess crack cocaine.

*6 Therefore, the proffered evidence of bad acts, excluding evidence of defendant's misidentification as "James Clayton" and San Martin's shooting of a "worker," is intrinsic evidence tending to prove the conspiracy element of the crime charged in the Indictment. Whether the proffered evidence is admissible depends on whether its probative value is not substantially outweighed by its prejudicial effect, which is balanced, *infra* Part III.

III. Whether the Probative Value of the Proffered Evidence is Substantially Outweighed by the Possibility of Prejudice

Though the Court finds the above cited evidence intrinsically relevant to the Indictment charge, the Court must also determine whether the evidence's probative value is substantially outweighed by its prejudicial effect. This is the edict of Rule 403 which states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. Defendant argues that the proffered evidence threatens improper prejudice because it constitutes evidence that defendant was a gun-carrying drug dealer after the shooting here charged. Further, defendant argues that, because all the proffered evidence concerns acts which occurred after the fact, the evidence's probative value is diminished. Defendant's argument ultimately fails, however, as all evidence which supports a murder charge is likely to be prejudicial. That is not the standard. The standard is whether the evidence is so prejudicial that it substantially outweighs its probative value. Of course evidence of drug dealing and gun possession will prejudice defendant, as will evidence that he shot a man to death in front of a store in the Bronx with two accomplices. However, as stated above, the proffered evidence is probative to prove the element of conspiracy that is contained in the charge. Further, the Court does not believe that evidence of drug dealing and gun possession is substantially more prejudicial than evidence of a murder.

Therefore, within the context of the charged crime, the proffered evidence is probative of the conspiracy element in the Indictment and does not unduly prejudice defendant. Far more prejudicial evidence has been allowed by this Court employing the same balancing test. See, e.g., *Williams*, 205 F.3d at 34 (finding no unfair prejudice from the introduction of prior act evidence where the evidence did not concern conduct more serious than the charged crime); *United States v. Birbal*, 62 F.3d 456, 464 (2d Cir.1995) (upholding the addition of evidence as more probative than prejudicial in a prosecution for conspiracy to distribute heroin constituting graphic details that an alleged customer died from an overdose shortly after allegedly purchasing heroin from defendants). The Court does not see the proffered evidence that is intrinsically relevant to the crime charged as posing a danger of improper prejudice to defendant.

IV. Other Theories of Admissibility for the Evidence of Misidentification and the San Martin Shooting

A. 404(b) "Other Acts" Evidence

*7 The Government contends that the above proffered evidence is admissible as "other acts" evidence, pursuant to Rule 404(b), for purposes other than to disparage a defendant's character. See *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir.1996); *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir.1994). Because the Court finds almost all of the proffered evidence is intrinsically relevant to the crime charged, the Court here only addresses the evidence of defendant's self-misidentification when arrested in 1998 and the evidence that San Martin shot another member of the conspiracy with a gun provided by defendant. See *Nektalov*, 325 F.Supp.2d at 372("Furthermore, evidence of an intrinsic act offered as direct proof of the crime charged will, by definition, satisfy Rule 404(b), which prohibits bad acts evidence only where offered solely to 'prove the character of a person in order to show action in conformity therewith." ') (citing *Bowie*, 232 F.3d at 927); see also *id.* (engaging in a 404(b) analysis because the proffered bad acts occurred *prior to* the commencement of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 7

2005 WL 612723 (S.D.N.Y.)

(Cite as: 2005 WL 612723 (S.D.N.Y.))

charged conspiracy and therefore were not necessarily intrinsic evidence of the conspiracy).

Federal Rule of Evidence 404(b) provides in pertinent part:
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

Fed.R.Evid. 404(b). The Supreme Court has set forth four requirements that should be followed by courts exercising their discretion under Rule 404(b): "Prior bad-acts evidence must be (1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial. In addition, (4) at defendant's request, the district court should give the jury an appropriate limiting instruction." *United States v. Downing*, 297 F.3d 52, 58 (2d Cir.2002) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)).

The Second Circuit has adopted an "inclusionary approach" under Rule 404(b), admitting evidence of prior crimes, wrongs or acts "unless it is introduced for the sole purpose of showing defendant's bad character, or unless it is overly prejudicial under Fed.R.Evid. 403 or not relevant under Fed.R.Evid. 402." *Pascarella*, 84 F.3d at 69 (citations omitted); see also *United States v. Colon*, 880 F.2d 650, 656 (2d Cir.1989). The Court need only determine by a preponderance of the evidence under Rule 104(a) whether a jury could reasonably find that defendant committed the proffered prior acts. See *Huddleston*, 485 U.S. at 687-90.

