**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SUSAN E. WOOD,<br><br>                  Plaintiff,<br><br>     - against -<br><br>SEMPRA ENERGY TRADING CORP.,<br><br>                 Defendant. | CIVIL ACTION NO.<br>3:03-CV-986 (JCH) |

**AFFIDAVIT OF WAYNE KUBICEK**

I, Wayne Kubicek, being duly sworn, depose and say:

1.      I am over the age of eighteen years and understand the obligations of an oath. This affidavit is based upon my personal knowledge and, where indicated, my information and belief.

2.      I have been employed at Sempra Energy Trading Corp. ("Sempra" or "the Company") since February, 2000. I hold the title Director and Assistant General Counsel.

3.      I worked with outside counsel at Paul, Hastings, Janofsky & Walker LLP ("Paul, Hastings") to produce documents in the above captioned matter. I am knowledgeable about and possess information regarding the search Sempra undertook for documents responsive to Plaintiff Susan Wood's Requests for Production of Documents.

4.      In conducting searches for documents requested during the course of litigation, my practice is to review and analyze each document request with outside counsel to isolate its subject matter. After identifying the subject matter of the request, my practice is to determine which Company employee(s) may be in possession of responsive documents. My practice is to then contact each individual who may possess responsive documents and request

that he or she conduct a search for the requested records. In instances where it is determined that responsive documents may exist in electronic form, a search is conducted of the Company's electronic records by the individual who possesses the information, Sempra's Information Technology department, or both.

5.    I have both specific and general recollections as to the steps I took, and directed others to take, to search for documents responsive to each of Plaintiff's document requests. The steps for which I have specific recollections are set forth below.

6.    As background, Sempra is a full-service energy trading company. The majority of the Company's marketing and trading employees, as well as their direct operations and support personnel, work on an open trading floor, with employees side by side in front of computer screens and in rows on raised tiers behind each other. Employees in the same commercial or trading group are seated adjacent or in close proximity to each other. There are no walls or partitions between people on the trading floor. Because of the lack of privacy on the trading floor and the ability to view one another's computer screens, most employees situated on the trading floor, do not communicate confidential, personal or sensitive information via electronic mail. This practice is not limited to employees who work on the trading floor. For example, Michael Goldstein, Sempra's General Counsel, wrote to Plaintiff on July 6, 2001 about the "Howley Incident": "[I] do not maintain e-mail files on confidential matters such as these and would appreciate your not e-mailing me more materials. Of course, [I] am always happy to speak to you personally."  A true and accurate copy of Mr. Goldstein's communication is attached hereto as Exhibit A. During the course of Plaintiff's employment, Sarathi Roy, Joseph Howley, Jackie Mitchell, Brian Cumming and Plaintiff each worked on Sempra's trading floor. Executives sit in adjacent, fully windowed offices with a clear view of the trading floor.

7.    Prior to commencing the instant action, Plaintiff had filed a Charge of Discrimination with the Connecticut Commission of Human Rights and Opportunities ("CHRO Charge").    In connection with preparation of this affidavit, I inquired of Mr. Cookingham, Sempra's Chief Compliance and Security Officer, as to his involvement in the search for documents in connection with that proceeding.  Mr. Cookingham advised me that he was directed by Sempra's General Counsel, Michael Goldstein, to conduct a search for documents related to Susan Wood.  Mr. Cookingham further advised me that (i) he contacted various Sempra employees and requested that they provide to him any documents in their possession that related to Susan Wood; (ii) he specifically recalls asking these individuals to examine their computer records as part of this search; (iii) while he cannot recall exactly who he contacted he does recall collecting documents from Denise Freda; (iv) he conducted a search of his records, including his emails; and (v)  after he completed his search for documents related to Plaintiff's CHRO Charge, he forwarded a copy of those records to Michael Goldstein.  In connection with the preparation of this affidavit, Michael Goldstein confirmed to me that, while he does not have a specific recollection of doing so, it was his practice to forward all such documents to outside counsel, Paul, Hastings.

