UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN E. WOOD,<br><br>                         Plaintiff,<br><br>          - against -<br><br>SEMPRA ENERGY TRADING<br>CORPORATION,<br><br>                         Defendant. | CIVIL ACTION NO.<br>3:03-CV-986 (JCH)<br><br><br><br>August 3, 2005 |

**CORRECTED VERSION OF PLAINTIFF'S MEMORANDUM IN RESPONSE
TO DEFENDANT'S SUBMISSION OF SUPPLEMENTAL AFFIDAVITS IN
FURTHER SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION IN LIMINE**

**I.      INTRODUCTION**

Plaintiff Susan E. Wood ("Plaintiff" or "Wood") filed a Motion in Limine and a

Memorandum of Law in Support of its Motion in Limine, both dated June 21, 2005

(collectively "Motion in Limine").   In her Motion in Limine, Plaintiff detailed and

documented a number of discovery abuses by Sempra Energy Trading Corporation

("Defendant" or "Sempra"), and as a result, has requested that the Court enter one or

more rulings against Sempra in view of the trial scheduled for July 25, 2005.  Defendant

filed opposition papers to Plaintiff's Motion in Limine on June 24, 2005 ("Sempra's First

Response").

At a teleconference held on July 14, 2005 with the Court, during which the Court

addressed a number of pending matters, the Court articulated the view that the assertions

made in Plaintiff's Motion in Limine, when reviewed against Sempra's First Response,

resulted in the Court's conclusion that Sempra had not adequately explained a number of

discovery response abuses raised in Plaintiff's Motion in Limine.   Based upon the

Court's assessment, the Court ordered that Sempra provide a very detailed submission to

the Court ("Court's July 14 Discovery Order"), calling for Sempra to explain a number of

the discrepancies set forth in Plaintiff's Motion in Limine.   In particular, the Court

ordered that Sempra provide the detailed steps Sempra undertook to respond to Plaintiff's discovery requests, including what was specifically communicated and asked for, when and who made the requests, when and who responded, and what was done in response, including what steps were taken to ensure electronic-based information was handled appropriately.

Sempra filed its papers in response to the Court's July 14 Discovery Order on July 18, 2005 ("Sempra's Second Response"), including affidavits of two Sempra employees, Mr. Kubicek and Ms. Freda.

## II.    FURTHER BACKGROUND

In response to the Court's July 14 Discovery Order, Plaintiff communicated with Sempra's counsel, Paul Hastings, and requested that, along with any Sempra employee who certified the detail that the Court ordered, Paul Hastings should further certify the accuracy of the assertions being made in the submission.  See Plaintiff's counsel's letter to Paul Hastings, dated July 14, 2005, attached hereto as Exhibit A.

In light of the incomplete record of Sempra's earlier discovery responses, and the deposition testimony of a number of Sempra employees who testified to little knowledge of Plaintiff's specific discovery requests (or Sempra's responses thereto), Plaintiff first requested that Sempra provide the names of Sempra employees who would certify the accuracy of Sempra's discovery responses in Plaintiff's counsel's letter to Attorney Peter Schultz at Paul Hastings, dated April 2, 2004.  See Plaintiff's Motion in Limine, Exhibit 1.  Sempra and its outside counsel, Paul Hastings, failed and otherwise refused to provide such certifications.  Later, at the Pre-trial Conference held on June 28, 2005, the Court, in

a preliminary response to Plaintiff's Motion in Limine, advised Defendant's counsel who were present, Attorneys Bertrand and Dollarhide, that counsel of record for the Defendant had an independent obligation to review documents and ensure that full and complete discovery responses were given. Thus, in view of such background, and in view of the authority cited below, Plaintiff asserts that the Court's express directive given to Sempra's counsel in connection with the Court's July 14th Discovery Order necessarily required that Defendant's outside counsel, Paul Hastings, certify the accuracy and completeness of the supplemental responses.

Significantly, and as a threshold issue regarding Plaintiff's Motion in Limine, Paul Hastings has not certified the supplemental certifications included in Sempra's Second Response. In particular, Sempra has sought to satisfy its obligations to respond to the Court's July 14 Discovery Order by submitting two affidavits of Sempra employees, Mr. Wayne Kubicek, who is an assistant general counsel, and a one page affidavit of Denise Freda, the Human Resources Director.

