UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN E. WOOD,<br><br>                    Plaintiff,<br><br>- against -<br><br>SEMPRA ENERGY TRADING CORP.,<br><br>                    Defendant. | CIVIL ACTION NO.<br>3:03-CV-986 (JCH) |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO AMEND WITNESS LIST

Defendant Sempra Energy Trading Corp. ("Sempra") seeks the Court's permission amend its witness list to include two witnesses (one who is named on Plaintiff's witness list, but whom Plaintiff failed to call to testify), who, if permitted to testify via videoconference,[1] will:

    (i)     impeach Plaintiff Susan Wood's trial testimony,

    (ii)    corroborate Sarathi Roy's trial testimony, and

    (iii)   provide testimony central to the issue of Sempra's legitimate, non-discriminatory reasons for Plaintiff's termination (i.e. ongoing errors; lack of knowledge of products and markets; erosion of confidence in Plaintiff, particularly in a failing business environment).

These witnesses are: Gary Barth and Michael Casteel (collectively "the UPS witnesses"). This

---

[1] Pursuant to Fed. R. Civ. P. 43(a), Sempra respectfully requests that Messrs. Barth and Casteel be allowed to testify via videoconference. Mr. Barth and Mr. Casteel reside and work in Georgia. Previously, the Court had ruled that Mr. Barth would be permitted to testify remotely. Counsel for Sempra has already made the necessary arrangements through the Court and with Messrs. Barth and Casteel in the event the Court grants Sempra's motion.

evidence is central to this case, and will not disrupt the orderly and efficient trial of this matter. Plaintiff will not be prejudiced by this amendment and only opposes it because she seeks to try and hide the truth from the Court.

## I.     FACTUAL BACKGROUND

Plaintiff claims in this litigation that Sempra unjustifiably terminated her in March 2002. In support of her claim, Plaintiff testified that she generated over a million dollars in profit for the Company in the first part of 2002. Tr. 53:14-16; 54:1-10. Further, Plaintiff testified that she "was completely shocked" after being notified of her termination because "[she] had made money." Tr. 55:8-18.

On cross-examination, Sempra elicited testimony from Plaintiff that the million dollars in profit that she generated the for first part of 2002 was almost entirely the result of a single transaction that Plaintiff closed with United Parcel Service ("UPS"). Tr. 116:15-22. On further examination, Sempra attempted to show that the profit Plaintiff generated in connection with this transaction was the result of Plaintiff having provided inaccurate information to UPS.

Plaintiff flatly denied this claim. Plaintiff testified she did not commit any errors in connection with the UPS transaction. Tr. 145: 22-24 (Q: "There was a mistake in the numbers that you gave them, right? A: "Not that I was aware."); 151:3-5 (Q: "It was based on a mistake, right? A: Not that I'm aware of. It was based on them trading off market."); Tr. 43:21-23 ("Q: Did any customer ever lodge a complaint about you for any reason through the early part of 2002? A: No, they did not.). Instead, Plaintiff testified that Gary Barth, her contact at UPS, told her UPS's "trader was inexperienced *and he made a mistake[.]*" Tr. 148:2-9.

When questioned about whether UPS had discontinued doing business with

Sempra as a result of this transaction, Plaintiff dismissed the suggestion and testified that "[UPS] would [] follow [her] wherever [she] went." Tr. 149:21-24. Thus, the picture the Plaintiff has painted for the Court is that she was a sophisticated marketer capable of closing million dollar deals and that she had a loyal client base.

Plaintiff's story is built on a pack of lies. Gary Barth will refute Plaintiff's testimony that he told her the error was the result of a junior UPS trader. To the contrary, Mr. Barth will testify that Plaintiff *admitted to him* that she had provided UPS with misinformation and that Plaintiff blamed her error on her inexperience and lack of knowledge of the markets. See Barth aff. ¶6 (attached hereto as Exhibit 1). Mr. Barth's testimony will be corroborated by Mike Casteel, the UPS trader whom Plaintiff claimed made the mistake, who will testify that Plaintiff provided him with inaccurate historical data and then, in an attempt to cover-up her actions, provided him with additional misinformation. See Casteel aff. (attached hereto as Exhibit 2). The UPS witnesses' testimony will directly contradict Plaintiff's trial testimony that she was unaware of the fact that she had made an error in this transaction. Tr. 144:18-20. ("Q: You made mistakes? A: I'm sure everybody makes mistakes during the course of business. Nothing had been pointed out to me.").

