UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**FILED**

2005 AUG 29 P 1: 36

U.S. DISTRICT COURT
BRIDGEPORT, CONN

---

SUSAN E. WOOD,

               Plaintiff,

v.

SEMPRA ENERGY TRADING
CORPORATION,

               Defendant.

CIVIL ACTION NO.
3:03-CV-986 (JCH)

August 29, 2005

---

## PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION
## TO AMEND WITNESS LIST

**INTRODUCTION**

Plaintiff, Susan E. Wood ("Plaintiff" or "Wood"), hereby respectfully submits this Objection to Defendant Sempra Energy Trading Corporation's ("Sempra") Motion to Amend Witness List, dated August 25, 2005 ("Motion to Amend"), to call two witnesses, Gary Barth ("Barth") and Michael Casteel ("Casteel"), two employees of United Parcel Service ("UPS"), who were not listed by Sempra as witnesses in the Joint Pre-Trial Memorandum ("Pre-Trial Memo").

Sempra proffers three reasons as to why these two witnesses should be permitted to testify:

(i)       to impeach Plaintiff's trial testimony;

(ii)      to corroborate Sarathi Roy's ("Roy") testimony; and

(iii)     to provide testimony central to the issue of Sempra's proffered "legitimate non-discriminatory reasons for termination."

1

For each of the reasons set forth below, each of Sempra's proffered reasons should be rejected, and Sempra's Motion to Amend should be denied in its entirety. [1]

## ARGUMENT

I.    **The Two Witnesses Were Foreseeable And Anticipated Witnesses, And Should Have Been Disclosed As Potential Witnesses In The Pre-Trial Memo**

This Court's Final Pre-Trial Order, dated May 5, 2005 ("Pre-Trial Order"), required the disclosure of all fact witnesses, and admonished that "[w]itnesses not included in this list - except those used for <u>unanticipated</u> rebuttal or impeachment - shall not be permitted to testify at trial, except for extraordinary good cause shown." (emphasis added).  Here, as set forth below, neither witness meets the criteria of being either an unanticipated rebuttal witness or proper impeachment witness, and Sempra has not demonstrated the requisite extraordinary good cause to otherwise permit them to testify in violation of the Pre-Trial Order.

A.    <u>Both Witnesses Were or Should Have Been Anticipated</u>

The testimony that Sempra seeks to offer involves the same assertions that Sempra has made since the inception of this litigation:  that Plaintiff made a mistake in connection with one business transaction involving UPS.  Sempra now seeks to add the cumulative testimony of Barth and Casteel, who were never previously identified as Sempra's witnesses concerning this subject.

---

[1] The timing of the filing of the Motion to Amend should not go unnoticed.  Notwithstanding that Sempra first raised this issue with the Court during the August 16th teleconference with the Court, it waited an additional nine days to file the motion until the eve of Plaintiff's lead trial counsel's leaving to take his son to college, a fact long known by Sempra.

During the August 16th teleconference with the Court, Sempra's counsel represented that "Gary Barth was unknown to us until his name appeared on [Plaintiff's] witness list," and that "[Sempra's counsel] didn't know that man's name for purposes of this trial. Except with … no. His name does not appear on any documents that she proffered." (August 16th Teleconference Transcript at p. 5, attached hereto as Exhibit A). Moreover, Sempra claims in the Motion to Amend that it decided to seek to call Barth and Casteel as witnesses only after Plaintiff advised the Court that she would not be calling Barth, and that "Sempra could not reasonably have been expected to have learned the full substance of these witnesses' testimony prior to the filing of the [Pre-Trial] Memorandum." (Memorandum of Law in Support of Motion to Amend at p. 4). However, neither of these statements is accurate. As detailed below, Sempra knew Barth's name since at least as early as the discovery proceedings in this matter. More significantly, the testimony of both of these witnesses should have been anticipated since the transaction about which they are being offered to testify has always been a significant element of Sempra's defense that Plaintiff's termination was justified for legitimate and non-pretextual reasons. Indeed, while attempting to satisfy the strict rules of the Pre-Trial Order regarding witnesses, by characterizing the proffered testimony as "rebuttal", Sempra is really offering their testimony on its defense case in chief.

