UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN E. WOOD,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>SEMPRA ENERGY TRADING CORPORATION,<br><br>　　　　　　　　　Defendant. | CIVIL ACTION NO.<br>3:03-CV-986 (JCH)<br><br><br><br><br>August 26, 2005 |

**PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION FOR *EX PARTE IN CAMERA* REVIEW**

**I.　INTRODUCTION**

Plaintiff, Susan E. Wood ("Plaintiff" or "Wood"), hereby objects to Defendant's Motion to File Documents Under Seal, dated August 24, 2005 ("Motion to Seal").

**II.　BACKGROUND**

Defendant Sempra Energy Trading Corporation ("Defendant" or "Sempra"), on the eve of the recommencement of the trial of this matter,[1] has submitted its third response to Plaintiff's Motion in Limine, and Memorandum of Law in Support thereof,

---

[1] It should not escape the Court's attention that Sempra has waited until the eve of Plaintiff's lead counsel, Brendan J. O'Rourke's trip to Wisconsin, of which Sempra has had notice of since the teleconference with the Court on August 16, 2005, leading to the inference that it has sought to gain tactical advantage. Further, as of the drafting of this Objection, Sempra has filed another motion seeking to amend its witness list. Plaintiff will obviously be forced to deal with such motion while Attorney O'Rourke is in Wisconsin, and will be filing her response to this tactic on Monday, August 29th.

1

both dated June 21, 2005 ("Motion in Limine"). In the Motion in Limine, Plaintiff detailed and documented a number of discovery abuses by Sempra, and requested that the Court enter one or more rulings against Sempra in view of the trial which had been scheduled to commence on July 25, 2005. Sempra filed its first opposition papers to the Motion in Limine on June 25, 2005 ("Sempra's First Response").

At a teleconference held on July 14, 2005, the Court articulated the view that the assertions made in the Motion in Limine, when reviewed against Sempra's First Response, resulted in the Court's conclusion that Sempra had not adequately explained a number of discovery response abuses raised by Plaintiff. Based upon such assessment, the Court ordered that Sempra provide a very detailed submission to the Court, calling for Sempra to explain a number of the discrepancies set forth in the Motion in Limine, with very exacting detail ("Court's July 14th Discovery Order"). Sempra filed its response to the Court's July 14th Discovery Order on July 18, 2005 ("Sempra's Second Response"), including the Affidavits of two Sempra employees, Mr. Kubicek and Ms. Freda.

The trial of the above matter commenced on July 25, 2005, and was postponed after three days of testimony and evidence on July 27th. The trial is scheduled to conclude on August 30th.

At the conclusion of evidence on July 27, 2005, the Court articulated its view that upon review of Sempra's Second Response, the Court had "… very serious questions about the discovery responses by the defendant in th[is] case." See July 27th Trial Transcript at p. 185. The Court at such time advised Sempra and its counsel that it would provide Sempra a third opportunity to file an affidavit to explain the serious questions the

Court had regarding Sempra's discovery response conduct. More particularly, the Court requested specific responses that were given by specific people in responding to Plaintiff's discovery requests, and how Sempra undertook to satisfy the discovery requests. See Id. In the colloquy with the Court, counsel for Sempra indicated that Plaintiff had drafted "narrow" document demands, and that counsel for Sempra would have "done a very expansive document request" in contrast to what she characterized as Plaintiff's document request. See Id. at p. 187. Plaintiff asserts that her discovery requests were sufficiently broad, and if Sempra had acted in good faith, Sempra would have produced to Plaintiff all documents in the possession of Sempra that related to Plaintiff. Indeed, counsel for Sempra has stated that Sempra has certain documents relating to Wood that it decided not to produce because, purportedly, Plaintiff's discovery requests did not capture them. Plaintiff is highly skeptical of such assertion.

Counsel for Sempra went on to articulate that the affidavit of Mr. Kubicek, made part of Sempra's Second Response, was all that Sempra could articulate in response to the Court's concerns about the discovery abuses, saying "[w]hat we know is what was articulated [in Sempra's Second Response and attachments thereto]. Id. at 188. The Court then articulated that, based upon such assertion by Sempra's counsel, it would make its decision based on what Sempra had provided. Id. As such, Sempra's submission being offered now, three days before the recommencement of trial (providing scant opportunity for Plaintiff to respond), conflicts with the colloquy between Sempra's counsel and the Court on July 27th. It is Plaintiff's contention that, in view of such record (July 27th Trial Transcript), Sempra's actions were tantamount to a representation that no additional submission would be made. Plaintiff has proceeded with her trial preparation

accordingly. Thus, the submission of any pleading by Sempra seeking to explain its responses to discovery are both unwarranted and untimely, and for that reason alone, the Court should preclude Sempra from supplementing its previous two responses on this issue.

