UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN E. WOOD,<br><br>       Plaintiff,<br><br>v.<br><br>SEMPRA ENERGY TRADING CORP.,<br><br>       Defendant. | CIVIL ACTION NO.<br>3:03-CV-986 (JCH)<br><br><br><br><br><br>September 7, 2005 |

**DEFENDANT'S MEMORANDUM**
**ADDRESSING SPECULATIVE DAMAGES**

  Defendant Sempra Energy Trading Corp. ("Sempra") hereby submits this supplemental memorandum addressing the unduly speculative nature of Plaintiff Susan Wood's demand for a monetary award.[1]

**I. INTRODUCTION**

  Plaintiff seeks to recover earnings she claims she would have received from Sempra had she not been terminated in March, 2002. Plaintiff's request for damages is not just exorbitant, but considering the lofty figures she has requested, Plaintiff's case has a bewildering dearth of evidence to support the values she proposes in her damages calculations. As discussed

---

[1] Sempra respectfully submits that Plaintiff failed to meet her burden of proving she was unlawfully discriminated or retaliated against. For that reason, Plaintiff is not entitled to any damages. However, in the event there is a liability finding against Sempra, this memorandum is submitted in response to Plaintiff's Memorandum of Law Regarding Evidence of Damages dated July 26, 2005.

below, Plaintiff has not proffered the critical testimony or data to establish a reasonable estimate of her possible future earnings, either at Sempra or at AgCert, nor has she retained an expert to furnish such information. In the absence of relevant economic considerations, Plaintiff engages in free-wheeling and ungrounded speculation about her possible income at Sempra and her likely earnings at AgCert. For these reasons, Plaintiff's recovery should be limited if the Court should rule in her favor on any of her claims.

## II. DISCUSSION

### A. Steps in Damages Calculation

The analytical sequence for calculating economic damages requires the fact-finder to: (1) determine the proper duration for the award; (2) calculate the plaintiff's estimated yearly income at her former job for the award; (3) offset the award with mitigation earnings; and (4) discount the award to present value. See Ogden v. Wax Works, Inc., 29 F. Supp.2d 1003, 1019-21 (N.D. Iowa 1998). Plaintiff has chosen not to furnish vital data at each step of the damages computation, and now expects this Court to engage in undue and gross speculation, as evidenced by her presentation of certain charts at trial which lack any factual basis whatsoever.

### B. Deficiencies in Plaintiff's Proof

#### 1. Duration of Award

At trial, Plaintiff's relied solely on her subjective intent to remain employed at Sempra through 2010 as the basis for the proposed duration of a front pay award.[2] To the extent

---

[2] Plaintiff could have, but elected not to, proffer expert testimony or statistical information from the Bureau of Labor indicating how long individuals employed in occupations comparable to the position Plaintiff held typically remain employed.

2

that any other evidence was admitted at trial on this issue, the evidence suggests that Sempra experiences very high turnover and that Plaintiff herself frequently changes employers. Indeed, in the last decade, Plaintiff has worked for at least seven different companies. See Wood Resume, Plaintiff's Trial Exhibit 1 and Pl.'s trial testimony.

Moreover, it is undisputed that the Petroleum Derivatives Department dissolved several months after Plaintiff was terminated, and more senior, more knowledgeable and more profitable marketers were laid off. This fact alone should limit any back pay/front pay award to December 2002.[3]

In contexts similar to that presented here, courts have denied front pay awards as being unduly speculative. For example, in affirming the trial court's denial of front pay damages, the Eighth Circuit opined in Standley v. Chilhower R-IV Sch. Dist. that "[t]he court does not know how long the plaintiff actually would have remained working at the job, whether the plaintiff soon would have left for a different . . . job, or whether the plaintiff soon would have been dismissed for legitimate reasons." 5 F.3d 319, 322 (8th Cir. 1993). For the same reasons articulated by the Standley Court, Plaintiff's recovery should be limited. See also cases cited at footnote 3 below.

