UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN E. WOOD, <br><br> Plaintiff, <br><br> v. <br><br> SEMPRA ENERGY TRADING CORPORATION, <br><br> Defendant. | CIVIL ACTION NO. <br> 3:03-CV-986 (JCH) <br><br><br> September 21, 2005 |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM RE: PLAINTIFF'S MOTION IN LIMINE**

**I.   INTRODUCTION**

Plaintiff, Susan E. Wood ("Plaintiff" or "Wood"), hereby offers this Supplemental Memorandum in connection with Plaintiff's Motion in Limine, dated June 21st, 2005 ("Motion in Limine"), and the follow-up matters regarding such Motion in Limine taken up by the Court. In particular, at the conclusion of the fourth day of trial, the Court engaged in a colloquy with Plaintiff's and Defendant's counsel concerning the Motion in Limine, (August 30th Tr., p. 222.), as well as Plaintiff's Objection, dated August 26, 2005 ("Objection") to Defendant, Sempra Energy Trading Corp., ("Defendant" or "Sempra") Motion to file *Ex Parte* submissions, ("Sempra's In Camera Motion").

**II.   BACKGROUND**

During the August 30th colloquy concerning discovery matters made relevant by Plaintiff's Motion in Limine, as well as Sempra's In Camera Motion, a number of

statements and comments were made by the Court and Sempra's counsel, to which Plaintiff wishes to respond. In particular, the following issues arose.

A.	**Sempra's In Camera Motion**

    1.	Sempra's counsel, Ms. Dollarhide, stated that there was a litigation hold put on documents at Sempra, but that hold was not made specific to Ms. Wood. (August 30th, Tr., p. 229). Such explanation was given in support of Sempra's In Camera Motion, which offered documents to explain Sempra's handling of its discovery responses.

    2.	The Court informed Plaintiff that it had reviewed Defendant's *Ex-Parte* submission, which Plaintiff has not seen.

    3.	Without the benefit of review of Defendant's written submission, Plaintiff informed the Court that in the face of Attorney Dollarhide's statement, Joseph Howley, testified at his deposition that he was made aware only "two months" before his deposition in March of 2004, that the 2001 Howley incident was an issue in the pending litigation. (August 30th Tr., p.235).

B.	**Sempra's Failure to Properly Respond to Plaintiff's Discovery Requests.**

    1.	In response to the Court's inquiry regarding Sempra's handling of Production Request No. 4 (See Plaintiff's Exhibit No. 35) which requested, "any and all documents which relate to the calculation of payment of bonuses to the employees at the assistant vice president and vice president level", Sempra's counsel, Mr. Bertrand, stated that such request, "was not a request for [a] P&L sheet of each of these marketers and traders that worked in the different departments," (August 30th, Tr., pp. 232-33.)

2. Attorney Bertand went on to assert that the undersigned, counsel to the Plaintiff, "should have asked for P&L statements from marketers and traders".

3. Mr. Bertrand went on to articulate why Sempra's response to producing documents was limited to certain employees and employment agreements. Id.

Upon such explanation, the Court made an inquiry of the January 6, 2004 teleconference, during which the Court adjudicated objections that were interposed by Sempra to Plaintiff's discovery requests. In response to Sempra's counsel's assertion, the Court ordered production of the January 6, 2004 transcript. As articulated more fully below, Sempra clearly was obligated to produce the Profit and Lost statements which existed for each of the assistant vice presidents and vice presidents at Sempra, and failed to do so. Indeed, Mr. Bertrand's articulation of what Sempra did in response to Production Request No. 4 is an admission that Sempra failed to properly follow the Court's January 6th Discovery Order.

### III.    ARGUMENT

#### A.    Sempra's In Camera Motion

Plaintiff asserts that Mr. Howley's admission that he did not know of the relevance of the Howley Incident to the pending litigation until early 2004, just before his deposition, casts additional doubt on Sempra's discovery conduct. Further, the discrepancy on how Sempra handled responses to Plaintiff's discovery request relating to bonuses adds further doubt. In review of the Court's clear directives from the January 6th teleconference, Plaintiff asserts that the Court should draw an inference that Sempra and its counsel similarly mishandled other discovery responses.

Finally, Plaintiff requests that the Court review the documents presented for in Camera review, and release these documents for which the claims of privilege are denied. On August 30th, the Court noted upon Plaintiff's expressed concern that much of Sempra's submission was not covered by privilege. Upon such release, Plaintiff may well be able to demonstrate further inconsistencies and problems with Sempra's explanations.

