UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN E. WOOD,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>SEMPRA ENERGY TRADING CORPORATION,<br><br>　　　　　　　　　Defendant. | CIVIL ACTION NO.<br>3:03-CV-986 (JCH)<br><br><br><br>September 21, 2005 |

**PLAINTIFF'S REPLY MEMORANDUM TO DEFENDANT'S MEMORANDUM ADDRESSING SPECULATIVE DAMAGES**

**I.　　INTRODUCTION**

Plaintiff, Susan E. Wood ("Plaintiff" or "Wood"), hereby submits her Reply Memorandum to Defendant's Memorandum Addressing Speculative Damages, dated September 7, 2005 ("Defendant's Damages Memorandum").[1]  Defendant Sempra Energy Trading Corporation ("Defendant" or "Sempra"), in Defendant's Damages Memorandum, makes certain unfounded and inaccurate statements of law and fact to which Plaintiff responds.

---

[1] Plaintiff asserts that for the reasons articulated in Plaintiff's Motion in Limine, dated June 21, 2005, and the subsequent colloquy between the Court and counsel on the issues raised therein, Sempra should be precluded from arguing that Plaintiff has not met her evidentiary burden, given that Defendant (i) failed to produce the detailed financial records of the other employees of Sempra, and (ii) failed to give truthful responses to a number of Plaintiff's interrogatories.  Such issues are further addressed in Plaintiff's Supplemental Memorandum regarding discovery matters, being filed concurrent with this Memorandum.

1

## II. ARGUMENT

### 1. Plaintiff's Evidentiary Record

Much of the argument made by Sempra in Defendant's Damages Memorandum is predicated upon the assertion that Plaintiff has not built a sufficient evidentiary record to entitle her to the back pay and front pay damages which she has requested. Sempra asserts that Plaintiff is requesting the Court to engage in "gross speculation", and that the damages charts that were submitted into evidence "lack any factual basis whatsoever." (Defendant's Damages Memorandum, p. 2). Sempra's factual predicate is demonstrably false. As set forth below, the Court has an ample record to calculate back pay and front pay damages:

A.  <u>Testimony of David Messer ("Messer"), President of Sempra</u>

Messer testified that bonus payments to employees like Susan Wood approximated 10% of their net contribution to the company. (July 27th Tr., p. 100).

Messer testified that Sempra expected employees to make "two or three times their cost." (July 27th Tr., pp. 141-142, 156).

Messer stated that the cost of the marketing desk of the Petroleum Derivatives Department was $750,000.00, and that such number was used to calculate an employee's profit. (July 25th Tr., p. 156).

Messer further testified that two to three times cost was a benchmark, but that performance could be five times or higher than the cost of the desk. (July 25th Tr., p. 142).

2

B. Testimony of Brian Cumming ("Cumming"), Head of the Petroleum Derivatives Department at Sempra

Cumming, Wood's supervisor in the Petroleum Derivatives Department, confirmed that the "costs of the desk" was between $750,000.00 and $800,000.00. (July 26th Tr., p. 64).

Cumming confirmed that there was a "revenue benchmark" which he had in mind for marketers for the year 2001. (July 26th Tr., p. 66).

Cumming confirmed Mr. Messer's testimony that a marketer would be expected to achieve three times the cost of the desk. (July 26th Tr., p. 66).

C. Testimony of Jamie Evans ("Evans"), marketer at Sempra

Evans confirmed that the benchmark for profitability is three times the desk costs (July 26th Tr., p. 136).

D. Testimony of Jackie Mitchell ("Mitchell"), Supervisor of the Natural Gas Department at Sempra

Mitchell testified that the range of bonuses paid to Sempra employees like Wood was 7% to 10% of the employee's profit. (August 30th Tr., p. 163).

E. Testimony of Christine Cantor ("Cantor"), Senior Executive at Sempra

Cantor confirmed that a marketer in the Petroleum Derivatives Department would be expected to generate revenue at least two times the cost of their desk. (August 30th Tr., p. 198)

Cantor confirmed that three times cost would indicate a "solid marketer." (August 30th Tr., p. 210).

Cantor illustrated how a Sempra employee would expect to earn a $1.4 million dollar profit, assuming the cost of the desk of the marketer was $800,000.00. (August 30th Tr., p. 211).

D. <u>Testimony of Alberto Vogel ("Vogel"), marketer at Sempra</u>

Vogel testified at his deposition (which has been offered by Sempra as testimony in this trial) that he maintained profit and loss statements similar to every marketer. (September 6th Tr., p. 41).

