UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN E. WOOD,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>SEMPRA ENERGY TRADING CORPORATION,<br><br>　　　　　　　　　Defendant. | CIVIL ACTION NO.<br>3:03-CV-986 (JCH)<br><br><br><br>January 17, 2006 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SEMPRA ENERGY TRADING CORP.'s MOTION FOR AWARD OF ATTORNEYS' FEES

### I.  INTRODUCTION

On May 31, 2002 – three-and-a-half years before this Court found for Sempra Energy Trading Corp. ("Sempra") on all causes of action – defense counsel wrote to Plaintiff and outlined the fatal defects in her claims. Specifically, Sempra advised Plaintiff that:

- the contract and fraud claims would fail because Plaintiff signed an employment application and offer letter that refuted her claim that she was "promised" a ten percent bonus based on profits booked;

- the discrimination and retaliation claims were without merit because Sempra took prompt corrective action with respect to the Howley incident and no adverse action occurred as a result of the related complaint; and

- the discrimination and retaliation claims were frivolous because Sempra terminated Plaintiff for legitimate business reasons related to job performance and her ability relative to other employees.

See M. Dollarhide ltr. to B. O'Rourke dtd. May 31 2002 (attached hereto as Exhibit A). Defense counsel also informed Plaintiff that if she persisted in this litigation the letter would be provided to the Court as evidence that she was on notice of all such facts as of that date and fees would be sought. Id. Fourteen claims later, Sempra, the prevailing party at trial, seeks some portion of the fees incurred in this useless litigation.

Although it could seek its attorneys' fees from the inception of this case, Sempra is requesting only a fraction of its fees. Sempra respectfully asks the Court to make an attorneys' fee award in the amount of two hundred twenty-five thousand dollars ($225,000), which represents approximately one-fourth of the fees Sempra incurred after Plaintiff was put on notice of the fatal defects of her case.

## II.  **LEGAL STANDARD**

The federal statute on which Plaintiff premised her harassment, discrimination and retaliation claims permit an award of reasonable attorneys' fees to the prevailing party. 42 U.S.C. § 2000e-5(k). See also Fed. R. Civ. P. 54(d)(2). Title VII provides in pertinent part: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs[.]"

The Supreme Court set forth the appropriate standard for awarding attorney's fees to prevailing defendants in employment discrimination lawsuits in Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978): "[A] District Court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Id. at 421. The Court further explained that a case could be judged "frivolous" both when the litigation was brought, and also as the case evolved. An employer's fees motion therefore may be granted if a

court finds that a "[plaintiff's] claim was frivolous, unreasonable, or groundless, *or that the plaintiff continued to litigate after it clearly became so.*" Id. at 422. (emphasis added).

Trial courts have "wide latitude" in determining whether the Christiansburg standard is met. Munson v. Milwaukee Board of School Directors, 969 F.2d 266, 269-70 (7th Cir. 1992). A fees award is "peculiarly within the province of the trial judge, who is on the scene and able to assess the oftentimes minute considerations which weigh in the initiation of a legal action."

## III. DISCUSSION

As demonstrated below, this Court's rulings establish that Plaintiff's Title VII claims were frivolous, unreasonable and without foundation. As evidenced by the May 31, 2002 letter referenced above, Plaintiff knew or should have known that her claims lacked merit from the start. Even if Plaintiff is given the benefit of the doubt, Plaintiff was undeniably on notice that she could not prevail by the time discovery closed after she had deposed ten of Sempra's employees and had produced to her hundreds of pages of discovery.

