## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN E. WOOD,<br><br>                   Plaintiff,<br><br>- against -<br><br>SEMPRA ENERGY TRADING CORPORATION,<br><br>                   Defendant. | CIVIL ACTION NO.<br>3:03-CV-986 (JCH)<br><br><br>January 17, 2006 |

## <u>DECLARATION OF RAYMOND W. BERTRAND IN SUPPORT OF DEFENDANT'S BILL OF COSTS</u>

### Pursuant to Federal Rules of Civil Procedure 54; Local Rule 54; 28 U.S.C. Sections 1920-1924

I, RAYMOND W. BERTRAND, declare as follows.

1.      I am an attorney duly licensed to practice law in this Court and in the State of Connecticut. I am an associate with the law firm of Paul, Hastings, Janofsky & Walker LLP, counsel of record for Defendant Sempra Energy Trading Corp., in the above-captioned action.

2.      I submit this Declaration in support of Defendant's Bill of Costs made pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, Local Rule 54 of the United States District Court for the District of Connecticut, 28 U.S.C. § 1920 and the Judgment entered on December 16, 2005 in favor of Defendant.

3.      I have personal knowledge of the facts set forth below, and if called as a witness, I could and would testify competently thereto.

      4.      I have reviewed the items of cost and corresponding invoices, receipts and statements submitted in connection with the Bill of Costs and have determined that such records are true and accurate.  In addition, such records are maintained in the ordinary course of business.  True and correct copies of all of the invoices, receipts and statements supporting the Bill of Costs are itemized in this Declaration.

      5.      The costs, including services for which fees have been charged and necessarily performed, are correct, were actually and necessarily incurred in the defense of this matter, and have either been paid by Defendant or the obligation for payment has been incurred. Each of the requested costs is properly taxed for the following reasons:

      6.      **Fees for Service of Subpoenas.**  Service of process fees were paid to a professional process server for service of trial subpoenas on nonparties Alberto Vogel and Brian Rickers.  These costs are reasonable and taxable as costs pursuant to Federal Rule 54(c) and Local Rule 54(c)(1).  Attached hereto as Exhibit A are true and correct copies of invoices for the costs described below.

| | |
|---|---:|
| Service of Subpoena on Alberto Vogel (7/21/05) | $196.00 |
| Service of Subpoena on Alberto Vogel (8/19/05) | $196.00 |
| Service of Subpoena on Brian Rickers (7/21/05) | $196.00 |
| Service of Subpoena on Brian Rickers (8/19/05) | $196.00 |
| **TOTAL** | **$784.00** |

Messrs. Vogel and Rickers were originally directed to appear at trial in July 2005, but were not able to testify before the third day of trial concluded. As a result of scheduling conflicts, the Court adjourned the trial; once a trial date was established, Sempra re-noticed the depositions to ensure the witnesses' attendance at the last day of trial proceedings, or in Mr. Volgel's case, his attendance at the deposition, which was held on September 6, 2005.

      7.    **Fees for the Court Reporter.**

      a.    **Deposition Transcripts.**  Sempra seeks to recover the deposition costs it incurred. Deposition costs include, but are not limited to, the court reporters' appearance and transcription fees, copying of exhibits, ASCII disks, shipping and handling, miniscripts and videotaping. As demonstrated below, these costs were necessary to counsel's effective performance and proper handling of this action on behalf of Defendant. These costs are reasonable and taxable as costs pursuant to Local Rule 54(c)(2)(ii). Attached hereto as Exhibit B are true and correct copies of invoices reflecting the costs described below.

| | |
|---|---|
| Deposition of Vincent Cookingham | $214.99 |
| Deposition of Denise Freda | $226.24 |
| Deposition of Brian Cumming | $355.90 |
| Deposition of Joseph Howley | $351.00 |
| Deposition of David Messer | $420.29 |
| Deposition of Jaqueline Mitchell | $434.60 |
| Deposition Sarathi Roy | $735.11 |

| | |
|---|---:|
| Videotaping of Sarathi Roy deposition | $243.80 |
| Deposition of Steve Prince | $723.19 |
| Deposition and videotaping of Alberto Vogel | $1,243.75 |
| Videotaping of Susan Wood deposition | $1,286.38 |
| Deposition of Susan Wood | $1,175.22 |
| **TOTAL** | **$7,442.08** |

          i.     **Depositions Noticed By Sempra.**  Sempra seeks to recover the deposition costs it incurred for the two witnesses it deposed:  Plaintiff Susan Wood and Alberto Vogel.  Sempra deposed Plaintiff on December 12, 2003.  Extensive portions of Plaintiff's deposition testimony were essential for Sempra's successful summary judgment motion.[1]  Sempra also used Plaintiff's deposition transcript for cross examination and to impeach Plaintiff's testimony at trial.[2]  Portions of the videotaped testimony of Plaintiff's deposition were prepared to be shown and used at trial for cross examination and impeachment in the event such evidence was needed at trial.

