UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN E. WOOD,<br><br>                Plaintiff,<br><br>v.<br><br>SEMPRA ENERGY TRADING CORPORATION,<br><br>                Defendant. | CIVIL ACTION NO.<br>3:03-CV-986 (JCH)<br><br><br><br>February 7, 2006 |

**PLAINTIFF, SUSAN E. WOOD'S, MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR AWARD OF ATTORNEY'S FEES**

I.     INTRODUCTION

Plaintiff, Susan E. Wood, ("Plaintiff" or "Wood") hereby offers her Memorandum in Opposition to Defendant, Sempra Energy Trading Corporation's ("Defendant" or "Sempra") Motion for Attorneys' Fees, dated January 16, 2006. For the reasons articulated below, Plaintiff respectfully asserts that there is no basis to award attorneys' fees to Sempra by reason of the fact that Sempra prevailed at the trial level in its defense of claims made by Plaintiff under Title VII.

II.     BACKGROUND

Sempra predicates its Motion for Attorneys' Fees on the provision in Title VII that provides that the trial court at its discretion may allow the prevailing party reasonable attorneys' fees. 42 U.S.C. § 2000e-5(k). Sempra cites Christiansburg Garment v. E.E.O.C, 434 U.S. 412 (1978) for support in its request that this Court award attorneys'

1

fees in the amount of $225,000.00, based on the fact that it prevailed on the Title VII claims at trial. Sempra's claim focuses on two counts in Plaintiff Wood's Complaint. In particular, Plaintiff asserted a claim of unlawful discrimination on the basis of gender in violation of 42 U.S.C. § 2000e et seq. (Title VII) (Count One). Plaintiff Wood also asserted a claim for retaliatory discharge under Title VII due to the complaint that she filed following the Howley incident. (Count Four) Such two counts constitute the Title VII claims for which Sempra seeks $225,000 in legal fees (hereinafter "Title VII claims").

Plaintiff Wood acknowledges that the trial Court acted as the fact finder in the trial as a result of Plaintiff's decision to have the Court, not a jury, act as the trier of fact. Plaintiff Wood also acknowledges that the Court rendered factual findings adverse to her claims, and ultimately found in favor of Sempra on the Title VII claims. However, the record in these matters demonstrates Plaintiff's Title VII claims were not frivolous and without foundation. Further, as articulated more completely below, the strong public policy underlying Title VII requires that the standard for awarding attorney fees be strictly and narrowly applied when being made by a Defendant employer, versus a single Plaintiff employee seeking to vindicate her federal Title VII rights.

### III. ARGUMENT

1. **The Historical Procedural Setting of the Case Demonstrates that Plaintiff's Title VII Claims Had Merit.**

Plaintiff's initial attempt to seek redress for unlawful discrimination by Sempra came about from a compliant that she filed with the Connecticut Commission on Human Rights

2

and Opportunities ("CCHRO"). The CCHRO initially decided not to pursue the complaint. Plaintiff, however, successfully moved for reconsideration of that decision which yielded a decision by Connecticut Assistant Attorney General David M. Teed, subsequently approved on January 26, 2003, by Cynthia Watts Elder, Executive Director of the CCHRO, that held that Wood's complaint had merit and approved the further pursuit of Wood's claims ("CCHRO Decision"). A copy of the CCHRO Decision is being submitted concurrent herewith annexed to the Affidavit of Brendan J. O'Rourke. Thus, subsequent to the letter of Sempra's counsel, dated May 31, 2002, which Sempra cites as a basis for an award of attorneys fees, the CCHRO ordered that Plaintiff's CCHRO complaint be responded to, and that Sempra also comply with the discovery requirements which Sempra had previously failed to do.

Significantly, the CCHRO Decision noted that Sempra's "Answer [to the CCHRO Complaint] contains contradictions and a lack of any evidence to support it". CCHRO Decision, p. 2. Assistant Attorney General Teed, the author of the CCHRO Decision, in support of his decision that Wood's complaint had merit, noted that Sempra's Answer to the CCHRO Complaint admitted that when Ms. Wood inquired at the termination meeting as to why she had been terminated, and if she had done anything wrong, Mr. Roy said, "No". Id. at 2. The CCHRO Decision went on to note that Mr. Roy then, in a contradictory fashion, justified his termination based on, "deal errors and questions about professionalism....". Id. at 3. Beyond that contradiction, the CCHRO Decision went on to further note that in response to Sempra's assertion that Roy had terminated Wood for lawful reasons, "there is no documentation to back up this assertion (e.g. performance

3

appraisals), nor is there evidence to support the other assertion in the Answer to Paragraph 21 that the decision to terminate her employment was based upon his (Mr. Roy's) assessment of her potential for revenue generation".