In defining the parameters of the admissibility of Rule 404(b) evidence, the Second Circuit has noted,
> "evidence that does not directly establish an element of the offense charged [is admissible] in order to provide background for the events involved in the case." In particular, evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense.

*8 *Inserra*, 34 F.3d at 89 (quoting *United States v. Skowronski*, 968 F.2d 242, 246 (2d Cir.1992)). Furthermore, "[w]here a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that defendant acted with the state of mind necessary to commit the offense charged." *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir.1993).

Based on the Government's current proffer, the Court cannot envision the evidence that defendant identified himself as "James Clayton" to police when arrested for criminal sale of a controlled substance in 1998 as admissible for any of the purposes listed in Rule 404(b), nor is it relevant to complete the story of the crime charged or demonstrate context. Unless the Government can further connect this evidence to the crime charged in the Indictment, the Court cannot admit it against defendant pursuant to Rule 404(b).

The same can be said for evidence that San Martin, defendant's co-conspirator, used a gun defendant provided to shoot a member of the conspiracy that had been introduced to the conspiracy by defendant. This is not evidence of defendant's "other act" but rather that of San Martin. The Government does not mention if defendant knew of San Martin's planned use for the gun. Without that knowledge, the evidence is only relevant to show defendant's possession and distribution of firearms. To that extent, the Government can show that defendant distributed a gun to San Martin but not for what San Martin ultimately used the gun. Unless the Government further connects this evidence to the crime charged, the Court cannot admit it under Rule 404(b).

B. *Giglio Material*

The Government also contends that, to the extent the proffered evidence involves the bad acts of the Government's own witnesses, it is admissible on direct examination pursuant to *Giglio v. United States*, 405 U.S. 150 (1972). Again, because the Court finds almost all of the proffered evidence is intrinsically relevant to the crime charged, the Court here only addresses the evidence of defendant's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 612723 (S.D.N.Y.)

(Cite as: 2005 WL 612723 (S.D.N.Y.))

Page 8

self-misidentification when arrested in 1998 and the evidence that San Martin shot another member of the conspiracy with a gun provided by defendant.

Under *Giglio* and *United States v. Bagley*, 473 U.S. 667 (1985), the Government must reveal the bad acts of its own witnesses to defendant because it bears on the witnesses' credibility. The Government can elicit this information from its witnesses on direct examination in order to defuse the impact of "bad acts" on the witnesses' credibility and to "avoid the appearance that [the Government is] concealing impeachment evidence from the jury." *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir.1991) (finding it proper to allow the Government to elicit testimony from its witnesses on direct examination regarding grisly murders and dismemberments because the witnesses participated in the credibility impeaching acts); *United States v. Brady*, 26 F.3d 282, 288-89 (2d Cir.1994) (affirming the district court when it permitted the Government to examine its witness regarding crimes the witness pled guilty to as part of a cooperation agreement); *United States v. Louis*, 814 F.2d 852, 856 (2d Cir.1987) (finding it proper to admit accomplice witnesses' testimony regarding his own conviction because the prosecution can elicit such evidence for proper purposes, including "disclosure of matters damaging to the credibility of a witness and contradiction of any inference that the Government is concealing a witness' bias").

*9 The evidence of defendant's misidentification is clearly not *Giglio* material on the current record as it involved only the alleged bad acts of defendant. However, the evidence of San Martin's shooting is arguably *Giglio* material if San Martin testifies. The Government has not stated whether San Martin will testify or how they will present the evidence regarding the shooting. If San Martin testifies, it appears the evidence of the shooting would be admissible to ensure the Government presents a full and accurate picture of San Martin's background. Because the Government has not detailed its proffer of this evidence, the Court reserves judgment on its admissibility until it is clear how the Government intends to present this evidence. The Court also notes that the evidence must survive the Rule 403

balancing test, engaged in, *supra*, Part III.

### CONCLUSION

Based on the above and pursuant to Federal Rules of Evidence 104, 401 and 403, the Court preliminarily GRANTS in part and DENIES in part the Government's *in limine* motion to admit evidence of defendant's other acts. Specifically, the Court finds that the evidence proffered by the Government of, (1) defendant's two arrests in 1997 and 1998; (2) defendant's other acts of drug dealing in furtherance of the drug conspiracy alleged in the Indictment; (3) defendant's gun possession and distribution in furtherance of the drug conspiracy alleged in the Indictment; and, (4) defendant's participation in the January 1996 violent confrontation, is admissible as intrinsic evidence of the crime here charged. The Court reserves judgment on the admissibility of evidence of defendant's provision of a false name during his 1998 arrest and the evidence that co-conspirator San Martin shot another member of the conspiracy using a gun provided by defendant.

SO ORDERED

2005 WL 612723 (S.D.N.Y.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.