8.    On information and belief, on or about November 1, 2003, Plaintiff served on Sempra's outside counsel Plaintiff's First Set of Interrogatories and Requests for Production of Documents ("Requests").  A true and accurate copy of this request is attached as Exhibit B.

9.    On information and belief, outside counsel subsequently forwarded a copy of the Requests to Michael Goldstein.  Michael Goldstein, in turn, subsequently forwarded a copy of Plaintiff's discovery requests to me.

10.    Plaintiff's document Requests were as follows:

1.    *Please produce any and all documents which relate to the hiring of Plaintiff.*

2.    *Please produce any and all documents which relate to the compensation paid to Plaintiff.*

3.    *Please produce any and all documents which relate to the termination of Plaintiff's employment.*

4.    *Please produce any and all documents which relate to the calculation and payment of bonuses paid to employees of Defendant in Stamford, Connecticut from 1999 through the present for employees at the Assistant Vice President and Vice President level.*

5.    *Please produce any and all documents relating to the executive search firm used by Defendant to recruit Plaintiff on Defendant's behalf and the efforts, promises, and inducements made by such search firm to induce Plaintiff to join Defendant.*

6.    *Please produce any and all documents which related to the incident between Mr. Howley ("Howley") and the Plaintiff ("Howley Incident") as alleged in the Complaint and responded to in Defendant's Answer.*

7.    *Please produce any and all documents which relate to the investigation of the Howley Incident.*

8.    *Please produce any and all documents which constitute a final report by the Defendant as to assessing responsibility regarding the Howley Incident, and any actions taken in response thereto.*

9.    *Please produce any and all documents which relate to any action or discipline by Sempra taken against Mr. Howley by reason of the Howley Incident.*

10.   *Please produce any and all documents which reflect communications between Sarathi Roy ("Roy") and Howley from 1999 through the present.*

11.   *Please produce any and all documents which reflect communications by Sempra's General Counsel Michael Goldstein ("Goldstein") relating to Susan Wood, including without limitation, any investigation and any reports or actions taken as a result of the Howley Incident.*

12.   *Please produce any and all documents which reflect communications by (i) Jackie Mitchell ("Mitchell"), (ii) Steve Prince ("Prince"), (iii) Mr. Cookingham ("Cookingham"), and/or (iv) Ms. Freda ("Freda"), relating to Susan Wood.*

13.   *Please produce any and all documents which relate to any explanation for the termination of Susan Wood.*

14.   *Please produce any and all documents which set forth any of Sempra's policies prohibiting employment discrimination ("Employment Policies").*

15.    *Please produce any and all documents which relate to Howley's job performance, including without limitation, performance reviews, reprimands or sanctions and/or future job prospects at Sempra.*

16.    *Please produce any and all documents which relate to Roy's job performance, including without limitation, performance reviews, reprimands or sanctions and/or future job prospects at Sempra.*

17.    *Please produce any and all documents which relate to any and all communications between Goldstein and Susan Wood.*

18.    *Please produce any and all documents which relate to any and all communications between Goldstein and Howley.*

19.    *Please produce any and all documents which relate to any and all communications between Goldstein and Mitchell relating to Susan Wood, Howley or Roy.*

20.    *Please produce any and all documents which relate to any and all communications to or from Prince relating to Susan Wood.*

21.    *Please produce any and all documents from 1999 through the present relating to employees investigated and/or disciplined at Sempra for violation of Sempra's Employment Policies.*

22.    *Provide a copy of all performance reviews of all employees at the Assistant Vice President level or higher in the Petroleum Derivatives Department of Sempra, and in the Gas Department of Sempra, from January 1, 1999 through the present.*

23.    *Provide the document Roy has identified as an electronic message sent from him to Susan Wood purporting to say that Susan Wood "would love to have one of the female employees in the office" as set forth in Roy's June 10, 2002 affidavit submitted to the Connecticut Commission on Human Rights and Opportunities ("Roy Affidavit").*