Over and beyond the fact that Sempra's outside counsel, Paul Hastings, has not certified the supplemental responses included in Sempra's Second Response, the detailed accounting of Sempra ordered by the Court has not been complied with. More particularly, a review of Mr. Kubicek's and Ms. Freda's affidavits, although initially giving the impression of a certain level of detail, upon close examination reveals a glossed and superficial response, and in fact confirms Sempra's abuses and failure to properly discharge its discovery obligations as raised in Plaintiff's Motion in Limine.


III.    ARGUMENT

1.    <u>Legal Standard</u>

The appropriate standard of review in considering Sempra's handling of its discovery obligations, including the deficiencies of Sempra's Second Response, is set forth in <u>Zubulake v. UBS Warburg, LLC</u>, 2004 WL 1620866 (SDNY 2004), which unreported case is attached hereto.  The Court in <u>Zubulake</u> addressed certain discovery response abuses by the defendant investment bank in a contentious sexual discrimination case.[1]  The court in <u>Zubulake</u> articulated a number of the requirements that counsel and its client must observe to ensure that relevant information is preserved and produced in discovery.  The client <u>and its counsel</u> are required to cooperate to a make sure that once a potential for litigation ensues, a "litigation hold" should be ordered to preserve documents, including electronic data and "back up" tapes.  Id. at *7.    The obligation of the client to put a litigation hold on documents is only the beginning of the obligation of Sempra.   The client's counsel is required to "monitor the parties efforts to retain and produce the relevant documents."  <u>Id</u>.   In furtherance of counsel's obligation in this regard, counsel is required to familiarize itself with the client's retention policies and technology so as to be able to save and recover relevant information.   <u>Id</u>.   Further, counsel would be expected to communicate with the "key players" in the litigation in order to determine how relevant information may be obtained, given the fact that various employees may have different means of saving potentially relevant information.   <u>Id</u>. at *8.   The Court in <u>Zubulake</u> expressed the dynamic between client and counsel well in stating, "[c]ounsel must take affirmative steps to monitor compliance … ."  Id.

---

[1] Similar to the instant case, and as set forth in Plaintiff's Motion in Limine, in adjudicating the plaintiff's request for relief based upon the investment bank's failures to properly handle its discovery obligations, the court in <u>Zubulake</u> noted that certain deposition testimony by the defendant's employees indicated that such witnesses had not been appropriately requested to retrieve information, leading to the "obvious inference" that initial discovery responses were incomplete.  <u>Id</u>. at *5.

In the instant case, Sempra was aware of Wood's claims of discrimination at the time of her termination in March of 2002 when she communicated to the people in attendance, including Sarathi Roy, Human Resource officer Denise Freda, and Vincent Cookingham, that she believed that her termination arose because of discrimination. Certainly, as of when Plaintiff filed her complaint with the Connecticut Commission on Human Rights and Opportunities later in the Spring of 2002, Sempra and its counsel, Paul Hastings, who represented Sempra at the time, were on notice of litigation, and therefore under an obligation to put documents on a litigation hold and confer with key employees about saving and retrieving documents. Plaintiff asserts that in Sempra's Second Response, Sempra and its counsel have confirmed that they have failed to follow even the most basic principles governing their discovery obligations.

Based upon the foregoing, Plaintiff sets forth below a paragraph by paragraph analysis of Mr. Kubicek's and Ms. Freda's affidavits to illuminate Sempra's failures.

2.    <u>Kubicek Affidavit</u>

While initially the Kubicek affidavit gives the appearance of a detailed response, a review of each paragraph provides countless admissions, as well as clear inferences, of the failures of Sempra and its outside counsel to properly respond to its discovery obligations.[2]

<u>Paragraphs</u>

---

[2] Plaintiff is chagrined to undertake this analysis just prior to trial, and Plaintiff is mindful of the burden falling upon the Court to ferret out the facts and issues germane to this matter; however, Plaintiff could determine no better or simpler way to respond to Sempra's Second Response.

1-3 Kubicek sets forth the fact that he was hired in February of 2000 as a Sempra employee, and the fact that he holds the position of "Assistant General Counsel." There is no statement that Mr. Kubicek is admitted to practice in the District Court, or for that matter that he is admitted to the Connecticut bar. Further, Mr. Kubicek does not have an appearance filed in this matter, and to the undersigned's knowledge, has not signed any pleading filed in this matter. In short, Mr. Kubicek is an employee of Sempra. Thus, there is no basis to conclude that he operates with an independent obligation of an officer of the court, whose duties run both to a client and the court. Thus, Mr. Kubicek's affidavit does not meet the Fed. R. Civ. P. 11 requirement that "every pleading, or other paper, shall be signed by at least one party of record, and ignores counsel's request for Paul Hastings certification as per Exhibit A attached hereto (Plaintiff asserts that the Court's July 14 Discovery Order does not exempt Sempra's counsel of record signing the submission under Fed. R. Civ. P. 11(d)).