Not surprisingly, Mr. Barth and Mr. Casteel will also refute Plaintiff's testimony that UPS ceased doing business with Sempra because of Plaintiff's departure from Sempra. Rather, UPS ended its relationship with Sempra after Plaintiff provided UPS with misinformation and then hid from her errors by providing UPS with additional misinformation and failing to return Mr. Casteel's calls. See Casteel aff. ¶4.

## II.   PROCEDURAL HISTORY

On or about Friday, June 17, 2005, more than a year after the close of discovery in this matter, Plaintiff informed Sempra for the first time ever that she intended to call three of her former clients. One of these individuals was Gary Barth of UPS.

Prior to June 17th, Plaintiff never identified Mr. Barth as a potential witness in this litigation, nor did she disclose the identity of Mike Casteel. Plaintiff did not identify these witness in her initial disclosures. In fact, Plaintiff failed to provided Sempra with any Initial Disclosures, in direct violation the Federal Rules. See F.R.C.P. 26(a).[2] Further, Plaintiff did not identify Messrs. Barth or Casteel in response to Sempra's Interrogatory No. 8 that requested she "identify each and every person who has personal knowledge of any fact upon which you base your claims in this lawsuit ... or who you will or may use as a witness in this action."

On or about June 20, 2005, Sempra moved to preclude Mr. Barth from testifying on the ground that Plaintiff had failed to timely disclose their names, as required under the Court's July 22, 2003 Scheduling Order. Plaintiff opposed Sempra's motion and provided the following explanation in her moving papers for having failed to previously identify Mr. Barth and the others:

> Just prior to completing her part of the Pre-trial Memorandum, and based upon strategic consideration as to how Plaintiff plans to put on her case in chief, Plaintiff contacted Gary Barth ... , who worked at client's of Sempra and interacted with Wood during her tenure at Sempra, to determine if they would be willing to provide testimony ....

Memorandum of Law in Opposition to Defendant's Motion in Limine to Preclude Testimony of Previously Undisclosed Witnesses dated June 24, 2005, at 2-3.

---

[2] Plaintiff's counsel previously represented to the Court that Sempra did not provide Rule 26 disclosures to him in connection with this litigation. This is false.

After learning of Mr. Barth's identity and that he would be allowed to testify in this case, and following the submission of the Parties Joint Pre-Trial Memorandum, counsel for Sempra contacted Mr. Barth for the first time. Mr. Barth told defense counsel that Plaintiff provided UPS with inaccurate information. Further, upon review of Plaintiff's trial testimony, Mr. Barth advised counsel that Plaintiff testified falsely at trial. See Barth Aff. at 6. Mr. Barth also put counsel in contact with Mr. Casteel. Mr. Casteel's interactions with Plaintiff are chronicled in his affidavit, and the attached draft correspondences Mr. Casteel prepared to Sempra (but never sent) back in 2002. See Casteel aff. (attachments).

After learning on July 27, 2005, that Plaintiff would not call Mr. Barth to testify at trial, Sempra decided it would seek to call Mr. Barth and Mr. Casteel in its case to impeach Ms. Wood's testimony regarding the events surrounding Plaintiff's million dollar mistake.

### III. DISCUSSION

Sempra should be allowed to amend its witness list and to offer the UPS witnesses' trial testimony. Sempra's counsel did not contact these witnesses until Plaintiff identified Mr. Barth in the Parties Joint Pre-trial Memorandum. Given the late disclosure by Plaintiff, Sempra could not reasonably have been expected to have learned the full substance of these witnesses' testimony prior to the filing of the memorandum.

If permitted to testify, the UPS witnesses will impeach Plaintiff's testimony on the following points:

(1) whether Plaintiff provided inaccurate information to UPS;

(2) whether Plaintiff knew she provided inaccurate information to UPS;

(2) whether UPS ever told Plaintiff the trading error was the fault of a junior UPS

trader; and

(4) whether Plaintiff admitted to UPS having provided inaccurate information. The UPS witnesses' testimony will also corroborate Sarathi Roy's trial testimony that Plaintiff made an error in the UPS transaction in the early part of 2002, just months prior to his decision to terminate her employment.