Likewise, Sempra was on notice as far back as Plaintiff's deposition on December 12, 2003 that she would deny that she was responsible for the mistake that caused UPS to consummate the transaction with which it was subsequently unhappy, stating: "[a]s the deal was closing, I checked with Brian Cumming, my supervisor at the time and I informed him that I believed UPS had made an error in their calculation and in the

number they wanted to transact at ... ." (Wood Deposition Transcript at pp. 233-34, attached hereto as Exhibit B) (emphasis added).[2]

Further, it has been Sempra's position from the filing of its initial June 10, 2002 response to Plaintiff's CCHRO Complaint that it was Plaintiff who committed a mistake in connection with what has come to be known as the "UPS Transaction", and that such mistake was a significant factor in Sempra's decision to terminate her. See Letter from Sempra's counsel, Peter M. Schultz, Esq., to the CCHRO, dated June 10, 2002, at p. 7, attached hereto as Exhibit C ("Ms. Wood had, through miscalculation quoted the client information which resulted in the client paying more on the deal"); see also Affidavit of Roy submitted to CCHRO, dated June 10, 2002, at ¶¶ 13-15, attached hereto as part of Exhibit C ("I became aware that Susan had been involved in a deal with a very substantial client in which she made an error ... .").

Similarly, Sempra's witnesses in this matter who testified at deposition, including Roy, David Messer ("Messer") and Brian Cumming ("Cumming"), were all questioned and testified about their perceptions that Plaintiff was at fault in connection with the UPS Transaction. As stated above, Plaintiff herself was examined at length about her view of what transpired with UPS at her deposition. Copies of the relevant portions of these deposition transcripts are attached hereto as Exhibit D. In addition, Sempra's January 9, 2004 Response to Plaintiff's First Set of Interrogatories and Requests for Production at Response No. 2 (attached hereto as Exhibit E) repeats the allegation initially made in Roy's June 10, 2002 Affidavit about Plaintiff's miscalculation in connection with the

---

[2] This completely contradicts Sempra's counsel's representation to the Court during the August 16th teleconference that: "[a]t trial I specifically asked [Wood] what had gone on with Barth. Did she not make mistakes? She said no. This was all UPS' fault. I had no way of knowing this before trial. See Exhibit A at p. 5 (emphasis added).

4

UPS Transaction. Thus, since it has been Sempra's position since the inception of the CCHRO proceeding that Plaintiff was at fault in connection with the UPS Transaction, and that her alleged error led in part to Sempra's decision to terminate her, there is no basis to argue that Barth's and/or Casteel's testimony concerning this transaction is either necessary or "unanticipated". In short, Sempra's attempt to add witnesses now does not meet the strict Pre-Trial Order requirements.

Further, Sempra cannot argue now that it did not list Barth as a witness because it relied on the fact that Plaintiff listed Barth on her witness list in the Pre-Trial Memo. As to "common witnesses", the parties expressly designated and listed same on their respective witness lists. Barth was not designated and listed as a "common witness". Thus, there is no merit to the claim that because Plaintiff listed Barth and did not call him, Sempra somehow complied with the Pre-Trial Order. Further to this argument, in order to give Plaintiff notice of the substance of Sempra's witnesses' testimony, Sempra was obligated to set forth the substance of the subject matter of Barth's proffered testimony. It is clear that the substance of Barth's proffered testimony is different from that which Plaintiff intended to call him. Plaintiff intended to call Barth to testify as to her general professional competence, while Sempra states it intends to call Barth to testify about Plaintiff's specific conduct in connection with the particular details of the UPS Transaction. Thus, Sempra was obligated to both list Barth as a witness, and summarize his proffered testimony.

B.    Sempra Has Known Barth and Casteel's Identities

As noted above, in an attempt to explain why the testimony of Barth and Casteel was "unanticipated", Sempra's counsel represented to this Court during the August 16th teleconference that "Gary Barth was unknown to us until his name appeared on [Plaintiff's] witness list." See Exhibit A at p. 5. As shown above, such claim has no merit. Sempra has known of Barth's identity since at least the discovery phase of this matter, and thus Sempra's factual representation about its knowledge of Barth was untrue. Plaintiff asserts that such conduct alone warrants denial of Sempra's motion.[3]

Attached hereto as Exhibit F is a copy of an email exchange between Plaintiff and Barth that was produced in or about January 2004 by Sempra during discovery, and which was listed as Sempra's Trial Exhibit No. 537.