To make this matter even more burdensome to Plaintiff, Defendant's submission is made with a request that the Court seal the documents, and review them *in camera* without Plaintiff of Plaintiff's counsel being given an opportunity to review the submission. For the various reasons stated below, Plaintiff objects to Defendant's submission, and requests that the Court deny Defendant's Motion to Seal its response.

In Plaintiff's Motion in Limine, as well as Plaintiff's Memorandum in Response to Sempra's Second Response, dated July 22, 2005, ("Plaintiff's Second Motion in Limine Memorandum", which responds to the affidavits of Mr. Kubicek and Ms. Freda), Plaintiff sets forth a number of unanswered discovery abuses. Plaintiff refers the Court to Plaintiff's Second Motion in Limine Memorandum for the details of such abuses. In any event, the Court, having reviewed Sempra's Second Response, was clearly not satisfied with Sempra's response or its outside counsel's. By seeking now to submit its responses under seal for *in camera ex parte* review, Sempra strategically avoids providing Plaintiff notice of the proffered reasons for the discovery abuses presented to the Court, for which the Court had demanded explanation. Previously, Plaintiff had painstakingly reviewed the deposition testimony, proffered interrogatory responses by Sempra, and supplemental submissions by Sempra in response to Plaintiff's Motion in Limine, and detailed the inaccuracies and obfuscation of Sempra on critical points. See Plaintiff's Second Motion in Limine Memorandum, detailing the ambiguity and conflicts

in Mr. Kubicek's affidavit. Now, Sempra indicates that it is submitting 10 affidavits and 25 documents which it proposes the Court review to satisfy itself that Sempra has not indeed violated its discovery obligations. The unfairness of such procedure is patently evident, and Plaintiff vehemently objects to such proposal.

### III.    ARGUMENT

It is inappropriate for the Court to be asked to, much less agree to, review documents which present factual assertions on contested issues of fact and law, in an *ex parte* matter, without providing Plaintiff an opportunity to review and rebut assertions by the adverse party, particularly in view of the fact that the Court is the ultimate finder of fact in this trial.

It is significant that Defendant seeks to have the Court review 10 affidavits and 25 documents setting forth Sempra's assertions as to contested issues of fact, without Plaintiff having an opportunity to review and respond to same. In support of its Motion to Seal, Sempra cites <u>Plasmanet, Inc. v. Apax Partners Inc.</u>, 2003 WL 21800981 (S.D.N.Y.), for the proposition that the law supports this Court's *in camera ex parte* review of documents. However, a review of <u>Plasmanet</u> reveals that the Magistrate Judge in the matter, who had agreed to do an *in camera* review of certain attorney/client privileged documents (which may have been germane to a willful patent infringement action), was not the ultimate fact-finder in the case. Of course, the instant case presents a dramatically different setting. Plaintiff proceeded with the decision to try this case before the Court, and chose not to elect a jury. Thus, the Court in this matter is the finder of fact, and the *in camera* review contemplated by Sempra would deprive Plaintiff of a

significant right if she were precluded from reviewing the referenced 10 affidavits and 25 documents which Sempra proposes the Court review.

In Hansberry v. Father Flanagan's Boys' Home, 2004 WL 3152393 (E.D.N.Y.), the court stated:

> I decline to consider evidence submitted by one party *in camera* in ruling on a summary judgment motion. See e.g., Vining v. Runyon, 99 F.3d 1056, 1057 (11th Cir. 1996) (adversarial legal system does not generally sanction *ex parte* determinations on the merits of a civil case unless submissions involve compelling security concerns or the statute granting the cause of action provides for *in camera* resolution of the dispute). In Vining, plaintiff sought to compel the production of certain personnel files and defendant opposed the motion claiming the information was protected. The defendant moved for summary judgment, and the district court ordered production of the files for in camera consideration. The 11th Circuit reversed the lower court and held that an individual's right to due process includes a party's right to be aware and refute evidence against the merits of his case. Id. at 1057. Other circuit and lower courts have similarly concluded that *in camera* consideration of evidence is not appropriate in the absence of special circumstances not present here.

Id. at *4 FN 9. Further, in the context of a proceeding under the Freedom of Information Act, courts have held that *in camera* proceedings "'should be employed only where absolutely necessary,' because they are 'necessarily conducted without benefit of criticism and illumination by a party with the actual interest in forcing disclosure.'" Salisbury v. U.S., 690 F.2d 966, 973 FN 3 (D.C.Cir. 1982) (quoting Allen v. CIA, 636 F.2d 1287, 1298 FN 63 (D.C.Cir. 1980); Vaughn v. Rosen, 484 F.2d 820, 825 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977 (1974)).