---

[3] Defendant has a pending motion before this Court, filed on June 24, 2005, addressing this issue. As such, Defendant will not restate its arguments related to that issue at this time. See Tyler v. Union Oil Co. of California, 304 F.3d 379, 402 (5th Cir. 2002) (affirming district court's holding that plaintiffs not entitled either to front or back pay because "the business entity that employed the [plaintiffs] ceased to exist . . . [therefore], [e]ven absent termination, the [plaintiffs] would no longer be employed by [defendant] and would not have received wages."); Schrand v. Federal Pac. Elec. Co., 851 F.2d 152, 159 (6th Cir. 1988) (front pay denied because the employee would have been terminated when the office in which he worked closed).

2.  **Annual Income at Sempra**

Plaintiffs seeks future earnings from Sempra under the bald presumption that she would have been entitled to received a particular level of compensation had she chosen, and had the opportunity, to remain employed at Sempra from 2002-2010. Upon closer reflection, however, questions and assumptions pervade Plaintiff's personal assessment of her earning potential, and undermine the reliability of the damages to which she believes herself entitled. Consider the following:

- Employee bonuses depend on company profits that are attributable to that employee, as well as, the department in which that employee works.

- Employee bonuses depend on the prevailing market conditions. This is particularly important given the fact that Plaintiff held a sales position. For example, in Goss v. Exxon Office Sys. Co., the Third Circuit affirmed the district court's limitation of front pay to four months, quoting the district court's view that, "[c]ompensation in sales business depends on a number of factors other than the individual salesperson's ability." 747 F.2d 885, 890 (3d Cir. 1984).

- Evidence presented at trial showed that employee bonuses varied wildly from person to person and year to year.[4]

- Plaintiff's history of relatively small bonuses ($10,000 in 2001, and $50,000 in 2002) does not support her generous projections. Any damages award in favor of Plaintiff must be supported by the record. For example, in Stephens v. The C.I.T. Group/Equipment Fin., Inc., the Fifth Circuit reversed the damages award as excessive, and determined that the calculation of projected bonuses were not supported by the record. 955 F.2d 1023, 1028-29 (5th Cir. 1992). The court noted that "there is no evidence in the record to support [plaintiff's] claim that his lost bonuses equaled $14,000 a year. [Plaintiff] never earned a $14,000 bonus while at CIT and produced no evidence showing that he would have earned such a bonus in the years 1985 through 1990. The only evidence of past bonuses that [plaintiff] produced shows that he earned $10,357 in 1981, $6,688 in 1982, $0 in 1983, and $3,852 in 1984." Id. at 1029.

---

[4] See Plaintiff's Trial Exhibit 41 (marked for identification only).

- Plaintiff cannot base her bonus projections on what other employees earned after she was terminated. In support of this proposition, Plaintiff's counsel cited to EEOC v. Colgate-Palmolive, 612 F.Supp 1476 (S.D.N.Y. 1985) in his memorandum of law. However, Colgate-Palmolive did not hold that a victim may be awarded damages equal to the average of all performance based bonuses company-wide, rather than the actual bonuses earned by the individual. In fact, the court in Colgate was only able to award a specific bonus amount to the plaintiff because Colgate-Palmolive, Co. maintained a bonus program that paid all employees of a particular salary grade the same amount. Colgate, 612 F.Supp at 1480. Indeed, the Court specifically refrained from adopting plaintiff's "above-average" requested damages. As demonstrated at trial, Sempra does not have such a formulaic bonus structure as presented in Colgate.

- Plaintiff has not submitted information about bonuses awarded to petroleum derivatives marketers at other firms after Sempra's department dissolved to serve as a model from which to estimate her likely bonuses.

3. **Projected Earnings at AgCert**

Plaintiff has not provided the Court with essential information it needs to reasonably determine the amount Plaintiff is likely to earn with her present employer, AgCert International (AgCert). This information must be considered to offset any projected lost earnings from Sempra to prevent duplicative recovery.

Plaintiff's annual compensation at AgCert includes a commission and equity interests. See AgCert Offer Letter to Wood, attached hereto as Trial Exhibit A ("Offer Letter") and Pl.'s trial testimony. In addition, AgCert compensated Plaintiff with 45,000 equity units when she was hired. See Offer Letter.