B.      **Sempra's Failure in its Discovery Responses.**

1.      Plaintiff failed to produce the relevant Profit and Loss statements of comparably placed employees at Sempra regarding bonuses paid at Sempra. In follow-up to the Court's colloquy with counsel on August 30, 2005, a transcript from the January 6, 2004 teleconference was obtained. The January 4th teleconference resolving the Objections to Plaintiff's Production Requests clearly establishes that Sempra was under an obligation to produce documents "relating to" the calculation of bonuses. (See Plaintiff's Exhibit No. 35: Production Request No. 4). In fact, the review of the transcript makes clear that Sempra was given clear guidance not only as to its obligation to produce relevant documents, which obviously would have included the Profit and Loss statements that each of the Sempra employees testified existed, and which were clearly related to the calculation of bonuses, but also, the rationale for the production of such documents.

> The Court noted the information requested in Interrogatory No. 3, would be relevant for consequential damages and back-pay. (January 6, 2004 Tr., p. 4).

Indeed, the Court noted that such information would be helpful for the purpose of making projections. (January 6, 2004 Tr., p. 5).

The Court, further ruled that the information sought in the bonus area by Plaintiff would be necessary for Plaintiff to assist her in the proof of her damages. (January 6, 2004 Tr., p. 6).

In addition, during the teleconference, the undersigned counsel articulated the purpose of the information sought regarding bonuses was not only for the proof of damages, <u>but also</u> for the proof of Plaintiff's comparative employment skills with other similarly situated employees, which would be relevant and helpful in her case in proving liability. The Court agreed with such argument. (January 6, 2004, Tr., pp. 7-8).

With respect to Interrogatory No. 7 and the request for information as to any objective criteria used by Sempra, the Court made clear during the January 6, 2004 teleconference that Plaintiff was entitled to have such criteria, and how her performance related to such criteria. (January 6, 2004 Tr., pp. 23- 24).

Finally, the Court gave a full description to the documents that Sempra was obligated to produce regarding Production Request No. 4, and made the point the Plaintiff was entitled to documents which, "related to" the

payment of bonuses, including memoranda and other calculations. (January 6, 2004 Tr., pp. 35-36).

## IV. CONCLUSION

In view of the foregoing, and in view of the colloquy between the Court and counsel on August 30, 2005, the Court has a clear record that Sempra failed to produce documents highly material to Plaintiff's proof both as to damages, as well as her comparative abilities with respect to other Sempra employees. As such, Plaintiff asserts that she is entitled to the relief originally sought in the Motion in Limine. [1]

 

PLAINTIFF,
SUSAN E. WOOD

By:_____

---

[1] Plaintiff takes this opportunity to note that the Court has the discretion to make additional adverse findings regarding the Defendant in this matter, based upon the fact that, subsequent to the filing of the Motion In Limine, various Sempra witnesses testified that Sempra used objective criteria and benchmarks to evaluate employees. Such testimony directly contradicts the response Sempra gave to Interrogatory No. 7, wherein Semrpa states it did not specify quantifiable objective criteria in evaluating employees. The failure for Sempra to give an accurate response to this Interrogatory, necessarily impeded and encumbered Plaintiff's orderly pursuit of her discovery rights and in particular in eliciting relevant and probative testimony in the depositions of Mr. Messer, Mr. Roy, Mr. Cumming, Ms. Mitchell, Mr. Prince, and other Semrpa employees. Such prejudice is an additional basis for the Court to conclude that Sempra's engagement in patently bad faith discovery responses should result in inferences by the Court adverse to Sempra, and in favor of Plaintiff.

-7-

        Brendan J. O'Rourke (ct00522)
        Jeffrey M. McCormick (ct21185)
        O'ROURKE & ASSOCIATES LLC
        27 Pine Street
        New Canaan, CT  06840
        Telephone: (203) 966-6664

        Facsimile:  (203) 966-5710

**CERTIFICATION**

          This is to certify that a copy of the foregoing was mailed via first class mail, postage prepaid, to counsel of record as listed below this 21st day of September, 2005.

_____

Brendan J. O'Rourke

Raymond W. Bertrand, Esq.
Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard
Stamford, CT 06901

Mary C. Dollarhide, Esq.
Paul, Hastings, Janofsky & Walker LLP
3579 Valley Centre Drive
San Diego, CA 92130