Vogel testified that he would use his profit and loss statement on a monthly basis and at the end of the year. (September 6th Tr., p. 42).

Vogel confirmed that such calculation was set forth on an Excel Spreadsheet. (September 6th Tr., p. 42).

Vogel confirmed that the cost of the desk was $800,000.00. (September 6th Tr., p. 43).

Vogel testified that his expectation is that his bonus would be 10% of his profit and loss, and that such number was used in his communications with his boss about his bonus. (September 6th Tr., p. 44).

4

F.  Testimony of Wood

Wood established that her aggregate compensation at AgCert was $120,000.00 (base salary, bonus and fringe benefits), and which data was used in calculating her claimed damages set forth in Plaintiff's Exhibits 36 and 41 (Tr. 25th pp 67-70). Wood's damages Exhibit 41 used the employees and show the average bonus paid to Sempra employees, and the damage Plaintiff comparatively sustained. (See Plaintiff's Exhibit 41).

Wood's damages Exhibit 36, setting forth the high, low and average projections for back pay and front pay damages, utilizes the approximate $800,000.00 "desk cost" and revenue benchmarks, all confirmed by Sempra employees, in setting forth a reasonable range of damages. (See Plaintiff's Exhibit 36).

In Plaintiff's Memorandum of Law Re: Evidence on Damages, dated July 26, 2005 ("Plaintiff's Damages Memorandum"), Plaintiff sets forth clear authority for the Court in this matter to consider the above evidence in calculating the back pay and front pay damages owed Plaintiff.[2] In short, the legal authority cited by Sempra regarding speculation and the use of experts is inapposite to the instant case. In Defendant's Damages Memorandum, Defendant cites readily distinguishable cases to support its claim that this Court is precluded from awarding front pay (which are damages extending beyond the date of judgment in lieu of reinstatement). However, as set forth in Plaintiff's Damages Memorandum, the Court necessarily confronts some speculation when an

---

[2] Plaintiff will not repeat each of the principles of law set forth in Plaintiff's Damages Memorandum, and requests that the Court refer to same in response to Defendant's Damages Memorandum.

5

employee has been fired due to discriminatory reasons, and as such, the Court is entitled to draw inferences from available evidence, whether or not such evidence is aided by expert testimony. (See Plaintiff's Damages Memorandum, pp. 2-3).

In the instant case, Plaintiff has provided relevant information as to the income she ultimately was able to earn, and could be projected to earn, at AgCert. Plaintiff then properly set off her AgCert income from the projections of what her Sempra earnings would reasonably be projected to have been (back pay) and what her earnings would be in the future (front pay). Plaintiff offered uncontroverted evidence that she was unable to obtain employment that compensated her similar to Sempra, which pays its employees like Wall Street investment bankers. Further, she reasonably projected that her diminished would last through 2010 (approximately four years of back pay and five years of front pay). As noted above, the earnings she projected at Sempra were based upon the objective "benchmark" data confirmed by Sempra employees. Indeed, all of the senior executives at Sempra and each of the supervisors of Plaintiff who testified confirmed that there was an objective basis to project bonuses that Plaintiff would have earned. Applying that evidence, coupled with a finding that Plaintiff would have achieved at least average performance at Sempra (as supported by the testimony of Messers Pardoe and Stowe, as well as her written performance reviews, bonuses and salary raise given to Plaintiff while she was employed, in contrast to essentially no evidence of below average performance having been presented by Sempra),[3] there is more than an adequate factual record to find that Plaintiff would have likely received at least an annual bonus of $140,000.00 above her base salary. Further, the authority cited by Sempra holds that the

---

[3] The only evidence of below average performance by Plaintiff was a limited number of anecdotes which had no corroborating documentation. In addition, much of the evidence was "hearsay", and expressly admitted by the Court as having no weight to the truth of the assertions themselves.