### A. The Court's Summary Judgment Ruling Establishes That Plaintiff's Hostile Work Environment Was Without Foundation.

During the course of litigation, Sempra filed a motion for summary judgment to dispose of certain of Plaintiff's fourteen claims. On February 22, 2005, the Court granted Sempra's motion, in part, and dismissed nine of Plaintiff's fourteen claims, including claims for hostile work environment, breach of contract, breach of implied contract and implied covenant of good faith and fair dealing, promissory estoppel, unjust enrichment and nonpayment of wages. In assessing the record on this motion, the Court resolved all ambiguities, and drew all inferences, in favor of Plaintiff. Wood v. Sempra Energy Trading Corp., NO. CIV.A.3:03CV986 (JCH), 2005 WL 465423 *3 (D.Conn. Feb 22, 2005). Notwithstanding the significant burden

faced by Sempra, the moving party, this Court found that Sempra was entitled to judgment as a matter of law on two separate bases on the Title VII hostile work environment claim. Id., at 8. First, the alleged harassing conduct was neither frequent nor severe. Id. Second, aside from the Howley incident, Plaintiff did not complain about any harassment or discrimination on the bases of her gender or sexual orientation. Id. In light of the fact that no reasonable jury could have found for Plaintiff on her hostile work environment claim, Sempra respectfully submits that Plaintiff's workplace harassment claim was frivolous, groundless, unreasonable and without foundation.

      B.    **Plaintiff's Failure To Meet The Minimal Burden Of Establishing A Prima Facie Case Of Retaliation Or Discrimination At Trial Establishes That These Claims Were Without Foundation.**

The evidence Plaintiff relied on at trial to support her claims was so paltry that she failed to meet the minimal showing required to establish a prima facie case of discrimination or retaliation. Wood v. Sempra Energy Trading Corp., NO. 3:03 CV 986 JCH, 2005 WL 3416126 *5-6, 8 (D.Conn. Dec 12, 2005) ("the court finds that the circumstances under which Wood's termination occurred do not give rise to an inference of discriminatory intent, even considering the minimal nature of the prima facie case. Moreover, even if Wood had made out a prima facie case, Sempra has proven a legitimate, non-discriminatory business rationale for her termination."); ("The court finds that Wood has failed to prove the required causality between any protected activity and her termination. Wood has failed to prove a prima facie case of Title VII or CFEPA retaliation, and the court does not find it necessary to reach the remaining steps in the burden-shifting analysis."). See also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) ("[t]he burden of establishing a prima facie case of disparate treatment is not onerous[]"); Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2nd Cir. 1998) (not demanding burden); Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1022 (8th Cir. 1998) (level

of proof necessary to make prima facie case is minimal). Given the dearth of evidence to support her discrimination and retaliation claims, it was unreasonable for Plaintiff to have asserted these causes of action in this litigation.

Plaintiff, no doubt, will contend that the fact that since these claims survived summary adjudication that means her case therefore was not frivolous. She is incorrect. Cases can be factually frivolous even though the strict legal standard for summary judgment (or judgment as a matter of law) is not met. See, e.g, Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993) (prevailing employer awarded fees despite earlier denial of summary judgment motion); Piurkowski v. Goggin, 301CV302SRU, 2004 WL 1534200 *3 (D. Conn. July 6, 2004) (J. Underhill) (awarding attorney's fees to defendants who prevailed at trial after having summary judgment motion denied); EEOC v. Jordon Graphics, Inc., 769 F. Supp. 1357, 1385 (W.D.N.C. 1991) ("[There is no] *per se* rule that the denial of motions for summary judgment and for a directed verdict necessarily precludes a later finding of frivolity."). Further, "[c]ases that are ultimately viewed as frivolous may well survive . . . motions for summary judgment in which the evidence may be presented in sketchy fashion and credibility may not be taken into account." Blue v. U.S. Dept. Of Army, 914 F.2d 525, 535-36 (4th Cir. 1990) (internal quotations and citations omitted).

Here, Plaintiff's Opposition to Sempra's summary judgment heavily relied on an affidavit riddled with hearsay. Moreover, the Court was not permitted to take Plaintiff's credibility into account in deciding the motion for summary judgment. However, when left to her proof and subjected to scrutiny, Plaintiff was unable to make any showing that her termination was in retaliation for the Howley incident or based on her sex.