        In addition, Sempra seeks to recover the costs it incurred for the deposition and video transcripts of Alberto Vogel.  The transcript and videotape of Mr. Vogel's testimony was submitted to the Court and considered by the Court as if it were trial testimony.  Notably, the

---

[1] See Defendant's Memorandum of Law in Support of Motion for Partial Summary Judgment dtd. May 14, 2004, at pg. 2, 3, 8, 9, 11, 12, 13, 19, 21, 27, 30, 22, 24, 37, 42 [doc #45];  Defendant's Reply in Support of Motion for Partial Summary Judgment dtd. August 25, 2004 at pg. 4, 7, 8, 9, 10, 15, 20, 23, 25 [doc #58].

[2] See, e.g., Trial Tr., vol 1, 146-149, 157, 187, 189-190, July 25, 2005.

Court specifically requested that counsel provided it with a video recording Mr. Vogel's deposition prior to the taking of the deposition.[3]  For these reasons, Sempra respectfully submits it was reasonably necessary to take the videotaped depositions of Alberto Vogel at the time it was taken.

        ii.      **Depositions Noticed By Plaintiff.**  Sempra also seeks to recover the deposition costs it incurred for the witnesses Plaintiff deposed.  Plaintiff deposed nine fact witnesses (see above).  Sempra used the transcripts of Sarathi Roy[4], Joseph Howley[5], David Messer[6], Brian Cumming[7] and Michael Goldstein[8] in connection with its motion for summary judgment.  In addition, Plaintiff listed each of these deponents on her witness list or designated portions of their deposition testimony.[9]  The majority of these deponents testified at trial.  At trial, Plaintiff's counsel used the deposition transcripts to cross examine deponents who testified at trial.[10]  Therefore, it was necessary for Sempra's counsel to have a copy of the transcript to follow along as opposing counsel questioned witnesses about their prior deposition testimony.  In addition, Sempra's counsel used the deposition transcripts to assist them in the preparation for

---

[3] Trial Tr., vol 4, 221, August 30, 2005.

[4] See Defendant's Memorandum of Law in Support of Motion for Partial Summary Judgment, May 14, 2004, pg. 2, 3, 4, 16, 17, 18, 27, and 30 [doc #45];  Defendant's Reply in Support of Motion for Partial Summary Judgment, August 25, 2004,  pg. 6, 11, 15, and 16 [doc #58].

[5] See Defendant's Memorandum of Law in Support of Motion for Partial Summary Judgment, May 14, 2004, pg. 21 and 27 [doc #45];  Defendant's Reply in Support of Motion for Partial Summary Judgment, August 25, 2004, pg. 5, 6, and 10 [doc #58].

[6] See Defendant's Reply in Support of Motion for Partial Summary Judgment, August 25, 2004, pg. 15-16 [doc #58].

[7] See Defendant's Reply in Support of Motion for Partial Summary Judgment, August 25, 2004, pg. 16 [doc #58].

[8] See Defendant's Memorandum of Law in Support of Motion for Partial Summary Judgment, May 14, 2004, pg.30 [doc #45];  Defendant's Reply in Support of Motion for Partial Summary Judgment, August 25, 2004, pg. 10-11 [doc #58].

[9] Parties' Joint Pre-Trial Memorandum, June 24, 2005 [doc #93].