A further review of the CCHRO Decision yields observations concerning Sempra's conduct that were raised at trial in this matter. Assistant Attorney General Teed questions, "where is the documentation to back up this assertion that the Complainant's generation of revenue was less than others who were retained?" Id. at 3. Thus, following Sempra's counsel's May 31, 2002 letter, the CCHRO found sufficient cause to warrant further pursuit of Wood's Complaint.

Because the CCHRO was then inundated with discrimination complaints and requests for investigation, upon the CCHRO Decision being issued, Plaintiff moved for a Release of Jurisdiction from the CCHRO for authority to prosecute her claims in Court. The Release of Jurisdiction was granted on February 14, 2003. Plaintiff filed her Complaint, which included her Title VII claims, in Connecticut Superior Court in June of 2003. Sempra removed the case to this Court by its Notice of Removal, dated June 3, 2003.

The next level of review of Plaintiff's Title VII claims resulted from the filing of Sempra's Motion for Summary Judgment. The Court, by its ruling of February 26, 2005, denied Sempra's Motion for Summary Judgment as to the Title VII claims ("Summary

4

Judgment Ruling").[1]   In its Summary Judgment Ruling, the Court noted that Plaintiff had produced "sufficient evidence" suggesting that the reasons given by Sempra to justify the termination are pre textual so as to create a question of material fact. See, Summary Judgment Ruling, p. 12. In support of its decision, the Court noted that Wood "was fired one month after a man who made comments stereotyping women became her supervisor and Wood has created a material issue of fact regarding whether she was effectively replaced by a man. Id. at 13. Further, the Court in the Summary Judgment Ruling noted that Wood had received performance bonuses for 2000 and 2001 and good reviews of her work as further evidence that unlawful motivations motivated the decision to terminate her. Id. at 14.[2]

Certainly at trial, Wood offered evidence that tracked her summary judgment submission. Wood testified as to a number of statements that Roy made seeking to prove that he had a stereotyped view of women as evidence of his unlawful motivations to terminate Wood.

---

[1] In Woods' Memorandum in Opposition to Sempra's Summary Judgment Motion it was noted that in the face of this Court's expressed question of the propriety of filing a Summary Judgment Motion, Sempra proceeded to file one any way and in fact also unsuccessfully moved for reargument. Given what the Court expressed and the fact that the Court and not the jury was to be the finder of fact, Sempra's action was a waste of judicial resources and unnecessarily added to the burden and expense of the litigation.

[2] Although Sempra raises the issue that it was granted Summary Judgment on a hostile work environment claim, Plaintiff's principal factual allegation that she pursued in this litigation from the inception was that her termination was for unlawful discriminatory reasons. Indeed, her gender discrimination claim under Title VII is couched in one count and is principally predicated on her claim for unlawful termination. The allegations of hostility centered on Wood receiving negative treatment after making a complaint about the Howley incident. Plaintiff notes that at trial, it was established that after the Howley complaint, Wood was instructed not to trade with Howley. Thus, there is little significance to the fact that partial summary judgment was granted Sempra on that aspect of the Title VII claim.

In addition, Wood presented testimony to the Court as well as an internal email at Sempra noting that Steven Soule had effectively been hired to replace Wood. (See, Plaintiff's Exhibit 36, wherein Soule writes as to his business plan, "Replacing Susan Wood's position..."). Further, David Messer testified at trial that he was involved in discussions with Roy about the planned termination of Wood. Significantly, Mr. Messer was aware of the Howley incident and Wood's complaint. (08/27/05 Trial Transcript at pp 159-161). Messer supported Soule's replacement of Wood. Messer also admitted to being disturbed by Wood and bothered by her comments about her lesbianism. (08/27/05 Trial Transcript at pp. 105-108). Further facts adduced by Wood at trial included the following:

1. Mr. Roy witnessed and was involved in the Howley incident investigation.

2. Wood told General Counsel Goldstein that she feared retaliation in that she would be fired.

3. Goldstein, who investigated the Howley incident, later gave legal advice to Roy as to Wood's termination.

4. Mitchell testified that when asked about the possibility of Wood working in her Department, she was not comfortable with Wood in part because of the Howley incident. (08/30/06 Trial transcript at pp 137-138).

Thus, although the court made findings ultimately in favor of Sempra on the Title VII claims, it certainly cannot be said that the evidence presented to the Court at trial by Wood on her Title VII Claims was without foundation or completely meritless.

## 2. The Legal Standard Precludes an Award of Attorney's Fees to Sempra

The standards for awarding legal fees to a prevailing defendant employer in a Title VII case requires that the Court make a finding that the Title VII claims were frivolous, unreasonable, or groundless. Christiansburg Garment v. E.E.O.C., 434 U.S. 412, 422.