24.    *Produce any documents relied on by Roy to support the assertions he makes in the Roy Affidavit about Susan Wood.*

25.    *Provide any and all documents which relate to Steve Soule including his hiring, compensation and job performance.*

26.    *Provide any and all documents relating to Sempra's attempt to find Susan Wood another position at Sempra by anyone at Sempra after it was decided to terminate her from her position in the Petroleum Derivatives Group.*

27.    *Provide any and all documents and organization charts for the Gas and Petroleum Derivatives Department at Sempra.*

11.    A thorough review of the above Requests establishes that Plaintiff did not propound an all encompassing request for each and all documents related to her employment.

12.    Shortly after my receipt of the Requests, I reviewed and discussed their contents with Paul, Hastings' Attorney Peter Schultz.

13.    In connection with Request Nos. 6, 12, 13 and 20, I spoke directly with Steve Prince and David Messer regarding Plaintiff's document requests and requested that they review their computer files and any hard files for anything relating to Plaintiff including her hiring, compensation, termination, and the Howley incident. At his deposition, Mr. Messer recalled undertaking a search for responsive documents, including a search of his emails. I recall being present in Mr. Messer's office while he searched for responsive documents. In connection with preparing this affidavit, I confirmed with Mr. Prince that he undertook a search for responsive documents and otherwise complied with my request.

14.    In connection with Request Nos. 6, 10, 13, 18, 23, 24 and 26, I contacted Sarathi Roy and Joseph Howley and requested that they search their computer and hard files for any records in their possession that related to Plaintiff. Mr. Roy testified at his deposition that he conducted a search for the requested documents, including his emails. Mr. Howley also testified at his deposition that he searched for responsive documents, but could not locate any. I do not regard that as remarkable given the fact that Mr. Howley testified at his deposition that he deletes his emails about every two weeks. Mr. Howley further testified that he had limited interaction with Plaintiff, was not involved in the decision to terminate her employment and that he did recall communicating with anyone by email about the incident with Ms. Wood. Mr. Howley testified at his deposition that he recalled conducting a search of his hard files.

15.    On November 25, 2003, in response to Request Nos. 6 and 17, I requested

-6-

that Mark Parrott, a Sempra employee in the Information Technology department, provide me

with a copy of Plaintiff's emails from her start date, September 18, 2000, through June 27, 2001.

I had previously requested that Mr. Parrot provide me with copies of Plaintiff's emails from

approximately February 9, 2001, through the end of Plaintiff's employment. On December 18,

2003, I made a request of Mr. Parrott for any remaining Plaintiff's emails from September 2000

through January 2001.

      16.    On December 3, 2003, in connection with Request Nos. 23, 24 and all

other Requests, I contacted Mr. Parrott to inquire whether the Company maintained backup tapes

or other records of Instant Message communications sent or received by Sempra employees. Mr.

Parrott advised me that the Company does not maintain backup tapes of Instant Messages. Mr.

Parrott further advised that Ms. Wood had not saved any Instant Messages to her hard drive.

Notably, to the extent Sempra's employees are not communicating with one another in person or

by telephone, it is my understanding that most employees on the trading floor communicate via

Instant Messaging rather than by email.

      17.    On December 10, 2003, in connection with Request Nos. 6 and 7, I

contacted Mr. Parrott and requested emails in Brian Rickers' email archives from June 1, 2001

through March 8, 2002. In connection with Request Nos. 23 and 24, I also requested that Mr.

Parrot provide me with Sarathi Roy's email archives received by Mr. Roy from Ms. Wood

during the period January 15, 2002 through March 8, 2002.

      18.    On December 14, 2003, I received an email from Attorney Schultz

identifying certain additional information and documents needed to respond to Plaintiff's

discovery requests. Following receipt of Attorney Schultz' email, on December 18, 2003, and in

connection with Request Nos. 2 and 4, I requested that Denise Freda, Vice President – Human

Resources of Sempra, provide me with documents related to Plaintiff's 2001 bonus and salary increase for 2002.