4, 5     Mr. Kubicek gives his general background in dealing with outside counsel regarding discovery matters. Beyond his general characterization, notably, Mr. Kubicek does not indicate that any "litigation hold" practice was utilized by him or anyone else as part of his or Sempra's general practice. He also notes to his "specific and general recollections," but provides scant corroborative responses to the assertions made later in his

affidavit regarding his actions in communicating with Sempra employees and outside counsel.

6       Mr. Kubicek seeks to describe the work setting at Sempra, including the close proximity of certain workers on the trading floor, to set up an explanation of the dearth of documents produced by Sempra to Wood. Such a generalized background does not meet the specific requirements of the Court's July 14 Discovery Order. Further, Wood, contrary to Mr. Kubicek's description, would appear to be the one employee at Sempra working on the trading floor who produced e-mails that could be described as "personal", which Sempra has located in detail and provided as part of its proposed exhibits in the trial. See Motion in Limine, pp. 13-14. Further, in paragraph 6, as some of the individuals named in this paragraph may have been on the trading floor, other individuals such as Sempra's C.E.O., Steven Prince, its President, David Messer, and Director Christine Cantor, were not on the floor.

7       In paragraph 7, Mr. Kubicek proceeds with ambiguous double hearsay in explaining Sempra's initial response to searching for potentially relevant documents regarding Plaintiff's claims. Specifically, Mr. Kubicek states that "Mr. Cookingham advised me that he was directed by Sempra's General Counsel, Michael Goldstein, to conduct a search for documents related to Susan Wood." Certainly, such assertion by Mr. Kubicek in no

way meets the specificity requirements of the Court's July 14 Discovery Order. It is patently clear in reviewing this assertion that Mr. Kubicek and Sempra are advising the Court that General Counsel Goldstein gave an initial directive to "search for documents relating to Susan Wood." At a minimum, General Counsel Goldstein should be supplying an affidavit as to what specifically he requested to be done. Second, it is noteworthy that Mr. Kubicek indicates that such search directed by General Counsel Michael Goldstein in 2002 was for documents which "related to Susan Wood"; however, Sempra interposed objections to Plaintiff's First Set of Interrogatories and Requests for Production of Documents by interposing the objection that the term "relate to" was too vague and ambiguous to enable Sempra to respond to Plaintiff's discovery requests. <u>See</u>, e.g., Sempra's objection to Plaintiff's Production Request No. 3, dated December 1, 2003, which is attached hereto as Exhibit B. Thus, based upon Sempra's submission via Mr. Kubicek's affidavit, there is patent ambiguity on what General Counsel Goldstein requested.

In Paragraph 7, Mr. Kubicek goes on to give highly generalized hearsay explanations as to Sempra's initial search by Mr. Cookingham for documents by stating that Mr. Cookingham advised Mr. Kubicek that "he contacted various Sempra employees … ," and that he asked "these individuals to examine their computer records … ." However, Mr. Kubicek acknowledges that Mr. Cookingham did not "recall exactly who he contacted." In short, Mr. Kubicek tells us that a Mr. Cookingham

contacted certain people, some of whom he does not recall, to conduct a generalized search, including "computer records", and that upon such effort he forwarded "records" to General Counsel Goldstein. Coupled with this complete lack of direct foundation and specificity, Mr. Kubicek then goes on to note that General Counsel Goldstein does not have a "specific recollection of doing so", however, he assumes that Mr. Goldstein sent all such documents to outside counsel, Paul Hastings. In short, paragraph 7 is so fraught with foundation and hearsay issues, and ambiguities, it provides no support for Sempra's assertion that it properly responded to discovery requests. Further, paragraph 7 stands as a further admission that (i) there was no "litigation hold" put on documents, and (ii) there was no effort to monitor the saving of, and search for, records. Further, there is no specificity as to who undertook to find what documents were ultimately retrieved, what documents were ultimately sent to outside counsel to review, and what documents were ultimately sent to Plaintiff. Finally, and disturbingly, Mr. Cookingham's deposition testimony makes Mr. Kubicek's statements grossly inaccurate and misleading. Specifically, Mr. Cookingham gives testimony of his limited search for records, and in particular his limited search of Mr. Roy's records. See excerpt of Cookingham Deposition, attached hereto as Exhibit C.