The Second Circuit has been hesitant to preclude witnesses' testimony. In Dunlap-McCuller v. Riese Organization, 980 F.2d 153 (2d Cir. 1992), the court outlined the criteria for evaluation whether an exercise of discretion to preclude witness testimony was appropriate as including: "(1) the prejudice or surprise in fact to the opposing party; (2) the ability of the party to cure the prejudice; (3) the extent of disruption of the orderly and efficient trial of the case; and (4) the bad faith or willfulness of the non-compliant party." Id. at 158 (citing Beissel v. Pittsburgh & Lake Erie R.R., 801 F.2d 143, 150 (3rd Cir. 1987). In applying this criteria to a situation in which the defendant offered two witnesses at trial that had not been included on its witness list, or anywhere in its pre-trial submission, the Dunlap-McCuller court held that the trial court did not abuse its discretion in admitting the testimony. Id. at 158-59. See also Dunn v. Zimmer, Inc. 2005 WL 563095 at 1 (D.Conn.) ("the remedy of exclusion is considered 'drastic' and should not be imposed where it could frustrate the overarching objective of the Rules, which is to provide substantial justice for litigants.")

Applying the Dunlap-McCuller criteria to the facts presented in the case at bar weighs in favor of allowing the UPS witnesses to testify at trial. First, there is no surprise or prejudice. Plaintiff identified Mr. Barth as a witness on her witness list and was aware of the existence of Mr. Casteel. See also Wright & Miller, 8 Fed. Prac. & Proc. Civ.2d § 2054 ("If a party lists a witness it is not required to produce that witness at trial. Should another party call

the witness even though it did not list the witness, the listing witness may not object on the ground the witness was not listed by the party calling him or her.") ("Indeed, one might view the listing party's failure to call the witness, if it had indicated the intention to do so, as an unanticipated development at trial that could justify the calling of the witness not listed by either party.")

Second, there will not be any disruption of the orderly and efficient trial of the case since Sempra has yet to commence its case. Sempra expects Mr. Barth's and Mr. Casteel's testimony will collectively last approximately forty-five minutes. The necessary arrangements have already been made to have the UPS witnesses testify remotely on Tuesday, August 30, 2005, at 9:00 a.m.

Third, there is no suggestion that Sempra failed to include these witnesses on its witness list in bad faith or willfully. These third-party witnesses' testimony corroborate Sarathi Roy's testimony and impeach Plaintiff's trial testimony and credibility. If counsel for Sempra had previously know the substance of these witnesses' testimony, they would have listed them on Sempra's witness list. As noted above, counsel was unaware of the testimony these witnesses had to offer until they spoke to them well after the filing of the Parties Joint Pre-trial Memorandum. Further, defense counsel could not have anticipated that Plaintiff would provide blanket denials to questions about her mistakes and criticisms about her performance.

Moreover, although Sempra did not purposefully leave Mr. Barth and Mr. Casteel off its witness list, Sempra respectfully contends that it was not required to identify these impeachment witnesses on its witness list. The Court's Final Pre-trial Order dated May 5, 2005 provides, "Counsel shall set forth the name and address of each witness to be called at trial …. Witnesses not included in the list – except those for unanticipated rebuttal or impeachment –

shall not be permitted to testify at trial, except for extraordinary good cause shown." Thus, the Court's Order comports with Federal Rule 26(a)(1)(A), which excludes from the disclosure requirement witnesses being offered solely for impeachment purposes. If the Court determines that Sempra's delay in adding these witnesses was not excusable notwithstanding the late disclosure by Plaintiff, Sempra will proffer these witnesses' testimony for impeachment purposes only. However, Sempra respectfully submits these witnesses' testimony is too important to be limited for any reason and the Dunlap-McCuller criteria strongly weigh in favor of allowing this testimony.

## IV.    CONCLUSION

For the reasons described herein, Sempra respectfully requests this Court grant Sempra's Motion to Amend Witness List.

DATED: August 25, 2005

Respectfully submitted,

DEFENDANT SEMPRA ENERGY TRADING CORP.

By: _____
Mary C. Dollarhide (ct12251)
Raymond W. Bertrand (ct22968)
Paul, Hastings, Janofsky & Walker, LLP
1055 Washington Boulevard
Stamford, CT 06901-2217
Telephone: (203) 961-7400
Facsimile: (203) 359-3031
marydollarhide@paulhastings.com
raymondbertrand@paulhastings.com

## CERTIFICATE OF SERVICE

This is to certify that on this 25th day of August 2005, a copy of the foregoing was forwarded via hand delivery to counsel for the Plaintiff at the following address:

> Brendan J. O'Rourke, Esq.
> O'ROURKE & ASSOCIATES, LLC
> 27 Pine Street
> New Canaan, CT  06840

*/s/ Raymond W. Bertrand*
Raymond W. Bertrand

STM/302003.1