Attached as Exhibit G is a copy of an email produced by Sempra during discovery from Brian Dykes of UPS to Roy regarding efforts to resolve UPS' unhappiness with the UPS Transaction, which specifically states "[Barth] and I were pleased to learn of the interest by yourself and Sempra Energy to find some sort of resolution to the problems that have arisen in our relationship." This email (redacted by Sempra and attached to Sempra's CCHRO submission as an exhibit), was marked and discussed at the depositions of Messer, Roy and Cumming.

---

[3] As Plaintiff and this Court first learned after the trial concluded, the client for whom Sempra's lead trial counsel will be starting a five-week jury trial in California is UPS, Barth and Casteel's employer, which necessarily raises questions about the interaction of Sempra's counsel, these witnesses and UPS, facts which Plaintiff has not had the opportunity to explore. In addition, the trial record has established that UPS demanded money back from Sempra, and Sempra refused. (See trial testimony of Cumming and Roy). UPS, at one point adverse to Sempra, is now cooperating with Sempra and Sempra's counsel in a lengthy trial in California. Given such background, what claim of privilege can be anticipated about the relationship between UPS and Sempra's trial counsel? Certainly, if the Court were to allow the testimony of Barth and Casteel, Plaintiff would be entitled to discovery as to what motivated UPS to cooperate with Sempra. What promises have been made? Who at UPS was involved? Certainly Plaintiff would be prejudiced if she was not given an opportunity to obtain discovery on these points.

Similarly, Sempra knew of Casteel. Attached hereto as Exhibit H is an email from Casteel (on his UPS email address) to Wood that was produced by Sempra in discovery.

Finally, Roy was questioned at his deposition and identified Barth (by his first name only) as being the person with whom he attempted to resolve the UPS Transaction. A copy of his deposition excerpt is attached hereto as part of Exhibit D.

Thus, the record is replete with evidence that Sempra knew of Barth and Casteel's identities long before Barth's name first appeared on Plaintiff's witness list in the Pre-Trial Memo. Therefore, the testimony now sought to be elicited from Barth and Casteel was clearly within Sempra's knowledge, and within the scope of its anticipated defense, from as early as the CCHRO proceeding. Similarly, Sempra knew from the time of Plaintiff's deposition that she denied that she was responsible for the only complaint made by UPS, and thus there was no surprise to Sempra when she so testified at trial, Sempra's representations to the contrary notwithstanding. Accordingly, under the strict requirements of the Pre-Trial Order, Sempra's motion to permit Barth and Casteel to testify should be denied.

## II.    The Potential Testimony Of Barth And Casteel Neither Rebuts Nor Impeaches Plaintiff's Trial Testimony, Nor Buttresses Sempra's Testimony

Sempra avers in support of its Motion to Amend that Barth and Casteel's testimony would impeach Plaintiff and "corroborate" Roy's testimony.[4] However, the proffered testimony of Barth and Casteel would neither impeach or rebut Plaintiff's testimony, nor add relevant, corroborative testimony to that of Sempra's witnesses.

---

[4] Sempra's conclusion that the testimony would corroborate Roy is an admission that the testimony is being offered on its case in chief and thus should have been included in its Pre-Trial submission.

As to impeachment, Plaintiff testified at trial that she became aware that the transaction with UPS was "off market", and that once she knew it, she approached her supervisor, Cumming, and asked him how to handle it. <u>See</u> July 25th Trial Transcript at pp. 145-47, which is attached hereto as Exhibit I. Cumming then testified at trial that he was aware the numbers were "off market", or as he stated, "they had done a deal that had more money in it for Sempra than I would have expected to make from a sophisticated and professional company like UPS", but that he considered UPS to be a sophisticated party, similar in sophistication to a Goldman Sachs, and that he allowed Plaintiff to go ahead with the transaction, which she did. <u>See</u> July 26th Trial Transcript at pp. 59-60, attached hereto as Exhibit J. The proffered statements of Barth and Casteel as to their belief as to who was at fault do not contradict the factual testimony of either Cumming or Plaintiff as to why Sempra consummated the transaction, and is thus completely irrelevant as to Sempra's position concerning the transaction. Rather, this testimony is being offered to provide more detail than any Sempra witness testified they had when they fired Plaintiff.