In the instant matter, no special circumstances can be deemed to exist to provide Sempra an opportunity to use such a stratagem to deal with Plaintiff's pending Motion in Limine. Indeed, Sempra had been given numerous opportunities before its most recent

filing to meet the Court's articulated concerns about its conduct. By waiting until the eve of the termination of the trial, Sempra should not benefit from its conduct. In short, the extraordinary circumstances proffered by Sempra were created by Sempra.

Further to the prejudice being suffered by Plaintiff as a result of Sempra's tactics, Sempra furthers its abuse by failing to provide Plaintiff even a privilege log concerning the submitted materials,[2] which are being submitted based upon an *omnibus* declaration of attorney/client privilege and work-product privilege.[3]

"The purpose of the privilege log is to provide the parties and the court adequate information to determine whether a document is privileged." In re Papst Licensing, 2001 WL 1135268, *2 (E.D.La.). In Securities and Exchange Commission v. Thrasher, 1996 WL 125661 (S.D.N.Y.), the court noted that "[t]ypically, a privilege log must identify each document and provide basic information, including the author, recipient, date and general nature of the document." Id. at *1; see also, United States v. Construction Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996). In Thrasher, the court required

---

[2] As this Objection was being drafted, and only in response to Plaintiff's written request, Sempra's counsel delivered a letter containing what purports to be a "privilege log" as to what was submitted to the Court for *in camera*, *ex parte* review. A copy of Sempra's counsel's August 25, 2005 letter is attached hereto as Exhibit A. However, even this letter is patently deficient, and raises more questions about the propriety of Sempra's *ex parte*, *in camera* submission. For example, the letter lists a number of affidavits submitted *ex parte* to the Court, yet fails to identify the subject matter of the affidavits, and their dates of execution. As to the documents submitted to the Court, Sempra's counsel's letter again utterly fails to identify the subject matter of the document, thus depriving Plaintiff any opportunity to make any determination as to the propriety of the *ex parte* submission. As well, the identification of the sender and recipients of many of the communications identified in the letter only further raises the suspicion that such documents are not privileged, since in many cases they are not communications between client and counsel, but communications among Sempra employees. This only serves to underscore the unfair disadvantage to Plaintiff of Sempra's *ex parte* submission.

[3] Sempra, in its filing entitled Defendant's Statement in Support of Additional Affidavits Regarding its Good Faith Discovery Efforts, dated August 24, 2005 ("Sempra's Discovery Statement"), makes a number of wholesale condemnations of Plaintiff's purported misconduct during the discovery phase, which alleged misconduct had never before been made an issue before this Court. In particular, Sempra seeks to shift the focus of attention from its own conduct to Plaintiff's conduct by stating that Plaintiff has not produced a privilege log in connection with certain of Plaintiff's objections to Sempra's discovery requests in this matter. However, Plaintiff has not produced a privilege log because no documents in response to Sempra's discovery requests were withheld based upon an asserted privilege.

7

the defendant to identify the time period of the documents, list the individuals who were authors or addressees or copied on the documents, and to provide counsel's representation as to whether the documents were prepared "... (a) ... to assist in anticipated or pending litigation or (b) contain information reflecting communications between (i) counsel or counsel's representatives and (ii) the client or the client's representatives, for the purpose of facilitation in the rendition of legal services to the client." Thrasher, 1996 WL 125661 at *1.

In a case where a party failed to provide a privilege log to the opposing party, the court in Carty v. Government of Virgin Islands, 203 F.R.D. 229 (D.Virgin Islands 2001), held:

> [B]y not providing a copy of such privilege log to Plaintiff, Magras has negated the very purpose of Rule 26(b)(5), i.e. "...describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." … Under Rule 26(b)(5), the party asserting the privilege or protection must specifically identify each document or communication and the type of privilege or protection being asserted in a privilege log. To properly demonstrate that a privilege exists, the privilege log should contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, or for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met as to that document. The summary should be specific enough to permit the court or opposing counsel to determine whether the privilege asserted applies to that document.

Id. at 229 (citing Smith v. Dow Chemical Co. PPG, 173 F.R.D. 54, 57-58 (W.D.N.Y. 1997); McCoo v. Denny's, Inc., 192 F.R.D. 675, 680 (D.Kan. 2000); In Re: Pfohl Brothers Landfill Litigation, 175 F.R.D. 13, 20-21 (W.D.N.Y. 1997); First American

Corp. v. Al-Nahyan, 2 F.Supp.2d. 58, 63 FN 5 (D.C. 1998); Jones v. Boeing Co., 163 F.R.D. 15, 17 (D.Kan. 1995)). Thus, in this case, without a complete and appropriate privilege log, Plaintiff has been further denied the due process right to even make an assessment of the proffered documents. Such failure alone authorizes the Court to summarily deny Sempra's pending motion.