Plaintiff testified at trial that the value of her equity interest is tied to AgCert's performance. However, Plaintiff elected not to not to present evidence or expert testimony regarding AgCert's current or projected financials. Had Plaintiff presented such information, the Court would have been made aware of the fact that Alan Tank, AgCert's Chief Executive Officer, has been quoted as stating that the company "already has contracts for about $100 million of business extending to early 2008, and that represents only a portion of anticipated

5

revenue." See Chris Kaufman, Luck of Irish May Help AgCert in London Trading, Orlando Business Journal, June 17, 2005 (attached hereto as Exhibit B). Mr. Tank has also commented that "[t]he demand [for greenhouse credits] far outstrips the supply, [and] [t]his is the beginning of a very significant market opportunity.'" Id.

Evidentially Mr. Tank's positive sentiments about AgCert's future is shared by investors. AgCert went public in June 2005, initially selling at about 1.61 pounds. Id. Less than three months later, AgCert shares have jumped to about 2.20 pounds. See 9/6/2005 London Stock Exchange Share Information (attached hereto as Exhibit C).

Rather than providing the Court with data or expert testimony regarding the likely value of her equity interest, Plaintiff relies exclusively upon her own reckoning and surmise. Contrast Plaintiff with the plaintiff in Downes v. Volkswagen of Am., who presented back and front pay calculations via an expert, "an accomplished actuary and skilled in using [] statistical data and techniques necessary to compute projected earnings and present values." 41 F.3d 1132, 1142 (7th Cir. 1993). See also Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1188 (2d Cir. 1992) (economist testified about the amount of economic losses plaintiff suffered as a result of his termination).

In cases similar to that presented her, courts have denied plaintiffs the monetary awards they have sought. For example, in denying front pay award, the court in Wilcox v. Stratton Lumber, Inc. commented that, "Plaintiff's [front pay] testimony was based purely on her own experience, and it was not supported by expert testimony." 921 F. Supp. 837, 844 (D. Maine 1996). Without the ability to reasonably forecast what equity interests AgCert might award to Plaintiff in the future or what those interests might be worth, any award of front pay to Plaintiff would be unduly speculative.

4.   **Discounting to Present Value**

Plaintiff's annual lost earnings must be reduced by corresponding projected income at AgCert, which then must be discounted to present value using an appropriate discount rate. Whitten v. Cross Garage Corp., No.00 Civ. 5333 (JSM)(FM), 2003 WL 21744088, at *4 (S.D.N.Y. July 9, 2003) ("[A]n award of front pay should be discounted to its present value."). Plaintiff has not provided any evidence outlining the necessary steps of her damages calculation, including present value adjustments for her alleged damages. Furthermore, it is counsel's understanding that AgCert stock is listed in the United Kingdom only. Therefore, Plaintiff has left it up to the Court to convert any projected equity appreciation into U.S. dollars. In sum, Plaintiff glosses over the depth of assumptions, both mathematical and analytical, that are integral to calculating lost earnings.

C.   **Role of Expert Testimony**

As indicated in the above discussions, plaintiffs in employment cases routinely engage experts to identify and analyze data necessary to calculate reasonably proposed lost earnings damages, such as employment duration, mitigation damages, and net present value. Hipp v. Liberty Natl. Life Ins., 39 F. Supp. 2d 1359, 1363-64 (M.D. Fla. 1999) ("The sort of mathematics necessary to determining the projected path of earnings histories characterized by wide fluctuations, accounting for upward and downward trends in earnings, and reducing the resulting figures to present value is commonly used by economists and accountants. Without a useful projection of lost future earnings, the Court has no basis to determine the elements of front-pay that are earnings-dependent."). See also Carmody v. Pronav Ship Mgmt., Inc., 224 F.R.D. 111, 132 (S.D.N.Y. 2004) (plaintiff's damages expert provided statistical evidence and analysis); Heralko v. Nat'l Liberty Corp., 1997 WL 408325, No. 94 CV 7660, at *11 (E.D. Pa.