6

award of front pay, which is awarded in lieu of reinstatement, is available based upon the Court's use of its "equitable discretion." Ogden v. Waxworks, Inc., 29 F.Supp.2d 1003, 1012-1013 (N.D. Iowa 1998).  Plaintiff asserts that the conduct of Sempra, in terminating Plaintiff for wrongful reasons, and then failing to properly honor its discovery obligations, thereby prejudicing Plaintiff's ability to submit her proof, justifies the Court's full exercise of its equitable powers to fashion an award of front and back pay in favor of Plaintiff.  In short, Sempra should not derive the benefit of its conduct in claiming that Plaintiff's damages should be limited because (i) she "would have been laid off" in late 2002 because the department was closed,[4] or (ii) more generally, that Plaintiff has not proven damages with sufficient certainty.   To credit Sempra the benefit of those assertions would be speculation in favor of Sempra and otherwise an inference drawn in favor of the wrongdoer.  Moreover, crediting Sempra the benefit of its claims (that the victim of discrimination would not have made it anyway) would at least potentially promote such conduct by Sempra or other employers in the future.  Indeed, the law requires that all doubts should be resolved in favor of Plaintiff as the injured party, and the wrongdoer, in this case, Sempra, should not be the beneficiary of its wrongful conduct.  See Plaintiff's Damages Memorandum, pp 1-2 (citing Evans v. State of Connecticut, 967 F.Supp. 673, 680 (D.Conn.1997) (quoting E.E.O.C. v. Kallir, Philips,

---

[4] Sempra's only basis to support the inference in their favor that Plaintiff would have been terminated in late 2002 was the fact that three of the Department's employees were terminated in 2002; however, as made clear at the trial, the majority of the Department was reassigned to other positions. Moreover, the Court has a more than adequate factual record to find that Plaintiff would not have been terminated because she came from, and had experience in, the Natural Gas Department, and that Mr. Roy admitted that he considered other Departments where Plaintiff could have been reassigned. Finally on this point, in regards to Plaintiff's retaliation claim, Ms. Mitchell gave the stunning admission towards the end of the trial that she could not take Plaintiff back in her Department because of her "issues" with Joseph Howley, confirming the adverse reaction Wood received because of the Howley Incident. See August 30 Tr., pp. 137-138.

Ross, Inc., 420 F.Supp. 919, 923 (S.D.N.Y. 1976), aff'd, 559 F.2d 1203 (2d Cir.), *cert. denied*, 434 U.S. 920 (1977))).

    **2.**    **Sempra, completely disregarding even common sense rules regarding the introduction of evidence, offers Post Trial a wholly irrelevant and improper document to prove its damages argument.**

Sempra attaches to Defendant's Damages Memorandum (at Exhibit B) an unauthenticated print out from an entity which Sempra identifies as the "Orlando Business Journal". Apparently, Sempra seeks to controvert or challenge the testimony of the Plaintiff during the trial where she provided ample evidence as to her base salary, bonus, and projected earnings at her current employer, AgCert, in furtherance of her damages demand (all as set forth in Plaintiff's Exhibits 37 and 41). The Court should expressly disregard and strike this highly improper attempt to submit evidence post-trial. Pyramid Technolgy v. Cook, 146 B.R. 934, 939 (E.D Bankr. PA, 1992). By its submission, Sempra appears to be seeking to challenge the value of Plaintiff's equity interest in AgCert as a way of mitigating the damages that the Court may award in this matter. At trial, Sempra offered no such rebuttal or controverting evidence regarding Plaintiff's show of proof on the income she has earned, and has projected to earn at AgCert. Further, Sempra did not raise such defense in the Joint Pre-Trial Memorandum, dated June 22, 2005, nor in its proposed Findings of Fact and Conclusion of Law, dated June 20, 2004. As such, it is improper for Sempra to seek to introduce this new argument in evidence after the close of proof. See, Bresee's v DiCresce, 919 F.Supp. 597, 603 (N.D.N.Y., 1996).

### III.    CONCLUSION

For all of the foregoing reasons, the Court has a complete evidentiary record to award Plaintiff the full panoply of damages that are to be afforded her under each of the pending claims.

          PLAINTIFF,
          SUSAN E. WOOD


By: _____
    Brendan J. O'Rourke (ct00522)
    Jeffrey M. McCormick (ct21185)
    O'ROURKE & ASSOCIATES, LLC
    27 Pine Street
    New Canaan, CT  06840
    Telephone:  (203) 966-6664
    Facsimile:  (203) 966-5710
    Email: brendan@orourkeandassoc.com
    Counsel for Plaintiff

**CERTIFICATION**

This is to certify that a copy of the foregoing was served via first class mail, postage pre-paid, to counsel of record as listed below this 21th day of September, 2005.

_____
Brendan J. O'Rourke


Raymond W. Bertrand, Esq.
Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard
Stamford, CT  06901

Mary Dollarhide, Esq.
Paul, Hastings, Janofsky & Walker LLP
3579 Valley Centre Drive
San Diego, CA  92130