For example, Plaintiff's Title VII retaliation claim only survived Sempra's motion for summary judgment because Plaintiff alleged in her affidavit that Howley and Roy were close friends. See Wood v. Sempra Energy Trading Corp., NO. 3:03 CV 986 JCH, 2005 WL 465423 *9 (D.Conn. February 22, 2005) ("Wood faces difficulty in establishing a causal connection between the compliant and her termination, nine months later. ... Wood attempts to support an inference of such a connection by asserting that Roy, who is friendly with Howley, could not terminate her until he was made her supervisor, only a month prior to her termination."); Wood v. Sempra Energy Trading Corp., NO. 3:03 CV 986 JCH, 2005 WL 3416126 * 8 (D.Conn. Dec 12, 2005) ("In connection with her opposition to the Motion for Summary Judgment, Wood relied on an Affidavit in which she attested that Howley was a close friend of Roy, and that the delay was explained by the fact that Roy only became her supervisor in February 2001 and then retaliated shortly thereafter. Wood argued, and the court accepted for purposes of summary judgment, that this might explain the delay and, therefore, support a causality inference. However, the court has found that, while Howley and Roy were collegial in the work environment, they were not close friends outside of the work environment. In this respect the court has credited Howley and Roy's testimony."). However, the evidence introduced at trial wholly refuted this allegation and Plaintiff did not make any other offer to show that Roy, or anyone else, terminated her because of the Howley incident. In addition to determining that Plaintiff failed to make any showing of causality, the Court also concluded that Plaintiff's retaliation claim failed because the Howley incident did not involve Plaintiff engaging in any protected activity. Wood v. Sempra Energy Trading Corp., NO. 3:03 CV 986 JCH, 2005 WL 3416126 (D.Conn. Dec 12, 2005) ("Wood has not established that she engaged in a protected

activity.")  Thus, Plaintiff failed to make a prima facie showing of unlawful retaliation for two separate and independent reasons.

Whether a fee award is warranted under Christiansburg for having asserted the discrimination claim in this action essentially comes down to whether Plaintiff's claims about Roy were credible.  Sempra, at trial and through discovery, proffered evidence that explained the justification for letting Plaintiff go in March 2002.  Briefly summarized, the Petroleum Derivatives Department ("PDD") lost in excess of $12,000,000 from January 2001 through December 2002.  This downturn resulted in a number of personnel changes in the PDD, including the termination of Plaintiff, and ultimately resulted in the dissolution of the department.  In the middle of this downturn, Plaintiff's principal client base – the airline industry – was severely impacted by the events of September 11, 2001.  In light of these facts, it was entirely unreasonable for Plaintiff to have asserted that Sempra terminated her because of her sex, unless Plaintiff's testimony about Roy is considered credible.

However, Plaintiff's testimony on this issue was thoroughly impeached at trial.  During her employment, Plaintiff struck up a number of friendships.  One person included amongst this group was Roy.  Plaintiff and Roy socialized at work and exchanged personal emails.  See Def's Tr. Exhibit 520 (Wood:  You asked about a picture of our baby.  Here she is.  Roy:  This picture is GREAT).  Plaintiff and Roy even socialized outside of work.  For example, Plaintiff testified that Roy and his wife attended a Super Bowl party at Plaintiff and her partner's home.  See Def's Tr. Exhibit 567.  Roy also celebrated New Year's Eve one year with Plaintiff and her partner.  At another time, Plaintiff offered Roy the use of her vacation home.  On a professional level, Roy mentored Plaintiff and tried to help her succeed in the company.  See

Def's Tr. Exhibit 569 (explanation of spreadsheets Roy sent to Plaintiff while she worked in the Natural Gas Department).