[10] See, e.g., Trial Tr., vol 2, 160, 161, 174, 175, 176, 185, 203, July 26, 2005; Trial Tr., vol 3, 115, 119, July 27, 2005; Trial Tr., vol 4, 161, 171-175, 180-183, August 30, 2005.

trial. For all these reasons, Sempra should be allowed to recover the deposition costs it incurred for the witnesses deposed by Plaintiff.

      b.    **Trial Transcripts.** Sempra ordered the daily trial transcripts, the transcript from oral argument on summary judgment and the oral argument on motion to compel discovery. These transcripts were necessary and reasonable to defend the case. Specifically, the daily trial transcript was used to assist counsel in preparing for the cross examination of Plaintiff and the examination of Sempra's witnesses. Sempra used the transcript from oral argument on summary judgment to help prepare for trial. The transcript from oral argument on the motion to compel discovery was used in responding to Plaintiff's motion-in-limine. Attached hereto as Exhibit C are true and correct copies of the invoices for the costs described below.

| | |
|---|---:|
| Terri Fidanza: for trial transcripts (downpayment) | $4,197.60 |
| Terri Fidanza: balance due for trial days 1-3 transcripts | $584.96 |
| Terri Fidanza: 1/6/04 discovery conference and 4th day of trial transcripts | $1,408.53 |
| Terri Fidanza: summary judgment hearing transcript | $167.91 |
| **TOTAL** | **$6,359.00** |

8.    **Fees for Witnesses.**

      i.    **Witness Fee For Attendance At Deposition.** Sempra seeks to recover the witness fee it paid to Alberto Vogel for the taking of his deposition on September 6, 2005. This costs was reasonable and taxable as costs pursuant to Local Rule 54(c)(4)(i). Attached hereto as Exhibit D is a true and correct copy of the invoice reflecting the costs described below.

| Witness fee for Alberto Vogel | $64.00 |
|---|---|
| **TOTAL** | **$64.00** |

ii.      **Witness Fee For Attendance At Trial.**  Sempra seeks to recover the witness fee it paid to Brian Rickers.  This costs was reasonable and taxable as costs pursuant to Local Rule 54(c)(4)(i).  Attached hereto as Exhibit E is a true and correct copy of the invoice reflecting the costs described below.

| Witness fee to Brian Rickers | $55.00 |
|---|---|
| **TOTAL** | **$55.00** |

iii.      **Fees for Lodging.**  Sempra seeks to recover the lodging fees it incurred for Jamie Evans and Brian Cumming.  Mr. Evans traveled from his home in Calgary, Canada to attend trial and Mr. Cumming traveled from his home in Singapore.  These costs were reasonable and taxable as costs pursuant to Local Rule 54(c)(4)(ii).  Attached hereto as Exhibit F are true and correct copies of the invoices reflecting the costs described below.

| Lodging for B. Cumming (July 25, 2005) | $352.33 |
|---|---|
| Lodging for J. Evans (July 25, 2005) | $297.14 |
| **TOTAL** | **$649.80** |

iv.     **Fees for Common Carriers & Miscellaneous Travel Expenses.**

Sempra seeks to recover the common carrier and travel expenses it incurred for

Jamie Evans and Brian Cumming. Mr. Evans traveled from his home in Calgary, Canada to

attend trial. Mr. Cumming traveled from his home in Singapore for the same reason.[11] These

costs were reasonable and taxable as costs pursuant to Local Rule 54(c)(4)(ii). Mr. Cumming's

testimony was relevant and material and had a bearing on essential issues of the case.[12]

Likewise, Mr. Evans' testimony was relevant and material and had a bearing on essential issues

of the case.[13] Attached hereto as Exhibit G are true and correct copies of the invoice reflecting

---

[11] Mr. Cumming traveled from Singapore to New York to testify at trial. After he testified, Mr. Cumming traveled to London before returning home to Singapore. The invoice Sempra seeks reimbursement for <u>does</u> <u>not</u> include the New York to London leg of Mr. Cumming's trip.