In AFCSME v. the County of Nassau 96 F.3d 644 (2d. Cir. 1996), cert. denied, 520 U.S. 1104, 117 S.Ct. 1107 (1997), the Court of Appeals held that the district court abused its discretion in the granting of a fee award to the prevailing defendant. The Court in AFSCME noted that although the statute does not distinguish between prevailing plaintiffs and prevailing defendants, the Supreme Court has held that a defendant is not entitled to an award of fees on the same basis as a prevailing plaintiff. Id. at 650, citing Christiansburg, 434 U.S. at 418-419. The reason for the differentiation in the consideration of a request for attorney's fees is that in a Title VII action the plaintiff is the chosen instrument of Congress to vindicate the policy that Congress considered of the highest priority. In AFSCME, the Court provided examples of awards of attorney's fees to prevailing defendants in cases where that plaintiff engaged in clearly egregious, vexatious and frivolous claims, very distinct from the case Plaintiff put on at trial.

In Tancredi v. Metropolitan Life Insurance Company 378 F.3d 220 (2d Cir. 2004) the Court of Appeals, in assessing the standard for awarding attorney's fees in an unsuccessful § 1983 action, analogized the strict standards set forth in Christiansburg.

The Court in Tancredi held that the district court abused its discretion in awarding attorney's fees to the defendant. In reaching its holding, the Second Circuit noted that it is important that a district court resist the understandable temptation to engage in post hoc reasoning in concluding that, because the plaintiff did not ultimately prevail, his action must have been unreasonable or without a foundation Id. at 230, citing Christiansburg 434 U.S. 421.

Similar to the setting of instant case, the district court in Horsford v. the Salvation Army 2002 WL 31175221 (S.D.N.Y. 2002), held that the plaintiff, who had survived summary judgment, has pursued a claim that was supported by some evidence and therefore was not frivolous. Id. at 3. In denying the prevailing defendant its claim for attorney's fees, the court in Horsford, similar to the instant case, noted that the plaintiff at trial put on a case that tracked the submissions of the summary judgment, and there was no indication that any testimony was concocted or fabricated. This court similarly should find that Wood' case at trial tracked her summary judgment submission, but also added admissions by a number of Sempra witnesses that furthered her claim (e.g. Mitchell's admission that she was uncomfortable about the Howley matter). Still further, the Court did not find any concocted or fabricated testimony.

Finally, the court in Horsford concluded that while it is unfortunate that a prevailing party must incur attorney's fees in defending a Title VII case "it would be equally unfortunate – and contrary to the purpose of Title VII, if fear of liability for attorney's fees were to chill the assertion of civil rights claims". Id., citing Christiansburg, 434 U.S. at 422.

8

In <u>Evans v. The Port Authority of New York and New Jersey</u> 2003 WL 1842876 (S.D.N.Y. 2003) the district court considered the prevailing defendant's claim for reimbursement of attorney's fees in a Title VII action. The court ruled that while the plaintiff's case, which included the dismissal of a hostile work environment claim at summary judgment, was weak and indeed so weak, that the court considered setting aside the plaintiff's verdict if one had been returned, the case was not so weak so as to meet the <u>Christiansburg</u> standard for the award of attorneys fees.

## IV.   CONCLUSION

In the instant case, Plaintiff produced significant evidence through testimony and documentary evidence to support her claim for unlawful gender discrimination and retaliation under Title VII. The fact that the Court made contradictory findings does not negate Plaintiff's good faith, bona fide claims. In addition, it would indeed chill plaintiffs from bringing Title VII claims if the Court were to award Defendant's attorneys' fees in this case. For all of the foregoing reasons, the Court should deny Defendant's Motion for Attorneys' Fees in its entirety.

PLAINTIFF
SUSAN E. WOOD

By: _____

Brendan J. O'Rourke (ct00522)
Marianne F. Murray (ct41393)
O'ROURKE & ASSOCIATES, LLC
27 Pine Street
New Canaan, CT 06840
Telephone: (203) 966-6664
Facsimile: (203) 966-5710
Email: brendan@orourkeandassoc.com
Counsel for Plaintiff

PLAINTIFF
SUSAN E. WOOD

By: _____

Brendan J. O'Rourke (ct00522)
Marianne F. Murray (ct41393)
O'ROURKE & ASSOCIATES, LLC
27 Pine Street
New Canaan, CT 06840
Telephone: (203) 966-6664
Facsimile: (203) 966-5710
Email: brendan@orourkeandassoc.com
Counsel for Plaintiff

## CERTIFICATION

This is to certify that a copy of the foregoing was served via facsimile and first class mail, postage pre-paid, to counsel of record as listed below this 7th day of February, 2006.

Marianne F. Murray

Mary C. Dollarhide, Esq.
Raymond W. Bertrand, Esq.
Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard
Stamford, CT 06901