19.     On December 18, 2003, in connection with Request Nos. 6, 7, 8, 9, 10, 11, 12, 17, 18, 19, 23 and 24, I also requested that Mr. Parrott conduct the following searches for electronic documents: (i) emails between Joe Howley and Sarathi Roy from June 20, 2001 to December 18, 2003; (ii) Jackie Mitchell's archived email files related to Plaintiff for the period September 1, 2000 to December 18, 2003; and (iii) emails related to Plaintiff in Michael Goldstein's archives from June 20, 2001 to April 1, 2002.

20.     On December 18, 2003, in connection with Request Nos. 1, 2, 4, 5, 6, 7, 11, 12, 19, 21, 22 and 26, I requested that Mr. Parrot search Ms. Mitchell's e-mail archives for September 1, 2000 to the present for any e-mails pertaining to Plaintiff, including e-mails to and from Plaintiff and any other messages in which her name appears.

21.     On January 12, 2004, in connection with Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 12, 13, 14, 15, 16, 21, 22, 25 and 27, in addition to Interrogatories propounded by Plaintiff, I requested from Ms. Freda the following information be provided to me: (1) from January 1, 1999 to present, the names of each Assistant Vice President and Vice President in the Natural Gas Group; (2) annual bonus received by each of those Assistant Vice Presidents and Vice Presidents from January 1, 1999 through 2003; (3) reasons for termination of Jennifer Dixon; Mary Rose Malchow; Peggy Rathmell; Linda Verona; Stacy Burke; Jason D'Alessandro; Aaron Finch; Robert Gola; Darren King; Eric Kuo; Michael McCall Ian Muir; Salvatore Penna; Michael Prosser; Kevin Schwartz; Stephen Soule; Alberto Vogel; Christopher Welch; Gregory Woulfe; (4) all performance reviews for all Vice Presidents and Assistant Vice Presidents in above groups for 2000-2002; (5) any e-mails or communications Ms. Freda may have had with Wood from

September 2000 through April 26, 2002; (6) any documents related to both Plaintiff and Joseph Howley, including Howley's performance reviews for 2000-2002, and any considered or actual reprimands against Howley between 2000-2002; (7) Mr. Roy's performance reviews for years 2000-2002 and any actual reprimands or sanctions taken by Sempra against Mr. Roy between 2000-2002; (8) any documents relating to any employee investigated and/or disciplined at Sempra for violating anti-discrimination or anti-harassment policies between September 2000 through April 26, 2002; (9) any organization charts for Natural Gas from January 1, 2000 through April 26, 2002.

      22.     On January 12, 2004, in connection with Request No. 10, I contacted Mr. Parrott to request an additional search for any emails between Mr. Roy and Mr. Howley relating to Plaintiff from March 2000 through June 20, 2001.

      23.     Denise Freda's role in Human Resources during Ms. Wood's term of employment was limited to a ministerial function in that she maintains employee files and processes hiring, termination and benefits information, but did not set policy or independently deal with employee misconduct or other such issues. Ms. Freda testified she had a very limited role in this case. At Ms. Freda's deposition on April 5, 2004, Ms. Freda also testified that she had only understood she was to search for and produce those emails running between herself and Ms. Wood. There was no testimony from Ms. Freda that she was in possession of any documents relating to Ms. Wood that had not been produced. I am informed and believe that following the deposition, at the direction of outside counsel, Ms. Freda conducted a thorough search of her emails and found no additional material related to Ms. Wood beyond that already produced. A copy of Ms. Freda's affidavit on this point is attached hereto as Exhibit C.

      24.     Plaintiff did not request any document production from Brian Cumming.

On April 14, 2004, I attended Brian Cumming's deposition. During his deposition, Mr. Cumming testified that he did not keep a personnel file for Plaintiff. No testimony was elicited from Mr. Cumming indicating that he was in possession of any documents related to Plaintiff that were not produced in this litigation.