8, 9      Mr. Kubicek, platformed on the ambiguous foundation of paragraph 6 and 7, asserts that, only upon "[his] information and belief", and through communications from outside counsel, Paul Hastings, to General Counsel Goldstein, Mr. Kubicek received copies of Plaintiff's First Set of Requests for Production, dated October 27, 2003.

11      Mr. Kubicek proceeds to give detail as to how Plaintiff's production requests were responded to, by first offering the telling cavaet that "a thorough review of the above request establishes that Plaintiff did not propound an all encompassing request for each and all documents related to her employment." Such generalized characterization of Plaintiff's production requests were not called for in the Court's July 14 Discovery Order. However, it can be inferred from such assertion that certain documents that may be in the possession of Sempra were either not searched, or were searched and found but not produced to Plaintiff, because of Sempra's interpretation of Plaintiff's production requests. Plaintiff and her counsel believe that the requests that were propounded were designed, and should be reasonably concluded to include, an all encompassing request. Mr. Kubicek's statement that the requests were not all encompassing suggests a parsing of words, and a propensity to narrowly construe Plaintiff's discovery requests to justify its action.

| | |
|---|---|
| 12 | Mr. Kubicek identifies Attorney Peter Schultz in Paragraph 12 as someone with whom he reviewed and discussed the discovery requests. Tellingly, Attorney Schultz, who was outside counsel responsible for handling written discovery, deposing Ms. Wood, and defending a majority of the depositions, did not submit any affidavit in connection with the Court's July 14 Discovery Order. |
| 13, 14 | In these paragraphs, Mr. Kubicek seeks to convince the Court that Sempra met its discovery obligations; however, his statements in these two paragraphs fall well short of the Court's directive. The deficiencies in these two paragraphs are summarized as follows: |

        (i)      Mr. Kubicek, noticeably, does not state that he forwarded the specific discovery requests to the limited individuals who he identifies in these paragraphs. Mr. Kubicek states that "in connection with [the requests] ... , I spoke directly with Steve Prince and David Messer." The Court had ordered detailed specificity as to what requests were made to whom in seeking to respond to Plaintiff's discovery requests. Mr. Kubicek does not supply such specificity, and his use of the term "in connection with" leaves wholly ambiguous what specific requests were given. Thus, it should be concluded, in view of the detail sought by the Court, that the Plaintiff's specific production requests set forth in these paragraphs were not forwarded by Mr. Kubicek to these limited individuals.

(ii)     While Mr. Kubicek notes that he "spoke directly to Steve Prince and David Messer", he uses the phrase that "I <u>contacted</u> Sarathi Roy and Joseph Howley".  (emphasis added).  Thus, it can be inferred that he did not speak directly with either of those individuals, and, that those individuals were not given specific production requests.

(iii)     Mr. Kubicek indicates that he requested that the individuals that he lists review their "computer files and hard files", but does not give a description as to what exactly that meant.  As noted later in his affidavit, Mr. Kubicek engaged a technology officer at Sempra, Mr. Parrott, to assist him in retrieving certain e-mails about Wood, and in those references uses the term "back up tapes or other records".  Such distinct terms, given the complexity of electronic documents, cannot be overlooked, particularly given Mr. Kubicek's careful attention to the language of Plaintiff's production requests, and his parsing of words.  Thus, there is no basis to conclude what exactly Messrs. Messer, Prince, Roy, and Howley were requested to search.

(iv)     There is no specificity as to precisely what documents were being searched by those individuals.

(v)     There is no specific detail as to the dates and manner of any search conducted by Messrs. Prince, Messer, Roy and Howley in paragraphs 13-14.

Mr. Kubicek then goes on to make a factual argument to the Court that the deposition testimony that he heard regarding Mr. Messer, Mr. Roy

and Mr. Howley supports the fact that there was a dearth of documents which were responsive to Plaintiff's production requests. Obviously, such superficial assertion, without tailoring such assertion to the specific production request and interrogatories of Plaintiff, and without providing excerpts of these depositions, is completely without the foundation and specificity required by the Court's July 14 Discovery Order.

Further, as noted in the Motion in Limine, Mr. Prince testified about profitability reports which were relevant to the assessment of Ms. Wood; however, Mr. Kubicek does not explain why Sempra did not identify such documents before Mr. Prince's deposition, which were clearly responsive to Plaintiff's production requests. <u>See</u> Plaintiff's Interrogatories No. 6, 7, and Production Requests No. 2, 4.