As noted above, it has been Sempra's consistent position that Plaintiff made some mistake in connection with the UPS Transaction, a position confirmed by the trial testimony of Roy and Messer (excerpts of which are attached hereto as Exhibit J), the only two Sempra employees who discussed Plaintiff's termination, and who testified generally about their perception of the purported error made by Plaintiff in connection with the UPS Transaction. Significantly, Cumming's testimony rebutted the testimony of Roy and Messer. A review of the assertions in the Barth and Casteel Affidavits attached to the Motion to Amend demonstrates that, while their statements may corroborate the

8

<u>general</u> assertions of Roy and Messer, there is no statement by either of them supporting the contention that Roy and Messer were aware of the more detailed assertions of UPS, now coming to light only days before the last day of trial.

The proffered testimony is likewise inappropriate since, as articulated in the affidavits, these witnesses are prepared to testify about <u>their</u> perceptions and beliefs, having nothing to do with the facts <u>known to Sempra at the time</u> to which Sempra's witnesses have testified. For instance, Barth's conclusion that "he does not agree" with Plaintiff's testimony in this matter (¶ 6 of his affidavit) is not surprising, but is completely irrelevant. Similarly, his conclusion that Plaintiff "sounded as if she knew nothing about it" (¶ 7 of his affidavit) is nothing more than his subjective (and inadmissible) state of mind, never conveyed to anyone at Sempra, and thus irrelevant to the issue of whether Sempra terminated Plaintiff as a result of her conduct based upon <u>Sempra's</u> knowledge of the facts at the time of the termination.

Likewise, the Casteel affidavit is rife with irrelevant conjecture and conclusory assertions. For instance, his assertion that Plaintiff "intentionally misreported market indicators" based upon his "research into the matter" and his "independent review of the trades" is nothing more than self-serving and irrelevant post-event justification, based upon unidentified facts. Similarly, his "belief" that this was "intentionally done to mislead UPS" is nothing but conclusory, self-serving speculation, and his conclusion that Plaintiff "withheld information in her testimony" is nothing more than his own subjective (and irrelevant) belief. Indeed, such statements are made without any specificity, and without reference to any documents to support these statements, to determine if there is any factual foundation for the general assertions made. That Sempra had the ability to

9

obtain these witnesses' testimony before trial when they could have been subject to cross-examination by Plaintiff at a deposition makes their self-serving and conclusory statements even more egregious and prejudicial.

Aside from the fact that most of the testimony, as set forth in the affidavits, would be inadmissible speculation and statements as to the witnesses' state of mind (irrelevant to the issues being tried), to permit the testimony of these witnesses based upon affidavits that are not subject to cross-examination (particularly witnesses who have every incentive to cast the blame from themselves as to a significant financial loss suffered by their company) would be patently unfair to Plaintiff.

In short, the proffered testimony of these two witnesses is offered simply to provide more factual information than Roy and Messer had at the time of Plaintiff's termination, and thus cannot be used to buttress their testimony, nor is it corroborative of their testimony. Similarly, since neither Barth nor Casteel's proffered testimony in any way disputes the testimony of either Cumming or Plaintiff that she approached Cumming about what to do and was instructed by him to complete the trade, their testimony neither impeaches nor rebuts Plaintiff's testimony. At best (and only insofar as they include factual assertions and not conjecture, speculation, or statements as to their wholly irrelevant state of mind), these witnesses' testimony is merely cumulative.

Thus, as set forth herein, none of Sempra's three proffered reasons for permitting these witnesses to testify - (i) to impeach Plaintiff, (ii) to buttress the Sempra witnesses, and (iii) to provide testimony central to its defense that Plaintiff was terminated for legitimate reasons - is furthered by the anticipated testimony of either Barth or Casteel. At most, such testimony will improperly lengthen this trial with speculative and

conclusory statements lacking foundation and inadmissible state of mind statements, and should not be permitted.[5]

Further still, such testimony would not be admissible in any event to impeach Plaintiff's testimony, as it constitutes improper extrinsic impeachment evidence under Fed. R. Evid. 608(b).   See also United States v. DiPietro, 2005 WL 1529944, *1 (S.D.N.Y.) (slip copy).

## III.     The Proffered Testimony Cannot Provide Sempra With After-The-Fact Justification for Plaintiff's Termination

Parsing through Sempra's submission as to Barth and Casteel, Sempra is clearly attempting to use information that neither Messer nor Roy had at the time the decision was made to terminate Plaintiff, to now legitimately justify it.   However, this is impermissible, as the Supreme Court articulated in McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995): "an employer could not have been motivated by knowledge it did not have," (Id. at 360), and thus, Sempra cannot therefore avoid liability for discriminatory termination based upon after-acquired evidence of Plaintiff's purportedly wrongful conduct in connection with the UPS Transaction (which Plaintiff has repeatedly denied).   See also Wallace v. Dunn Construction Co., 62 F.3d 374, 378 (11th Cir. 1995).