Sempra's attempt to proceed by offering explanations to the Court as to its discovery conduct, without review by Plaintiff who is uniquely situated to assess the veracity and accuracy of such assertions, presents a significant risk that inaccurate and misleading statements will not be spotted. Plaintiff, unlike the Court, has full access to all the documents produced in discovery, all the depositions transcripts, and all the communications between the parties and their counsel. As such, Plaintiff has the ability to review Sempra's assertions in a way that the Court cannot. Further to this point, Plaintiff points to Defendant's previous conduct in offering contradictory, and patently inadequate and wrongful responses to Plaintiff's discovery requests, which has been outlined in Plaintiff's Motion in Limine, and Plaintiff's response to the Kubicek affidavit.

Plaintiff further asserts that Sempra's wrongful approach to discovery manifested itself in the testimony of the witnesses at trial. In particular, the following abuses, although by no means an exhaustive list, were elicited at trial:

1. Trial testimony of Brian Cumming (at pp. 53-54 of the July 26th Trial Transcript, attached hereto as Exhibit B) conceding inaccuracy of Sempra's Response to Interrogatory No. 3 concerning identity of persons in the Natural Gas and Petroleum Derivatives Group;[4]

2. Trial testimony of Brian Cumming (at pp. 66-71; 113-114; 117-119 of the July 26th Trial Transcript, attached hereto as Exhibit C) concerning

---

[4] Sempra's Interrogatory Responses, dated January 23, 2004, were entered into evidence at the trial as Plaintiff's Trial Exhibit 35.

9

        objective criteria, including objective "benchmarks", used to review profitability, and concession that Sempra's Response to Interrogatory No. 7 was incomplete and inaccurate;

3. Trial Testimony of James Evans (at pp. 146-147 of the July 26th Trial Transcript, attached hereto as Exhibit D) concerning existence of, and maintenance by, Sempra of his Excel spreadsheet detailing his profitability (which was not only not produced in discovery, but contradicts Sempra's Response to Interrogatory No. 7);

4. Trial Testimony of Sarathi Roy (at pp. 167-169 of the July 26th Trial Transcript, attached hereto as Exhibit E), which concedes inaccuracy of Sempra's Response to Interrogatory No. 3 concerning identity of persons in the Natural Gas and Petroleum Derivatives Group;

5. Trial Testimony of Sarathi Roy (at pp. 20-22 of the July 27th Trial Transcript, attached hereto as Exhibit F) conceding the incompleteness of Sempra's Response to Interrogatory No. 2 in failing to identify Brian Rickers, Beth Dwyer, Max Strongin, Greg Woulfe, and Transom Trucking's Greg Zollar as persons whose perceptions contributed to Sempra's reason to terminate Plaintiff; and

6. Trial Testimony of David Messer (at pp. 173-177 of the July 27th Trial Transcript, attached hereto as Exhibit G) testifying to his use of objective "benchmarks" to evaluate profitability, which explicitly contradicted the subjective evaluation criteria set forth in Sempra's Response to Interrogatory No. 7.

Based upon such conduct, Sempra has lost any presumption of good faith and fairness in its handling of its discovery obligations, and, therefore, should not be allowed a third proffered defense to be shielded from Plaintiff's scrutiny.

### IV. CONCLUSION

For all of the foregoing reasons, Plaintiff objects to Defendant's Motion to Seal, and requests that the Court deny Sempra's motion, and further order that Sempra be precluded from filing any additional submissions that seek to respond to *Plaintiff's in limine* motion.

PLAINTIFF,
SUSAN E. WOOD

By: _____
Brendan J. O'Rourke (ct00522)
Jeffrey M. McCormick (ct21185)
O'ROURKE & ASSOCIATES, LLC
27 Pine Street
New Canaan, CT  06840
Telephone:  (203) 966-6664
Facsimile:  (203) 966-5710
Email: brendan@orourkeandassoc.com
Counsel for Plaintiff

## CERTIFICATION

This is to certify that a copy of the foregoing was served via hand delivery, to counsel of record as listed below this 26th day of August, 2005.

 

_____
Marianne F. Murray

Raymond W. Bertrand, Esq.
Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard
Stamford, CT  06901

Mary Dollarhide, Esq.
Paul, Hastings, Janofsky & Walker LLP
3579 Valley Centre Drive
San Diego, CA  92130