July 22, 1997 (plaintiff retained economist to testify on back and front pay damages). The importance of expert testimony in this case is only augmented by Plaintiff's failure to tender the wide range of information necessary to lend reasonable support to her damages figures.

> In language keenly relevant to this case, the Seventh Circuit explained that:
>
> In general, the larger the stakes in a case, the more money parties will – and should – spend in litigating it, because the cost of error is greater the more is at stake. The amount of proof required to establish damages will tend, therefore, to be proportional to the amount of damages claimed.

Partington v. Broyhill Furniture Indus., Inc., 999 F.2d 269, 273 (7th Cir. 1993) (citations omitted). Plaintiff's initial damages calculation in this matter was approximately $6,000,000. However, with such a large amount of money at stake, Plaintiff proffers insufficient evidence, largely in the form of her own lay opinions and charts including "High", "Medium", and "Low" estimates of her damages, to prove her monetary claims. If Plaintiff believes she is entitled to such substantial sums, she should have provided admissible evidence. She failed to do so. Accordingly, she has not set forth a reasonable basis upon which to assert the amount of lost damages she claims.

## III. CONCLUSION

For the foregoing reasons, Sempra requests that the Court deny Plaintiff's request for damages on the grounds that her projections are unduly speculative and unsupported by evidence or relevant testimony.

Respectfully submitted,

By: _/s/ Ray W. B_____
Mary C. Dollarhide (ct12251)
Raymond W. Bertrand (ct22968)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
1055 Washington Boulevard
Stamford, CT 06901-2217
Telephone: (203) 961-7400
Facsimile: (203) 359-3031
Email   marydollarhide@paulhastings.com
        raymondbertrand@paulhastings.com

Counsel for Defendant
Sempra Energy Trading Corp.

## CERTIFICATE OF SERVICE

The undersigned, a member of the bar of this Court, hereby certifies that on this 7th day of September, 2005, a true and correct copy of the Defendant's Memorandum Addressing Speculative Damages was served on the following counsel of record via overnight delivery to:

>Brendan J. O'Rourke, Esq.
>Maryanne Murray, Esq.
>Jeffrey M. McCormick, Esq.
>O'Rourke & Associates, LLP
>27 Pine Street
>New Canaan, CT  06840

_____
Raymond W. Bertrand

STM/300004.8

**EXHIBIT A**



September 3, 2003                                           COMPANY PRIVATE

COPY

Mrs. Susan E. Wood
12 Ridgewood Road
Rowayton, CT 06853

Dear Susan:

AgCert International LLC is pleased to offer you a position for full-time employment, effective October 1, 2003. As you know, AgCert has tremendous potential for success, and I strongly believe that you will have a significant impact on achieving that success. The terms of this letter of employment are as follows:

*Base Salary:*     Annualized Salary will then be $90,000. You are additionally offered a commission and other incentives that will be more detailed to you in the form of a Commission and Bonus Plan. You will be provided a performance review at your six month anniversary, including compensation. Payroll payments will occur on a bi-weekly basis.

*Reporting:*     You will report to Todd Jones, the Vice President of Demand Aggregation.

*Position:*     Your initial position and title will be Marketing Manager. Specific tasks and responsibilities will be determined by the CEO and Mr. Jones – with your input.

*Equity:*     You will participate in AgCert's distribution of equity. Your AgCert International LLC equity will be 45,000 units granted from the Company, at a value and effective date to be determined by the Compensation Committee of the Company. You should refer to the specific provision of the AgCert Operating and Unit Grant Agreements for your rights under this plan.

*Benefits:*     We have a competitive benefits plan, including healthcare and dental which you will be eligible to participate in. You will earn three weeks vacation annually, accrued monthly.

*Other Agreements:*     Your offer or issuance of equity will be conditional upon the execution of our non-disclosure, non-compete and assignment of inventions agreement, Unit Grant Agreement, the Company's Operating Agreement, and any other documents as determined necessary.