Of course, these interactions belied Plaintiff's claim that Roy selected her for layoff on account of her sex, sexual orientation or in retaliation for the incident with Howley. To overcome the prejudice this would have on her case, Plaintiff, unfortunately, resorted to launching a character attack on Roy. Her allegations attempted to portray Roy as a male chauvinist, homophobe. To buttress her claim, Plaintiff heavily relied on stereotypes associated with men of Indian national origin and tried to portray Roy's wife as some third-world subservient being.

When left to her proof, however, Plaintiff relied exclusively on her own testimony. Plaintiff did not produce at trial any of the witnesses whom she had alluded to in her summary judgment affidavit, who purportedly had overheard the discriminatory remarks Plaintiff attributed to Roy. The reason is simple: Roy never made any such remarks.

In its defense, Sempra proffered the testimony of multiple witnesses, every one of whom refuted Plaintiff's portrayal of her former friend. Notably, many of these witnesses were former employees of Sempra, at least two of whom themselves were terminated (Rickers and Vogel). In light of the evidence adduced at trial, Plaintiff's claim that Roy terminated her because of her sex can only be characterized as frivolous.

### C. The Court Should Exercise Its Discretion And Award Sempra Its Attorneys' Fees.

While Sempra and the individuals whom Plaintiff maligned in this litigation can never be made whole, the modest award Sempra seeks would provide some measure of vindication to Sempra and deter individuals in the future from asserting groundless claims.

Sempra's request for only a portion of its fees takes into "consideration of the need to fulfill the deterrent purpose of the statute, but [] not cause financial ruin to the plaintiff[]." Piurkowski v. Goggin, 301CV302SRU, 2004 WL 1534200 *3 (D. Conn. July 6, 2004) (J. Underhill) quoting Faraci v. Hickey-Freeman Co., 607 F.2d 1025, 1029 (2nd Cir. 1979) (internal quotation omitted). Indeed, Plaintiff testified at trial that she earns in excess of one hundred thousand dollars a year with her current employer, AG Cert. See Wood v. Sempra Energy Trading Corp., NO. 3:03 CV 986 JCH, July 25, 2005, Tr. pg. 70. As of the time of the trial, Plaintiff and her partner owned a home in Rowayton, Connecticut and a time share property in Colorado. See Wood v. Sempra Energy Trading Corp., NO. 3:03 CV 986 JCH, July 25, 2005, Tr. pg. 8, 186. These facts support the conclusion that Plaintiff can afford to pay the fraction of attorneys' fees Sempra seeks.

## IV. CONCLUSION

Sempra put Plaintiff and her attorney on notice of the frivolity of her claims more than three years ago. As the case progressed through discovery, it became evident to Plaintiff that there was no causal relationship between her termination and her prior incident with Joe Howley. Rather than dismiss her claims as she should have done, Plaintiff simply modified her litigation strategy and launched an all-out character attack on Roy, who had befriended her while they worked together. These claims were likewise proven to be groundless, unreasonable and without foundation. Accordingly, based on the record before this Court, this memorandum and the attached Declaration, and as the prevailing party under Title VII, Sempra respectfully requests an award of attorneys' fees in the amount of two hundred twenty-five thousand dollars ($225,000).

Dated: January 17, 2006        PAUL, HASTINGS, JANOFSKY & WALKER LLP

*[signature]*

Mary C. Dollarhide (ct12251)
Raymond W. Bertrand (ct22968)
Paul, Hastings, Janofsky & Walker LLP
1055 Washington Blvd.
Stamford, CT 06901
(203)961-7477

Attorneys for Defendant Sempra Energy Trading Corp.

## CERTIFICATE OF SERVICE

The undersigned, a member of the bar of this Court, hereby certifies that on this 17th day of January, 2006, a true and correct copy of the foregoing Memorandum of Law in Support of Defendant Sempra Energy Trading Corp's Motion for Award of Attorneys' Fees was served on the following counsel of record via hand delivery to:

> Brendan J. O'Rourke, Esq.
> Jeffrey M. McCormick, Esq.
> Ann H. Brickley, Esq.
> O'Rourke & Associates, LLP
> 27 Pine Street
> New Canaan, CT  06840

Raymond W. Bertrand

LEGAL_US_W # 53145140.6

# EXHIBIT A

**Paul Hastings**

Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard, Stamford, CT 06901-2217
telephone 203-961-7400 / facsimile 203-359-3031 / internet www.paulhastings.com

Atlanta / Costa Mesa / London / Los Angeles / New York / San Francisco / Tokyo / Washington, D.C.