[12] <u>See</u>, <u>e.g.</u>, <u>Wood v. Sempra Energy Trading Corp.</u>, NO. 3:03 CV 986 JCH, 2005 WL 3416126 *2, 6 (D.Conn. Dec 12, 2005) ("As Wood's supervisor, Cumming had the opportunity to observe her. He came to the view that Wood was less experienced and knowledgeable about the petroleum derivatives market then he had originally thought. Having come to this realization, Cumming sought to mentor Wood by suggesting reading she could do to add to her knowledge. In addition, Cumming determined that, in her customer meetings, Wood should be accompanied by a more experienced marketer. Wood made at least two trips with other marketers, and, after those trips, the marketer who accompanied Wood told Cumming that Wood did not understand the market and was not qualified to interact with customers on her own. Alberto Vogel, for example, felt that she lacked basic knowledge that was fundamental to understanding the market. While in his view the customer trip on which he accompanied her went well, Vogel felt that Wood needed to learn more about the market. Sarathi Roy and J.B. Evans, two fellow marketers at the time, told Cumming the same."); ("Cumming, who determined her bonus and whom the court credits, stated that the entire department lost money that year and that bonuses were awarded solely on the basis of what it would cost to replace a person, in other words a payment made to avoid an expense of having people leave who might do so if no bonuses were paid. When he determined Wood's bonus for the year 2001, Cumming did not have specific information about the deals for which Wood was responsible or about her "profit." Cumming did not determine Wood's 2001 bonus based on her "profit" or her deal income."); ("For example, Bill Cumming, her supervisor in that Department for most of her employment there, testified that he observed that Wood "had very little experience and very little understanding" of either the commodities or the financial instruments that the group traded, and that for this reason he refused to let her meet with customers without another marketer present. Trial Tr., vol. 2, 94-97, July 26, 2005 [Dkt. No. 126]. The court credits this testimony as well as that of several other witnesses, discussed in greater detail above, that other marketers in the Petroleum Derivatives Department were concerned about Wood's lack of knowledge of the group traded.").

[13] <u>See</u>, <u>e.g.</u>, <u>Wood v. Sempra Energy Trading Corp.</u>, NO. 3:03 CV 986 JCH, 2005 WL 3416126 *2, 3, 6 (D.Conn. Dec 12, 2005) ("Wood made at least two trips with other marketers, and, after those trips, the marketer who accompanied Wood told Cumming that Wood did not understand the market and was not qualified to interact with customers on her own. Alberto Vogel, for example, felt that she lacked basic knowledge that was fundamental to understanding the market. While in his view the customer trip on which he accompanied her went well, Vogel felt that Wood needed to learn more about the market. Sarathi Roy and J.B. Evans, two fellow marketers at the time, told

(continued...)

the costs described below, along with the currency converter calculations.

| | |
|---|---:|
| Jamie Evans' Airfare | $3503.85 |
| Jamie Evans' Miscellaneous Travel Expenses | $70.83[14] $81.50 |
| Brian Cumming's Airfare | $5,065.00 |
| **TOTAL** | **$8,721.18** |

9.      **Fees Incurred in Removing Case.** Sempra seeks to recover the fees it incurred

removing this matter from the State of Connecticut Superior Court to the United Stated District

Court for the District of Connecticut.  These costs were recoverable pursuant to Local Rule

54(c)(6)(iii).  Attached hereto as Exhibit H is a true and correct copy of the invoice reflecting the

cost described below.

---

(...continued)

Cumming the same. In addition to Dwyer, Evans and Brian Rickers both testified that, when they attempted to speak with Wood in order to add to her knowledge about the market, she would defensively react with assurances that she understood or already knew the information they were giving her, when in their view she clearly did not. As a result of their observations, none of the other marketers in the Petroleum Derivative Department wished to have Wood cover their desks while they were out of the office. They were concerned that her lack of knowledge would create problems in conversations she might have with their customers in their absence."); ("Roy was aware that two other marketers in the department, Vogel and Evans, did not want Wood to cover their desks and take their customers' phone calls when they were out of the office because they felt Wood did not understand the limitation of risk management services that the department offered and was not able to communicate those limitations to their customers. "); ("The court credits this testimony as well as that of several other witnesses, discussed in greater detail above, that other marketers in the Petroleum Derivatives Department were concerned about Wood's lack of knowledge of the commodities the group traded.")

[14] This calculation was determined by converting $85.00 Canadian dollars into U.S. dollars ($1.00 U.S. dollars / $1.20 Canadian dollars * $85.00 Canadian).

| Removal Fee | $150.00 |
|-------------|---------|
| **TOTAL** | **$150.00** |

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED: __January 17, 2005__

Raymond W. Bertrand

## CERTIFICATE OF SERVICE

The undersigned, a member of the bar of this Court, hereby certifies that on this 17th day of January, 2006, a true and correct copy of the foregoing Declaration of Raymond W. Bertrand in Support of Defendant's Bill of Costs was served on the following counsel of record via UPS overnight delivery:

> Brendan J. O'Rourke, Esq.
> Jeffrey M. McCormick, Esq.
> Ann H. Brickley, Esq.
> O'Rourke & Associates, LLP
> 27 Pine Street
> New Canaan, CT  06840

Raymond W. Bertrand