25.     Sometime on or about April 2004, and in response to a document request made following Steve Prince's deposition, I requested certain financial records from Sempra's Accounting Department regarding the profitability of Sempra's various departments, including the Petroleum Derivatives department Plaintiff worked in. I reviewed the documents to determine whether the information requested was responsive to Plaintiff's requests for such data and forwarded responsive documents to Paul, Hastings. On information and belief, those documents were produced to Plaintiff.

26.     During the course of this litigation, I have personally reviewed and analyzed more than five thousand (5000) documents in connection with Sempra's efforts to respond to Plaintiff's Requests.

27.     I am informed and believe that during the course of this litigation, Paul, Hastings' Attorneys Mary Dollarhide and Peter Shultz have also inquired of various Sempra employees whether they were in possession of documents responsive to Plaintiff's Requests.

28.     I was in attendance at the depositions of Joseph Howley, Steve Prince, Michael Goldstein, Vincent Cookingham, Denise Freda, Sarathi Roy, Jackie Mitchell, Brian Cumming, and David Messer. In none of these depositions, did any individual testify that he or she was aware of a document responsive to a Request that Sempra had failed to produce.

29.     As further evidence of Sempra's attempt to locate documents pertinent to this action, there was also a word conducted in November 2003 of the emails of Sarathi Roy and

Joseph Howley. The words searched for were "sex", "gay", "lesbian", "massage", "Lynda" and "Clemmons." This was not requested by Plaintiff, but was conducted on Sempra's own initiative. Not one document contained these terms.

      30.    By this affidavit, I confirm that a thorough search was conducted with respect to each of Plaintiff's Requests in this lawsuit, from individuals identified by both Plaintiff and Defendant. To my knowledge, every non-privileged document that was responsive to one of Plaintiff's document requests, with the exception of those properly objected to, was provided in this action.

      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Wayne Kubicek

Sworn to and subscribed before me this _18th_ day of July, 2005.

Notary Public

My Commission Expires on _September 30, 2009_

**Maureen G. Beck**
**Notary Public**
**My Commission Expires Sep. 30, 2009**

STM/300058.2

-11-

# EXHIBIT A

| | |
|---|---|
| **From:** | Susan Wood |
| **Sent:** | Friday, July 06, 2001 2:51 PM |
| **To:** | Michael Goldstein |
| **Subject:** | RE: Incident Report |

Michael, I'm not trying to be a smart ass but...something that occurs on the floor in front of 150 traders, I do not consider confidential.

Just trying to help.

Susan

> -----Original Message-----
> **From:**    Michael Goldstein
> **Sent:**    Friday, July 06, 2001 2:46 PM
> **To:**    Susan Wood
> **Subject:**    RE: Incident Report
>
> i will keep a hard copy of this in my files. i do not maintain e-mail files on confidential matters such as these and would appreciate your not e-mailing me more materials. of course, i am always happy speak to you personally.
>
> i am preparing my own report and i will do my best to complete the report this week end. as you know, my time has been almost entirely consumed with the FERC settlement case and i apologize for not completing this sooner. i know you are eager to finalize this incident, as is joe, and i will do my best to move us all beyond this incident. thank you.
>
> > -----Original Message-----
> > **From:**    Susan Wood
> > **Sent:**    Friday, July 06, 2001 12:03 PM
> > **To:**    Michael Goldstein
> > **Subject:** Incident Report
> >
> > Michael,
> >
> > I know you are very busy but I would like to get this all wrapped up ASAP. Hopefully this will help you with the workload...I have put together a draft incident report.
> >
> > Thank you.
> > Susan
> >
> > << File: Incident Form.doc >>
> >
> >
> > Susan E. Wood
> > Assistant Vice President
> > **Sempra Energy Trading**
> > 58 Commerce Road
> > Stamford, CT 06902
> >
> > 203.355.5004 (tel)
> > 203-355-6011 (fax)
> > 203-561-9116 (cell)
> >
> >
> > Please note that the above terms are for discussion purposes only and do not constitute a legally binding offer, which will only result from the execution and delivery of definitive documentation acceptable to each party in its discretion.