**15**     In Paragraph 15, Mr. Kubicek acknowledges that he contacted an information technology department employee at Sempra, Mark Parrott ("Parrot"), "in response" to production "Requests No. 6 and 17", to provide him with Plaintiff's e-mails from her start date of September 18, 2000 through June 27, 2001. However, Mr. Kubicek then notes that he made requests at differing times for e-mails of Plaintiff spanning different time periods, without explanation as to when, why and what particular emails were so requested. Further, Mr. Kubicek notes that he requested Parrott to obtain these e-mails of Plaintiff in response to two production requests (6 and 17), however, the search that is described is broader than

the requests cited by Mr. Kubicek, and therefore Mr. Kubicek is likely referencing the extensive search of Plaintiff's e-mails directed towards the defense of their own case as evidence by the dozens of Plaintiff's e-mails that Defendant has made a part of its proposed Exhibits.  Thus, again Sempra fails to set forth the detail required by the Court's July 14 Discovery Order.

16     Mr. Kubicek describes further discussions with Mr. Parrott to obtain information regarding "backup tapes or other records of <u>instant message</u> communications" sent or received by Sempra employees (emphasis added).  Significantly, this information was sought in support of Defendant's defense.  Sempra and Mr. Roy has made part of their defense that certain "instant messaging" by Plaintiff purportedly evidenced Plaintiff's racy personal style, and otherwise gave rise to his "misgivings" and lack of "comfort" with Plaintiff.  <u>See</u> Plaintiff's Proposed Exhibit 27, Roy Affidavit, paragraph 9.  Further, and significantly, Mr. Kubicek, in seeking evidence for Sempra's defense, pressed Mr. Parrott for a more in depth search of these records (in that he references specifically "backup tapes or other records", in contrast to the prior generalized assertion of Sempra's search of "emails"), leading to the clear inference that no such thorough search took place.  Then, Mr. Kubicek, in an apparent effort to explain the dearth of documents produced by Sempra to Plaintiff in this case, asserts the explanation that it is his "<u>understanding</u> that most

employees on the trading floor communicate via instant messaging rather than by email." (emphasis added). Here, again, Mr. Kubicek does not provide the detailed basis of his understanding to proffer generalized explanations and, in further derogating from the Court's directive for a detailed and specific accounting, also fails to note that a number of Sempra employees involved in this matter did not work on the trading floor (i.e. Messrs. Prince, Messer, Goldstein, Cantor, and others).

17      Mr. Kubicek notes in the first part of this paragraph that he sought to have Mr. Parrott search e-mail records of Brian Rickers, and then again uses the phrase that he sought such information "in connection with" Request No's. 23 and 24. (emphasis added). Again, Plaintiff asserts that this is an unacceptable characterization. There is no specificity as to what instruction Mr. Parrott was given (oral or written), or of the specific actions taken by Sempra. Mr. Parrott provides no factual assertions in the affidavit as to what he sought and why he sought it, and Sempra has listed Brian Rickers as a trial witness who communicated with Plaintiff, and who can purportedly corroborate her personal behavior, which gave misgivings to Sempra and Mr. Roy. In the second part of the paragraph, Mr. Kubicek lists e-mails from Ms. Wood to Mr. Roy. Why so much later? Again, this was Sempra's effort to build their defense. Thus, the efforts reflected in paragraph 17 is not responsive to the Court's July 14 Discovery Order, and can be concluded to be efforts made on behalf of

Sempra to engage a technology expert to do a more detailed search and review of records in support of their defense, and not efforts by Sempra in response to Plaintiff's specific production requests. Finally, Mr. Kubicek does not even specify what documents delivered to Plaintiff arose from these initiatives.

18       Mr. Kubicek references an e-mail instruction received from Attorney Schultz for "additional information and documents", but provides no specific detail as ordered by the Court's July 14 Discovery Order. Mr. Kubicek then goes on to note that he contacted Ms. Freda and made requests "in connection with Requests Nos. 2 and 4", again not expressly stating what particular and specific documents were being requested of Ms. Freda. However, Mr. Kubicek then goes on to state that the requests made of Ms. Freda were in fact limited requests, seeking information "related to" "Plaintiff's 2001 bonus and salary increase for 2002." Thus, by Mr. Kubicek's own admission, his use of the phrase "in connection with" is not tantamount to, or even close to, a statement that Plaintiff's specific written production requests (or Interrogatories) were provided to Sempra employees for response. Further, Mr. Kubicek, in follow up to Attorney Schultz's requests, asked Ms. Freda to find information which "related to" Plaintiff's income, during which time Attorney Schultz objected to such term as vague and ambiguous. In reviewing Production Request No. 4, where Plaintiff requests "all documents which relate to the

calculation and payment of bonuses paid to employees of Sempra," against what Mr. Kubicek asked Ms. Freda to do, Mr. Kubicek <u>limited the request made of Ms. Freda to Plaintiff's information</u>. Finally, Mr. Kubicek does not specify what documents, if any, arose from these requests.