Thus, since the information articulated in the Barth and Casteel affidavits was unknown to either Roy or Messer at the time the decision to terminate Plaintiff was made,

___

[5] The self-serving Casteel Memorandum and emails (attached to his affidavit) are wholly irrelevant since they were concededly never sent to Sempra or Plaintiff, a significant issue in addition to the foundation issues associated with their submission under these circumstances.

11

such information cannot be used by Sempra to legitimize an otherwise discriminatory termination.

### IV.   Sempra's Disclosure Of Plaintiff's Trial Testimony To Casteel And Barth Violated The Court's Sequestration Order

Fed. R. Evid. 615 provides that "at the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion".[6]   The core purpose of the rule is to "aid in detecting testimony that is tailored to that of other witnesses and is less than candid." United States v. Fusilier, 2003 WL 1098236, *1 (5th Cir.) (citing United States v. Wylie, 919 F.2d 969, 976 (5th Cir. 1990)).   Whether a witness who violates a sequestration order is permitted to testify is left to the sound discretion of the trial court.  Id.  Indeed, a court has many options upon a violation of the rule, including holding a witness in contempt, holding counsel who is responsible for the violation in contempt, allowing the witness to be cross-examined, declaring a mistrial, striking the witnesses testimony, and disqualifying the witness from testifying entirely.  United States v. Solorio, 337 F.3d 580, 593 (citing Charles Alan Wright & Victor James Gold, 29 *Federal Practice and Procedure*, § 6246 at 93-95 (1997)).

During Plaintiff's testimony on the first day of trial, Sempra's counsel made a request for sequestration, which was granted by the Court.  See July 25th Trial Transcript at p. 50.  As a result, all potential witnesses were excluded from the courtroom while

---

[6] None of the exceptions to exclusion under Fed. R. Evid. 615 apply here in that neither Barth nor Casteel is (i) a party who is a natural person; (ii) an officer or employee of a party who is not a natural person designated as its representative by its attorney; (iii) a person whose presence is shown by a party to be essential to the presentation of the party's cause, or (iv) a person authorized by statute to be present.

other witnesses were testifying. However, the Barth and Casteel Affidavits admit that Sempra violated the Court's sequestration order (which Sempra itself had requested) by permitting them, potential witnesses, to review Plaintiff's trial testimony, which enabled both Barth and Casteel to craft affidavits (not subject to cross-examination). Further, if permitted to testify at trial, such violation allows Barth and Casteel to mold their testimony in a way that specifically addresses testimony they would not have heard had they been physically present at trial. Sempra's counsel's allowing them to read Plaintiff's trial testimony is no less of a violation of the order than if they were improperly present during her testimony and heard it live. As argued by Sempra's lead trial counsel herself, this is the precise situation that sequestration orders are purposed to prevent - witnesses from hearing (or in this case reading) the testimony of a witness who has testified before them when they have yet to testify. Thus, Sempra's motion should be denied as a result of its violation of the Court's sequestration order, and these two witnesses should not be permitted to testify as a result.

Further the Court should consider an appropriate sanction to be imposed on Sempra's counsel who knowingly and intentionally caused these witnesses to violate the sequestration order Sempra itself requested.

## CONCLUSION

For all the foregoing reasons, Sempra's motion to permit Barth and Casteel to testify at trial should be denied in its entirety, and Sempra should be sanctioned for its willful violation of the Court's sequestration order.

PLAINTIFF,
SUSAN E. WOOD


By: _____
Brendan J. O'Rourke (ct00522)
Marianne F. Murray (ct14393)
Jeffrey M. McCormick (ct21185)
O'ROURKE & ASSOCIATES, LLC
27 Pine Street
New Canaan, CT  06840
Telephone:  (203) 966-6664
Facsimile:  (203) 966-5710
Email: brendan@orourkeandassoc.com
Counsel for Plaintiff

# CERTIFICATION

This is to certify that a copy of the foregoing was served via hand delivery to counsel of record as listed below this 29th day of August, 2005.

_____
Maryanne F. Murray

Mary Dollarhide, Esq.
Raymond W. Bertrand, Esq.
Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard
Stamford, CT 06901