*Employment Type:*     At will

Please signify your acceptance of this offer by signing below and returning to me.

Sincerely,

Alan R. Tank
CEO

Accepted: _Susan Wood_      Date: 9/16/03

AgCert International LLC 10315 102nd Terrace, Sebastian, FL 32958 Phone: 772-581-6300 Fax: 772-581-7364
www.agcert.com

**EXHIBIT B**

Orlando Business Journal - June 20, 2005
http://orlando.bizjournals.com/orlando/stories/2005/06/20/story4.html



EXCLUSIVE REPORTS
From the June 17, 2005 print edition

## Luck of Irish may help AgCert in London trading
**Venture founded in Melbourne now has global base in Dublin.**
Chris Kauffmann
Staff Writer

MELBOURNE -- An offspring of XL TechGroup LLC recently went public on the London Stock Exchange, and early

baby steps in that market apparently indicate investors believe the company soon may be in a financial sprint.

AgCert International Plc. (LSE: AGCq.L), an Irish producer of credits for greenhouse gas emission reductions that was originally founded in 2002 by the Melbourne technology business, was trading this week at around 1.61 pounds, or nearly $2.90 per share.

That was up 21 pence, or around 38 cents per share, from the initial opening price of 1.40 pounds, or about $2.52 per share, about two weeks ago in conditional trading. Unconditional trading began June 8.

Because the stock is listed in the United Kingdom only, officials from AgCert and XL TechGroup say they are legally prohibited from discussing the initial public offering in U.S. publications.

However, AgCert's Melbourne-based chief executive officer, Alan Tank, notes the company already has contracts for about $100 million of business extending to early 2008, and that represents only a portion of anticipated revenue.

"The demand far outstrips the supply," says Tank, who employs a total of 55 people worldwide, including 28 people locally. "This is the beginning of a very significant market opportunity."

AgCert creates the greenhouse credits with a proprietary technology that reduces gas emissions by 95 percent at beef, poultry, dairy and pork feed lots around the world. Those credits can be applied anywhere.

This is particularly important to industrial companies in Europe, Asia and Canada as they try to reduce their gas emissions -- thought to cause global warming -- below their emission caps to avoid heavy fines under European Union restrictions and the Kyoto Protocol.

AgCert netted 54.1 million pounds, or more than $97 million, in an institutional private placement just before being listed. Based on its original price of 1.40 pounds per share, AgCert's market capitalization is about 215 million pounds, or $387 million.

AgCert's two largest current shareholders are XL TechGroup and Andlinger Capital, a New York-based private investment firm, each with about 27 percent.

© 2005 American City Business Journals Inc.    Add RSS Headlines

**Now Hiring - Edward Jones**
**Become an Edward Jones Investment Representative.**
Run your business.
Determine your compensation.
Create your future.
Apply today.



» **View all jobs from this company**

**Today's Featured Jobs** powered by **bizjournalsHire**
- Service Business Manager - Confidential
- Practice Leader (Aerospace and Defense) - Hudson Highland
- Recruiter Aerospace and Defense - Hudson Highland
- Financial Representatives - Edward Jones
- MATERIAL HANDLING SALES REPRESENTATIVE - ALLPOINTS EQUIPMENT COMPANY

→ **Search Jobs**
→ **Quick Job Post**

→ **Recruiters**:Get a free account!

→ **Online Colleges**

*All contents of this site © American City Business Journals Inc. All rights reserved.*

**EXHIBIT C**

Yahoo!  My Yahoo!  Mail

**YAHOO! FINANCE**  Sign In  New User? Sign Up

Search the Web [ Search ]

Finance Home - Help

Tuesday, September 6, 2005, 9:12PM ET - U.S. Markets Closed. Dow +1.36% Nasdaq +1.20%

To track stocks &

## Quotes & Info

Enter Symbol(s):
e.g. YHOO, ^DJI

[ GO ] Symbol Lookup | Finance Search

## AGCERT INTL (AGC.L)

At 11:24AM ET: **220.10** ↑


Free Trades


Trade with Fidelity

Scottrade — MORE SPEED. MORE POWER.
Still Just $7.