May 31, 2002

(203) 961-7423
MARYDOLLARHIDE@PAULHASTINGS.COM

28309.00004

**VIA FACSIMILE AND CERTIFIED MAIL**

Brendan J. O'Rourke
O'Rourke & Associates, LLC
27 Pine Street
New Canaan, CT 06840

Re:   Susan Wood v. Sempra Energy Trading

Dear Mr. O'Rourke:

This Firm represents Sempra Energy Trading ("Sempra") in connection with its employment issues. The purpose of this letter is to share with you certain facts concerning your client's allegations in the above-referenced matter. As outlined below, Ms. Wood's claims of discrimination, fraud and breach of contract as alleged in your letter to David Messer dated March 28, 2002 are frivolous as a matter of law and fact. Based on the facts and the existing case law, we will pursue and expect to win an award of our attorneys' fees and costs in this case if you choose not to voluntarily dismiss with prejudice the charge of discrimination currently pending before the CCHRO and then proceed through litigation.

To facilitate your discussion with your client about the propriety of voluntary dismissal at this juncture, we have discussed below the facts and the applicable legal theories for your review. Simply stated, Ms. Wood will lose this action. She – and you – also run a serious risk of being sanctioned by a court if you pursue this matter through the litigation phase. Numerous witnesses have already been interviewed in connection with this matter. They report, *inter alia*, Ms. Wood's routine errors in transactions resulting in a lack of confidence among co-workers and customer representatives; lack of discretion regarding sexual and gender related matters; insensitivity toward non-whites and certain religions; and other behaviors calling into question Ms. Wood's judgment, maturity and reliability. Her allegations of "inappropriate comments" met with many raised eyebrows given her own conduct. And the "male dominated culture" argument has no basis given the fact that some of the highest compensated executives at Sempra are female.

PaulHastings

Brendan J. O'Rourke, Esq.
May 31, 2002
Page 2

# I.
## MS. WOOD CANNOT STATE A CLAIM

Wood's claims fail as a matter of fact and law. The fraud and contract claims that you reference in your March 28 letter are untenable to the extent that they are based on verbal representations that Ms. Wood would receive compensation in addition to her base pay based on "profits brought to Sempra." As noted in our conciliation meeting at the CCHRO, Ms. Wood was signatory to an employment application wherein she acknowledged that no employment promises were binding on the company unless in writing and signed by an authorized company executive. The only such document establishes that (a) Ms. Wood was to be compensated $115,000 annually and (b) that she "may also be eligible for a bonus, based on [her] performance and that of Sempra Trading and its subsidiaries, in an amount to be determined by Sempra Trading's management *solely in their discretion.*" See Offer Letter dated Aug. 31, 2000 (emphasis added). There was without question no "promise" of a ten percent bonus based on profits booked and, accordingly, no breach or fraud.

The discrimination claims are likewise entirely without merit because there is no evidence that Sempra failed to take prompt corrective action with respect to the "Joe Howley incident" or that any adverse action occurred as a result of the related complaint. Indeed, several witnesses (including women) will testify that Ms. Wood was interfering with Mr. Howley's work at the time of the incident, and in fact caused him to physically remove her from his work area. In particular, Ms. Wood approached Mr. Howley near the end of the trading day demanding a share of profit on a deal where she had forgotten to cover her own book. Mr. Howley repeatedly asked Ms. Wood to wait until the close of trading and to move away so that he could manage the company's trading exposure for the day. She refused, at which time he moved her aside. She and Mr. Howley both signed written acknowledgements relating to the incident, and agreed to move on in a more cooperative fashion. There was no recurrence of the behaviors cited above.