D 00263

1

**EXHIBIT B**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN E. WOOD, | CIVIL ACTION NO. |
| Plaintiff, | 3:03-CV-986 (JCH) |
| v. | |
| SEMPRA ENERGY TRADING CORPORATION, | October 27, 2003 |
| Defendant. | |

### PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO DEFENDANT

PLEASE TAKE NOTICE that Defendant is hereby requested, pursuant to the provisions of Rule 34 of the Federal Rules of Civil Procedure, to produce the documents identified below. The written response and copies of all responsive documents may be sent directly to Brendan J. O'Rourke, Esq., O'Rourke & Associates LLC, 27 Pine Street, New Canaan, CT 06840.

I.

**DEFINITIONS AND INSTRUCTIONS**

**A.    Definitions:**

1.    " **SUSAN WOOD**" or "**PLAINTIFF**" as used herein refers to Plaintiff, Susan E. Wood.

2.    "**COMPLAINT**" refers to the most recent Complaint or Amended Complaint filed in this action.

3.    "**ANSWER**" refers to the Defendant's Answer and Affirmative Defenses, dated June 11, 2003.

4.    "**SEMPRA**" or "**DEFENDANT**" as used herein refers to Defendant, Sempra Energy Trading Corporation.

5.    "**DOCUMENT**" includes, but is not is not limited to, the original and all non-identical copies (i.e., different from originals by reason of notations made on or attached to such copies or otherwise) of all letters, telegrams, contracts, memoranda, intra- or interoffice memoranda, papers, computer generated or stored media, notes, minutes, reports, studies, calendar and diary entries, maps, sketches, drawings, reproductions, photographs, advertisements, pamphlets, periodicals, books, graphs, charts, tabulations, analysis, working papers, indices, statistical or informational accumulations, data sheets, data processing cards, tapes, sound recordings, computer printouts, e-mail communications, computer or disk-stored letters, memoranda or notations, notes or recollections of meetings, notes or recollections of any other type of communication, drafts or preliminary revisions of all of the above, and

any other written, printed, typed or other graphic material of any nature, no matter how produced or how reproduced.

Any comment or notation appearing on any of the documents described above, and not part of the original text, is considered a separate document, and any draft or preliminary form of any document also is considered a separate document.

6.    **"RELATING TO"** or **"RELATE"** used herein shall mean all materials that constitute, contain, embody, reflect, identify, state, refer to, deal with or in any way pertain to that subject, including without limitation, documents which relate to the preparation of another document, or are attached to or constitute enclosures with another document.

7.    **"PERSON"** includes natural persons, groups of natural persons acting as individuals, groups of natural persons acting in a collegial capacity (i.e., as a committee, board of directors, etc.), corporations, associations, partnerships, local governments, governmental agencies or any other incorporated or unincorporated business or social entity.

B.    **Instructions:**

1.    If Defendant is unable to produce any file or document called for by this request, state the reason(s) why such a file or document cannot be produced.

2.    Whenever you object to a particular document request, or portion thereof, you must respond to all portions of the document request which are not subject to that objection.

-2-

3.    In the event Defendant asserts (i) attorney/client privilege, (ii) work product doctrine, or (iii) any other privilege as a basis for refusing to produce any document requested by any of the following requests, then please strictly follow Local Rule 9 (d)(1) for producing a Privilege Log.

4.    These document requests are to be regarded as continuing in nature.  Defendant is requested to produce any additional documents later obtained that will augment or otherwise modify any response given to these document requests.