**19, 20**   Mr. Kubicek indicates in this paragraph that he again requested information under his characterization of "in connection with" certain production requests, but does not vouch for the specificity of the particular requests made of Mr. Parrott. Further, it is clear from the request that Mr. Kubicek states that he made of Mr. Parrott, that such requests are far more limited in nature than the twelve production requests that he references in this paragraph. Further, Mr. Kubicek references Jackie Mitchell's "archived email files" using again a distinct term from other characterizations he has given in his direction for various Sempra employees to collect electronic data. Thus, from Mr. Kubicek's own language, he tasked searches for documents and information with different instructions, without explanation why. Finally, Mr. Kubicek does not identify any specific documents which were obtained based upon his requests.

**21**   Mr. Kubicek states under paragraph 21 that he contacted Ms. Freda on January 12, 2004, after the January 4, 2004 discovery teleconference held

before the Court, but before her deposition on April 5th, and states that he made certain requests of Ms. Freda "in connection with" eighteen production requests. Significantly, Ms. Freda was tasked by Mr. Kubicek, according to this paragraph, to do an expansive search of Plaintiff's comprehensive production requests; however, following such objective, Ms. Freda testified at trial at her deposition that (i) she did a limited search of even her own e-mails, let alone other Sempra employees' e-mails, such as Mr. Roy and Mr. Goldstein, (ii) she did not search the subject matter of her emails for reference to Wood, and (iii) she did not search e-mails which "related to" Plaintiff as requested in production request no. 12. See Motion in Limine, Exhibit B, Freda's Deposition.

This paragraph, perhaps more than others, proves Sempra's wrongful conduct. Beyond the same repeated problems specifically articulated above regarding Mr. Kubicek's statements, this paragraph is more egregious. First, it is again made clear that Mr. Kubicek's use of the phrase "in connection with" is patently misleading. While Mr. Kubicek seeks to give the impression that he tasked Ms. Freda with detailed instruction, he clearly did not. Ms. Freda's deposition proves as much, based upon her admissions after she was tasked by Mr. Kubicek. But there is more proof. Paul Hastings' lawyer, Peter Schultz, in response to Plaintiff's questioning of Ms. Freda as to what "criteria" she used to look through her e-mails, acknowledged that she admitted to a limited search of her "inbox" and "outbox". Then, when pressed, Attorney Schultz, in

conflict with Mr. Kubicek's statements, confirms Ms. Freda's limited search.  See Motion in Limine, Exhibit B, Freda Deposition, pp. 60-67. Given the foregoing background, Mr. Kubicek's statements in this paragraph do not satisfy the Court's July 14 Discovery Order.

22      Mr. Kubicek, in paragraph 22, indicates, without explanation, that he contacted Mr. Parrott again to do an "additional search" for e-mails between Mr. Roy and Mr. Howley for a limited time period. Significantly, Mr. Kubicek gives no reason why he made this "request for an additional search", and, again, gives no specificity as to whether such search yielded any documents produced to Plaintiff in furtherance of a specific production request.

23      In this paragraph, Mr. Kubicek apparently seeks to explain the conflict in Ms. Freda's failure to undertake a specific search for information in response to Plaintiff's discovery requests, including Wood's specific production requests, by indicating that Ms. Freda "was limited to a ministerial function" and "testified she had a very limited role in this case".   Mr. Kubicek then goes on to seek to summarize Ms. Freda's testimony and explain Ms. Freda's purported understanding of the limited search she believes she was asked to undertake, which is interesting for a number of reasons, including these two: (i) Mr. Kubicek's explanation in this paragraph contradicts his statements in paragraph 21 that he gave Ms.

Freda an expansive request, and (ii) such conflict, misunderstanding, or lack of coordination between Mr. Kubicek and other Sempra employees can be inferred to have incurred between Mr. Kubicek and each and every other Sempra employee recited earlier in his affidavit.  Of course, such confusion is then overlayed on the fact that outside counsel ultimately transmitted responsive documents, thereby adding to the disarray.  Still further undercutting the bona fides of this paragraph, Mr. Kubicek does not even go through the effort to append to his affidavit excerpts from Ms. Freda's deposition, which would support his characterization of her testimony, and also fails to give specificity as to Ms. Freda's follow up search, in that Mr. Kubicek only states that he is "informed and believe[s]" that she conducted a thorough search and found no materials. Certainly, Sempra has fallen well short of the Court's July 14 Discovery Order.