No Hidden Fees

## Basic Chart

Get **Basic Chart(s)** for: [ GO ]

**AGCERT INTL** (LSE)    [Edit]

Range: 1d 5d 3m **6m**    Type: Bar | **Line** | Cdl   Scale: Linear | **Log**   Size: **M** | L

Compare: AGC.L vs ____    ☐ S&P  ☐ Nasdaq  ☐ Dow  [ Compare ]

AGCERT INTL as of 5-Sep-2005

[Chart showing price from ~140 in Apr05 rising to ~240 by Aug05, with volume bars in millions below]

Copyright 2005 Yahoo! Inc.    http://finance.yahoo.com/

Splits: none

| | | | |
|---|---|---|---|
| Last Trade: | **220.10** | Day's Range: | 220.10 - 237.00 |
| Trade Time: | 11:24AM ET | 52wk Range: | 140.00 - 246.36 |
| Change: | ↑ 0.10 (0.05%) | Volume: | 0 |
| Prev Close: | 220.10 | Avg Vol (3m): | 384,580 |
| Open: | 230.00 | Market Cap: | N/A |
| Bid: | 229.75 | P/E (ttm): | N/A |
| Ask: | 230.25 | EPS (ttm): | 0.00 |
| 1y Target Est: | N/A | Div & Yield: | N/A (N/A) |

**Power E*TRADE: Low Trade Pricing. Get 100 Commission-Free Trades**

AGC.L: Basic Chart for AGCERT INTL - Yahoo! Finance                    Page 2 of 2

Case 3:03-cv-00986-JCH    Document 154    Filed 09/08/2005    Page 18 of 19

✉ **Add to Portfolio**    ☆ **Set Alert**    ✉ **Email to a Friend**

Get **Basic Chart(s)** for Another Symbol: [GO] Symbol Lookup

- Historical Prices
- Market Overview

---

Copyright © 2005 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright/IP Policy

**Quotes delayed**, except where indicated otherwise.
Delay times are 15 mins for NASDAQ, 20 mins for NYSE and Amex. See also delay times for other exchanges.

Historical chart data and daily updates provided by Commodity Systems, Inc. (CSI). International historical chart data and daily updates provided by Hemscott Americas. Financials data provided by Edgar Online. Fundamental company data provided by Capital IQ. Quotes and other information supplied by independent providers identified on the Yahoo! Finance partner page. All information provided "as is" for informational purposes only, not intended for trading purposes or advice. Neither Yahoo! nor any of independent providers is liable for any informational errors, incompleteness, or delays, or for any actions taken in reliance on information contained herein. By accessing the Yahoo! site, you agree not to redistribute the information found therein.

**Home | Prices & News | Products & Services | About the Exchange | Investor Relations | EDX London**



**Companies & prices** | Investor centre | Market news | Statistics | Portfolio | Investment news | InvestaQuest

**Companies & prices**
- **Risers and fallers**
- Indices
- AIM
- techMARK
- landMARK
- Funds
- ETFs
- Covered warrants
- Structured products
- Bonds
- Dutch trading service
- International companies
- International retail service
- New issues
- Recent issues
- Prices help

### Search for companies and prices

Site search: [Go]
Sponsored By

To view the detailed prices page for a security, click on the security name. Alternatively, you may search again. For real time prices you can call our automated voice service on 09058 890 190 and ask for the relevant company by name. Calls are charged at 55p per minute.

### Search for companies and prices

Name/code: AGC

[Search]

List companies starting with:

0-9 A B C D E F G H I J K L M N O P Q R S T U V W X Y Z

All data delayed by at least 15 minutes | 02:09

| Code | Name | Cur | Price | +/- | %+/- | | |
|------|------|-----|-------|-----|------|---|---|
| AGC | AGCERT REGS | GBX | 230.00 | 0.00 | 0.00 | | NEWS |



©2005 London Stock Exchange plc. All rights reserved          FAQs | Glossary | Disclaimer | Privacy policy |