Ms. Wood's termination had nothing to do with her complaint regarding the above-referenced incident. As a preliminary matter, her termination occurred many months later and was initiated by a new supervisor who was not responsible for either investigating or resolving the Howley/Wood matter. The new supervisor had determined that he wanted to focus on a particular market segment that was extremely sophisticated and desirous of confidentiality. In assessing who best could service this new target group, the supervisor took into account the serious deal errors that Ms. Wood had made, the discomfort she had created with a series of offensive remarks regarding race, sex and religion, and an overall lack of confidence in her ability relative to other employees. Attempts were made to relocate Ms. Wood back into her old group (headed by a female), but no offer was forthcoming.

**Paul**Hastings

Brendan J. O'Rourke, Esq.
May 31, 2002
Page 3

## II.
## MS. WOOD'S "DAMAGES" DO NOT EXCEED THE SEVERANCE NOW BEING OFFERED

Even if Ms. Wood could somehow establish pretext and retaliation – which she cannot – the wages supposedly owed to her are nowhere near the sums you discussed at the CCHRO. Keep in mind the following points:

- The "profit" from the large transaction we previously discussed resulted, in part, from your client's admitted mistake. That mistake cost Sempra any future business with that customer.

- The amount booked was actually more than $400,000 less than claimed by your client and was split between two books. Ms. Wood's claim as to revenue from this deal is thus grossly overinflated.

- The profits and losses (for individuals and the group) will be aggregated at year-end; overhead expenses including annual "cost of seat" (estimated at $850,000 per trading employee) will then be deducted. Only then might a discretionary bonus be awarded. The three months severance offered to Ms. Wood at the conciliation session approximates 10% of any remaining profits attributable to your client so that, even if she was contractually entitled to such compensation (a matter which Sempra contests), it has been offered to her.

## III.
## FAILURE TO DISMISS THIS CASE COULD ULTIMATELY RESULT IN A SUBSTANTIAL AWARD OF ATTORNEYS' FEES, COSTS AND SANCTIONS

By way of this correspondence, you are on notice that there is no legal or factual basis for Wood's claims. If she persists in pursuing this frivolous action through litigation, Sempra will seek an award of attorneys' fees, costs and additional sanctions against you and your client in accordance with Rule 11 or its equivalent (court may order costs and fees of the action and reasonable attorneys' fees to be paid by the plaintiff if the Court determines the action was frivolous.)

As you know, a showing of subjective bad faith is not required to make out a Rule 11 violation and impose sanctions for bringing a frivolous action. Rather, the standard is one of objective reasonableness under the circumstances. Where, as here, it is clear that Ms. Wood has (1) no entitlement whatsoever to any percentage of "profits" booked – a claim that is not even ripe – and (2) no viable claim for harassment or retaliation under the circumstances outlined above, that standard is satisfied and a court could well impose sanctions.

**Paul**Hastings

Brendan J. O'Rourke, Esq.
May 31, 2002
Page 4

## IV.
## CONCLUSION

Wood will lose at the CCHRO, and in court, if this matter continues. Her contentions are frivolous based on her own performance and behavior issues.

We are hopeful that you will carefully study the information provided and urge your client to dismiss this case at once. If we do not receive word from you prior to Wednesday June 5, 2002 indicating you have decided to voluntarily dismiss this case with prejudice, this letter will provide evidence that you were on notice of the futility of Ms. Wood's claim and that you persisted in this matter nevertheless. We will then permanently withdraw our most recent offer of three months severance and proceed to fully defend against this action. You cannot overestimate the precedential significance of this case to Sempra.

Should you have any questions, please call me.

Sincerely,

*[signature]*

Mary C. Dollarhide
of PAUL, HASTINGS, JANOFSKY & WALKER LLP


MCD:jld

cc:   Peter Schultz


STM/226707.1