## II.

## REQUESTS FOR PRODUCTION OF DOCUMENTS


**REQUEST NO. 1:**  Please produce any and all documents which relate to the hiring of Plaintiff.


**RESPONSE:**




**REQUEST NO. 2:**   Please produce any and all documents which relate to the compensation paid to Plaintiff.


**RESPONSE:**

**REQUEST NO. 3:**    Please produce any and all documents which relate to the termination of Plaintiff's employment.

**RESPONSE:**

**REQUEST NO. 4:**    Please produce any and all documents which relate to the calculation and payment of bonuses paid to employees of Defendant in Stamford, Connecticut from 1999 through the present for employees at the Assistant Vice President and Vice President level.

**RESPONSE:**

**REQUEST NO. 5:**    Please produce any and all documents relating to the executive search firm used by Defendant to recruit Plaintiff on Defendant's behalf and the efforts, promises, and inducements made by such search firm to induce Plaintiff to join Defendant.

**RESPONSE:**

-4-

**REQUEST NO. 6:**   Please produce any and all documents which relate to the incident between Mr. Howley ("Howley") and the Plaintiff ("Howley Incident") as alleged in the Complaint and responded to in Defendant's Answer.

**RESPONSE:**

**REQUEST NO. 7:**   Please produce any and all documents which relate to the investigation of the Howley Incident.

**RESPONSE:**

**REQUEST NO. 8:**   Please produce any and all documents which constitute a final report by the Defendant as to assessing responsibility regarding the Howley Incident, and any actions taken in response thereto.

**RESPONSE:**

**REQUEST NO. 9:**   Please produce any and all documents which relate to any action or discipline by Sempra taken against Mr. Howley by reason of the Howley Incident.

**RESPONSE:**

**REQUEST NO. 10:**  Please produce any and all documents which reflect communications between Sarathi Roy ("Roy") and Howley from 1999 through the present.

**RESPONSE:**

**REQUEST NO. 11:**  Please produce any and all documents which reflect communications by Sempra's General Counsel Michael Goldstein ("Goldstein") relating to Susan Wood, including without limitation, any investigation and any reports or actions taken as a result of the Howley Incident.

**RESPONSE:**

**REQUEST NO. 12:**  Please produce any and all documents which reflect communications by (i) Jackie Mitchell ("Mitchell"), (ii) Steve Prince ("Prince"), (iii) Mr. Cookingham ("Cookingham"), and/or (iv) Ms. Freda ("Freda"), relating to Susan Wood.

**RESPONSE:**

**REQUEST NO. 13:** Please produce any and all documents which relate to any explanation for the termination of Susan Wood.

**RESPONSE:**

**REQUEST NO. 14:** Please produce any and all documents which set forth any of Sempra's policies prohibiting employment discrimination ("Employment Policies").

**RESPONSE:**

**REQUEST NO. 15:** Please produce any and all documents which relate to Howley's job performance, including without limitation, performance reviews, reprimands or sanctions and/or future job prospects at Sempra.

**RESPONSE:**

**REQUEST NO. 16:**  Please produce any and all documents which relate to Roy's job performance, including without limitation, performance reviews, reprimands or sanctions and/or future job prospects at Sempra.

**RESPONSE:**

**REQUEST NO. 17:**  Please produce any and all documents which relate to any and all communications between Goldstein and Susan Wood.

**RESPONSE:**

**REQUEST NO. 18:**  Please produce any and all documents which relate to any and all communications between Goldstein and Howley.

**RESPONSE:**

**REQUEST NO. 19:**  Please produce any and all documents which relate to any and all communications between Goldstein and Mitchell relating to Susan Wood, Howley or Roy.

**RESPONSE:**

**REQUEST NO. 20:**  Please produce any and all documents which relate to any and all communications to or from Prince relating to Susan Wood.

**RESPONSE:**

**REQUEST NO. 21:**  Please produce any and all documents from 1999 through the present relating to employees investigated and/or disciplined at Sempra for violation of Sempra's Employment Policies.

**RESPONSE:**

**REQUEST NO. 22:**  Provide a copy of all performance reviews of all employees at the Assistant Vice President level or higher in the Petroleum Derivatives Department of Sempra, and in the Gas Department of Sempra, from January 1, 1999 through the present.