24      Mr. Kubicek makes the statement in paragraph 24 that "Plaintiff did not request any document production from Brian Cumming."  This is patently absurd.  Mr. Cumming acted as Plaintiff's supervisor at Sempra.   Mr. Cumming performed an employment review of Plaintiff and had a number of dealings with her, sufficient to provide an ability on his part to offer opinions as to her professionalism.  Certainly, the production requests and interrogatories propounded by Wood unquestionably would include documents that Mr. Cumming would have access to.  Next, Mr. Kubicek

again seeks to characterize Mr. Cumming's testimony without appending any excerpts of Mr. Cumming's deposition to support his characterization of that testimony.  Mr. Kubicek then seeks to persuade the Court that Mr. Cumming's failure to keep a "personnel file" for Plaintiff somehow absolves him and Sempra of his obligation to review his records in connection with the specific production requests that were propounded by Plaintiff.   Thus, in response to Plaintiff's Motion in Limine, Mr. Kubicek has not explained Mr. Cumming's deposition testimony that he <u>had not searched his records for documentation relating to Plaintiff's claims against Sempra</u>.  <u>See</u> Motion in Limine, p. 11.

25         Mr. Kubicek, in paragraph 25, apparently seeks to explain why Sempra had not produced certain written reports which existed to assess the profitability of Plaintiff, as testified by Mr. Prince at his deposition.  <u>See</u> Motion in Limine, pp. 10-11.   Notably in this paragraph 25, Mr. Kubicek states that "I reviewed the documents" to determine whether certain information should be forwarded to Plaintiff in response to Plaintiff's production requests, then he indicates that he forwarded documents to Paul Hastings; but he then can only state upon "information and belief" that those documents were turned over to the Plaintiff.  Thus, in paragraph 25, (i) there is no explanation as to why Sempra failed to produce financial documents in advance of Mr. Prince's deposition, (ii) there is no specific production request that is stated to have been given by Sempra to the

"accounting department", and (iii) there is no reference to which person at Sempra sought what documents. Thus, paragraph 25 evidences a wholly deficient explanation as to what was required in furtherance of the Court's July 14 Discovery Order. Finally, Mr. Kubicek cannot even identify the particular documents that were produced to Paul Hastings, or verify which of those documents Paul Hastings delivered to Plaintiff.

25-28    In these paragraphs, Mr. Kubicek seeks to give background information that is apparently designed to convince the Court that Sempra, acting through his efforts, as well as certain efforts of its outside counsel, did much work to respond to Plaintiff's production requests. First, such general characterizations do not comply with the specific requirements of the Court's July 14 Discovery Order. Further, and continuing a disturbing pattern in how Sempra has dealt with this matter, Mr. Kubicek can only state that he is "informed and believe[s]" that during the course of the litigation, Paul Hastings inquired of other "various Sempra employees." Thus, Mr. Kubicek is in essence saying that he wishes the Court to infer that Paul Hastings, without Mr. Kubicek's ability to specifically verify same, made inquiries of employees who Mr. Kubicek cannot identify, for information "responsive to Plaintiff's Requests." Finally, Mr. Kubicek makes generalized hearsay statements, without any specific excerpts from those depositions to corroborate his bald assertion that none of the listed individuals was aware of any document that Sempra had failed to produce.

Certainly, such characterization of deposition testimony, measured against Plaintiff's Motion in Limine, provides no support that Sempra or its outside counsel, Paul Hastings, met its discovery obligations.

29    Mr. Kubicek's statements in this paragraph are so non-responsive to the Court's July 14 Discovery Order, Plaintiff does not respond.

30    Finally, Mr. Kubicek concludes his affidavit stating that to his knowledge, "every non-privileged document" that was responsive to one of Plaintiff's document "requests" was delivered "with the exception of those properly objected to." In view of the foregoing comments to his affidavit, where it is clear that there is no foundation as to the specific production requests that were given to each of the individuals, and a complete lack of detail as to what documents were obtained, the "knowledge" of Mr. Kubicek is completely undercut. It is also noteworthy that he uses the term "non-privileged". Sempra has not referenced any privilege log, begging the question by Mr. Kubicek's use of that qualifying phrase, if privileged documents were withheld, and if so, why is there no privilege log. Next, he uses the term "document requests", but earlier in his affidavit he referenced Plaintiff's specific production requests as the defined term "Requests". In addition, he qualifies his response by stating that such documents were delivered with the exception of those properly objected to. Mr. Kubicek does not state "objections interposed by Sempra and

sustained by the Court". Such statement begs the question, are the objections referenced by Mr. Kubicek those interposed before the Court's January 4, 2004 discovery teleconference? After the teleconference? It is further noted that the Court recently overruled Sempra's objections to Plaintiff's request for updated bonus information.