**RESPONSE:**

**REQUEST NO. 23:**  Provide the document Roy has identified as an electronic message sent from him to Susan Wood purporting to say that Susan Wood "would love to have one of the female employees in the office" as set forth in Roy's June 10, 2002 affidavit submitted to the Connecticut Commission on Human Rights and Opportunities ("Roy Affidavit").

**RESPONSE:**

**REQUEST NO. 24:** Produce any documents relied on by Roy to support the assertions he makes in the Roy Affidavit about Susan Wood.

**RESPONSE:**

**REQUEST NO. 25:** Provide any and all documents which relate to Steve Soule including his hiring, compensation and job performance.

**RESPONSE:**

**REQUEST NO. 26:** Provide any and all documents relating to Sempra's attempt to find Susan Wood another position at Sempra by anyone at Sempra after it was decided to terminate her from her position in the Petroleum Derivatives Group.

**RESPONSE:**

**REQUEST NO. 27:** Provide any and all documents and organization charts for the Gas and Petroleum Derivatives Department at Sempra.

**RESPONSE:**

Dated:  October 27, 2003                    Respectfully submitted,


                                            By:    Brendan J. O'Rourke (ct00522)
                                                   Jeffrey M.  McCormick  (ct21185)
                                                   Ann Brickley (ct25160)
                                                   O'ROURKE & ASSOCIATES LLC
                                                   27 Pine Street
                                                   New Canaan, CT  06840
                                                   Telephone: (203) 966-6664
                                                   Facsimile:  (203) 966-5710
                                                   Email:  Brendan@orourkeandassoc.com

## CERTIFICATE OF SERVICE

The undersigned, a member of the bar of this Court, hereby certifies that on this 27th day of October, 2003, the foregoing was served on the following counsel of record via Federal Express:

> Mary C. Dollarhide, Esq.
> Peter M. Schultz, Esq.
> Neil B. Steklooff, Esq.
> PAUL, HASTINGS, JANOFSKY & WALKER, LLP
> 1055 Washington Boulevard
> Stamford, CT 06901-2217
> Telephone: (203) 961-7400
> Facsimile: (203) 359-3031

Ann Brickley

**EXHIBIT C**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SUSAN E. WOOD, | CIVIL ACTION NO. |
| Plaintiff, | 3:03-CV-986 (JCH) |
| - against - | |
| SEMPRA ENERGY TRADING CORP., | |
| Defendant. | |

## AFFIDAVIT OF DENISE FREDA

I, Denise Freda, being duly sworn, depose and say:

1.      I am over the age of eighteen years and understand the obligations of an oath.  This affidavit is based upon my personal knowledge.

2.      I have been employed at Sempra Energy Trading Corp. ("Sempra") or its predecessors since 1993.  I hold a position in the Human Resources department.

3.      On or about April 5, 2004, I was deposed by Brendan O'Rourke, Esq. in connection with the lawsuit brought by Susan Wood against Sempra.

4.      Following my deposition, Peter M. Schultz, Esq. of Paul, Hastings, Janofsky & Walker LLP requested that I conduct a supplemental search of my e-mail messages for any references to Ms. Wood.

5.      On or about April 6, 2004, I did a word search of my emails to determine if I had any additional documents in my possession related to Ms. Wood that I had not previously provided to Mr. Cookingham, Mr. Kubicek or Ms. Dollarhide.

6.      I did not locate any additional documents during my search related to Ms. Wood that I had not already provided to Mr. Cookingham, Mr. Kubicek or Ms. Dollarhide.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_Denise V. Freda_

Denise Freda

Sworn to and subscribed before me this _8th_ day of July, 2005.

_Maureen G. Beck_

Notary Public

My Commission Expires on

_September 30, 2009_

**Maureen G. Beck**
**Notary Public**
My Commission Expires Sep. 30, 2009
STM/300024.1

-2-