Such an exacting read of Mr. Kubicek's affidavit would not otherwise be undertaken but for the fact that through the course of this litigation, including the depositions and discovery disputes that have been constantly waged between Plaintiff and Sempra, Plaintiff asserts that Sempra has lost the basis for the presumption of good faith and fair play. The failure of Paul Hastings to join Sempra's submission adds to the doubt.

1.     Discovery Abuses Unaddressed by Kubicek Affidavit

In addition to the deficiencies set forth above regarding Mr. Kubicek's affidavit, the following items raised in Plaintiff's Motion in Limine are completely unaddressed:

(i)     Mr. Roy. Mr. Kubicek has left unaddressed Mr. Roy's detailed daily notebook. See Motion in Limine, pp. 12-13. Specifically, there is no explanation as to why excerpts of the notebook were not produced, and there is no independent verification that such notebook does not contain information relevant to the discovery requests propounded by Plaintiff.

With respect to e-mails involving Mr. Roy, Mr. Kubicek gives no explanation as to how Mr. Roy testified at his deposition, which was held subsequent to Sempra's Responses to Plaintiff's Production Requests, that he "did not know" whether he had any e-mails that "relate to Susan Wood."

(ii)     <u>Mitchell Deposition and Profitability Reports</u>.     Mr. Kubicek's affidavit gives no explanation as to why Ms. Mitchell's Profit & Loss "reports" which she testified existed and which were available to assess the "profitability of each individual marketer," including Susan Wood and her peers, was produced. <u>See</u> Motion in Limine, p. 12.  Ms. Mitchell, who is on Sempra's witness list, was Wood's supervisor before she transferred to the department headed by Mr. Cumming.  Sempra's failure to provide those documents has deprived Plaintiff of documents which would have enabled her to prove her competence in comparison to the other Sempra employees in Ms. Mitchell's department, as well as other departments, and further deprived Ms. Wood of information that would assist her in building her damages case before the Court.

(iii)     <u>Cookingham Document and Late Delivery</u>.  In Plaintiff's Motion in Limine, Plaintiff had referenced a letter delivered to Sempra's outside counsel, Paul Hastings, dated April 2, 2004, raising some of the issues that are made the subject of the pending Motion in Limine.  <u>See</u> Motion in Limine, pp. 12-13, and Exhibit I.  While Mr. Kubicek indicates in his affidavit that Mr. Cookingham undertook a search for documents relating to Susan Wood <u>prior to the commencement of the Federal action</u>, he provides no explanation as to why Sempra failed to deliver Mr. Cookingham's own memorandum regarding Ms.

Wood's termination in its initial response to Plaintiff's production request. Further, no explanation is given as to why no privilege log was provided by Sempra when it had documents in its possession redacted with privileged communications.

(iv)    Finally, Mr. Kubicek provides no explanation as to why its outside counsel, Paul Hastings, did not sign Sempra's submission, or why Attorney Schultz (who handled substantially all of the written discovery requests), or Attorney Dollarhide, would not certify the specificity and completeness of Sempra's submission.

## IV.    CONCLUSION

Based upon the foregoing, Plaintiff asserts that a more than adequate basis exists for the Court to reach conclusions entitling Plaintiff to the relief sought under her Motion in Limine.

PLAINTIFF,
SUSAN E. WOOD

By: _____

    Brendan J. O'Rourke (ct00522)
    Jeffrey M. McCormick (ct21185)
    O'ROURKE & ASSOCIATES, LLC
    27 Pine Street
    New Canaan, CT  06840
    Telephone:  (203) 966-6664
    Facsimile:  (203) 966-5710
    Email: brendan@orourkeandassoc.com
    Counsel for Plaintiff

# CERTIFICATION

This is to certify that a copy of the foregoing was served via first class mail, postage pre-paid, to counsel of record as listed below this 3rd day of August, 2005.

_____
Jeffrey M. McCormick

Mary C. Dollarhide, Esq.
Raymond W. Bertrand, Esq.
Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard
Stamford, CT  06901